IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CHANBOND, LLC,

             Plaintiff,

   v.

ATLANTIC BROADBAND GROUP, LLC,

             Defendant.

C.A. No. 15-842-RGA

REDACTED -- PUBLIC VERSION

CHANBOND, LLC,

             Plaintiff,

   v.

BRIGHT HOUSE NETWORKS, LLC,

             Defendant.

C.A. No. 15-843-RGA

REDACTED -- PUBLIC VERSION

CHANBOND, LLC,

             Plaintiff,

   v.

CABLE ONE INC.,

             Defendant.

C.A. No. 15-844-RGA

REDACTED -- PUBLIC VERSION

|  |  |
|---|---|
| CHANBOND, LLC, | |
| Plaintiff, | C.A. No. 15-845-RGA |
| v. | REDACTED -- PUBLIC VERSION |
| CABLEVISION SYSTEMS CORPORATION, *et al.*, | |
| Defendants. | |

|  |  |
|---|---|
| CHANBOND, LLC, | |
| Plaintiff, | C.A. No. 15-846-RGA |
| v. | REDACTED -- PUBLIC VERSION |
| CEQUEL COMMUNICATIONS, LLC, *et al.*, | |
| Defendants. | |

|  |  |
|---|---|
| CHANBOND, LLC, | |
| Plaintiff, | C.A. No. 15-847-RGA |
| v. | REDACTED -- PUBLIC VERSION |
| CHARTER COMMUNICATIONS, INC., | |
| Defendant. | |

|  |  |
|---|---|
| CHANBOND, LLC, | |
| Plaintiff, | C.A. No. 15-848-RGA |
| v. | REDACTED -- PUBLIC VERSION |
| COMCAST CORPORATION, *et al.*, | |
| Defendants. | |

| | |
|---|---|
| CHANBOND, LLC, | |
| Plaintiff, | C.A. No. 15-849-RGA |
| v. | REDACTED -- PUBLIC VERSION |
| COX COMMUNICATIONS, INC., | |
| Defendant. | |
| CHANBOND, LLC, | |
| Plaintiff, | C.A. No. 15-850-RGA |
| v. | REDACTED -- PUBLIC VERSION |
| MEDIACOM COMMUNICATIONS CORPORATION, | |
| Defendant. | |
| CHANBOND, LLC, | |
| Plaintiff, | C.A. No. 15-851-RGA |
| v. | REDACTED -- PUBLIC VERSION |
| RCN TELECOM SERVICES, LLC, | |
| Defendant. | |
| CHANBOND, LLC, | |
| Plaintiff, | C.A. No. 15-852-RGA |
| v. | REDACTED -- PUBLIC VERSION |
| TIME WARNER CABLE INC., *et al.*, | |
| Defendants. | |

| | |
|---|---|
| CHANBOND, LLC,<br><br>                    Plaintiff,<br><br>        v.<br><br>WAVEDIVISION HOLDINGS, LLC,<br><br>                    Defendant. | C.A. No. 15-853-RGA<br><br>REDACTED -- PUBLIC VERSION |
| CHANBOND, LLC,<br><br>                    Plaintiff,<br><br>        v.<br><br>WIDEOPEN WEST FINANCE, LLC,<br><br>                    Defendant. | C.A. No. 15-854-RGA<br><br>REDACTED -- PUBLIC VERSION |

## DEFENDANTS' RULE 30(b)(6) NOTICE OF DEPOSITION

Pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, Defendants Atlantic Broadband Group, LLC ("ABB"), Bright House Networks, LLC ("Bright House"), Cable One Inc. ("Cable One"), Cablevision Systems Corporation and CSC Holdings, LLC ("Cablevision"), Cequel Communications Holdings I and LLC, Cequal Communications, LLC, d/b/a Suddenlink ("Suddenlink"), Charter Communications, Inc. ("Charter"), Comcast Corporation and Comcast Cable Communications, LLC ("Comcast"), Cox Communications, Inc. ("Cox"), Mediacom Communications Corporation ("Mediacom"), RCN Telecom Services, LLC ("RCN"), Time Warner Cable Inc. and Time Warner Cable Enterprises LLC ("TWC"), Wavedivision Holdings, Inc. ("Wave"), and Wideopen West Finance, LLC ("WOW") (collectively "Defendants"), by its undersigned attorneys, hereby gives notice that they will take the deposition(s) by oral testimony of Plaintiff ChanBond, LLC ("ChanBond" or "Plaintiff") on the Topics identified in Schedule A

hereto, through one or more of ChanBond's officers, directors, or managing agents, or other persons designated by ChanBond to testify on its behalf.  The deposition(s) will be held at Winston & Strawn LLP, 200 Park Ave, New York, NY 10166 on March 30, 2017 beginning at 9:30 AM, or at some other date, time, and place as mutually agreed upon by counsel for the parties, and continue from day to day until completed.

Defendants request that ChanBond provide written notice, at least five (5) business days in advance of the deposition(s) of:  (1) the name(s) of each designee who has consented to testify on behalf of ChanBond; (2) the job title of each such person; and (3) the topic(s) set forth in Schedule A on which each such person will testify.

Pursuant to Rule 30(b)(3), the deposition(s) will be conducted before a notary public or other person duly authorized to administer oaths, and will be recorded by stenographic, audio, video, and/or real-time transcription (*e.g.* LiveNote) means.  The examination will be taken for the purposes of discovery, for use at trial in this action, and for any purposes permitted under the Federal Rules of Civil Procedure.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jennifer Ying*
Jack B. Blumenfeld
Jennifer Ying
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
jblumenfeld@mnat.com
jying@mnat.com

*Attorneys for Defendants*

*Of Counsel:*

Michael Brody
Jonathan Retsky
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, IL 60601
312-558-5600

Krishnan Padmanabhan
Anup Misra
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166
212-294-4700

James Lin
WINSTON & STRAWN LLP
275 Middlefield Rd.
Menlo Park, CA 94025
650-858-6500

10793326

 Original Filing Date:  February 10, 2017
 Redacted Filing Date:  February 22, 2017

## SCHEDULE A

## Definitions

1.      "Defendants" means Atlantic Broadband Group, LLC ("ABB"), Bright House Networks, LLC ("Bright House"), Cable One Inc. ("Cable One"), Cablevision Systems Corporation and CSC Holdings, LLC ("Cablevision"), Cequel Communications Holdings I and LLC, Cequal Communications, LLC, d/b/a Suddenlink ("Suddenlink"), Charter Communications, Inc. ("Charter"), Comcast Corporation and Comcast Cable Communications, LLC ("Comcast"), Cox Communications, Inc. ("Cox"), Mediacom Communications Corporation ("Mediacom"), RCN Telecom Services, LLC ("RCN"), Time Warner Cable Inc. and Time Warner Cable Enterprises LLC ("TWC"), Wavedivision Holdings, Inc. ("Wave"), and Wideopen West Finance, LLC ("WOW").

2.      "Plaintiff," "ChanBond," "You," or "Yours" means ChanBond, LLC, and any and all predecessors, successors, divisions, subsidiaries, or joint ventures thereof, together with any and all parent or affiliated companies or corporations, including at least CBV and Z-Band, and all past or present members, shareholders, officers, directors, employees, agents, attorneys, representatives, any past or current investors or persons with an interest in ChanBond, LLC, the Asserted Patents, or the Related Patents, including at least UnifiedOnline, and all other persons acting or purporting to act or that have acted or purported to have acted on behalf of any of the foregoing.

3.      "Z-Band" means Z-Band, Inc., and any and all predecessors, successors, divisions, subsidiaries, or joint ventures thereof, together with any and all parent or affiliated companies or corporations, and all past or present members, shareholders, officers, directors, employees, agents, attorneys, representatives, any past or current investors or persons with an

interest in Z-Band, Inc., and all other persons acting or purporting to act or that have acted or purported to have acted on behalf of any of the foregoing.

4.      "CBV" means CBV, Inc., and any and all predecessors, successors, divisions, subsidiaries, or joint ventures thereof, together with any and all parent or affiliated companies or corporations, and all past or present members, shareholders, officers, directors, employees, agents, attorneys, representatives, any past or current investors or persons with an interest in CBV, Inc., and all other persons acting or purporting to act or that have acted or purported to have acted on behalf of any of the foregoing.

5.      "Whitaker" means The Whitaker Corporation, and any and all predecessors, successors, divisions, subsidiaries, or joint ventures thereof, together with any and all parent or affiliated companies or corporations, and all past or present members, shareholders, officers, directors, employees, agents, attorneys, representatives, any past or current investors or persons with an interest in The Whitaker Corporation, and all other persons acting or purporting to act or that have acted or purported to have acted on behalf of any of the foregoing.

6.      "UnifiedOnline" means UnifiedOnline, Inc., and any and all predecessors, successors, divisions, subsidiaries, or joint ventures thereof, together with any and all parent or affiliated companies or corporations, and all past or present members, shareholders, officers, directors, employees, agents, attorneys, representatives, any past or current investors or persons with an interest in UnifiedOnline, Inc., and all other persons acting or purporting to act or that have acted or purported to have acted on behalf of any of the foregoing.

7.      "CableLabs" means "Cable Television Laboratories, Inc."

8.      "ChanBond Patents," means U.S. Patent Nos. 7,346,918 (the "'918 patent"), 7,941,822 (the "'822 patent"), 8,341,679 (the "'679 patent"), 8,984,565 (the "'565 patent"), and

9,015,774 (the "'774 patent"), including any application that led to issuance of any of the aforementioned patents, or any reexaminations thereof.

9.      "Related Patents" means any and all patents that relate back to a common application as any ChanBond Patent, including any provisional or non-provisional applications, continuations, continuations-in-part, divisions, interferences, reexaminations, reissues, parents, foreign counterpart applications, as well as any other applications disclosing, describing or claiming any invention disclosed, described or claimed in any ChanBond Patent, or claiming the benefit of the filing date of any application whose benefit is claimed in any ChanBond Patent, whether or not abandoned and whether or not issued.

10.     "ChanBond Inventors" means the named inventors listed on the face of the ChanBond Patents. This includes Earl Hennenhoefer, Richard Snyder, and Robert Stine.

11.     "Whitaker Patents" means U.S. Patent No. 5,901,340 (the "'340 patent") and U.S. Patent No. 5,875,386 (the "'386 patent"), including any application that led to issuance of any of the aforementioned patents, or any reexaminations thereof.

12.     "Whitaker Inventors" mean the named inventors listed on the face of the Whitaker Patents.  This includes Steven Lee Flickinger, James Ray Fetterolf, Sr., Joseph P. Preschutti, Terry P. Bowen, Jeffrey Legg, and David Koller.

13.     "Instant Litigations" means the litigations initiated by ChanBond currently pending in the District of Delaware against each of the Defendants. To resolve any doubt, these include case numbers 1:15-cv-00842-RGA through 1:15-cv-00854-RGA.

14.     ███████████████████████████████and any and all predecessors, successors, divisions, subsidiaries, or joint ventures thereof, together with any and all parent or affiliated companies or corporations, and all past or present members, shareholders, officers,

- 3 -

directors, employees, agents, attorneys, representatives, any past or current investors or persons with an interest in ████████████████, and all other persons acting or purporting to act or that have acted or purported to have acted on behalf of any of the foregoing.

15.     "Channel Bonding" shall have the same meaning as used by ChanBond in ChanBond's complaints in this matter, and in ChanBond's infringement contentions in this matter. *See*, e.g., 1:15-cv-00842, D.I. 1 (Complaint) at ¶ 13.

16.     The "DOCSIS Standard" means the Data Over Cable Service Interface Specification published by CableLabs. To resolve any doubt, this term encompasses all versions of the DOCSIS Standard, including DOCSIS 1.0, DOCSIS 1.1, DOCSIS 2.0, DOCSIS 3.0, and DOCSIS 3.1.

17.     The "DOCSIS 3.0 Standard" means the Data Over Cable Service Interface Specification, version 3.0, published by CableLabs.

18.     The term "Standard Setting Organization" means any organization responsible for developing technical standards or technical documentation for use in industry. For avoidance of doubt, CableLabs, the Institute for Electrical and Electronics Engineers ("IEEE"), Telecommunications Industry Association ("TIA"), and Electronic Industries Alliance ("EIA") are all Standard Setting Organizations.

19.     The term "Prior Art" refers to art under 35 U.S.C. §§ 102 and 103 and includes, by way of example and without limitation, printed publications, patents, disclosures, prior inventions, admissions, prior public uses, prior offers for sale, or sales of actual products.

20.     The term "GigaTwist" means the GigaTwist product.  For avoidance of doubt, this term includes the GigaTwist Technology referenced in ZBAND_0004466.

21.     The term "GigaBUD" means the GigaBUD product.  For avoidance of doubt, this term includes the GigaBUD product referenced on Z-Band's website, at http://www.z-band.com/markets/healthcare/products-services/.

22.     The term "GigaBOB" means the GigaBOB product.  For avoidance of doubt, this term includes the GigaBOB product referenced referenced on Z-Band's website, at http://www.z-band.com/markets/healthcare/products-services/.

23.     The terms "concerning," "relate," "relating," or "related" mean in any way, directly or indirectly, in whole or part, relating to, concerning, alluding to, referring to, discussing, mentioning, regarding, pertaining to, describing, reflecting, containing, analyzing, studying, reporting on, commenting on, evidencing, constituting, setting forth, considering, recommending, modifying, amending, confirming, endorsing, representing, supporting, qualifying, terminating, revoking, refuting, undermining, canceling, contradicting, or negating.

24.     The term "document" shall have the broadest meaning possible under the Federal Rules of Civil Procedure and shall include, but not be limited to, the original (or a copy when the original is not available) and each non-identical copy (including those which are non-identical by reason of translations, notations, or markings) or any and all other written, printed, typed, punched, taped, filmed, or graphic matter or recorded or tangible thing, or whatever description, however produced or reproduced (including computer-stored or generated data, together with instructions or programs necessary to search and retrieve such data and hard copies where available and retrievable), and shall include all attachments to and enclosures with any requested item to which they are attached or with which they are enclosed, and each draft thereof.  The term "document" shall specifically include all recorded or retrievable electronic data or communications such as electronic mail (e-mail) and the like and all translations thereof.

25.     "Communication" shall mean any oral, written, electronic, or other exchange of words, thoughts, information, or ideas to another person or entity, whether in person, in a group, by telephone, by letter, by Telex, or by other process, electric, electronic, or otherwise.  All such communications in writing shall include, without limitation, printed, typed, handwritten, or other readable documents, correspondence, memoranda, reports, contracts, drafts (both initial and subsequent), computer discs or transmissions, e-mails, instant messages, tape or video recordings, voicemails, diaries, log books, minutes, notes, studies, surveys and forecasts, and any and all copies thereof.

26.     The words "or," "and," "all," "every," "any," "each," "one or more," "including," and similar words of guidance, are intended merely as such, and should not be construed as words of limitation.  The words "or" and "and" shall include each other whenever possible to expand, not restrict, the scope of the request.  The word "including" shall not be used to limit any general category or description that precedes it.  The words "all," "every," "any," "each," and "one or more" shall include each other whenever possible to expand, not restrict, the scope of the request.

27.     Reference to the singular in any of these requests shall also include a reference to the plural, and reference to the plural also shall include a reference to the singular.

**Deposition Topics**

1.      The technology disclosed and claimed in the ChanBond Patents and Related Patents.

2.      The conception, research, testing, design, development, reduction to practice (actual or constructive), and diligence in pursuit of any invention disclosed or claimed in the ChanBond Patents or the Related Patents, and any related documents, including, but is not limited to, lab notebooks, technical memoranda, or specifications, prepared by any ChanBond Inventor or Whitaker Inventor.

3.      The "wideband distribution system" as disclosed in the ChanBond Patents and Related Patents.  *See e.g.* '822 patent at col. 1:41-57.

4.      The technology disclosed and claimed in the Whitaker Patents, including but not limited to the following:

        a.      the "wideband signal distribution network" described in the Whitaker Patents, including as described in the below passage:

> The foregoing and additional objects are attained in accordance with the principles of this invention by providing a wideband cabling system which functions as "passive" infrastructure to distribute wideband signals modulated onto RF carriers within a specified frequency band among a plurality of outlets. ('340 patent at col. 2:18-23);

        b.      the need, desire, or motivation for distribution of signals in a "relatively local area," as discussed in the below passage, including how such need, desire, or motivation was addressed by any product embodying any invention claimed in the Whitaker Patents:

> There are numerous instances where it is desired to distribute over twisted pair coaxial cable, or fiber optic cable wire, within a relatively local area, such as a single building, wideband signals modulated onto RF carriers.   A particular application is the

distribution of video signals. For example, a school may have a number of classrooms and administrative offices, each having a television monitor, and it may be desired at a given time to provide a program to all of the classrooms and offices, originating either from a source within one of the classrooms or offices, such as a VCR, or from an outside source, such as a local cable system. Similarly, a corporation may have a building, or several closely spaced buildings, with numerous conference rooms equipped with television monitors and analogous program presentations may be desired. It is therefore a primary object of the present invention to provide cabling infrastructure for distributing wideband signals within a relatively local area. ('340 patent at col. 1:39-55.)

5.       The conception, research, testing, design, development, reduction to practice (actual or constructive), and diligence in pursuit of any invention disclosed or claimed in the Whitaker Patents, and any documents contended to corroborate conception or reduction to practice.   This explicitly includes, but is not limited to, technical documents, such as lab notebooks, technical memoranda, or specifications, prepared by any Whitaker Inventor related to any subject matter disclosed or invention claimed in the Whitaker Patents.

6.       The preparation, filing, and prosecution of the Whitaker Patents, including the identity and role(s) of each individual involved in the prosecution of the application(s) that led to the Whitaker Patents.

7.       Collaborations by ChanBond with any third parties, including, but not limited to, Whitaker, related to the development of any asserted claim of the ChanBond Patents or any of ChanBond's devices, products, or systems which practice any claim of the ChanBond Patents.

8.       The terms, nature and scope of any agreement related to the Whitaker Patents, including but not limited to the acquisition, ownership, assignment, or licensing of the Whitaker Patents.

9.      The terms, nature, and scope of any negotiations for any assignment, license, contract, covenant, authorization, agreement, stipulation, settlement or any other event relating to any legal right related to the Whitaker Patents, whether contemplated or actualized.

10.     The facts and circumstances surrounding any acquisition of the rights to the inventions claimed in the Whitaker Patents, ChanBond Patents, or any Related Patents, including an identification of all persons involved and all communications relating thereto.

11.     The preparation, filing, and prosecution of each ChanBond Patent or Related Patent, including the identity and role(s) of each individual involved in the prosecution of the application(s) that led to the ChanBond Patents or Related Patents.

12.     The date(s) and circumstances of the conception and reduction to practice of the subject matter claimed in the ChanBond Patents, any diligence in the reduction to practice thereof, and the identification of any evidence that corroborates the date(s) of such conception and reduction to practice or corroborates any diligence.

13.     All work performed by each of the ChanBond Inventors relating to each of the ChanBond Patent's subject matter before the respective patents' priority dates, including the specific claims of the ChanBond Patents to which each ChanBond Inventor contributed.

14.     ChanBond's delay in obtaining each of the ChanBond Patents, including, but not limited, to the circumstances surrounding the passage of time between the original conception and filing of any application, and the passage of time between the filing of any underlying application and issuance of the associated patent.

15.     The terms, nature and scope of any agreement related to any ChanBond Patent or Related Patent, including the acquisition, ownership, assignment, or licensing of any ChanBond Patent or Related Patent.

16.     The terms, nature, and scope of any negotiations for any assignment, license, covenant, sale, stipulation, settlement or any other event relating to any legal right related to any ChanBond Patent and/or Related Patent, whether contemplated or actualized.

17.     The decision to form ChanBond.

18.     Z-Band's sale, assignment, transfer, lease, or license of any of their rights, assets, facilities, operations or services to ChanBond, CBV, or anyone else.

19.     The relationship between ChanBond and Z-Band.

20.     Any Prior Art to any ChanBond Patent known to ChanBond and the date and circumstances pursuant to which ChanBond first learned of each piece of Prior Art.

21.     The facts and circumstances concerning any notice from ChanBond to any party regarding an allegation of infringement of any claim of a ChanBond Patent.

22.     ChanBond's knowledge and analysis of each of Defendant's cable modems, cable modem termination systems, and high-speed Internet services utilizing the DOCSIS 3.0 Standard or greater.

23.     The date(s) that ChanBond first learned of each Defendant's potential alleged infringement of the ChanBond Patents, including the method(s) by which ChanBond first learned of each Defendant's potential alleged infringement for each of the ChanBond Patents.  This topic explicitly includes investigations or analyses by or on behalf of ChanBond ChanBond relating to the ChanBond Patents and Related Patents, including without limitation any competitive analysis, marketing analysis, or reverse engineering of any of Defendants cable modems, cable modem termination systems, and high-speed Internet services utilizing DOCSIS 3.0 or greater, or any analyses or evaluation performed by or on behalf of ChanBond of any version of the

DOCSIS Standards, or any portion or feature of the DOCSIS Standards accused of infringement in the Instant Litigations.

24.    The facts and circumstances surrounding any delay between (a) ChanBond's initial knowledge of any Defendant's potential infringement of the ChanBond Patents and the filing of the Instant Litigations; and (b) the issuance of any of the ChanBond Patents the filing of the Instant Litigations.

25.    For each asserted claim of the ChanBond Patents, any opinions, evaluations, advice, or analyses concerning the validity or invalidity, enforceability or unenforceability, infringement or non-infringement, or scope of each claim of the ChanBond Patents, and all documents reviewed in the formation of such opinions, evaluations, advice, or analyses.

26.    Assertions of the ChanBond Patents or Related Patents, formal or informal, against any entity, and any decision not to assert any of the ChanBond Patents or Related Patents against any entity.

27.    The facts and circumstances surrounding the decision to file the Instant Litigations.

28.    The first knowledge of ChanBond, or any ChanBond Inventor, regarding (i) Channel Bonding; (ii) the DOCSIS Standards; and/or (iii) the DOCSIS 3.0 Standard.

29.    ChanBond's investigation of the DOCSIS Standards.

30.    ChanBond's first possession of any version of the DOCSIS Standards, or any portion of such specifications, including without limitation the knowledge of any portion or feature of the DOCSIS Standards accused of infringement in the Instant Litigations.

31.    All work performed by ChanBond related to Channel Bonding.

32.     Any meetings attended by ChanBond employees or other personnel where any of the Defendant's products, services, apparatuses, devices, systems, method, or processes related to Channel Bonding, the DOCSIS Standard, or the DOCSIS 3.0 Standard were mentioned or discussed.

33.     Any participation or Communications by ChanBond with any Standard Setting Organization, industry organization, or trade group.

34.     The making, using, testing, selling, offering for sale, licensing, or disclosure, anywhere in the world, of any product embodying any technical matter disclosed in, or any invention claimed in, any ChanBond Patent, Whitaker Patent, or Related Patent.  This explicitly includes, but is not limited to:

      a.     the quantity sold or offered by ChanBond and when such sales or offers for sale commenced;

      b.     any commercial success of any of the above commercial embodiments;

      c.     any industry analysis, commentary, identification of any particular deficiency or need to which any of the above commercial embodiments are directed;

      d.     copying by others of any of the above commercial embodiments; and

      e.     any independent third party's praise, criticism, or discussion of the significance of any of the above commercial embodiments.

35.     The first public disclosure, use, sale or offer for sale, of any product embodying any technical matter disclosed in, or any invention claimed in any ChanBond Patent, Whitaker Patent, or Related Patent.

36.     ChanBond or any licensee's efforts to mark any product with the number of any ChanBond Patent or any other effort to comply with the marking or notice provision 35 U.S.C.

§ 287, and ChanBond's policies, procedures, and standards for marking patented articles with respect to the ChanBond Patents.

37.     Any product of Whitaker that was tested, analyzed, used, modified, or resold by ChanBond.

38.     The identification of and operation of any and all of ChanBond's, or a licensee to the ChanBond Patents, Related Patents, or Whitaker Patents, devices, products, systems, and services which ChanBond believes practice any claim of the ChanBond Patents, Related Patents or Whitaker Patents.

39.     The facts and circumstances surrounding all presentations, including without limitation presentations made to third parties and/or at trade shows, that ChanBond participated in or authorized related the ChanBond Patents, the Related Patents, or the Whitaker Patents.

40.     The facts and circumstances surrounding any decisions regarding whether or not to develop commercial embodiments of the ChanBond Patents, the Related Patents, and/or the Whitaker Patents and any decisions to cut funding or not pursue developing commercial embodiments of the ChanBond Patents, the Related Patents, and/or the Whitaker Patents.

41.     The development and demonstration of any prototypes of embodiments of the ChanBond Patents, the Related Patents, and/or the Whitaker Patents.

42.     The facts and circumstances surrounding the video distribution system or multimedia system project, including the purpose of this project, and any prototypes or products designed or manufactured in relation to this project.

43.     Any revenue forecasts, market share projections, consumer analysis, identification of potential customers, or other financial or market customer research, study, or analysis relating

to any products, methods, or services allegedly are covered by the claims of the ChanBond Patents, Whitaker Patents, or Related Patents.

44.     The operation of the GigaBud, GigaBob, and GigaTwist products.

45.     Any valuation of any ChanBond Patent or Related Patent, ████████████ ██████████████████████████████████████.

46.     The terms, nature, and scope of any agreements between ChanBond and ██ ████████████████████████.

47.     The circumstances surrounding the purchase of ChanBond by UnifiedOnline, including any materials provided to, or received from, the seller in relation to that transaction.

48.     ChanBond's decision to accept an offer for purchase in exchange for a promissory note.

49.     Any taxes paid, or tax deductions taken, in relation to any ChanBond Patent.

50.     Financial information, including, but not limited to revenue or profits, derived from the sale or license of any product embodying any technical matter disclosed in, or any invention claimed in, any ChanBond Patent, Whitaker Patent, or Related Patent.

51.     Any and all executed licenses and attempts to license the ChanBond Patents, Related Patents, or the Whitaker Patents, including the requested royalty rates for use of the ChanBond Patents and the nature and scope of the license terms.

52.     Any patent infringement analyses for the ChanBond Patents or Related Patents, including draft charts and notes, performed by any patent infringement analysis group, ████████ ████████████████████.

- 14 -

53.      All entities with a financial interest in the Instant Litigations, whether direct or indirect or through an ownership interest in ChanBond, and the terms, nature, and scope of any agreement or relationship between ChanBond and any such entity.

54.      Forecasts or projections of sales, revenues, costs, and profits for the licensing and/or enforcement of the Whitaker Patents, ChanBond Patents, or any Related Patents.

55.      ChanBond's offers for sale or sale of any product intended to operate in conjunction with a product or service offered by any of the Defendants or similar entity offering Internet services utilizing the DOCSIS Standards.

56.      The facts and circumstances concerning any pre-suit interactions between ChanBond and Comcast.

57.      The nature and purpose of communications between ChanBond or any ChanBond Inventor and any of the following parties:

    a.      UnifiedOnline;

    b.      Whitaker;

    c.      any Whitaker Inventor;

    d.      C.W. Smith;

    e.      any business associate of the ChanBond Inventors that communicated with any Defendant (*see, e.g.*, Comcast Complaint at ¶ 28);

    f.      any Defendant;

    g.      ███████

    h.      ███████

    i.      ████████

58.     The terms, nature, and scope of any negotiations or agreements between ChanBond and any of the parties listed in Topic 57 (a) – (i).

59.     Communications between ChanBond and any entities concerning the ChanBond Patents, the Instant Litigations, any of the Defendants, or any of the Defendants products, systems or services; and the nature and location of any Documents concerning such Communications, and the identities of custodians of such Documents.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 10, 2017, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on February 10, 2017, upon the following in the manner indicated:

Richard D. Kirk, Esquire                                        *VIA ELECTRONIC MAIL*
Stephen B. Brauerman, Esquire
Sara E. Bussiere, Esquire
BAYARD, P.A.
222 Delaware Avenue, Suite 900
Wilmington, DE  19801
*Attorneys for Plaintiff*

Mark Raskin, Esquire                                            *VIA ELECTRONIC MAIL*
Robert Whitman, Esquire
John F. Petrsoric, Esquire
Michael S. DeVincenzo, Esquire
MISHCON DE REYA NEW YORK LLP
156 Fifth Avenue, Suite 904
New York, NY  10010
*Attorneys for Plaintiff*

                                        */s/ Jennifer Ying*
                                        Jennifer Ying (#5550)