# EXHIBIT A

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### District of Delaware

| | |
|---|---|
| Chanbond, LLC | ) |
| *Plaintiff* | ) |
| Atlantic Broadband Group, LLC, BrightHouse Networks, LLC, Cable One Inc.,, Cablevision Systems Corp., CSC Holdings, LLC, Cequel Communications, LLC, Cequel Communications Holdings I, LLC d/b/a Suddenlink Communications, Charter Communications, Inc., Comcast Corp., Comcast Cable Communications, LLC, Cox Communications, Inc., Mediacom Communications Corp., RCN Telecom Services, LLC, Time Warner Cable Inc., Time Warner Cable Enterprises LLC, WaveDivision Holdings, LLC, and WideOpen West Finance, LLC | ) ) ) ) ) ) ) |

Civil Action No.  C.A. Nos.15-842; 15-843; 15-844; 15-845; 15-846; 15-847; 15-848; 15-849; 15-850; 15-851; 15-852; 15-853; 15-854 (RGA)

### SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
### OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:          Ascenda Law Group, PC
333 W. San Carlos Street, Suite 200, San Jose, CA 95110

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: Attachment A

| Place: Winston & Strawn LLP | Date and Time: |
|---|---|
| 275 Middlefield Road, Suite 205 Menlo Park, CA 94025 | 10/03/2017 9:30 am |

❑ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:          09/19/2017

| CLERK OF COURT | | |
|---|---|---|
| | OR | |
| _____ | | /s/ James C. Lin |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
All Defendants_____ , who issues or requests this subpoena, are:

James C. Lin, Winston & Strawn , 275 Middlefield Road, Suite 205, Menlo Park, CA; (650) 858-6434, jalin@winston.com

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❐  I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❐  I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
    **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
    **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
    **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
    **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
    **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
    **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*
    **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
    **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
    **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
    **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
    **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
    **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
    **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
    **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
    **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## ATTACHMENT A

***ChanBond, LLC v. Atlantic Broadband Group, LLC et al.***
**Civil Action No. 1:15-cv-00842 - 854 (D. Del.)**

## DEFINITIONS

The following definitions are applicable to terms employed in responding to this Subpoena *Duces Tecum* ("Subpoena") for the production of documents:

1.     "You" or "Your" means Ascenda Law Group, PC, and any predecessor or successor entity and any past or present parent, division, subsidiary, affiliate, associated organization, officer, agent, employee, consultant, staff member, associate, partner, or other representative.

2.     The term "ChanBond" means ChanBond, LLC, and any and all predecessors, successors, divisions, subsidiaries, or joint ventures thereof, together with any and all parent or affiliated companies or corporations, including at least CBV and Z-Band, and all past or present members, shareholders, officers, directors, employees, agents, attorneys, representatives, any past or current investors or persons with an interest in ChanBond, LLC, the ChanBond Patents, or Related Patents, including at least UnifiedOnline, and all other persons acting or purporting to act or that have acted or purported to have acted on behalf of any of the foregoing.

3.     The term "UnifiedOnline" means UnifiedOnline, Inc., and any and all predecessors, successors, divisions, subsidiaries, or joint ventures thereof, together with any and all parent or affiliated companies or corporations, and all past or present members, shareholders, officers, directors, employees, agents, attorneys, representatives, any past or current investors or persons with an interest in UnifiedOnline, Inc., and all other persons acting or purporting to act or that have acted or purported to have acted on behalf of any of the foregoing.

4.    The term "CBV" means CBV, Inc., and any and all predecessors, successors, divisions, subsidiaries, or joint ventures thereof, together with any and all parent or affiliated companies or corporations, and all past or present members, shareholders, officers, directors, employees, agents, attorneys, representatives, any past or current investors or persons with an interest in CBV, Inc., and all other persons acting or purporting to act or that have acted or purported to have acted on behalf of any of the foregoing.

5.    The term "Z-Band" means Z-Band, Inc., and any and all predecessors, successors, divisions, subsidiaries, or joint ventures thereof, together with any and all parent or affiliated companies or corporations, and all past or present members, shareholders, officers, directors, employees, agents, attorneys, representatives, any past or current investors or persons with an interest in Z-Band, Inc., and all other persons acting or purporting to act or that have acted or purported to have acted on behalf of any of the foregoing.

6.    The term "ChanBond Patents" means U.S. Patent Nos. 7,346,918, 7,941,822, 8,341,679, and 8,984,565, including any application that led to issuance of any of the aforementioned patents, or any reexaminations thereof.

7.    The term "Related Patents" means any and all patents that relate back to a common application as any ChanBond Patent, including any provisional or non-provisional applications, continuations, continuations-in-part, divisions, interferences, reexaminations, reissues, parents, foreign counterpart applications, as well as any other applications disclosing, describing or claiming any invention disclosed, described or claimed in any ChanBond Patent, or claiming the benefit of the filing date of any application whose benefit is claimed in any ChanBond Patent, whether or not abandoned and whether or not issued.

8.      The term "ChanBond Inventors" means Earl Hennenhoefer, Richard V. Snyder, and Robert D. Stine.

9.      The term "Prior Art" refers to art under 35 U.S.C. §§ 102 and 103 and includes, by way of example and without limitation, printed publications, patents, disclosures, prior inventions, admissions, prior public uses, prior offers for sale, or sales of actual products.

10.     The term "GigaTwist" means the GigaTwist product.

11.     The term "GigaBUD" means the GigaBUD product.  For avoidance of doubt, this term includes the GigaBUD product referenced in Ex. 1 (http://www.z-band.com/markets/healthcare/products-services/) to this subpoena.

12.     The term "GigaBOB" means the GigaBOB product.  For avoidance of doubt, this term includes the GigaBOB product referenced in Ex. 1 (http://www.z-band.com/markets/healthcare/products-services/) to this subpoena.

13.     The term "Whitaker Corp." means The Whitaker Corporation, and any and all predecessors, successors, divisions, subsidiaries, or joint ventures thereof, together with any and all parent or affiliated companies or corporations, and all past or present members, shareholders, officers, directors, employees, agents, attorneys, representatives, any past or current investors or persons with an interest in The Whitaker Corporation, and all other persons acting or purporting to act or that have acted or purported to have acted on behalf of any of the foregoing.

14.     The term "Whitaker Patents" means U.S. Patent No. 5,901,340 and U.S. Patent No. 5,875,386, including any application that led to issuance of any of the aforementioned patents, or any reexaminations thereof.

15.     The term "Whitaker Inventors" means Steven Lee Flickinger, James Ray Fetterolf, Sr., Joseph P. Preschutti, Terry P. Bowen, Jeffrey Legg, and David Koller.

16.     The term "Defendants" means the defendants in the litigations initiated by ChanBond currently pending in the District of Delaware against each of the Defendants.  To resolve any doubt, these include the Defendants in case numbers 1:15-cv-00842-RGA through 1:15-cv-00854-RGA.

17.     The term "Instant Litigations" means the litigations initiated by ChanBond currently pending in the District of Delaware against each of the Defendants.  To resolve any doubt, these include case numbers 1:15-cv-00842-RGA through 1:15-cv-00854-RGA.

18.     The term "Defendants" means the defendants in the litigations initiated by ChanBond currently pending in the District of Delaware against each of the Defendants.  To resolve any doubt, these include the Defendants in case numbers 1:15-cv-00842-RGA through 1:15-cv-00854-RGA.

19.     The term "U.S.P.T.O." means the United States Patent and Trademark Office.

20.     The terms "concerning," "relate," "relating," or "related" mean in any way, directly or indirectly, in whole or part, relating to, concerning, alluding to, referring to, discussing, mentioning, regarding, pertaining to, describing, reflecting, containing, analyzing, studying, reporting on, commenting on, evidencing, constituting, setting forth, considering, recommending, modifying, amending, confirming, endorsing, representing, supporting, qualifying, terminating, revoking, refuting, undermining, canceling, contradicting, or negating.

21.     The term "DOCSIS" shall mean the Data Over Cable Service Interface Specification, and shall include all versions, including, but not limited to, DOCSIS 3.0, DOCSIS 2.0, DOCSIS 1.1, and DOSCSIS 1.0.

22.     The term "document" shall have the broadest meaning possible under the Federal Rules of Civil Procedure and shall include, but not be limited to, the original (or a copy when

the original is not available) and each non-identical copy (including those which are non-identical by reason of translations, notations, or markings) or any and all other written, printed, typed, punched, taped, filmed, or graphic matter or recorded or tangible thing, or whatever description, however produced or reproduced (including computer-stored or generated data, together with instructions or programs necessary to search and retrieve such data and hard copies where available and retrievable), and shall include all attachments to and enclosures with any requested item to which they are attached or with which they are enclosed, and each draft thereof. The term "document" shall specifically include all recorded or retrievable electronic data or communications such as electronic mail (e-mail) and the like and all translations thereof.

23.     "Communication" shall mean any oral, written, electronic, or other exchange of words, thoughts, information, or ideas to another person or entity, whether in person, in a group, by telephone, by letter, by Telex, or by other process, electric, electronic, or otherwise. All such communications in writing shall include, without limitation, printed, typed, handwritten, or other readable documents, correspondence, memoranda, reports, contracts, drafts (both initial and subsequent), computer discs or transmissions, e-mails, instant messages, tape or video recordings, voicemails, diaries, log books, minutes, notes, studies, surveys and forecasts, and any and all copies thereof.

24.     The words "or," "and," "all," "every," "any," "each," "one or more," "including," and similar words of guidance, are intended merely as such, and should not be construed as words of limitation. The words "or" and "and" shall include each other whenever possible to expand, not restrict, the scope of the request. The word "including" shall not be used to limit any general category or description that precedes it. The words "all," "every," "any," "each,"

and "one or more" shall include each other whenever possible to expand, not restrict, the scope of the request.

25.     Reference to the singular in any of these requests shall also include a reference to the plural, and reference to the plural also shall include a reference to the singular.

## INSTRUCTIONS

1.     Unless otherwise stated in a request, the time period covered by the command of this Subpoena is June 27, 1999 to Present.

2.     All requests for "documents" include a request for any "communications," such as letters or e-mails.

3.     It is Your duty in answering these requests to conduct a reasonable investigation so that You disclose and produce all available responsive and non-privileged documents.

4.     If production of any responsive documents are being withheld on the ground of the attorney-client privilege, attorney work product, or any other privilege, immunity, or protection, please provide a privilege log with the following information for each such document: (a) the name of the document; (b) the name of the person(s) who prepared the document; (c) the name of the person(s) to whom the document was directed or circulated; (d) the date(s) on which the document was prepared or transmitted; (e) the name of the person(s) now in possession of the document; (f) a description of the subject matter of the document; and (g) the specific nature of the privilege or protection claimed with respect to the document.

5.     If any request herein requires the production of documents that are no longer in Your actual or constructive possession, custody, or control or which have been destroyed or lost, then in lieu of production, You shall state or identify the title of the document, the author of the document, each person to whom or by whom a copy of the original of the document was

delivered, forwarded, or has been received, the date of the document, and the general subject matter of the document. In the event You claim that information contained other than in documentary form is no longer in Your actual or constructive possession, custody, or control or has been destroyed or lost, You shall state or identify the nature of the information, the creator of the information, the person to whom the information was or was to be forwarded, delivered or for whom it was prepared, the date of the creation of the information, and the manner in which the information has been memorialized, if at all.

6. In any instance where documents, data, or information requested herein is stored on a computer, a computer hard drive, a computer mainframe, computer back-up tape, or in any other electronic format, Defendants request that You produce the data, information, or documents on CD ROM, computer disk, or in hard copy paper form. Further, Defendants request that You produce all documentation or programs that would allow Defendants to run, read, view, print, or otherwise access any such disks, CD ROM, or other computer information.

7. You are under a continuing obligation to respond to the requests set forth herein. Accordingly, if You subsequently gain actual or constructive possession, custody, or control of any document called for in the requests set forth herein that has not been produced to Defendants, You must produce such document to Defendants as soon as possible or provide a written explanation to Defendants as to why You will not produce the document.

8. The documents shall be produced as they are kept in the usual course of business or shall be organized and labeled to correspond with the categories in the requests.

9. To the extent a document is considered confidential in nature, you may designate it in accordance with the protective order entered in this case, a copy of which is attached as Exhibit 2.

## DOCUMENT REQUESTS

1.      All documents transferred to you, including all documents transferred by Buchanan Ingersoll & Rooney PC or Mr. Jonathan Bowser at Buchanan Ingersoll & Rooney PC, related to the ChanBond Patents, Related Patents, Z-Band, CBV, ChanBond, and/or any of the ChanBond Inventors.

2.      All documents regarding the ChanBond Patents and/or any Related Patents.

3.      All documents regarding Your, ChanBond's, CBV's, Z-Band's, or the ChanBond Inventors' efforts to obtain patent protection on any invention related to the subject matter shown, described, or claimed in the ChanBond Patents and/or any Related patents, including but not limited to:

        a.      all invention disclosures and draft patent applications;

        b.      all documents attached to, referring to or regarding any invention disclosure;

        c.      the prosecution file of each ChanBond Patent;

        d.      the prosecution history of all of the ChanBond Patents and/or Related Patents;

        e.      the prosecution history of each application on which any of the ChanBond Inventors is a named inventor, including all issued, pending or abandoned applications;

        f.      all notes related to any office action, examiner interview, or other proceeding before the U.S.P.T.O. related to the ChanBond Patents and/or Related Patents

        g.      all U.S. and foreign patents and patent applications, and corresponding prosecuting histories, including those of unpublished, pending and/or abandoned

applications, that are or have been prepared in whole or in part owned by You that are directed to the subject matter disclosed in the ChanBond Patents and/or Related Patents;

h.      all correspondence regarding the patent applications referred to in subparts (c) through (g) above;

i.      all documents consulted or reviewed by the applicants, patentees, or You during the preparation and prosecution of any application referred to in subparts (c) through (g) above, including but not limited to Prior Art references or potential Prior Art references;

j.      all documents related to any Prior Art search contemplated or run in preparation and prosecution of any application referred to in subparts (c) through (g) above; and

k.      all documents concerning Your participation in any examiner interview during prosecution of the ChanBond Patents and/or Related Patents, including, but not limited to, any assertions to the examiner made by You.

4.      All documents regarding (a) Your knowledge of any Prior Art to the ChanBond Patents and/or Related Patents, and (b) the date and circumstances pursuant to which You first learned of each piece of Prior Art.

5.      All documents regarding the ChanBond Patents or Related Patents and (1) cable systems, (2) high-speed data services, or (3) the DOCSIS protocol, including any investigation of the foregoing.

6.      All documents related to the ChanBond Patents or Related Patents and any named Defendants.

7.      All documents regarding the conception, reduction to practice, research, design, development, or testing of the subject matter shown, described, and claimed in the ChanBond Patents and/or Related Patents, including but not limited to laboratory notebooks, inventor notebooks, source code, and computer data, as well as the first written description or disclosure (including drawings) and the first prototype of such subject matter.

8.      All documents concerning any analysis of the validity or invalidity of any of the claims of the ChanBond Patents and/or Related Patents.

9.      All documents concerning any analysis of the infringement of any of the claims of the ChanBond Patents and/or Related Patents.

10.     All documents prepared in relation to the licensing, offer to license, or offer for sale of the ChanBond Patents and/or Related Patents.

11.     All documents related to any pre-filing investigation, infringement analysis, or competitive analysis with respect to any ChanBond Patent or Related Patent.

12.     All documents that reflect, refer to or relate to the meaning of any claim term of any of the claims of the ChanBond Patents and/or Related Patents.

13.     All documents concerning any product, prototype, development version, test version, commercial embodiment, or commercialization of any invention claimed in the ChanBond Patents and/or Related Patents, or related to the subject matter of the ChanBond Patents and/or Related Patents.

14.     All documents that reflect, refer to or relate to any testing, analysis, comparison, or experimentation relating to the any invention claimed in the ChanBond Patents and/or Related Patents, or related to the subject matter of the ChanBond Patents and/or Related Patents.

15. All documents related to the making, using, testing, selling, offering for sale, licensing, or disclosure, anywhere in the world, of any product embodying any technical matter disclosed in, or any invention claimed in, any ChanBond Patent and/or Related Patent.

16. All documents related to the GigaTwist, GigaBUD, or GigaBOB products, including all documents related to testing, selling, offering for sale, licensing, or disclosure anywhere in the world, of the GigaTwist product.

17. All documents concerning the inventorship of any invention described, disclosed or claimed in the patents and applications in the ChanBond Patents and/or Related Patents, including documents regarding any person considered for inclusion as an inventor, and the contribution of each person involved in the conception, development, and reduction to practice of the subject matter claimed as an invention in any of the patents or applications in the ChanBond Patents and/or Related Patents.

18. All documents concerning ownership of the ChanBond Patents and/or Related Patents, including but not limited to any proposed, requested, or executed assignment, license, conveyance, and/or grant of any right, title or interest in or to any of the ChanBond Patents and/or Related Patents regarding any such assignment, license, conveyance, and/or grant.

19. All documents concerning any service offerings, beta tests, or trials of the subject matter of each of the ChanBond Patents and/or Related Patents or related technologies prior to the filing date of each of the ChanBond Patents and/or Related Patents.

20. All documents concerning the features, functions, and operation of any ChanBond, CBV, or Z-Band product embodying the claims of the ChanBond Patents and/or Related Patents.

21. All documents that reflect, refer to or relate to the manners or techniques by which the Chanbond Patents and/or Related Patents allegedly improved upon the Prior Art, added functionality that did not exist in the Prior Art, or provided a variation on or upgrade of the Prior Art and whether each such alleged improvement, added functionality, or variation or upgrade, was nonobvious or unpredictable.

22. All communications between or among You, Buchanan Ingersoll & Rooney PC, Mr. Jonathan Bowser at Buchanan Ingersoll & Rooney PC, ChanBond, CBV, Z-Band, and/or any of the ChanBond Inventors concerning any of the ChanBond Patents and/or Related Patents or relating to the Instant Litigations.

23. All documents concerning any communications between You and any person concerning the subject matter of the Instant Litigations.

24. All documents concerning any document retention policy by You, ChanBond, CBV, or Z-Band, including all documents concerning any practice, policy, procedure, or effort to identify and preserve documents.

25. All documents concerning the reasons for creation of CBV, or the decision to assign patents to CBV.

26. All documents concerning any valuation of any ChanBond Patents and/or any Related Patents.

27. All documents regarding the Whitaker Patents.

28. All communications between you, ChanBond, CBV, Z-Band, and/or any of the ChanBond Inventors concerning any of the Whitaker Patents.

29. All communications between you and Whitaker Corp., or any of the Whitaker Inventors, regarding either the ChanBond patents or the Whitaker Patents.

# Exhibit 1



877-801-6475   GET A QUOTE ❯

Home   About Z-Band   Products   Technical   Markets   Support   Contact Us

# Products/Services

Home | Markets | Healthcare | Products/Services

## Products/Services

### "GigaBUD" from Z-Band (Video Distribution Hub)

Z-Band's GigaBUD, Active Video Distribution Hub, is ideal for a variety of around-the-clock video applications in healthcare facilities, including live video monitoring in patient rooms and ICU wards and for use in distance learning for medical residents. GigaBUD can also serve as a valuable tool in patient entertainment and education.



### Cascading Capability for Multiple Hub Connectivity

- The GigaBUD is rack mounted to meet the applicable MDF/IDF port count combination for the various video drops
- Desired video is connected to the "CATV IN" port of the initial GigaBUD, which becomes the "Master" hub
- Additional GigaBUDs are connected to the Master through a cascading process and are dubbed "Slaves".
- "Outbound" Master ports are connected to "Cascade In" ports capable of providing up to eight second-level "Slaves" to achieve unidirectional cascading.
- Each second-level "Slave" can be cascaded to third and fourth levels, resulting in the capability for combining up to 585 GigaBUDs.
- End result is a video signal at the "CATV IN" port of the "Master" that can be distributed to as many as 14,040 TVs throughout a healthcare facility or system of facilities.

### "GigaBOB"

The GigaBOB is equipped with numerous attributes that provide HD TV over CAT 5e or CAT 6 cable such as:

- Remotely operated "GigaBOB" with unique distance sensing circuit and internal amplifier
- Simultaneous transmission over thousands of televisions
- 100-meter distribution range for the full bandwidth of RF channels
- DOCSIS or FSK return capability for VOD and/or data applications
- 120 or 240 VAC at 50 or 60 Hz operating frequency capacity
- Hub and balun system complies with UL, CSA and FCC Part 15, Subpart B guidelines




## Z-Band Video Distribution System Benefits

The Z-Band Video Distribution System is a highly effective way to merge voice, data and video over one cabling plant to meet the video distribution needs of any healthcare environment.

In addition, our remotely powered GigaBOB balun simplifies design and installation, as well as the process of making adds, moves, and changes while maintaining the highest level of picture quality. Z-Band can provide a seamless integration of RF and IP Video in your healthcare facility.

### Markets

Healthcare

Featured Projects

Clients

Products/Services

Resources

Want to see how our products work?

Schedule A Demo

Questions?

Contact Us Today



Z-Band, Inc.

848B North Hanover St. Carlisle, PA 17013.

**PHONE:** 877-801-6475 | **FAX:** 717-249-3253

Products assembled in the USA

Stay Connected:

Rep Login

Home  About Z-Band  Products  Technical  Markets  Support  Contact Us  Sitemap

Site Credits  Copyright 2017. All Rights Reserved  Privacy Policy

# EXHIBIT 2

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **CHANBOND, LLC,** | |
| Plaintiff, | C.A. No. 15-842-RGA |
| v. | **JURY TRIAL DEMANDED** |
| **ATLANTIC BROADBAND GROUP, LLC,** | |
| Defendant. | |
| **CHANBOND, LLC,** | |
| Plaintiff, | |
| v. | C.A. No. 15-843-RGA |
| **BRIGHT HOUSE NETWORKS, LLC,** | **JURY TRIAL DEMANDED** |
| Defendant. | |
| **CHANBOND, LLC,** | |
| Plaintiff, | |
| v. | C.A. No. 15-844-RGA |
| **CABLE ONE INC.,** | **JURY TRIAL DEMANDED** |
| Defendant. | |

CHANBOND, LLC,

        Plaintiff,

v.

CABLEVISION SYSTEMS
CORPORATION, *et al.*,

        Defendants.

C.A. No. 15-845-RGA

**JURY TRIAL DEMANDED**

---

CHANBOND, LLC,

        Plaintiff,

v.

CEQUEL COMMUNICATIONS, LLC, *et al.*,

        Defendants.

C.A. No. 15-846-RGA

**JURY TRIAL DEMANDED**

---

CHANBOND, LLC,

        Plaintiff,

v.

CHARTER COMMUNICATIONS, INC.,

        Defendant.

C.A. No. 15-847-RGA

**JURY TRIAL DEMANDED**

---

CHANBOND, LLC,

        Plaintiff,

v.

COMCAST CORPORATION, *et al.*,

        Defendants.

C.A. No. 15-848-RGA

**JURY TRIAL DEMANDED**

CHANBOND, LLC,

                  Plaintiff,

    v.

COX COMMUNICATIONS, INC., *et al.,*

                Defendants.

C.A. No. 15-849-RGA

**JURY TRIAL DEMANDED**

---

CHANBOND, LLC,

                  Plaintiff,

    v.

MEDIACOM COMMUNICATIONS
CORPORATION,

                Defendant.

C.A. No. 15-850-RGA

**JURY TRIAL DEMANDED**

---

CHANBOND, LLC,

                  Plaintiff,

    v.

RCN TELECOM SERVICES, LLC,

                Defendant.

C.A. No. 15-851-RGA

**JURY TRIAL DEMANDED**

---

CHANBOND, LLC,

                  Plaintiff,

    v.

TIME WARNER CABLE INC., *et al.,*

                Defendants.

C.A. No. 15-852-RGA

**JURY TRIAL DEMANDED**

CHANBOND, LLC,

        Plaintiff,

   v.

WAVEDIVISION HOLDINGS, LLC,

        Defendant.

C.A. No. 15-853-RGA

**JURY TRIAL DEMANDED**

CHANBOND, LLC,

        Plaintiff,

   v.

WIDEOPEN WEST FINANCE, LLC,

        Defendant.

C.A. No. 15-854-RGA

**JURY TRIAL DEMANDED**

## [AGREED] PROTECTIVE ORDER

The parties hereby stipulate that the following Protective Order ("Order") regarding confidential information may be entered by the Court:

**1.    INTRODUCTION AND SCOPE**

This Order shall govern all documents and things (whether or not embodied in any physical medium) exchanged during this action, including but not limited to documents produced by the parties or third-parties, testimony taken at a hearing or other proceeding, and discovery, including but not limited to deposition testimony, interrogatory answers, and responses to requests for admission. Applications for further protection at trial in this action shall be made at the time of trial. Production or disclosure of "CONFIDENTIAL," "HIGHLY CONFIDENTIAL —ATTORNEYS' EYES ONLY," or "RESTRICTED CONFIDENTIAL — ATTORNEYS' EYES ONLY COMPUTER SOURCE CODE" information under this Order shall not prejudice the right

4

of any party making that production or disclosure to maintain the trade secret status or confidentiality of that information in other contexts. Information disclosed under this Order shall be used only for purposes of this litigation and not for any other purpose.

## 2. DISCOVERY RULES REMAIN UNCHANGED

Nothing herein shall alter or change in any way the discovery provisions set forth by the Federal Rules of Civil Procedure ("Federal Rules"), the Local Rules for the District of Delaware, or this Court. Identification of any individual pursuant to this Order does not make that individual available for deposition or any other form of discovery outside of the restrictions and procedures of the Federal Rules of Civil Procedure and the Court's Deadlines set out in the applicable Scheduling Order. Nothing in this Order shall be construed to require a party to produce or disclose information not otherwise required to be produced under the applicable rules or orders of this Court.

## 3. DEFINITIONS

### 3.1. Court Staff

"Court Staff" is defined in this Order as the Court and its personnel, court reporters, independent shorthand reporters, and their staffs, and videographers, interpreters, or translators engaged for depositions or proceedings necessary to this case.

### 3.2. Discovery Material

The term "Discovery Material" shall refer to all items or information, including from a non-party, regardless of the medium or manner generated, stored, or maintained (including, among other things, testimony, transcripts, or tangible things) that are produced or generated in disclosures or responses to discovery in this matter.

### 3.3. Inside Counsel

The term "Inside Counsel" shall mean employees of a named party to this action who (a) are attorneys who are members of the named party's legal team, (b) have responsibility for maintaining,

5

defending or evaluating this action, (c) have responsibility for making decisions dealing directly with this action, and (d) are not subject to the Patent Prosecution Bar of Section 5.9, below.

### 3.4.    Outside Consultant

The term "Outside Consultant" shall mean any outside person (and their support personnel) who is not an employee of a party or any Related Entity, and who is identified as an expert whose opinions may be presented at trial of this case, or who is retained or specially employed in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial, including but not limited to, a proposed expert witness with whom counsel may deem it necessary to consult concerning technical, financial, or other aspects of this case for the preparation or trial thereof.  This term is to be construed within the meaning of Federal Rule 26(b)(4)(a)-(b), provided that an Outside Consultant is subject to the Patent Prosecution Bar of Section 5.9, below, and an Outside Consultants must be approved pursuant to the requirements of Sections 5.5.2 and 5.5.3, below.

### 3.5.    Outside Counsel

The term "Outside Counsel" shall mean attorneys who are not employees of any named party to this action or any Related Entity, but who are retained to represent or advise a named party to this action  The term "Outside Counsel" includes the following support personnel employed by such attorneys: contract attorneys; paralegals;; legal secretaries; legal clerks;; employees of outside vendors providing copy services, document, graphics, and exhibit preparation services.

### 3.6.    Producing Party

The term "Producing Party" shall mean a party or third-party that produces Discovery Material, including Protected Information, in this action.

6

### 3.7. Protected Information

The term "Protected Information" shall mean any Discovery Material that the Producing Party in good faith designates as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL — ATTORNEYS' EYES ONLY," or "RESTRICTED CONFIDENTIAL — ATTORNEYS' EYES ONLY COMPUTER SOURCE CODE." Protected Information also includes any information copied or extracted therefrom, as well as all copies, excerpts, summaries, or compilations thereof, plus testimony, conversations, or presentations by parties or counsel to or in court or in other settings that might reveal Protected Information.

### 3.7.1. Confidential Information.

A Producing Party, including any party to this action and any third-party producing information or material voluntarily or pursuant to a subpoena or a court order, may designate Discovery Material as "CONFIDENTIAL" if the Producing Party has a good faith belief that such Discovery Material constitutes or contains confidential information, whether embodied in physical objects, documents, or the factual knowledge of persons.

### 3.7.2. Highly Confidential — Attorneys' Eyes Only Information.

A Producing Party, including any party to this action and any third-party producing information or material voluntarily or pursuant to a subpoena or a court order, may designate Discovery Material as "HIGHLY CONFIDENTIAL —ATTORNEYS' EYES ONLY" if the Producing Party has a good faith belief that such Discovery Material constitutes or contains proprietary financial, business, or technical data, commercially sensitive competitive information or trade secrets (*e.g. ,* nonpublic technical information, including schematic diagrams, technical reference manuals, and operations manuals); damages-related information (*e.g.,* sale volumes, revenues, costs, and profitability), licenses and licensing documentation, business plans, strategic plans; and settlement agreements or settlement communications, the disclosure of which could cause harm to the business or competitive position of the Producing Party.

7

**3.7.3. Restricted Confidential — Attorneys' Eyes Only Computer Source Code Information.** A Producing Party, including any party to this action and any third-party producing information or material voluntarily or pursuant to a subpoena or a court order, may alternatively designate Discovery Material "RESTRICTED CONFIDENTIAL — ATTORNEYS' EYES ONLY COMPUTER SOURCE CODE" if the Producing Party has a good faith belief that such Discovery Material contains a party's Source Code, which shall mean computer object code or other executable code or source code or similar programming statements or instructions that in general are converted into machine language by compilers, assemblers, or interpreters, including configuration files, scripts, source code listings, object code listings, and Hardware Description Language (HDL) or Register Transfer Level (RTL) files that describe the hardware design of any ASIC or other chip.

**3.7.4. Non-Confidential Information.** The following is not "CONFIDENTIAL," "HIGHLY CONFIDENTIAL — ATTORNEYS' EYES ONLY INFORMATION," or "RESTRICTED CONFIDENTIAL — ATTORNEYS' EYES ONLY COMPUTER SOURCE CODE" Discovery Material:

a.  any information which, at the time of disclosure to a Receiving Party, is lawfully public knowledge;

b.  any information which, after disclosure to a Receiving Party, lawfully becomes public knowledge as a result of publication not involving a violation of this Order; and

c.  any information that a Receiving Party can show was received by it, whether before or after the disclosure, from a source who obtained the information lawfully and under no obligation of confidentiality.

8

### 3.8. Receiving Party

The term "Receiving Party" shall mean a party that receives Discovery Material from a Producing Party.

### 3.9. Related Entity

The term "Related Entity" shall mean any parent, subsidiary or other legal business entity owned or controlled by a common parent.

## 4. TIME AND MANNER OF DESIGNATION

A Producing Party that designates information or items for protection under this Order must take care to limit any such designation to specific material that qualifies under the appropriate standards so that material, documents, items, or oral or written communications for which protection is not warranted are not swept unjustifiably within the ambit of this Order.

### 4.1. Time of Designation

Designation of Discovery Material may be made at the following times:

**4.1.1.** For documents and things, prior to or at the time of the production of the document or thing;

**4.1.2.** For declarations, written discovery responses, and pleadings, at the time of the service or filing, whichever occurs first;

**4.1.3.** For any form of testimony, unless otherwise agreed to in writing, either (a) at the time that such testimony is given, or (b) within twenty-one (21) calendar days after the receipt of an official (*i.e.*, not rough draft) transcript of such testimony by the Producing Party. Until the expiration of twenty-one (21) calendar days after receipt of the transcript of such testimony by the Producing Party, all testimony will be treated as "HIGHLY CONFIDENTIAL — ATTORNEYS' EYES ONLY." In the event that either (a) an extension of time may be required or (b) expedited disclosure may be required by a party due to an impending deadline regarding preparation of any

9

filing or submission that requires consideration of the Protected Information in question, the concerned party shall negotiate in good faith for an extended or shortened expiration period, and, if agreement regarding an extended or shortened expiration period cannot be reached, then the concerned party agrees to submit the matter to the Court for its determination of the appropriate expiration period. Any portions so designated shall thereafter be treated in accordance with the terms of this Order.

    **4.1.4.** A Producing Party that makes original documents or materials available for inspection need not designate them for protection until after the inspecting party has indicated which material it would like copied and produced. During the inspection and before the designation, all of the material made available for inspection shall be deemed "HIGHLY CONFIDENTIAL — ATTORNEYS' EYES ONLY." After the inspecting party has identified the documents it wants copied and produced, the Producing Party shall designate the materials in accordance with the terms of this Order prior to production.

    **4.2.**   **Manner of Designation**

    Designation of Discovery Material shall be made by placing the notation "CONFIDENTIAL," "HIGHLY CONFIDENTIAL — ATTORNEYS' EYES ONLY," or "RESTRICTED CONFIDENTIAL — ATTORNEYS' EYES ONLY COMPUTER SOURCE CODE" on the Discovery Material in the following manner:

    **4.2.1.** For documents, on each page of such document, unless produced in native form, in which case the legend shall be affixed to the file name;

    **4.2.2.** For tangible items, on the object or container thereof; or, if not practicable, as otherwise agreed by the parties;

    **4.2.3.** For declarations, written discovery responses, court filing or pleadings, on the face of such document;

**4.2.4.** For testimony, Outside Counsel for either party may designate on the record at the deposition any testimony as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL — ATTORNEYS' EYES ONLY," or "RESTRICTED CONFIDENTIAL — ATTORNEYS' EYES ONLY COMPUTER SOURCE CODE" under this Order. Each page of the designated testimony and any exhibit on which a witness gives testimony designated as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL — ATTORNEYS' EYES ONLY," or "RESTRICTED CONFIDENTIAL — ATTORNEYS' EYES ONLY COMPUTER SOURCE CODE" shall be treated in accordance with the terms of this Order;

**4.2.5.** Computer Source Code may be so designated by affixing the legend "RESTRICTED CONFIDENTIAL — ATTORNEYS' EYES ONLY COMPUTER SOURCE CODE" on the media itself or printed paper;

**4.2.6.** All "CONFIDENTIAL," "HIGHLY CONFIDENTIAL — ATTORNEYS' EYES ONLY," or "RESTRICTED CONFIDENTIAL — ATTORNEYS' EYES ONLY COMPUTER SOURCE CODE" information not reduced to documentary, tangible or physical form, or which cannot be conveniently designated as set forth in Sections 4.2.1. - 4.2.5., shall be designated by informing the Receiving Party of the designation in writing; and

**4.2.7.** To the extent the Receiving Party subsequently generates copies, summaries, excerpts, transcriptions, translations, notes, or other documents containing or reflecting Protected Information, whether electronic or hard-copy, it shall mark such documents with the appropriate confidentiality designations. In the event that the Receiving Party prints documents produce in native form, the Receiving Party shall mark each such page of the documents with the appropriate designation.

11

### 4.3. Third-Party Discovery

**4.3.1.** The parties recognize that, during the course of this case, third-parties may be called upon to produce "CONFIDENTIAL," "HIGHLY CONFIDENTIAL — ATTORNEYS' EYES ONLY," or "RESTRICTED CONFIDENTIAL — ATTORNEYS' EYES ONLY COMPUTER SOURCE CODE" Discovery Materials. In such a case, the third-party that must produce such Discovery Material is considered to be a Producing Party, protected under this Order as though a signatory to it, and may use the procedures described herein to designate its Discovery Materials as Protected Information.

**4.3.2.** Information originating with a third-party and in a Producing Party's custody or control that a Producing Party reasonably and in good faith believes is subject to a confidentiality obligation may be designated as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL — ATTORNEYS' EYES ONLY," or "RESTRICTED CONFIDENTIAL — ATTORNEYS' EYES ONLY COMPUTER SOURCE CODE" and the Protected Information shall be subject to the restrictions regarding disclosure specified in this Order. The foregoing notwithstanding, if a Producing Party has a good faith belief that production of the requested Discovery Material is objectionable on the grounds that the requested Discovery Material is subject to a third-party confidentiality obligation, the Producing Party timely shall confer with that third-party in good faith to resolve the confidentiality issue. If this confidentiality issue cannot be resolved, then the Producing Party shall notify the requesting party and to the extent consistent with its confidentiality obligation, the Producing Party shall (1) identify the third-party; (2) identify the bases for the confidentiality obligation; and (3) provide a sufficient description of the types of documents and things being withheld, so that the requesting party can file an appropriate motion with the Court. No disclosure is required until the objection is resolved.

**4.3.3.** A third-party's production of Protected Information under this Order does not entitle

12

that third-party to access any other Protected Information or Discovery Materials produced by any party or other third-party in this case.

### 4.4. Changing the Designation of Discovery Material

In the event any party desires to change the designation of Discovery Material that is produced from no designation to "CONFIDENTIAL," "HIGHLY CONFIDENTIAL — ATTORNEYS' EYES ONLY," or "RESTRICTED CONFIDENTIAL — ATTORNEYS' EYES ONLY COMPUTER SOURCE CODE," or from one such designation to another, such party may do so by notice in writing specifically identifying the Discovery Material and furnishing a copy of such Discovery Material with the new designation. In such event, the Receiving Party shall thereafter treat such information with the new designation pursuant to this Order, as well as undertake a good faith effort to correct any treatment of the information inconsistent with the new designation, including by making a reasonable effort to retrieve Discovery Material disseminated to individuals not authorized to receive it. A reasonable effort to retrieve the Discovery Material shall include informing recipients, if such recipients are known and specifically identifiable, of the Discovery Material that paper and electronic copies (excluding those copies stored in electronic back-up systems) are to be destroyed and confirming that the copies have been destroyed by the recipients.

### 4.5. Resolution of Disputes Regarding Designation

The parties will use reasonable care in designating information as Protected Information under this Order. In the event that a Receiving Party disagrees with any designation (or changed designation) by the Producing Party, the Receiving Party shall serve a written challenge on the Producing Party, identifying with particularity the Discovery Material and the bases for why the Discovery Material should be designated differently. A Receiving Party shall not be obligated to challenge the propriety of a designation at the time made, and a failure to do so shall not preclude a

13

subsequent challenge thereto. Such a challenge shall be written, served on counsel for the

Producing Party, and particularly identify the documents or information that the Receiving Party

contends should be differently designated. If the challenge cannot be resolved through the meet and

confer process, the Receiving Party can file an appropriate motion with the Court.

### 4.6.    No Presumption of Protected Status

This Order does not address discovery objections nor preclude either party from moving for

any relief cognizable under the Federal Rules of Civil Procedure, the Local Rules, or this Court's

inherent power. Failure of any party to challenge any designation under this Order shall not

constitute an admission that any Discovery Material designated as Protected Information is, in fact,

Protected Information.

## 5.    USE OR DISCLOSURE OF PROTECTED INFORMATION

### 5.1.    Use of Discovery Materials

Documents and things exchanged during this litigation shall only be used in this litigation

and any related appellate proceeding, and their use shall be governed by this Order. A Receiving

Party may use Protected Information that is disclosed or produced by another party or by a third-

party in connection with the case in which the information is produced only for the purposes of

litigating, defending, or attempting to settle this litigation or any related appellate proceeding, and

not for any other purpose whatsoever, including without limitation any other litigation, patent

prosecution or acquisition, patent reexamination or reissue proceedings, or any business or

competitive purpose or function. Such Protected Information may be disclosed only to the

categories of persons and under the conditions described in this Order.

**5.1.1.** Except as expressly provided in Section 5.4 below, no employee, officer, or director

of any party to this action, including Inside Counsel, shall have access to Protected Information

marked "CONFIDENTIAL," "HIGHLY CONFIDENTIAL — ATTORNEYS' EYES ONLY," or

14

"RESTRICTED CONFIDENTIAL — ATTORNEYS' EYES ONLY COMPUTER SOURCE CODE." without a court order or the written consent of the Producing Party.

### 5.2.    Disclosure Among Defendants

Discovery Material designated as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL — ATTORNEYS' EYES ONLY," or "RESTRICTED CONFIDENTIAL — ATTORNEYS' EYES ONLY COMPUTER SOURCE CODE" by a Defendant Producing Party may not be disclosed to any other party, including other Defendants in the same case or in cases consolidated for case management purposes, without written consent of the Defendant Producing Party.  Except as required by law, no Defendant is required to produce its Protected Material to any other Defendant, but nothing in this Order shall preclude such production.

Nothing in this Order limits or prevents a Producing Party from granting access to its own information.

### 5.3.    Duty to Return or Destroy Discovery Material

Within sixty (60) calendar days after termination of this litigation with respect to a Producing Party, including any appeals, all Discovery Material containing Protected Information (except "RESTRICTED CONFIDENTIAL — ATTORNEYS' EYES ONLY COMPUTER SOURCE CODE"), including all notes of counsel, Outside Consultants, or others that incorporate in whole or in part information from Protected Information, shall be either returned to the Producing Party or shall be destroyed.  Counsel for any party or third-party receiving Protected Information shall make written certification of compliance with this provision regarding return or destruction and shall deliver the same to counsel for the Producing Party within ninety (90) calendar days after the conclusion of the above-captioned case. Within ten (10) days after the final conclusion of this action, including any appeals, all "RESTRICTED CONFIDENTIAL — ATTORNEYS' EYES ONLY COMPUTER SOURCE CODE" materials produced by any party

15

shall be returned to the producing party along with certification by outside counsel of record and any other individuals who accessed such materials that all such materials have been returned.

In the event that a party is dismissed by agreement from the case prior to conclusion of this matter in its entirety, all Discovery Material containing Protected Information (except "RESTRICTED CONFIDENTIAL — ATTORNEYS' EYES ONLY COMPUTER SOURCE CODE" and other than pleadings, discovery responses, and exhibits contained in the official court record, and attorney work product documents) produced by the dismissed party shall be returned to the dismissed party or shall be destroyed within sixty (60) calendar days from entry of the dismissal order. Counsel for any party or third-party that received Protected Information from a dismissed party shall make written certification of compliance with this provision and shall deliver the same to counsel for the dismissed party within ninety (90) calendar days after the entry of the dismissal order. Within ten (10) days after the dismissal, all "RESTRICTED CONFIDENTIAL — ATTORNEYS' EYES ONLY COMPUTER SOURCE CODE" materials produced by the dismissed party shall be returned to the producing party along with certification by outside counsel of record and any other individuals who accessed such materials that all such materials have been returned.

Notwithstanding the foregoing, Outside Counsel and Inside Counsel are not required to delete information that may reside on their respective back-up systems; however, Outside Counsel and Inside Counsel agree that no Protected Information shall be retrieved from the electronic back-up systems to be used as reference materials for business operations after conclusion of this litigation.

**5.3.1.** Notwithstanding the foregoing, Outside Counsel of record shall be entitled at the termination of this case, including all appeals, to maintain copies of all pleadings, motions and trial briefs (including all supporting and opposing papers and exhibits thereto), written discovery requests and responses (and exhibits thereto), deposition transcripts (and exhibits thereto), trial

16

transcripts, exhibits offered or introduced into evidence at trial, and any work-product containing Protected Information, provided however that any Protected Information contained in any such documents retained by Outside Counsel of record shall remain subject to the protections of this Order.

### 5.4. Disclosure of Discovery Materials

No Receiving Party or other person receiving any Protected Information in accordance with this Order shall disclose or permit the disclosure of any such Protected Information to any other person or entity, except the following:

**5.4.1.** Disclosure of Protected Information that is designated "CONFIDENTIAL" may be made only to:

a.    Outside Counsel;

b.    No more than three (3) Inside Counsel or employees (collectively, "In-House Employees") per Party who have complied with the provisions of Section 5.5.2 below;

c.    Outside Consultants, and their necessary support personnel, who have complied with the provisions of Section 5.5.1 below and signed the form attached hereto as Attachment A;

d.    Court Staff, provided any filings are under seal or with other suitable precautions determined by the Court;

e.    Graphics, translation, or design services retained by counsel for purposes of preparing demonstrative or other exhibits for deposition, trial, or other court proceedings in the action; non-technical jury or trial consulting services, who have signed the form attached hereto as Attachment A;

f.    Mock jurors who have signed the form attached hereto as Attachment A agreeing to

17

be bound by the terms and conditions of this Order (said signed acknowledgment for

mock jurors need not be provided to counsel for any other party);

g.     Any person to whom the Producing Party agrees to provide a copy; and

h.     Any other person with the prior written consent of the Producing Party specifying

that said person may have access to material designated as "CONFIDENTIAL".

**5.4.2.1.**     Disclosure of Protected Information that is designated "HIGHLY

CONFIDENTIAL — ATTORNEYS' EYES ONLY" may only be made to:

a.     Outside Counsel;

b.     Outside Consultants, and their necessary support personnel, who have complied with

the provisions of Section 5.5.1 – 5.5.2 below and signed the form attached hereto as

Attachment A;

c.     Court Staff, provided any filings are under seal or with other suitable precautions

determined by the Court;

d.     Graphics, translation, or design services retained by counsel for purposes of

preparing demonstrative or other exhibits for deposition, trial, or other court

proceedings in the action; non-technical jury or trial consulting services, who have

signed the form attached hereto as Attachment A;

e.     Any person to whom the Producing Party agrees to provide a copy; and

f.     Any other person with the prior written consent of the Producing Party specifying

that said person may have access to material designated as "HIGHLY

CONFIDENTIAL — ATTORNEYS' EYES ONLY".

**5.4.2.2. Encryption.** To the extent that any HIGHLY CONFIDENTIAL —

ATTORNEYS' EYES ONLY Material is transmitted from or to authorized recipients outside of the

Receiving Party's Outside Counsel's office, the transmission shall be by hand or by a secure

18

transport carrier (e.g., Federal Express), and encrypted if in electronic format.

**5.4.3.** Disclosure of Protected Information that is designated "RESTRICTED CONFIDENTIAL — ATTORNEYS' EYES ONLY COMPUTER SOURCE CODE" may be made (pursuant to the specific provision in Section 6 below) only to:

a.      Outside Counsel;

b.      No more than three (3) Outside Consultants of any Receiving Party as defined above and who have signed the form attached hereto as Attachment A. To the extent the Receiving Party seeks to have additional Outside Consultants obtain access to a particular Producing Party's Source Code, the Parties shall meet and confer in good faith;

c.      Court Staff, provided any filings are under seal or with other suitable precautions determined by the Court; and

d.      Any other person with the prior written consent of the Producing Party specifying that said person may have access to material designated as "RESTRICTED CONFIDENTIAL — ATTORNEYS' EYES ONLY COMPUTER SOURCE CODE".

**5.5. General Disclosures**

Notwithstanding the restrictions set forth above, the following disclosures may be made in accordance with this Order:

**5.5.1. Outside Consultants**. Prior to the disclosure of any of the Producing Party's Protected Information to an Outside Consultant, and for each Outside Consultant to whom disclosure is proposed, the Receiving Party shall give at least seven (7) business days written notice to the Producing Party, providing:

a.      the name, business title and business address of the Outside Consultant;

b.   a copy of the proposed Outside Consultant's executed Attachment A;

c.   a copy of the proposed Outside Consultant's current *curriculum vitae* showing the proposed Outside Consultant's education;

d.   the Outside Consultant's current employer;

e.   a list of any previous or current relationships (personal, professional, financial, or otherwise) with any of the parties; and

f.   a list of all other cases by name, case number, and location of court in which the Outside Consultant has testified (at trial or deposition) or submitted a written report or declaration, within the last four (4) years.

**5.5.2.** Outside Counsel desiring to disclose Protected Information to Outside Consultants or In-House Employees shall first obtain a signed undertaking, in the form of Attachment A attached hereto, from each such Outside Consultant or In-House Employee, and such Outside Counsel shall retain in its files the original of each such signed undertaking. For Outside Consultants, a copy of the proposed undertaking shall be forwarded to opposing counsel with the current curriculum vitae and other materials set forth in Section 5.5.1 for such Outside Consultant. For In-House Employees. a copy of the proposed undertaking need not be forwarded to opposing counsel.

**5.5.3** Prior to disclosing any Protected Information to any Outside Consultant, Outside Counsel for the Receiving Party shall determine that disclosure of particular Protected Information to an Outside Consultant is, in that counsel's good faith judgment, reasonably necessary to the party's representation. If, during the seven (7) business day notice period, the Producing Party serves, in writing, a good faith objection with a written explanation to the proposed disclosure to showing the Outside Consultant Protected Information, there shall be no disclosure of said Protected Information to such Outside Consultant pending resolution of the objection. The Producing Party may also request additional information about the Outside Consultant or otherwise

20

request additional assurances based upon concerns resulting from any information disclosed

pursuant to Section 5.6.1. If a Producing Party objects to the disclosure of Protected Information to

an Outside Consultant, the parties must meet and confer regarding the objection within five (5)

business days after such objection is served. The objecting party's consent to the disclosure of

Protected Information to an Outside Consultant shall not be unreasonably withheld, and its

objection must be based on that party's good faith belief that disclosure of its Protected Information

to the Outside Consultant will result in business or economic harm to that party. If the objection

cannot be resolved through the meet and confer process, the party seeking to disclose information to

an Outside Consultant may file an appropriate motion with the Court.

**5.5.4. Public Documents.** None of the restrictions set forth in this Order shall apply to any

documents or other information that becomes public knowledge by means not in violation of the

provisions of this Order. Nothing in this Order shall prevent a party from using any information

that the party properly possessed prior to receipt of any Protected Information in this litigation, or

that is discovered or developed independently by the Receiving Party.

**5.5.5. Discussion With Author or Recipient.** Notwithstanding any other provision, if

Discovery Material makes reference to the actual or alleged conduct or statement of a person,

Outside Counsel may discuss such conduct or statements with such person, provided that such

discussions do not disclose or reveal any other Protected Information.

**5.5.6. Disclosure of Party's Own Information.** The restrictions on the use of Discovery

Material established by the Order are applicable only to Discovery Material received by a party

from another party or from a third-party as a direct result of this litigation. Any party is free to use

its own Discovery Material for any purpose.

21

### 5.6. Disclosure During Depositions

A party may use Protected Information in depositions with: (a) a current or former officer, director or employee of the Producing Party or a current or former officer, director or employee of a company affiliated with the Producing Party; (b) an individual identified in the Protected Information as an author, addressee, carbon copy or other recipient of such information; (c) although not identified as an author, addressee, carbon copy or other recipient of such information, an individual who has, in the ordinary course of business, seen or could reasonably been expected to see such information; or (d) an Outside Consultant who has executed Attachment A.

No one may attend or review the transcripts or the portions of any depositions at which Protected Information is shown or discussed other than those individuals qualified to see such Protected Information as set forth in this Order.

### 5.7. Disclosure Pursuant to Subpoena

If any entity subpoenas or orders production of Protected Information from a Receiving Party that a Receiving Party has obtained subject to this Order, such Receiving Party shall promptly notify the Producing Party of the subpoena or order and shall not produce the information until the Producing Party has had reasonable notice (which shall be not less than fifteen (15) business days) to object or take other appropriate steps to protect the information. If a Producing Party does not take steps to prevent disclosure of such documents within the notice period given, the party to whom the referenced subpoena is directed may produce such documents in response. Nothing in this Order should be construed as authorizing or encouraging a Receiving Party in this action to disobey a lawful directive from another court.

### 5.8. Disclosure of Protected or Privileged Information

Production or disclosure of documents or information subject to the attorney–client privilege, work product immunity, joint defense privilege, common interest privilege, or any other

applicable privilege or immunity shall not constitute a waiver of, nor a prejudice to, any claim that

such or related material is Protected Information, privileged, or protected by the work product

immunity, joint defense privilege, common interest privilege, or any other applicable privilege,

provided that the Producing Party promptly notifies the Receiving Party in writing after discovery

of such production or disclosure. Such produced or disclosed documents or information, including

all copies thereof, shall be returned to the Producing Party or destroyed immediately upon request.

The Receiving Party shall also immediately destroy any notes or other writing or recordings that

summarize, reflect, or discuss the content of such privileged or Protected Information. No use shall

be made of such documents or information during deposition or at trial, nor shall such documents or

information be shown to anyone who has not already been given access to them subsequent to the

request that they be returned. If, within ten (10) business days of the notice from the Producing

Party, the Receiving Party indicates to the Producing Party that the privileged/protected nature of

such Discovery Material is in dispute, the Producing Party shall include the produced or disclosed

Discovery Material in a privilege log identifying such document. The Receiving Party may move

the Court for an Order compelling production of any produced or disclosed document or

information, but the motion shall be filed under seal and shall not assert as a ground for production

the fact of the production or disclosure, nor shall the motion disclose, summarize, characterize, or

otherwise use the content of the produced document or information (beyond any information

appearing on the above-referenced privilege log).

### 5.9 Prosecution Bar

Absent the written consent of the Producing Party, any person on behalf of any Party, who

has accessed technical documentation or information designated "HIGHLY CONFIDENTIAL –

ATTORNEYS' EYES ONLY" or "RESTRICTED CONFIDENTIAL - ATTORNEYS' EYES

ONLY SOURCE CODE" by a Producing Party shall not be involved in the prosecution of patents

or patent applications relating to technology for utilizing multiple radio frequency (RF) channels to increase data throughput to a device, before any foreign or domestic agency, including the United States Patent and Trademark Office, including providing advice or input regarding scope of a patent or claims or amendments thereto to an attorney or agent conducting such prosecution. These prohibitions are not intended to and shall not preclude counsel from participating in post grant proceedings, including inter partes review and covered business method patent review, on behalf of a Party. These prohibitions shall begin when access to "HIGHLY CONFIDENTIAL --ATTORNEYS' EYES ONLY" or "RESTRICTED CONFIDENTIAL - ATTORNEYS' EYES ONLY - SOURCE CODE" materials first occurs for the affected individual, and shall end two (2) years after the final resolution of this action, including all appeals.

### 5.10 Expert Reports

Expert Reports – Within three business days after service of expert reports, the Producing Party shall serve a redacted expert report, redacting any HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY and HIGHLY CONFIDENTIAL – SOURCE CODE information not belonging to the Receiving Party.

Notwithstanding the foregoing provisions regarding access by in-house counsel, in-house counsel for defendants shall be permitted to see any Confidential or Highly Confidential information belonging to Plaintiff that is used in Plaintiff's damages expert report.

### 5.11 Export Controls

Protected Information may only be accessed by the Receiving Party within the United States and shall not be transported to, or accessed from, any foreign jurisdiction. Nothing in this paragraph shall prohibit any person to whom disclosure of Protected Material is authorized from transporting or accessing such material while temporarily traveling outside of the United States or for purposes of taking a deposition outside of the United States, where use of the Protected Material

24

is permitted under the provisions of this Order.

## 6.  SOURCE CODE

### 6.1.  Notice

In the event that Source Code is produced in this action, access to such Source Code will be given only to those individuals for the Receiving Party who are authorized under Sections 5.4.3(a) and 5.4.3(b) of this Order to have access to Discovery Material designated as "RESTRICTED CONFIDENTIAL — ATTORNEYS' EYES ONLY SOURCE CODE." Prior to inspection of the Producing Party's Source Code, the Receiving Party shall give at least two (2) business days written notice to the Producing Party.

### 6.2.  Review of Source Code

In the event that Source Code is produced in this action:

**6.2.1.** The Producing Party will make its Source Code available for inspection electronically in the same form as maintained in the ordinary course of the Producing Party's business and in computer searchable format, except that the Producing Party, at its discretion, may make the files "read only" to prevent modification, provided that this doesn't preclude using review tools to create additional files with line numbers, file name, etc. The Producing Party will make its Source Code available for inspection on up to two "stand alone" Source Code Review Computers (*i.e.*, individual computers that are not connected to any network, Internet, or peripheral device) in the format suitable for review at the offices of the Producing Party's counsel, or at another location that the Parties can agree upon, such agreement not to be unreasonably withheld (the "Designated Facility"). If the Receiving Party desires to review the Source Code on more than one Source Code Review Computer, the Receiving Party will notify the Producing Party at least ten (10) calendar days in advance of the date upon which the Receiving Party wishes to have the additional Source Code Review Computer available. The Receiving Party shall bear the costs of equipment and set

up of the second Source Code Review Computer.

    **6.2.2.** Unless otherwise agreed to in writing between the Producing Party and the Receiving Party, a Receiving Party may only review a Producing Party's Source Code on the Source Code Review Computer. The Source Code Review Computer may be configured to prevent additional peripheral devices (*e.g.*, USB thumb drives) from being connected to it.

    **6.2.3.** Absent agreement to the contrary, access to the Source Code Review Computer will be made available during regular business hours. However, upon reasonable notice from the Receiving Party, the Producing Party shall make reasonable efforts to accommodate the Receiving Party's request for access to the Source Code outside of normal business hours. To the extent such accommodation results in additional expense including overtime for employees required to keep the office open, such expense will be borne by the Receiving Party.

    **6.2.4.** The Receiving Party, at its own expense, may request that the Producing Party install software on a Source Code Review Computer to perform searches of the Producing Party's Source Code, provided that such other software is necessary for the Receiving Party to perform its review of the Source Code consistent with all of the protections herein. The Receiving Party must provide the Producing Party with appropriate access to such software tool(s), including by procuring any necessary software licenses, at least ten (10) calendar days in advance of the date upon which the Receiving Party wishes to have the additional software available for use on the Source Code Review Computer. The Producing Party shall be responsible for the costs associated with the loading of review tools only prior to the Receiving Party's first access to the Source Code Review Computer. Thereafter, should the Receiving Party desire additional review tools, the Receiving Party shall be responsible for the costs associated with the loading of those additional review tools. The Producing Party reserves the right to reject any review tool that permits editing, modifying, or compiling the source code. Timely requests for the installation of such review tools software will

26

not be unreasonably denied so long as the requested review tools software is compatible with the operating system, and other software necessary to make the Source Code available for inspection, installed on a Source Code Review Computer, does not prevent or impede the Receiving Party's access to the Source Code produced for inspection on a Source Code Review Computer and does not side-step any of the security features enabled on a Source Code Review Computer (*e.g.*, enable connection and use of USB thumb drives). The Receiving Party shall not erase, load, install, or otherwise modify any program (or request that any other program be erased, loaded, installed, or otherwise modified by the Producing Party) on the Source Code Review Computer.

**6.2.5.** A list of names of persons who will view the Source Code materials will be provided to the Producing Party in conjunction with any written (including e-mail) notice requesting inspection. The Producing Party may request that persons viewing Source Code sign a log sheet, provided by the Producing Party, when they enter or depart the Designated Facility. The Producing Party will provide a copy of the log to the Receiving Party within five (5) business days of requesting a copy of the log. The Producing Party shall be entitled to have a person observe all entrances and exits from the viewing room. However, any monitors must remain at a reasonable distance away from those reviewing the source code so that those reviewing the code may discuss the code without being overheard by the monitor. No recordable media, recordable devices, input/output devices or other electronic devices, including without limitation sound recorders, computers, cellular telephones, peripheral equipment, cameras, CDs, DVDs, or drives of any kind, shall be permitted in the source code reviewing room. Notwithstanding the above limitations, if requested, a Producing Party will make available a computer for note taking, subject to the following restrictions:

    i.      All network connectivity and other access to external devices (e.g. USB devices) will be disabled;

27

ii.    The Receiving Party does not use the computer to copy any source code;

iii.   No files can be removed from the device but, at the request of the Receiving Party's counsel or Outside Consultant, a printer will be provided for the Receiving Party's counsel or Outside Consultant to print any notes taken;

iv.   After printing, the Receiving Party will delete the notes from the computer and sign a statement confirming that no lines of source code were copied into the notes;

v.    The Producing Party will not retain or view any copies of notes in any form that were taken on the computer by the Receiving Party's counsel or Outside Consultant; and.

vi.   Any such notes must be labeled HIGHLY CONFIDENTIAL- SOURCE CODE under this Order and treated as such.

**6.2.6.** The Receiving Party shall be entitled to have the Producing Party print in paper form, reasonable portions of source reasonably anticipated by the Receiving Party to be necessary for the preparation of claims or defenses in this case. The Receiving Party shall not request printing of Source Code in order to review blocks of Source Code elsewhere in the first instance, *i.e.*, as an alternative to reviewing that Source Code electronically on the Source Code Review Computer, as the parties acknowledge and agree that the purpose of the protections herein would be frustrated by printing portions of code for review and analysis elsewhere, and that printing is permitted solely to enable use of Source Code in filings, depositions, proceedings, contentions, expert reports, and related drafts and correspondence.

**6.2.7.** The Producing Party will provide any printed paper copies to the Requesting Party within four (4) business days of the Requesting Party's request, unless otherwise agreed or the Producing Party objects to the request. The Producing Party may object to any portion of any printed Source Code files as not relevant to any claim or defense in this litigation, and accordingly

deny printing of any Source Code files pending resolution of the Producing Party's objection. The Parties shall meet and confer to resolve any such dispute within five (5) business days of the Receiving Party's Source Code print request. If the parties are unable to resolve such a dispute, the Receiving Party may apply to the Court for relief. Any contested portion of any printed Source Code files need not be produced to the Receiving Party until the dispute is resolved by the parties or the Court.

**6.2.8.** If the Receiving Party desires to receive printed copies of more than a continuous block of up to fifteen (15) pages of Source Code or of an entire file, or if the Producing Party challenges the amount of printed Source Code, the parties shall meet and confer. Any contested portion of any printed Source Code files need not be produced to the Receiving Party until the dispute is resolved by the parties or the Court. After printing, the Producing Party shall clearly label each page of any printed copies "RESTRICTED CONFIDENTIAL — ATTORNEYS' EYES ONLY COMPUTER SOURCE CODE" and give each page a unique identification number.

**6.2.9.** For purpose of use in connection with a motion, hearing or trial, the Receiving Party's Outside Counsel may make three (3) copies of the printed Source Code pages after delivery for internal use. Whenever hard copies are made, counsel for the Receiving Party shall provide to counsel for the Producing Party an identification of when the copies were made and who made them. Any hard copies shall be clearly labeled "RESTRICTED CONFIDENTIAL — ATTORNEYS' EYES ONLY COMPUTER SOURCE CODE" and labeled with the corresponding copy number (e.g., "Copy 1," "Copy 2," or "Copy 3"). Printed copies of Source Code shall be securely maintained in locked rooms or cabinets at the offices of Outside Counsel of the Receiving Party or the offices of the Receiving Party's Outside Consultants. Printed copies may only be used in connection with the preparation and filing of a motion (under seal), preparing expert reports, depositions, a hearing, and/or during trial and shall be destroyed as soon as they are no longer

29

needed. No electronic copies (e.g., scans, PDFs, tiffs, etc.) of any of the printed Source Code pages may be created without prior written consent of the Producing Party. The Receiving Party shall ship printed copies of Source Code only by a secure carrier and shipping method that provides tracking information for such shipment. If delivery of such shipment is delayed by more than three (3) business days, or if such shipment is lost by the carrier, the Receiving Party will notify the Producing Party of the circumstances immediately.

     **6.2.10.** Printed copies of Source Code may be reviewed by persons or entities permitted to access "RESTRICTED CONFIDENTIAL — ATTORNEYS' EYES ONLY COMPUTER SOURCE CODE" information at the offices of Outside Counsel of the Receiving Party or the offices of the Receiving Party's Outside Consultants, but may not be removed from such offices. Citations to source code should be made by production (Bates) number and line number in expert reports, contentions, or other documents that are not filed with the Court, to prevent unnecessary copying and transmittal of such code. To the extent a party believes in good faith that source code is required in a Court filing, it shall meet and confer with the Producing Party regarding appropriate procedures for doing so. Extra copies of "RESTRICTED CONFIDENTIAL — ATTORNEYS' EYES ONLY COMPUTER SOURCE CODE" information may be made for and used in Court filings and proceedings, and depositions of persons or entities permitted to access, or be deposed on, "RESTRICTED CONFIDENTIAL — ATTORNEYS' EYES ONLY COMPUTER SOURCE CODE" information of the Producing Party. Copies made for such purposes (Court filings and proceedings, and depositions) do not count against the three additional copies allowed under Section 6.2.9. The Receiving Party shall provide two (2) business days' notice to the Producing Party if the Receiving Party intends to use Source Code in a deposition.

     **6.2.11.** Source Code shall not be filed electronically with the Court. Any filing requiring submission of Source Code shall be filed under seal with reference to the Source Code portions by

page and line number only, along with a designation that a paper copy of the corresponding Source Code has been lodged with the Court. For the sake of clarity, any copy of any Source Code included with a filing must be hand delivered to the Court in paper format only, and shall not be served electronically on any party.

**6.2.12.** All paper copies that are no longer necessary in the Litigation (e.g., extra copies at the conclusion of a deposition) shall be returned to the Producing Party. Copies of Source Code that are marked as deposition exhibits shall not be provided to the court reporter or attached to deposition transcripts; rather, the deposition record will identify the exhibit by its production numbers.

## 7.     MISCELLANEOUS

### 7.1.     Right to Further Relief

Nothing in this Order abridges the right of any party to seek its modification by the Court in the future.

### 7.2.     Jurisdiction

This Protective Order shall be binding upon the parties, and their respective attorneys, successors, executors, personal representatives, administrators, heirs, legal representatives, assigns, subsidiaries, divisions, employees, agents, independent contractors, or other persons or organizations over which they have control. The United States District Court for the District of Delaware, or any court to which this action is transferred, is responsible for the interpretation and enforcement of this Order. All disputes concerning documents or information covered under this Order (however designated) and produced under the protection of this Order shall be resolved by the United States District Court for the District of Delaware, or the court to which this action may be transferred.

### 7.3.     Continuing Jurisdiction

After the conclusion of the above-captioned case, the provisions of this Order shall continue to be binding until further order of this Court, and this Court shall retain jurisdiction over the parties and any other person who has had access to Protected Information pursuant to this Order, in order to enforce the Order's provisions.

### 7.4. Interpretation

Should the parties have any issues concerning the interpretation of this Order, before any party moves for this Court's assistance, they shall first promptly meet and confer to resolve the dispute. The headings used in this Order are supplied for convenience only and shall not be taken into account in the interpretation of this Order.

### 7.5. Modification

This Order may be modified by this Court for good cause shown or by mutual written agreement between (or among) the parties and this Court's approval of such agreement. The Court may enter a subsequent order addressing the use of Protected Information at trial or at the conclusion of the above-captioned case.

### 7.6. Outside Counsel's Communication with Client

Nothing in this Order shall preclude or impede Outside Counsel's ability to communicate with or advise their client based on their review and evaluation of Protected Information produced by the opposing party, provided that such communications or advice shall not disclose or reveal Protected Information in violation of this Order.

### 7.7. No Probative Value

The Order shall not aggregate or diminish any contractual, statutory, or other legal obligation or right of any party or person with respect to any Protected Information. The fact that information is designated "CONFIDENTIAL," "HIGHLY CONFIDENTIAL — ATTORNEYS' EYES ONLY," or "RESTRICTED CONFIDENTIAL — ATTORNEYS' EYES ONLY COMPUTER SOURCE CODE" under this Order shall not be deemed to be determinative of what a trier of fact may determine to actually be the appropriate designation. This Order shall be without prejudice to the right of any party to bring before the Court questions regarding (a) whether any particular material is or is not properly designated or (b) whether any particular information or material is or is not entitled to a greater or lesser degree of protection under the terms of this Order, provided that in doing so, the party complies with the procedures set forth herein. The fact that any information is disclosed, used, or produced in any court proceeding in this case shall not be offered in any action proceeding before any court, agency, or tribunal as evidence of or concerning whether or not such information is admissible, confidential, or proprietary.

### 7.8. Use of Protected Information in Court

Before disclosing Protected Information in an open courtroom at trial or other court hearings in this case, a party must provide notice to the Producing Party so that the Producing Party has a reasonable opportunity to take appropriate action to prevent or limit disclosure of the Protected Information in the open courtroom. The Producing Party bears the burden of showing that the Court should prevent or limit disclosure of the Protected Information in the open courtroom; otherwise, the Protected Information may be used in an open courtroom at trial or other court hearings in this case without regard to the other provisions in this Order. The parties agree that the use of Protected Information at trial or other court hearings in this case shall not constitute a waiver of or operate in prejudice to any claim of confidentiality in the Protected Information.

33

Where Protected Information may be revealed or referred to in a question that will be put to a witness at trial upon oral examination or Protected Information will be used as exhibits during the examination, the Producing Party may request that the Court require that all persons in attendance who are not entitled access to such Protected Information under this Protective Order leave the courtroom until such line of inquiry is completed.

**8.     OTHER PROCEEDINGS**

By entering this order and limiting the disclosure of information in this case, the Court does not intend to preclude another court from finding that information may be relevant and subject to disclosure in another case. Any person or party subject to this order who becomes subject to a motion to disclose another party's information designated "CONFIDENTIAL," "HIGHLY CONFIDENTIAL — ATTORNEYS' EYES ONLY," or "RESTRICTED CONFIDENTIAL — ATTORNEYS' EYES ONLY COMPUTER SOURCE CODE" pursuant to this order shall promptly notify that party of the motion so that the party may have an opportunity to appear and be heard on whether that information should be disclosed.

IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.


IT IS HEREBY ORDERED this $14$ day of _March_____, 2016.


_Richard G. Andrews_

The Honorable Richard G. Andrews
United States District Judge

34

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **CHANBOND, LLC,** | |
| Plaintiff, | C.A. No. 15-842-RGA |
| v. | **JURY TRIAL DEMANDED** |
| **ATLANTIC BROADBAND GROUP, LLC,** | |
| Defendant. | |
| **CHANBOND, LLC,** | |
| Plaintiff, | C.A. No. 15-843-RGA |
| v. | **JURY TRIAL DEMANDED** |
| **BRIGHT HOUSE NETWORKS, LLC,** | |
| Defendant. | |
| **CHANBOND, LLC,** | |
| Plaintiff, | C.A. No. 15-844-RGA |
| v. | **JURY TRIAL DEMANDED** |
| **CABLE ONE INC.,** | |
| Defendant. | |

35

| | |
|---|---|
| **CHANBOND, LLC,** | |
| Plaintiff, | |
| | C.A. No. 15-845-RGA |
| v. | |
| | **JURY TRIAL DEMANDED** |
| **CABLEVISION SYSTEMS CORPORATION,** *et al.,* | |
| Defendants. | |

| | |
|---|---|
| **CHANBOND, LLC,** | |
| Plaintiff, | |
| | C.A. No. 15-846-RGA |
| v. | |
| | **JURY TRIAL DEMANDED** |
| **CEQUEL COMMUNICATIONS, LLC,** *et al.,* | |
| Defendants. | |

| | |
|---|---|
| **CHANBOND, LLC,** | |
| Plaintiff, | |
| | C.A. No. 15-847-RGA |
| v. | |
| | **JURY TRIAL DEMANDED** |
| **CHARTER COMMUNICATIONS, INC.,** | |
| Defendant. | |

| | |
|---|---|
| **CHANBOND, LLC,** | |
| Plaintiff, | |
| | C.A. No. 15-848-RGA |
| v. | |
| | **JURY TRIAL DEMANDED** |
| **COMCAST CORPORATION,** *et al.,* | |
| Defendants. | |

36

| | |
|---|---|
| **CHANBOND, LLC,** | |
| Plaintiff, | |
| | C.A. No. 15-849-RGA |
| v. | |
| | **JURY TRIAL DEMANDED** |
| **COX COMMUNICATIONS, INC.,** | |
| Defendant. | |

| | |
|---|---|
| **CHANBOND, LLC,** | |
| Plaintiff, | |
| | C.A. No. 15-850-RGA |
| v. | |
| | **JURY TRIAL DEMANDED** |
| **MEDIACOM COMMUNICATIONS CORPORATION,** | |
| Defendant. | |

| | |
|---|---|
| **CHANBOND, LLC,** | |
| Plaintiff, | |
| | C.A. No. 15-851-RGA |
| v. | |
| | **JURY TRIAL DEMANDED** |
| **RCN TELECOM SERVICES, LLC,** | |
| Defendant. | |

| | |
|---|---|
| **CHANBOND, LLC,** | |
| Plaintiff, | |
| | C.A. No. 15-852-RGA |
| v. | |
| | **JURY TRIAL DEMANDED** |
| **TIME WARNER CABLE INC., *et al.*,** | |
| Defendants. | |

CHANBOND, LLC,

       Plaintiff,

   v.

WAVEDIVISION HOLDINGS, LLC,

       Defendant.

C.A. No. 15-853-RGA

**JURY TRIAL DEMANDED**

CHANBOND, LLC,

       Plaintiff,

   v.

WIDEOPENWEST FINANCE, LLC,

       Defendant.

C.A. No. 15-854-RGA

**JURY TRIAL DEMANDED**

## ATTACHMENT A

### WRITTEN ACKNOWLEDGEMENT
### TO ABIDE BY THE TERMS OF THE PROTECTIVE ORDER

I, the undersigned, hereby certify that I have read the Protective Order entered in the United States District Court for the District of Delaware in the cases entitled: *ChanBond, LLC v. Atlantic Broadband Group, LLC*, Case No. 15-842 (RGA); *ChanBond, LLC v. Bright House Networks, LLC*, Case No. 15-843 (RGA); *ChanBond, LLC v. Cable One, Inc.*, Case No. 15-844 (RGA); *ChanBond, LLC v. Cablevision Systems Corporation et al.*, Case No. 15-845 (RGA); *ChanBond, LLC v. Cequel Communications, LLC et al.*, Case No. 15-846 (RGA); *ChanBond, LLC v. Charter Communications, Inc.*, Case No. 15-847 (RGA); *ChanBond, LLC v. Comcast Corporation et al.*, Case No. 15-848 (RGA); *ChanBond, LLC v. Cox Communications, Inc.*, Case No. 15-849 (RGA); *ChanBond, LLC v. Mediacom Communications Corporation*, Case No. 15-850 (RGA); *ChanBond,*

*LLC v. RCN Telecom Services, LLC*, Case No. 15-851 (RGA); *ChanBond, LLC v. Time Warner Cable Inc. et al.*, Case No. 15-852 (RGA); *ChanBond, LLC v. WaveDivision Holdings, LLC*, Case No. 15-853 (RGA); and *ChanBond, LLC v. WideOpenWest Finance, LLC*, Case No. 15-854 (RGA).

      I understand the terms of the Protective Order. I agree to be bound by such terms and to submit to the personal jurisdiction of the District of Delaware with respect to any proceeding related to the enforcement of this Protective Order, including any proceedings related to contempt of Court. I will not disclose Discovery Materials marked "CONFIDENTIAL," "HIGHLY CONFIDENTIAL — ATTORNEYS' EYES ONLY," or "RESTRICTED CONFIDENTIAL — ATTORNEYS' EYES ONLY COMPUTER SOURCE CODE" to anyone other than persons specifically authorized by the Protective Order, and I agree to return all such materials which come into my possession to counsel from whom I received such materials. I also understand that, in the event that I fail to abide by the terms of this Undertaking or the Order, I may be subject to sanctions by way of contempt of court and to separate legal and equitable recourse by the adversely affected Producing Party.

      I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Name of Individual: _____

Company or Firm: _____

Address: _____

Telephone No.: _____

Relationship to this action and its parties: _____

_____

_____

Dated: _____     _____

Signature