IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| IN RE CHANBOND, LLC, PATENT LITIGATION | ) ) ) ) ) ) ) | C.A. No. 15-842 (RGA) CONSOLIDATED  REDACTED -- PUBLIC VERSION |

## DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR RENEWED MOTION TO STAY

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Jennifer Ying (#5550)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
jying@mnat.com

*Attorneys for Defendants*

OF COUNSEL:

Michael L. Brody
Jonathan E. Retsky
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, IL  60601
(312) 558-5600

Krishnan Padmanabhan
Anup K. Misra
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY  10166-4193
(212) 294-6700

James C. Lin
WINSTON & STRAWN LLP
275 Middlefield Road
Menlo Park, CA  94025
(650) 858-6500

Original Filing Date:  April 19, 2018
Redacted Filing Date:  April 26, 2018

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION AND SUMMARY OF THE ARGUMENT ........................................ 1

II.    NATURE AND STAGE OF THE PROCEEDINGS ......................................................... 2

III.   ARGUMENT ....................................................................................................................... 3

     1.      The PTAB's Final Written Decision Invalidated All Of The Broadest Asserted Claims .................................................................................................. 4

     2.      Proceeding On The Remaining Claims Creates A Substantial Risk Of Multiple Trials .................................................................................................... 5

     3.      A Stay Of All Claims Avoids The Risk Of Multiple Trials And Does Not Prejudice ChanBond ................................................................................. 6

           (a)      Granting A Stay Will Simplify The Issues Between The Parties .................................................................................................. 7

           (b)      The Status Of The Litigations Favors A Stay .............................. 10

           (c)      ChanBond Cannot Claim Prejudice ............................................. 12

IV.   CONCLUSION .................................................................................................................. 12

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bonutti Skeletal Innovations, L.L.C. v. Zimmer Holdings, Inc.*,
C.A. No. 12-1107 (GMS), 2014 WL 1369721 (D. Del. Apr. 7, 2014) ................................8, 11

*Callwave Commc'ns v. AT&T Mobility, LLC*,
C.A. No. 12-1701-RGA, 2015 WL 1284203 (D. Del. Mar. 18, 2015) .......................................3

*Exmark Manufacturing Company Inc. v. Briggs & Stratton Power Products Group, LLC*,
879 F.3d 1332 (Fed. Cir. 2018) ................................................................................................8

*Greatbatch Ltd. v. AVX Corp. et al.*,
C.A. No. 13-723-LPS, 2018 WL 1568872 (D. Del. Mar. 30, 2018).............................5, 6, 7, 8

*LG Elecs., Inc. v. Toshiba Samsung Storage Tech. Korea Corp.*,
C.A. No. 12-1063-LPS-CJB, 2015 WL 8674901 (D. Del. Dec. 11, 2015)..........................9, 10

*MiiCs & Partners, America, Inc. v. Toshiba Corp.*,
C.A. No. 15-803-RGA, 2015 WL 9854845 (D. Del. Aug. 11, 2015) ........................................3

*Princeton Dig. Image Corp. v. Konami Dig. Entm't, Inc.*,
C.A. Nos. 12-1461-LPS-CJB, 13-335-LPS-CJB,
2015 WL 219019 (D. Del. Jan. 14, 2015) ................................................................................10

*Princeton Dig. v. Image Corp. v. Konami Dig. Entm't Inc.*,
C.A. No. 12-1461-LPS, 2014 WL 3819458 (D. Del. Jan. 15, 2015) .........................................3

*TVIIM, LLC v. McAfee, Inc.*,
851 F.3d 1356 (Fed. Cir. 2017) ...............................................................................................10

*Verinata Health, Inc. v. Ariosa Diagnostics, Inc.*,
C.A. No. 12-cv-05501-SI, 2015 WL 435457 (N.D. Cal. Feb. 2, 2015) .....................................9

*VirnetX, Inc. v. Cisco System, Inc.*,
767 F.3d 1308 (Fed. Cir. 2014) .................................................................................................8

*Walker Digital, LLC v. Google, Inc.*,
C.A. No. 11–309–SLR, 2013 U.S. Dist. LEXIS 52176 (D.Del. Apr. 11, 2013)........................8

## I.     INTRODUCTION AND SUMMARY OF THE ARGUMENT

Pursuant to the Court's December 1, 2016 Oral Order (*see, e.g.,* C.A. No. 15-842, D.I. 81),[1] Defendants respectfully renew their request for a stay of the present litigations, against nine separate defendant groups, pending resolution of ChanBond's appeal of the Patent Trial and Appeal Board's ("PTAB") final written decision ("the Final Written Decision") invalidating numerous claims ("the Invalidated Claims") of the '822 patent, including the broadest claims at issue in these cases. *See Cisco Systems, Inc. v. ChanBond LLC,* PTAB Final Written Decision, IPR2016-01744 at 52 (Paper 28) (February 23, 2018) (Ex. A).[2]

ChanBond asserts eighteen claims across three patents that share a common specification —the '822, '679, and '565 patents. *See* Fourth Amended Identification of Asserted Claims (Ex. B). Proceeding to trial for the nine defendant groups on all the asserted claims (including the Invalidated Claims) will almost undoubtedly result in multiple re-trials. If ChanBond prevails at trial on one or more Invalidated Claims and one or more claims not addressed by the Final Written Decision, *i.e.*, the "Remaining Claims," and the Federal Circuit later affirms the PTAB's invalidity ruling, the damages issues (and possibly other issues) would need to be re-tried because damages attributable to the Invalidated Claims are different from damages attributable solely to the Remaining Claims. This would be an extreme waste of both the Court's and the parties' resources.

Recognizing this, ChanBond has agreed to stay the Invalidated Claims, but wants to proceed on the Remaining Claims. *See* Whitman Email, Mar. 1, 2018 (Ex. C). A partial stay,

---

[1] Unless otherwise noted, all docket citations are to C.A. No. 15-842.

[2] "Ex. __" refers to the corresponding exhibit attached to the Declaration of A. Misra, filed concurrently herewith.

however, will also require multiple trials *regardless* of whether the Federal Circuit affirms or overturns the Final Written Decision. These multiple trials will require the same witnesses testifying about the same technology, as well as evaluation of similar claims supported by the same specification.

On one hand, if the Federal Circuit affirms the PTAB's Final Written Decision, the Invalidated Claims will be in the public domain. If the affirmance occurs after a trial on the Remaining Claims, Defendants would be entitled to retrials so that they could present a key non-infringing alternative—the ability to practice those Invalidated Claims.[3] Alternatively, if the Federal Circuit overturns the Final Written Decision, a second trial for each Defendant will be necessary to address the resuscitated claims.

The sensible only solution is to stay the entirety of these cases pending the Federal Circuit's ruling. ChanBond will suffer no prejudice from a stay. As a non-practicing entity, ChanBond will be made whole by monetary damages, whether granted now or later.

## II.   NATURE AND STAGE OF THE PROCEEDINGS

ChanBond filed these lawsuits on September 21, 2015 against thirteen different defendants.[4] Defendants initially moved to stay in October 2016. *See, e.g.*, D.I. 70. The Court

---

[3]   Of course, this risk would be eliminated if ChanBond concedes that the Invalidated Claims are, in fact, invalid for purposes of trying the Remaining Claims, and allows Defendants and their experts to address the Invalidated Claims as non-infringing alternatives. ChanBond could have achieved the same effect by declining to pursue the Invalidated Claims, thus allowing the PTAB's Final Written Decision to stand as the final word on the validity of those claims. But ChanBond has explicitly declined to drop those claims or forego its appeal of the PTAB's Final Written Decision.

[4]   ChanBond initially filed thirteen separate lawsuits against thirteen different cable companies, but since the filing of these lawsuits, Charter Communications, Inc. acquired Time Warner Cable Inc. and Bright House Networks, LLC; Altice USA, Inc. acquired Cablevision Systems Corp./CSC Holdings, LLC and Cequel Communications Holdings I, LLC/Cequel Communications, LLC d/b/a Suddenlink Communications; and RCN Telecom Services, LLC and WaveDivision Holdings, LLC were acquired by TPG Capital.

denied Defendants' motion, but invited Defendants to renew their motion after the PTAB decided whether to institute IPR proceedings with respect to the patents-in-suit.   D.I. 81.[5] Defendants have now moved to renew their motion to stay.[6]

## III.   ARGUMENT

District courts, through their inherent power to manage their own dockets, have the discretion to stay litigation pending IPR.   *See Princeton Digital v. Image Corp. v. Konami Digital Entm't Inc.*, C.A. No. 12-1461-LPS, 2014 WL 3819458, at *2 (D. Del. Jan. 15, 2015) (granting motion to stay pending IPR) (internal citations omitted).   This court weighs three factors in determining whether to grant a motion to stay:   "(1) whether granting the stay will simplify the issues for trial; (2) whether discovery is complete and a trial date is set; and (3) whether granting a stay would cause the non-moving party to suffer undue prejudice from any delay, or a clear tactical disadvantage."   *MiiCs & Partners, America, Inc. v. Toshiba Corp.*, C.A. No. 15-803-RGA, 2015 WL 9854845, *1 (D. Del. Aug. 11, 2015); *see also Callwave Commc'ns v. AT&T Mobility, LLC*, C.A. No. 12-1701-RGA, 2015 WL 1284203, at *1 (D. Del. Mar. 18, 2015).

All three factors weigh in favor of staying these actions.   First, a stay will simplify the issues to be litigated; if the Federal Circuit affirms the PTAB's decision of invalidity, both infringement and damages will be greatly simplified.   Second, despite being filed more than two

---

[5]   The December 1, 2016 Oral Order refers to renewing the motion to stay by "letter request."   D.I. 81.   ChanBond, however, refused to agree to an abbreviated letter briefing schedule and insisted that the parties follow the Court's normal motion briefing procedure.   *See* Whitman Email, April 16, 2018 (Ex. J).

[6]   ARRIS Group also filed several petitions for *inter partes* review of the patents-in-suit on February 2, 2018.   The PTAB's decision on whether to institute review on those petitions will be issued by September 2018.

years ago, these cases remain in the early stages of litigation.  Fact discovery is still ongoing, and there is no trial date.  Finally, ChanBond is not a direct competitor of the Defendants, and any harm suffered as a result of a stay can be fully compensated in the form of monetary damages.

### 1.   The PTAB's Final Written Decision Invalidated All Of The Broadest Asserted Claims

The PTAB issued a final written decision on February 23, 2018 invalidating the five broadest asserted claims—'822 patent claims 1, 6, 19, 20, and 23.  Ex. A at 52.  A table listing the asserted claims, with the invalidated claims shown in bold, is provided below for reference.

| Patent | Asserted Independent Claims | Asserted Dependent Claims |
|---|---|---|
| '822 | **1, 19** | **6**, 14, **20, 29** |
| '679 | 12 | 13-14, 26, 27, 36-40 |
| '565 | 1 | 11 |

The claims not addressed by the Final Written Decision (*i.e.*, the Remaining Claims) all add further limitations to the invalidated claims of the '822 patent, and are directed to narrower inventions.  The Invalidated Claims of the '822 patent were asserted against "channel bonding" used by many cable modems and cable modem termination systems in Defendants' networks. The Remaining Claims, however, are asserted against "channel bonding" combined with various features.  The only remaining claim of the '822 patent—claim 14—is asserted against cable modems that must perform both "channel bonding" *and* support wireless networking.  *See e.g.,* ChanBond's Second Supp. Preliminary Infringement Contentions, dated Jan. 5, 2018, Ex. 3 at 47-55 (claim 14 is dependent upon claim 13) (Ex. D).  The remaining claims of the '679 and '565 patents are asserted against cable modems and cable modem termination systems that use "channel bonding" when particular device conditions are determined—"when the traffic

information indicates that the information throughput of the digital information exceeds an information capacity of a single RF channel." *See e.g.,* ChanBond's Third Supp. Preliminary Infringement Contentions, dated Jan. 24, 2018, Ex. 4 at 67 (Ex. E); *see also* Ex. 5 at 41-42 (Ex. F), Ex. 6 at 71-72 (Ex. G).   The '679 and '565 patents also issued 19 and 46 months after issuance of the '822 and therefore cover a shorter damages period.

## 2. Proceeding On The Remaining Claims Creates A Substantial Risk Of Multiple Trials

ChanBond's proposal of staying only the Invalidated Claims, and proceeding to trial on the Remaining Claims, is a recipe bound to produce multiple trials regardless of how the Federal Circuit rules.

In the event the Federal Circuit affirms the PTAB's ruling, a partial stay would leave Defendants severely prejudiced.   This scenario will likely deprive Defendants of the ability to argue that practicing the Invalidated Claims constitutes a noninfringing alternative that reduces any damages award for the Remaining Claims.   The only way to cure that prejudice is through retrial on the issue of damages.

Indeed, the recent *Greatbatch* case highlights the challenges that may arise should a stay not be granted.   *See Greatbatch Ltd. v. AVX Corp. et al.*, C.A. No. 13-723-LPS, 2018 WL 1568872, at *3-5 (D. Del. Mar. 30, 2018).   There, the case was tried to the jury while there was an outstanding appeal pending as to the patentability of certain asserted claims stemming from an IPR challenge.   Consequently, defendant AVX Corp. was unable to present evidence of non-infringing alternatives to the jury, because at the time of the trial in 2016, the Federal Circuit had not yet confirmed the PTAB's decision that certain asserted claims were invalid.   *Id.* at *3. Ultimately, the district court granted a new trial on damages because the existence of a noninfringing alternative--made possible by the post-trial invalidation of claims covering the

same technology—was "a fact question that should be decided by a jury, which necessitates a retrial of damages." *Id.* at *4. Here, a stay is necessary to avoid a similar outcome.

Furthermore, proceeding on the Remaining Claims alone (as ChanBond has proposed) would prejudice Defendants' invalidity defense. ChanBond alleges that the Invalidated Claims address the basic function of channel bonding. If the Federal Circuit affirms the PTAB's Final Written Decision, the question of whether "channel bonding" was known in the art will also be resolved. Proceeding to trial without the Federal Circuit's guidance, however, will deprive Defendants the opportunity to argue that channel bonding has already been determined as known in the prior art, and that the Remaining Claims are nothing but obvious variations of those known techniques.

And, if the Federal Circuit reverses or modifies the PTAB's Final Written Decision, this creates the risk of a second round of trials to address any resuscitated claims, or to address any binding guidance from the Federal Circuit.

Proceeding in any fashion at this juncture is a recipe for wasteful litigation, compromised verdicts, multiple appeals, and potential retrials. A stay of the entirety of these cases will avoid these complexities, and allow the parties to move forward on a single set of presumptively valid claims.

### 3.        A Stay Of All Claims Avoids The Risk Of Multiple Trials And Does Not Prejudice ChanBond

Staying the litigations is the only way to avoid the risk of multiple trials or damages awards that this Court will need to vacate and retry as explained above. In addition, after the appeal is resolved, the parties will have the benefit of the Federal Circuit's construction on the

term "channel"[7] and a final determination of which claims in the '822 patent are invalid that will allow the Court and the parties to move forward with expert discovery, summary judgment, and trial on a single set of claims.  Given these benefits, and that each of the stay factors is satisfied, as discussed below, a complete stay is appropriate.

#### (a) Granting A Stay Will Simplify The Issues Between The Parties

Staying these cases until the Federal Circuit's review of the Final Written Decision will undoubtedly simplify—in fact, eliminate—issues in these cases.  The Federal Circuit appeal will determine whether the broadest claims at-issue, each of which are asserted against a baseline feature of Defendants' high-speed data networks known as "channel bonding," are valid.  In contrast, the Remaining Claims are accused against minor additions to this "channel bonding" functionality – *e.g.*, a channel bonding device that also has wireless capability and combines data in a certain manner ('822 patent claim 14), and channel bonding that allegedly occurs only when "information throughput exceeds an information capacity of a single RF channel" ('679 patent all claims, '565 patent all claims).  *See* Ex. D at 53 (ChanBond's allegations for claim 14 is against "Defendants' *wireless CMs*"); Ex. F at 41 (ChanBond's contention for claim 12 states "at least two upstream RF channels" will be used "when the traffic information, contained in the Queue-depth Based Request Frame indicates that the information throughput of the digital information exceeds an information capacity of a single upstream RF channel.").  A stay will simplify these cases by allowing the parties to set forth a single, legally defensible damages theory that allows Defendants to assert essential noninfringing alternatives – the simple method

---

[7]     At the time of the *Markman* proceedings in this case, the parties had not identified the term "channel" for construction.  *See* D.I. 59, Ex. 1 & D.I. 89.

of channel bonding against which the broad '822 claims were accused.  *See Greatbatch Ltd.*, 2018 WL 1568872, *3-5.

In addition, because the Remaining Claims are built upon, and provide only minor additions to, the channel bonding claimed in the Invalidated Claims, a stay will allow the parties to properly apportion damages, as required by Federal Circuit jurisprudence.  *See VirnetX, Inc. v. Cisco System, Inc.*, 767 F.3d 1308, 1326 (Fed. Cir. 2014).  If the baseline feature of Channel Bonding taught by the Invalidated Claims is "Feature A," then the Remaining Claims do nothing more than make minor additions to those claims (*i.e.* "Feature A + Feature B").  ChanBond cannot claim the value of both Feature A and Feature B for the Remaining Claims, and defendants must be allowed to present evidence on those features that existed in the prior art, and are therefore not attributable to ChanBond's claimed invention.  *Exmark Manufacturing Company Inc. v. Briggs & Stratton Power Products Group, LLC,* 879 F.3d 1332, 1351-52 (Fed. Cir. 2018) (finding district court committed error by excluding accused infringer's evidence of prior art demonstrating that aspects of the claimed invention were in the prior art, as that evidence is relevant to Georgia Pacific Factor 9).

Simply put, if the Federal Circuit affirms the Final Written Decision, then ChanBond's damages theory must be directed to Feature B, *i.e.*, the minor additions to the Invalidated Claims. Without accounting for the actual contribution of the invention, and what existed in the prior art, the Court again risks the possibility of a retrial on damages issues.  *See Greatbatch*, 2018 WL 1568872, at *5.  This is an unnecessary risk, especially when monetary compensation is sufficient to make ChanBond whole from any alleged infringement, whether received now, or after a stay.  *See Bonutti Skeletal Innovations, L.L.C. v. Zimmer Holdings, Inc.*, C.A. No. 12-CV-1107 (GMS), 2014 WL 1369721, at *4 (D. Del. Apr. 7, 2014) ("[B]ecause [the plaintiff] is a

non-practicing entity, any prejudice that may result from a stay can be remedied by monetary damages." (*quoting Walker Digital, LLC v. Google, Inc.*, C.A. No. 11–309–SLR, 2013 U.S. Dist. LEXIS 52176, at *7 (D. Del. Apr. 11, 2013))).

Furthermore, courts have recognized that "regardless of whether the appellate court affirms or reverses the PTAB's decision, its analysis could provide greater clarity as to claim construction-related or invalidity-related issues that might arise in this case." *LG Elecs., Inc. v. Toshiba Samsung Storage Tech. Korea Corp.*, C.A. No. 12-1063-LPS-CJB, 2015 WL 8674901, at *3 (D. Del. Dec. 11, 2015) (citing *Verinata Health, Inc. v. Ariosa Diagnostics, Inc*., C.A. No. 12-cv-05501-SI, 2015 WL 435457, at *3 (N.D. Cal. Feb. 2, 2015)). The lynchpin of ChanBond's appeal is an argument that the term "channel" should be construed by the PTAB in the same manner as "RF channel." *See Cisco Systems, Inc. v. ChanBond LLC,* Patent Owner's Response to Petition for *Inter Partes* Review, IPR2016-01744 at 7, 26-27 (Paper 13) (May 17, 2017) (Ex. H) (ChanBond argued "[t]he term 'channel' should be construed as 'frequency band.' As the Board found in related proceedings, the broadest reasonable interpretation of the closely related term 'RF channel' is limited to frequency bands."). ChanBond relied on its proposed construction, unsuccessfully, to distinguish its patent claims from the prior art during the Cisco IPR proceedings. *See Cisco Systems, Inc. v. ChanBond LLC,* Oral Hearing Tr., IPR2016-01744 at 18:18-26 (Paper 27) (Ex. I).

It is clear that the Federal Circuit's opinion on the PTAB's construction of "channel" will have a direct impact on validity. If the PTAB's decision is affirmed, the concept of channel bonding, and the majority of limitations required to invalidate claim 14 (found in claim 1) will be verified as existing in the prior art. And if the PTAB's decision is overturned, then the parties have to deal with the validity on the revived claims. However, the parties' positions on

infringement are also impacted by the Federal Circuit's decision.  If "channel" is construed as ChanBond proposed ("RF channel") before the PTAB, then many of Defendants' cable modems cannot infringe because they use "full band capture" technology, which, *inter alia*, does not demodulate "RF channels."   ChanBond has never addressed this noninfringement issue, and presumably would be forced to grapple with it, if the Federal Circuit agrees with their proposed construction of "channel" before the PTAB.   But at present, ChanBond appears to be impermissibly pursuing alternative interpretations of "channel" for infringement ("channel" broader than "RF channel") and invalidity ("channel" limited to "RF channel") purposes.  *See TVIIM, LLC v. McAfee, Inc.*, 851 F.3d 1356, 1362 (Fed. Cir. 2017) ("Claim terms must be construed the same way for the purpose of determining invalidity and infringement.") (citation omitted).  Similarly, numerous of ChanBond's infringement contentions rely on alleged positions taken by Cisco's expert during IPR proceedings.  *See, e.g.*, Ex. D at 26, 40, 52, 54, 81, 97, 111 (stating "Defendants have conceded" various points regarding "demodulating" and "combining," and citing to testimony of Cisco's expert in the IPR proceedings).  Scrutiny of those positions in ChanBond's appeal, and the Federal Circuit's opinion on the correctness of those positions, will directly impact ChanBond's own infringement case.  In situations like the present, when the Federal Circuit's opinion will decide not only issues of invalidity, but impact the infringement analysis as well, a stay is certainly appropriate.  *See LG Elecs., Inc.* 2015 WL 8674901, at *3 (citing *Princeton Dig. Image Corp. v. Konami Dig. Entm't, Inc.*, C.A. Nos. 12-1461-LPS-CJB, 13-335-LPS-CJB, 2015 WL 219019, at *3 (D. Del. Jan. 14, 2015)).

Thus, the first factor weighs in favor of granting a stay.

### (b)    The Status Of The Litigations Favors A Stay

Although these cases have been long pending, the first depositions did not take place until January 8, 2018.  The parties have stipulated to no fewer than five schedule extensions and

have previously stipulated to stay the case pending *inter partes* review results. *See* D.I. 42, 113, 142, 180, 223 (stipulated schedule extensions); *see also* D.I. 103 (stipulated stay pending IPR results). And while there is ostensibly only two weeks remaining in fact discovery, the parties are still exchanging written discovery, as well as supplemental infringement and invalidity contentions. Expert discovery has not started, and no trial date, summary judgment hearing date, or trial scheduling conference date has been set. In short, there is much work ahead of the parties and the Court, and there is no clear timeline for the parties' dispute to be tried.

In addition, it is unlikely the parties will complete discovery in the time allotted. The parties are presently embroiled in a dispute regarding documents that were improperly withheld, or clawed back, on the basis of privilege.[8] Defendants contend that any privilege has been waived, based on Plaintiff's selective production of materials covering the same subject matter. In addition, witnesses have claimed privilege and declined to provide testimony on factual matters to which the attorney-client privilege does not apply. And Plaintiff's privilege log requires significant updating so that Defendants can properly investigate Plaintiff's privilege claims. Defendants expect that this dispute will require the Court's intervention and that several of the previously deposed witnesses will need to sit for deposition a second time to address clawed back documents, or to investigate ChanBond's new claims of privilege. Simply put, there is much left to be done.

This factor also weighs in favor of a stay.

---

[8]     The parties' letter briefing on this dispute is due on April 30, 2018 and May 3, 2018, respectively.

(c)      **ChanBond Cannot Claim Prejudice**

ChanBond is a non-practicing entity.  As such, monetary damages will make ChanBond whole, whether they come now or later.[9]  *See Bonutti*, 2014 WL 1369721, at *4.  This factor also favors stay.

## IV.    CONCLUSION

Based on the above, Defendants' respectfully request that the Court grant their renewed motion to stay the present litigations pending ChanBond's appeal of the Cisco 1744 IPR to the Federal Circuit.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jennifer Ying*
Jack B. Blumenfeld (#1014)
Jennifer Ying (#5550)
1201 North Market Street
P.O. Box 1347
OF COUNSEL:                              Wilmington, DE  19899
                                          (302) 658-9200
Michael L. Brody                         jblumenfeld@mnat.com
Jonathan E. Retsky                       jying@mnat.com
WINSTON & STRAWN LLP
35 West Wacker Drive                     *Attorneys for Defendants*
Chicago, IL  60601
(312) 558-5600

---

[9]      In fact, it appears that ChanBond contemplated the potential for an *inter partes* review and protected itself from financial obligations during the pendency of any such proceeding.

Krishnan Padmanabhan
Anup K. Misra
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY  10166-4193
(212) 294-6700

James C. Lin
WINSTON & STRAWN LLP
275 Middlefield Road
Menlo Park, CA  94025
(650) 858-6500

April 19, 2018

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 19, 2018, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on April 19, 2018, upon the following in the manner indicated:

Richard D. Kirk, Esquire                           *VIA ELECTRONIC MAIL*
Stephen B. Brauerman, Esquire
Sara E. Bussiere, Esquire
BAYARD, P.A.
600 North King Street, Suite 400
Wilmington, DE  19801
*Attorneys for Plaintiff*

Mark Raskin, Esquire                               *VIA ELECTRONIC MAIL*
Robert Whitman, Esquire
John F. Petrsoric, Esquire
Michael S. DeVincenzo, Esquire
Lana Milojevic, Esquire
Andrea Pacelli, Esquire
Eric P. Berger, Esquire
Charles Wizenfeld, Esquire
MISHCON DE REYA NEW YORK LLP
156 Fifth Avenue, Suite 904
New York, NY  10010
*Attorneys for Plaintiff*

*/s/ Jennifer Ying*
_____
Jennifer Ying (#5550)