# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **IN RE CHANBOND, LLC PATENT LITIGATION** | C.A. No. 15-842-RGA<br><br>CONSOLIDATED |

## PLAINTIFF CHANBOND LLC'S CORRECTED ANSWERING BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO STAY

Date: May 10, 2018

*Of Counsel*:

Robert A. Whitman *(pro hac vice)*
Mark S. Raskin *(pro hac vice)*
John F. Petrsoric *(pro hac vice)*
**MISHCON DE REYA NEW YORK LLP**
156 Fifth Avenue, suite 904
New York, New York 10010
(212) 612-3270
robert.whitman@mishcon.com
mark.raskin@mishcon.com
john.petrsoric@mishcon.com

**BAYARD, P.A.**

Stephen Brauerman (sb4952)
Sara E. Bussiere (sb5725)
600 N. King Street, Suite 400
Wilmington, Delaware 19801
(302) 655-5000
sbrauerman@bayardlaw.com
sbussiere@bayardlaw.com

*Counsel for Plaintiff*
*ChanBond, LLC*

**Table of Contents**

| | | |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | THE STAGE OF THE CASE WEIGHS AGAINST A STAY | 2 |
| III. | A STAY WILL NOT SIMPLIFY THE ISSUES | 3 |
| | A. The Accused Products Are The Same Across All Asserted Claims | 3 |
| | B. Defendants' Motion is Without Precedent | 8 |
| | C. The Federal Circuit's Decision Will not Simplify the Issues | 13 |
| IV. | A STAY WILL PREJUDICE CHANBOND AND PROVIDE DEFENDANTS WITH AN UNFAIR TACTICAL ADVANTAGE | 14 |
| V. | CONCLUSION | 15 |

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Foundation Medicine, Inc. v. Guardant Health, Inc.*, C.A. No. 17-807-LPS-CJB, 2018 WL
    950261 (D. Del. Feb. 15, 2018) ..................................................................................3

*Greatbatch Ltd. V. AVX Corp.*,
    C.A. No. 13-723-LPS, 2018 WL 1568872 (D. Del. March 30, 2018).....................9, 10, 11, 12

*Plastic Omnium Advanced Innovation and Research v. Donghee Am., Inc.*,
    Civil Action No. 1-16-cv-00187, Oral Order on Defendants' Renewed Motion for a Stay
    Pending Resolution of Various ..........................................................................................11, 12

*Yodlee Inc. v. Plaid Techs. Inc.*,
    Civil Action No. 14–1445–LPS–CJB, (D.I. 312 at 9–10) (D. Del. Nov. 16, 2016)...................3

## I. INTRODUCTION

Defendants' motion is without precedent. If Defendants' position was correct (it is not), every time *any* patent claim is found invalid for *any* reason before trial (*e.g.*, via summary judgment, re-examination, etc.), then the entire case should be stayed until a final determination, including appeals, is made as to the validity of that claim. That, of course, is not the law.

Defendants purport that, absent a stay, they will be deprived of arguing a non-infringing alternative. Fact discovery, however, has not yet closed and expert discovery has yet to start. Defendants thus have ample opportunity to argue any non-infringing alternative they wish; they are deprived of nothing. If Defendants believe that the invalidation of the claims provides them with a non-infringing alternative, they can certainly include such an argument in their expert reports.

In addition, by September 2016, Defendants and their allies had already filed nine petitions for *inter partes* review ("IPR") of the asserted patents, three per asserted patent, seeking to invalidate 53 different claims. In October 2016, Defendants moved for a stay (D.I. 70) in view of the IPR petitions. Defendants argued then that "[e]ach of th[e asserted] claims stands challenged in a series of IPR petitions . . . the PTAB will decide whether to institute these IPR petitions by March 28, 2017 (less than six months from now), and issue final written decisions no later than March 28, 2018." (D.I. 71.00 at 1.) The Court denied Defendants' stay request "without prejudice to renew by letter request after March, 28, 2017." (D.I. 81.)

Defendants, however, did not move for a stay in March 2017 because their IPRs failed. The PTAB ultimately rejected eight of the nine petitions and thus upheld, or left unchallenged, the vast majority of the claims, finding that there was no reasonable likelihood of the vast majority of all claims being invalidated, including the majority of the claims being asserted in this case. The end result of Defendants' massive IPR attack was that the PTAB found in

February 2018, eight weeks before Defendants filed the present stay motion, that a handful of claims of U.S. Patent No. 7,941,822 (the "'822 Patent") were invalid as obvious in view of a combination of multiple references, but the PTAB rejected the invalidity challenge as to asserted claim 14 of the '822 Patent. Defendants also did not move for a stay in February 2018. Instead, they delayed almost two additional months before filing the instant motion. Defendants characterize their present motion as a "renewed" motion to stay, when it is not.

Since the PTAB's obviousness decision concerning the '822 Patent was directed to just five of the eighteen asserted claims in this case – the PTAB having upheld, or left unchallenged, every other asserted claim – a stay would not simplify the issues in this case. To the contrary, the PTAB's decisions show that the remaining asserted claims are ready to be tried.

This case has been pending for over 30 months. The parties have taken almost 40 fact depositions. The Court construed the asserted claims in December 2016. Fact discovery is almost closed (and would be closed but for ChanBond agreeing in the spirit of compromise to Defendants' recent requests to extend discovery), and the pre-trial conference is scheduled for October 2018. In view of the late stage of this case, and the PTAB's decision denying challenges to the majority of the asserted claims, it would be highly prejudicial to ChanBond to delay trial and doing so would provide an unfair tactical advantage to Defendants.

## II. THE STAGE OF THE CASE WEIGHS AGAINST A STAY

ChanBond filed the complaints in this action in September 2015, alleging that thirteen cable Internet providers infringe, in addition to the '822 Patent, U.S. Patent Nos. 8,341,679 (the "'679 Patent") and 8,984,565 (the "'565 Patent"). The three patents share the same specification and claim priority to a single application. Pursuant to the Court's scheduling order (D.I. 114), ChanBond has reduced the number of asserted claims to eighteen – six from the '822 Patent, ten from the '679 Patent and two from the '565 Patent. The Court issued its claim construction

decision in December 2016. (D.I. 86.) Fact discovery is currently scheduled to close on June 1, 2018. Opening expert reports are due on July 2, 2018. The pre-trial conference is currently scheduled for October 31, 2018.

To date, the parties have taken almost 40 fact depositions. Between the February 23, 2018 issuance of the PTAB's Final Written Decision and Defendants' April 19, 2018 delayed filing of its stay motion, the parties took about 20 fact depositions.

As the Court may recall, the three named inventors are advanced in age (76, 74 and 68). As a result, the Court's scheduling order (issued more than two years ago) restricted the inventors' depositions to a maximum of five hours per day. (D.I. 14 at 6.) It would be unfair to the inventors, and evidence may be lost, if the trial in the case is stayed pending appeal of the PTAB's decision.

The late stage of this litigation thus weighs heavily against a stay. *See, e.g., Foundation Medicine, Inc. v. Guardant Health, Inc.*, C.A. No. 17-807-LPS-CJB, 2018 WL 950261 at *2 (D. Del. Feb. 15, 2018) (citing *Yodlee Inc. v. Plaid Techs. Inc.*, Civil Action No. 14–1445–LPS–CJB, (D.I. 312 at 9–10) (D. Del. Nov. 16, 2016)) (finding that the "status of the litigation" factor disfavored a stay where extensive fact discovery had been completed, fact discovery was to close in a month, and the claim construction process had concluded).

### III. A STAY WILL NOT SIMPLIFY THE ISSUES

#### A. The Accused PRODUCTS ARE THE SAME ACROSS ALL ASSERTED CLAIMS

The accused products in this case are Defendants' cable modems and cable modem termination systems (CMTSs) that comply with the DOCSIS 3.0 Industry Standard. The same products are accused across all three patents and all claims. ChanBond's operative Rule 4(c) Initial Claim Charts, for every patent and every asserted claim, allege:

> The contentions . . . apply to all cable modems [or cable modem termination systems (CMTSs)] that are compatible with, or purport to be compatible with, the Data Over

3

Cable Service Interface Specification (DOCSIS) version 3.0 (DOCSIS 3.0 compatible), that were made, used, sold, offered for sale, rented or leased by each defendant in the United States, or imported into the United States by each defendant . . . .

Defendants generally source these accused products from suppliers Cisco Systems, Inc. and ARRIS Group, Inc. Since all Defendants generally use the same accused products and are represented by the same counsel, ChanBond believes that a single trial against all Defendants is appropriate. (*See, e.g.*, D.I. 112.01 at 2 ("Plaintiff to include proposal [in pre-trial scheduling conference status report] proposal regarding trial consolidation at least in view of identical accused products and common factual questions across defendants, per 35 U.S.C. § 299.").)

Some Defendants are members of RPX Corporation ("RPX"), a company that purports to be a "network" to "prevent or end litigation." *See* https://www.rpxcorp.com/. In November 2015, three months after the Complaints were filed, RPX filed a petition before the U.S. Patent Trial Appeal Board ("PTAB") seeking *inter partes* review of all thirty-one '822 patent claims. In September 2016, Cisco Systems, Inc. ("Cisco"), a supplier of networking equipment to Defendants, filed eight petitions before the PTAB, two seeking *inter partes* review of ten '822 Patent claims, three seeking *inter partes* review of twelve '679 Patent claims, and three seeking *inter partes* review of ten '565 Patent claims. Overall, the nine RPX and Cisco petitions challenged 53 claims from the three asserted patents. Notably, Cisco listed all of the Defendants in this case as real parties in interest for each of its IPR petitions.

In October 2016, Defendants moved for a stay of the litigation in view of the pending IPR petitions (D.I. 70). At that time, the RPX IPR had been instituted, but the Cisco IPRs were still awaiting institution decision. The Court denied Defendants' stay request "without prejudice to renew by letter request after March, 28, 2017." (D.I. 81.) March 28, 2017 was the date the PTAB would decide whether or not to institute Cisco's IPR proceedings. However, by that date,

4

the PTAB had denied institution of seven of the eight Cisco IPR petitions. Thus, the PTAB ultimately instituted IPR proceedings on the RPX petition and one of Cisco's petitions, which was directed to some (but not all) of the '822 Patent claims. In view of the PTAB's adverse institution decisions, Defendants never renewed their stay motion.

On May 25, 2017, the PTAB entered its Final Written Decision in the RPX IPR, finding that "claims 1-31 of the '822 patent are not held unpatentable." On February 23, 2018, the PTAB entered its Final Written Decision in the Cisco '822 Patent IPR, finding eight of the thirty-one '822 Patent claims unpatentable as obvious over a combination of multiple references. Of those eight claims of the '822 Patent, five are asserted in this case. The remaining asserted claim from the '822 Patent, claim 14, was expressly upheld in the RPX IPR proceeding and denied institution in the Cisco IPRs.

In instituting IPR proceedings on the '822 Patent but not the '679 and '565 Patents, the PTAB noted that the '679 and '565 Patents claim "RF [radio frequency] channels" whereas the '822 Patent claims "channels." ChanBond argued to the PTAB that all three patents were identical in this respect, namely that "channel" and "RF channel" both meant RF channel in the context of the intrinsic evidence. Under the broadest reasonable claim interpretation standard, and over ChanBond's objection, the PTAB nevertheless determined that the '822's claimed "channel" could be something other than an "RF channel:"

> Central to our decision not to institute *inter partes* review in the proceedings concerning the '679 and '565 patents was our interpretation of the claim term 'RF channel'—a term that does not appear in the challenged claims of the '822 patent . . . . [W]e conclude that an ordinarily skilled artisan would have appreciated that the broadest reasonable interpretation of the term 'channel' as it is used in the '822 patent is 'a path for transmitting electric signals.'

5

(IPR2016-01744 Feb. 23, 2018 Final Written Decision at 6, 24.) ChanBond is currently appealing the PTAB's decision on this exact claim construction issue, namely that it is not a reasonable construction even under the PTAB's broadest reasonable interpretation standard.

Critically, however, the DOCSIS 3.0 Standard requires RF channels for compliance. *See, e.g.*, Data-Over-Cable Service Interface Specifications DOCSIS® 3.0 MAC and Upper Layer Protocols Specification, CM-SP-MULPIv3.0-129-151210, CableLabs, Dec. 10, 2015, at 55 "Each downstream channel in the set is a 6MHz or 8MHz (depending on region) MPEG transport channel. . . .") Moreover, in this litigation (and before the PTAB) ChanBond has always construed and applied every claim consistently such that all claims, '822 Patent claims included, recited and required RF channels. As a result, the PTAB's decision regarding some of the '822 Patent claims changed nothing *vis-à-vis* non-infringing alternatives. Since day one, Defendants have always been free to not practice the DOCSIS 3.0 Standard and/or to not use RF channels.

Defendants note that the parties did not propose the term "channel" for construction but then confusingly purport that it would be helpful to await the Federal Circuit's construction of the term. (D.I. at 7) Putting aside that the PTAB applied a different claim construction standard (broadest reasonable interpretation), the parties did not propose the term "channel" for construction because its construction is irrelevant to this case. All accused products use one type of channel, an RF channel, as per the DOCSIS 3.0 Standard. There are no products accused in this case that use different types of channels. Tellingly, Defendants never explain why it would be helpful to await the Federal Circuit's decision in this regard, because its decision will have no impact on any accused product in this case. Defendants can point to no accused product that employs a channel other than an RF channel.

Defendants' motion sets up an irrelevant straw man, claiming that ChanBond is reading the '822 patent on some undefined "channel bonding" whereas it is purportedly reading the '565 and '679 patents on "'channel bonding' combined with various features." (D.I. 243 at 4.) Defendants' unsupported attorney argument in this regard is belied by ChanBond's Rule 4(c) claim charts. No claim recites channel bonding. Every patent claim is asserted not against "channel bonding" but against products that comport with the DOCSIS 3.0 Standard. ChanBond is not and has never asserted the '822 Patent claims that were at issue in the PTAB decision against a subset of products. The same products are accused across all claims. Defendants can point to no product that is accused of only infringing the '822 patent claims at issue in the PTAB's decision because ChanBond is asserting all claims against the same products, *i.e.*, products that comply with DOCSIS 3.0.

Defendants further argue that some of their products purportedly use "full band capture," which purportedly does not "demodulate 'RF channels,'" as if its motion to stay was actually an expert report. (D.I. 243 at 10.) But Defendants' purported "full band capture" products stand accused of infringing all claims (because they, like all of the accused products, comply with the DOCSIS 3.0 Standard). By definition, such products fail to present a non-infringing alternative because they are accused of infringing all claims. Tellingly, Defendants fail to tie their non-infringing alternative argument to any actual claim because no claim recites or excludes "full band capture" and no claim recites the demodulation of RF channels. Even if they did, since fact discovery has not yet closed and expert discovery has not yet opened, Defendants have full and fair opportunity to argue non-infringing alternatives in this case.

In sum, Defendants have no valid non-infringing alternatives because this case involves three related patents that are all being read on the industry standard, namely DOCSIS version

3.0. All claims are asserted against the same products, *i.e.*, Defendants' cable modems that comply with the DOCSIS 3.0 standard and/or Defendants' cable modem termination systems (CMTSs) that comply with the DOCSIS 3.0 standard. The only non-infringing alternative is for Defendants to cease complying with the standard (which, even if possible, would apply across all patents and claims). Defendants purport that they can now practice the invalidated claims, while also somehow avoiding the asserted, valid claims. Tellingly, Defendants never say how this is possible, because it is not. The same DOCSIS 3.0 products are accused across all claims.

In any event, whether or not Defendants have a valid non-infringing alternative is irrelevant for purposes of deciding this motion. As explained in more detail below, even if Defendants could somehow practice the '822 Patent claims at issue in the PTAB decision without practicing the other asserted claims, Defendants and their experts are free to so argue.

### B. Defendants' Motion is Without Precedent

Defendants argue that if a broad claim is invalidated, (i) this may present a new non-infringing alternative, and (ii) the entire case must therefore be stayed pending final resolution of validity regarding that claim because, otherwise, a defendant would purportedly be unable to argue the new non-infringing alternative in a damages analysis. Defendants are wrong. There is nothing that prevents them from arguing any non-infringing alternative they wish.

First, Defendants' novel proposition cannot be correct. If it was, anytime a broad claim was found invalid, *e.g.*, at summary judgment, every case would have to be stayed for years pending final resolution of that validity determination. Similarly, if a jury issued a verdict wherein it found a broad claim invalid but a dependent claim valid and infringed, Defendants' novel proposition would require that the entire case immediately be stayed pending final determination of that validity determination. If invalidity was upheld on appeal, then, according

8

to Defendants, the entire damages case would have to be retried so that Defendants could set forth a non-infringing alternative. This would be the most inefficient use of judicial and party resources possible. It is not the law.

Defendants' novel proposition is based entirely on Judge Stark's recent decision regarding a motion to set aside a damages verdict and for a new damages trial in *Greatbatch Ltd. V. AVX Corp.*, C.A. No. 13-723-LPS, 2018 WL 1568872 (D. Del. March 30, 2018). *Greatbatch*, however, fails to support Defendants. *Greatbatch* did not involve a stay but instead involved post-trial motions regarding a jury's lost-profits damages award that had awarded a lump sum for infringement of multiple, unrelated patents and diverse products. *Greatbatch Ltd.*, 2018 WL 1568872 at *1.

The damages issue in *Greatbatch* involved four patents, the '095, the '627, the '715 and the '779 (only two of which were related), that were being asserted against three different products, the Frontier, the NG3 and the FFT, with the FFT having "multiple versions." *Id.* at *1. There, the court noted that the case involved "convoluted facts," including that, before a first trial, the court had granted, as a sanction, summary judgment that the FFT products infringed the '715 patent. *Id*. In view of the summary judgment, the court instructed the jury to assume that all FFT products infringed the '715 patent. *Id.* at 4. The jury returned a verdict of infringement and "a lump sum damages award to Greatbatch of $37.5 million for infringement of the '095, '629 'and/or' '715 patents." *Id*. After the first trial, however, the Court vacated its summary judgment that the FFT product infringed the '715 patent, and held a second trial on the issue of whether the FFT products infringed the '715 patent. *Id.* at *1-2. The jury at the second trial concluded that one version of the FFT product (platinum-pin FFTs) did not infringe any claims; whereas second and third versions of the FFT product infringed certain '715 claims. *Id.* at *2.

9

Defendant moved to set aside the lump sum damages verdict and for a new trial on damages on three grounds: (i) the jury's finding at the second trial that certain FFT products did not infringe the '715 patent contradicted the Court's jury instruction at the first trial that all FFT products infringed, (ii) it was not possible to extract '715 damages from the lump sum award because of Plaintiff's general verdict form, and (iii) the PTAB's invalidity decision of '627 claims 11 and 13 presented non-infringing alternatives that it was not able to present at trial. *Id.* at 3. The Court generally agreed with all three grounds and held that "because the assumptions upon which the verdict was reached are no longer supported, the Court finds the damages verdict 'cries out to be overturned' and exercises its discretion to grant a new trial to prevent a miscarriage of justice." *Id.* at *5.

Even though the Court's analysis of the third ground is arguably *dicta* because it was unnecessary for its determination, the Court's analysis is illustrative because none of the facts or issues apply here. At the first trial, the *Greatbatch* plaintiff had asserted three '627 claims, independent claim 11 and dependent claims 12 and 13. *Id.* at 4. On October 21, 2015, less than three months before the January 11, 2016 trial, and just "weeks before the pre-trial conference," the PTAB issued a Final Written Decision that determined that claims 11 and 13 were invalid. *Id.* at *1, *5; *see also* PTAB's Oct. 21, 2015 Final Written Decision in IPR2014-00697. Since the *Greatbatch* defendant did not know that trial would only involve '627 claim 12 until "weeks before the pre-trial conference," defendant was apparently deprived of the opportunity to allege that claims 11 and 13 presented non-infringing alternatives in its lost profits damages analysis. *Greatbatch Ltd.*, 2018 WL 1568872 at *5. The issue before Judge Stark was not whether or not the PTAB's Decision was final or not, it was whether the defendant had a fair opportunity to argue non-infringing alternatives.

None of the unique and "convoluted" *Greatbatch* issues apply here. No trials have been conducted here. There is no outstanding lump sum, lost profits damages verdict to which one patent's damages cannot be extracted. There is no jury instruction that was rendered contradictory after a trial. And ChanBond is not seeking lost profits, which hinges on whether or not non-infringing alternatives exist.

In contrast to *Greatbatch*, the '822 PTAB decision here issued months ago. Defendants have had more than fair notice of the decision. Defendants still have four more weeks to conduct fact discovery and thereafter explore their theories in expert discovery. The pre-trial conference is currently scheduled for October 31, 2018 – more than six months after the PTAB's '822 decision. Defendants here have ample time and more than a fair opportunity to prepare and argue any purported non-infringing alternatives they wish.

Notably, at almost the same time Judge Stark issued the *Greatbatch* decision, he denied a stay in *Plastic Omnium Advanced Innovation and Research v. Donghee America, Inc.* In the *Plastic Omnium* case, the plaintiff had asserted seven patents. The PTAB instituted IPRs against all asserted claims in six of the seven patents, and defendants then moved to stay. The Court denied defendants' motion to stay, never mentioning purported non-infringing alternatives, but noting that:

> Delaying the progress of this litigation at this point would prejudice Plaintiff, risk wasting the Court's resources, and likely provide Defendants an unfair tactical advantage. There is no reason at all for staying proceedings related to the '228 patent, for which no IPR was even requested, and the Court determines the most reasonable approach (in a case which is nearly two years old, and involves competitors) is to proceed with all of the patents-in-suit rather than stay them all or impose a partial stay.

*Plastic Omnium Advanced Innovation and Research v. Donghee Am., Inc.*, Civil Action No. 1-16-cv-00187, Oral Order on Defendants' Renewed Motion for a Stay Pending Resolution of

11

Various *Inter Party* Reviews, Docket Entry 278, (D. Del March 9, 2018) (Honorable Judge Stark).

The same is true here. This case has been pending for over two years. There is no reason at all for staying proceedings related to the '679 and '565 Patents or claim 14 of the '822 Patent because Defendants attempted -- via nine separate IPR petitions -- but failed to invalidate any of those claims via IPR. If anything, Defendants' failed IPRs demonstrate that the asserted claims in this case are ready to be tried. Staying the case at this point would prejudice ChanBond and provide Defendants with an unfair tactical advantage.

Moreover, Defendants' characterization of *Greatbatch* is simply incorrect. Defendants' motion states that the *Greatbatch* defendant "was unable to present evidence of non-infringing alternatives to the jury, because at the time of the trial in 2016, the Federal Circuit had not yet confirmed the PTAB's decision that certain claims were invalid." (D.I. 243 at 5.) Similarly, Defendants stated that "the district court granted a new trial on damages because the existence of a non-infringing alternative—made possible by the post-trial invalidation of claims covering the same technology . . . ." (*Id.* at 5-6.) But Judge Stark never stated that non-infringing alternatives were made possible by the post-trial invalidation of the claims, or that he granted a new damages trial because of the Federal Circuit's affirmation. To the contrary, Judge Stark stated that the defendant was unable to present non-infringing alternative arguments in the 2016 lost profits trial because (i) plaintiff successfully moved for a motion in limine to preclude defendant from mentioning the IPR, and (ii) because the PTAB's Decision issued just "weeks before the pre-trial conference." *Id.* at *5. The Federal Circuit's subsequent affirmation of the PTAB Decision simply confirmed that the *Greatbatch* defendant, in that case involving lost profits and a verdict

that could not be unwound, should have had the opportunity to present its arguments. Had the Federal Circuit overturned the Decision, Judge Stark would not have even addressed the issue.

## C. The Federal Circuit's Decision Will not Simplify the Issues

Since the PTAB's Final Written Decision regarding obviousness was directed to a subset of the '822 claims and a small subset of the asserted claims, the Federal Circuit's decision on appeal will not influence this case either way. The patents and claims are all related. Since all patents share a specification and since all claims are being read on the same products (basically a standard's based read), there would be no substantial simplification in removing a few claims from trial (or even adding a few claims to trial).

For example, if the Federal Circuit upholds the PTAB's decision, the remaining claims, namely '822 claim 14 and the twelve asserted claims of the '679 and '565 Patents – which represent the vast majority of the claims currently being asserted – will still have to be tried. All of these claims were either expressly upheld or left unchallenged by the PTAB and are not subject to the appeal.

If all currently asserted claims are tried, including the five at issue in the PTAB's decision, the jury could be properly instructed, for example, to separately consider the five '822 claims at issue in that decision. Then, regardless of whether the Federal Circuit upholds or overturns the PTAB's decision, there would be no harm no foul.

As yet another alternative, ChanBond offered to stay the '822 claims at issue in the PTAB's decision and proceed on the other thirteen asserted claims. If the Federal Circuit upholds the PTAB's decision, then the stay would be rendered moot. If the Federal Circuit overturns the PTAB's decision (which, in view of statistics, is unlikely), those five '822 claims could theoretically be re-tried, but that scenario is unlikely because this case will be effectively

13

concluded by then.  The other thirteen asserted claims not at issue in the PTAB's decision are being read on the same products and technology.  Thus, if ChanBond prevails at trial on one or more of those thirteen claims, there would be no need to retry the '822 claims.  If ChanBond fails to prevail at trial on those thirteen claims, and it also subsequently wins on its appeal of the PTAB decision, it is unlikely that ChanBond would wish to try the '822 claims that were at issue in the PTAB decision.

The simplification factor thus fails to support a stay.

## IV. A STAY WILL PREJUDICE CHANBOND AND PROVIDE DEFENDANTS WITH AN UNFAIR TACTICAL ADVANTAGE

As detailed above, a stay will provide Defendants with a significant, and unfair, tactical advantage.  Specifically, Defendants and their allies already filed nine IPR petitions and moved to stay the case in 2016.  The Court denied Defendants' request, after which the PTAB rejected eight of the nine IPR petitions.  After the PTAB's rejection (in March 2017), Defendants declined to renew their motion to stay, which would have been futile in light of the PTAB's decisions in February 2018 upholding and/or leaving unchallenged the vast majority of the asserted claims in this case.  Over the last eighteen months since the Court denied Defendants' first motion to stay, the parties have been fiercely litigating this case, conducting significant discovery with respect to all three of the patents-in-suit.  Defendants' new motion to stay is predicated on the PTAB's issuance of its decision on *only* the '822 Patent and not on all of the asserted claims.  As such, staying the case as to all three of the patents-in-suit when only some of the asserted claims of only the '822 Patent are the subject of the PTAB decision would provide a huge tactical advantage to Defendants.

Furthermore, ChanBond will be negatively impacted by a stay in numerous ways. Significant discovery has been taken and the close of discovery is only a month away.[1] The three inventors, whose testimony the jury should be entitled to see and evaluate first-hand, are all of advanced age. The inventors are also partners with ChanBond in the outcome of the case and both ChanBond and the inventors should have the opportunity to present their case directly to the jury. Finally, this case has been pending for 30 months, and the pre-trial conference is scheduled for October 2018. Under these circumstances and stage of this case, any further delay will prejudice ChanBond and the inventors while providing an unfair tactical advantage to Defendants.

V.  CONCLUSION

The Court should deny Defendants' motion to stay this case because all three factors weigh against a stay.


Date: May10, 2018

*Of Counsel*:

Robert A. Whitman *(pro hac vice)*
Mark S. Raskin *(pro hac vice)*
John F. Petrsoric *(pro hac vice)*
**MISHCON DE REYA NEW YORK LLP**
156 Fifth Avenue, suite 904
New York, New York 10010
(212) 612-3270
robert.whitman@mishcon.com
mark.raskin@mishcon.com
john.petrsoric@mishcon.com

**BAYARD, P.A.**

/s/ *Stephen B. Brauerman*
Stephen Brauerman (sb4952)
Sara E. Bussiere (sb5725)
600 N. King Street, Suite 400
Wilmington, Delaware 19801
(302) 655-5000
sbrauerman@bayardlaw.com
sbussiere@bayardlaw.com

*Counsel for Plaintiff*
*ChanBond, LLC*

---

[1] Defendants have more than sufficient time in fact and expert discovery to investigate and assert any potential non-infringing alternative arguments.