

600 N. King Street • Suite 400
P.O. Box 25130 • Wilmington, DE 19899
Zip Code For Deliveries 19801

May 4, 2018
Redacted Version Filed: May 17, 2018

Writer's Direct Access:
(302) 429-4232
sbrauerman@bayardlaw.com

**VIA CM/ECF & HAND DELIVERY**
 **REDACTED VERSION**
The Honorable Richard G. Andrews
United States District Court for the District of Delaware
J. Caleb Boggs Federal Building
844 North King Street
Wilmington, Delaware 19801

Re: *ChanBond, LLC v. Atl. Broadband Group, LLC, et al., Cons. C.A. No. 15-842-RGA*

Dear Judge Andrews:

Defendants conflate a number of different events and provide an incomplete recitation of the facts to create a façade that ChanBond is improperly withholding documents. A consideration of all the facts confirms that ChanBond properly objected to the production of the various documents defendants inappropriately demand.

**I. Documents Related to ▇▇, Mr. Keane and ▇▇.** Though Defendants ask the Court to decide whether the "offer for sale through ▇▇ is privileged," the real issue before the Court is whether certain communications between Mr. Keane and ▇▇ (including the inventors) are privileged. Defendants allege that because Mr. Keane submitted materials to ▇▇, all communications between Mr. Keane and ▇▇/the inventors must be produced. But this position is unsupportable. ▇▇ was entitled to legal advice from its counsel Mr. Keane regarding ▇▇'s patent portfolio, and such communications are protected by the attorney client privilege.

In light of their unsupportable position, Defendants take several liberties in their summary of "relevant" facts. As a threshold matter, Defendants declare that there is "'no dispute' that the inventors authorized their attorney -- Patrick Keane -- to distribute an infringement chart to ▇▇ members." (Op. Let. at 2.) However, Defendants know that the inventors themselves dispute providing any such authorization: "Q: And did you ask Mr. Keane to represent you in dealing with ▇▇▇▇▇▇▇▇? A. No. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇" (*See* Hennenhofer Tr. at 197:3-8; *see also generally* 197-208.) As such, Defendants' assumption that communications between the inventors and Mr. Keane related to a "business purpose" and not legal advice is unsupported. While Defendants claim that "[c]orrespondence between Mr. Keane and ▇▇ makes clear that Mr. Keane required authorization ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇" (Op. Let. at 1), Defendants have no evidence that Mr. Keane ever even ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. Indeed, Defendants claim that Mr. Hennehofer "has *since* ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇" (*id.* at 2 (emphasis added)). Yet Mr. Hennenhofer's deposition testimony shows, at best, that the inventors authorized ▇▇▇▇▇▇▇▇



▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Hennenhofer Tr. at 208:2-22; 209:17-212:10.) The evidence thus contradicts Defendants' allegation that Mr. Keane ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

Defendants also claim that "Mr. Keane, after being instructed by ChanBond's attorneys not to answer on the grounds that such testimony was protected the attorney-client privilege, refused to answer questions regarding his interactions with ▮▮▮." (Op. Let. at 2.) The relevant facts and testimony contradict this position. Mr. Keane, an attorney, was represented at his deposition by his own attorney. Mr. Pacelli, an attorney for ChanBond, attended the deposition on ChanBond's behalf. Defendants' motion alleges three times that ChanBond purportedly instructed Mr. Keane not to answer Defendants' questions based on privilege and that Mr. Keane refused to answer because of some privilege associated with AST. (*Id*.) Yet ChanBond's attorney did not instruct Mr. Keane not to answer: "Q. What was ▮▮▮ relationship with ▮▮▮▮▮▮▮▮▮▮t? **MR. PACELLI:· Objection to form, and I caution the witness not to disclose any privileged information.**" (Keane Tr. at 73:11-15 (emphasis added).) Mr. Keane's subsequent response merely reflected that he was ▮▮▮ attorney and was rendering advice to ▮▮▮: "I don't know that I can disclose anything beyond because our relationship with ▮▮▮ would have been in the context of rendering them legal services." Defendants had the opportunity to clarify that they sought information about ▮▮▮ purported relationship with ▮▮▮ (not with Mr. Keane or his firm) – but they elected not to. (*See also* Keane Tr. at 78:15-79:3 (emphasis added).) The witness expressed an understandable unwillingness to divulge attorney-client privileged communications and confusion with respect to the questioner's use of "broker." Rather than clarifying the question, Defendants simply moved on.

Defendants' final example similarly involves another undefined and overly-broad question unrelated to ▮▮▮: "Q. When you represented ▮▮▮, did you make decisions for ▮▮▮ based on ▮▮▮ input? **MR. PACELLI: Again, calls for legal conclusion, and I caution the witness not to disclose any privileged communications.**" (Keane Tr. at 82:2-6 (emphasis added).) ChanBond gave no instruction not to answer. Significantly, immediately following the quoted exchange, Defendants' counsel attempted to clarify: "Q. I'm not asking about substance of the communications. I'm just asking whether or not you've made decisions on behalf of your client. A. You're asking about the -- well, you're asking about the conduct of our relationship in providing legal services to our client, which I consider to be privileged." (Keane Tr. at 82:14-20.) Mr. Keane's answer underscores the undefined breadth of Defendants' first question. Again, Defendants could have followed up or clarified their question, but they elected not to. The testimony makes clear that ChanBond's counsel never instructed Mr. Keane not to answer questions based on privilege.

**II. Documents related to CB Capital.** Unified Online, the current owner of ChanBond, retained CB Capital as a non-testifying expert consultant. As such, communications between them are protected as work product under the Federal Rules. *See* FED. R. CIV. P. 26(b)(4)(D) ("Ordinarily, a party may not, by interrogatories or deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial."); *see also e.g.*, *WebXchange Inc. v. Dell Inc.*, 264 F.R.D. 123, 127-28 (D. Del. 2010).



Unified Online requested the CB Capital report in question for objective evaluation of its interest in purchasing ChanBond and monetizing the patents through litigation.[1] This is exactly the type of task a relatively small company like Unified Online may need to have performed by independent contractors or consultants. *See e.g., Robocast Inc. v. Microsoft Corp.*, Civil Action No. 10–1055 (RGA), 2013 WL 12147601 at *4 (D. Del. July 19, 2013) (adopted in full by Aug. 17, 2013 oral order). Despite Defendants' statements to the contrary, the report was never used as a "sword" in this litigation or elsewhere. To the contrary, CB Capital's report was not publicly disclosed, nor was it disclosed to Unified Online's shareholders.[2] CB Capital's report was produced in this litigation under the highest level of confidentiality. CB Capital is not ChanBond's testifying damages expert, is not affiliated in any way with ChanBond's testifying expert, and ChanBond does not anticipate calling anyone from CB Capital at trial.[3]

The underlying information for CB Capital's report, as a non-testifying expert, remains work product. For example, in *In re PolyMedica Corp. Securities Litigation*, "[p]laintiffs served a subpoena on PricewaterhouseCoopers LLP ('PWC') seeking the production of documents underlying the creation of a report that PWC had prepared for [defendants]." 235 F.R.D. 28, 30 (D. Mass. 2006) Since the defendants produced the report in the litigation and provided a copy to the Security and Exchange Commission ("SEC"), plaintiffs argued that any privilege was waived. *Id.* In *PolyMedica*, the court noted that defendants retained PWC as a "non-testifying expert." *Id.* As such, Rule 26(b)(4)(D) applied and the "issue . . . [was] not whether the Defendants waived protection of the report itself, but whether, by disclosing the report, they waived protection for other documents on the same subject matter." *Id.* at 32. The court held that there was no waiver, because, just as in the present case, "there is no evidence that the Defendants sought to make use of the report in a judicial proceeding[;] PWC is not testifying, and there is no showing that the Defendants put the report at issue[; . . . ] Plaintiffs have not shown that their case has been prejudiced in any way by the disclosure of the report[; t]here is no sword here." *Id.* at 33.

Defendants' reliance on *Net2Phone, Inc. v. Ebay, Inc*. to show waiver is inapt. In *Net2Phone*, (1) the reports at issue were obtained for a "tender offer" of shares -- not for the purpose of deciding whether to purchase intellectual property and litigate, (2) the reports were widely disseminated to shareholders and prospective shareholders, (3) the reports' authors were not retained as non-testifying experts or for litigation purposes, and (4) the reports had nothing to do with an ongoing litigation. None of *Net2Phone*'s facts apply here.

**III.  ChanBond's Privilege Log**. Defendants complain about the detail provided in ChanBond's document descriptions. Yet this court has previously found as sufficient document descriptions such as "notes memorializing confidential communications with counsel." *See WebXchange*, 264 F.R.D. at 127. The issue between the parties is not a refusal to provide defendants with the information to which they are entitled. The dispute is whether the descriptions provided in ChanBond's privilege log are sufficient. To the extent the Court finds any document description in ChanBond's privilege log to be insufficient, ChanBond respectfully requests the Court's permission to supplement those descriptions.

---

[1] By the time Unified Online completed its purchase of ChanBond, ChanBond had filed the complaints in this action.

[2] The CB Capital report states it "should not be circulated, quoted or otherwise referred to in any public document and may be distributed only to the management of [Unified Online] and its legal counsel, auditor, and advisors . . . distribution to a party other than those specifically contemplated hereunder would require [CB Capital's] written consent."

[3] ChanBond has retained a separate testifying damages expert and to the extent any of the information underlying that report falls into the work product exception for testifying experts, such information will be produced.



        Respectfully submitted,

        */s/ Stephen B. Brauerman*

        Stephen B. Brauerman (No. 4952)

cc:    All counsel