```
 1                  IN THE UNITED STATES DISTRICT COURT

 2                    FOR THE DISTRICT OF DELAWARE

 3

 4      CHANBOND, LLC                    )
                                         )
 5                       Plaintiff,      )
                                         ) C.A. No. 15-842-RGA
 6      v.                               )
                                         )
 7      ATLANTIC BROADBAND GROUP, LLC,   )
                                         )
 8                       Defendant.      )

 9
                                         J. Caleb Boggs Courthouse
10                                       844 North King Street
                                         Wilmington, Delaware
11
                                         Tuesday, February 26, 2019
12                                       11:04 a.m.
                                         Discovery Dispute Conference
13

14      BEFORE:  THE HONORABLE RICHARD G. ANDREWS, U.S.D.C.J.

15      APPEARANCES:

16

17              BAYARD, P.A.
                BY:  STEPHEN B. BRAUERMAN, ESQUIRE
18
                        -and-
19
                MISHCON DE REYA NEW YORK LLP
20              BY:  JOHN F. PETRSORIC, ESQUIRE
                BY:  ANDREA PACELLI, Ph.D.
21
                                         For the Plaintiff
22

23

24

25
```

1    APPEARANCES CONTINUED:

2            MORRIS NICHOLS ARSHT & TUNNELL LLP
             BY:  JENNIFER YING, ESQUIRE
3
                     -and-
4
             WINSTON & STRAWN LLP
5            BY:  KRISHNAN PADMANABHAN, ESQUIRE

6                              For the Defendant

7
                     ***   PROCEEDINGS   ***
11:04:09 8

11:04:09 9            THE COURT:  All right.  Good morning.  Please be

11:04:11 10   seated.

11:04:14 11            This is ChanBond versus Atlantic Broadband

11:04:20 12   Group.  Civil Action Number 15-842 consolidated.

11:04:24 13            Mr. Brauerman, good morning.

11:04:25 14            MR. BRAUERMAN:  Good morning, Your Honor.  Steve

11:04:27 15   Brauerman from Bayard on behalf of the plaintiff, ChanBond.

11:04:30 16            I'm joined at counsel table by John Petrsoric,

11:04:35 17   Andrea Pacelli, and Dominick Vitaliano from Mishcon de Reya

11:04:38 18   New York.

11:04:38 19            THE COURT:  All right.  Good morning to you all.

11:04:40 20            (Everyone said, Good morning, Your Honor.)

11:04:41 21            THE COURT:  And Ms. Ying.

11:04:42 22            MR. YING:  Jennifer Ying from Morris Nichols

11:04:45 23   Arsht & Tunnell on behalf of the defendants.  And with me

11:04:47 24   today is Krishnan Padmanabhan from Winston & Strawn.

11:04:50 25            THE COURT:  All right.  Good morning to you all.

11:04:55  1         MR. PADMANABHAN:  Good morning, Your Honor.

11:04:55  2         THE COURT:  So I read the two letters.  And as I

11:05:02  3  generally understand it, plaintiff says defendant has

11:05:12  4  violated the stipulation by either having some different

11:05:17  5  combination of art, or some new opinions, or something like

11:05:25  6  that.  And defendant's response is more or less, well, you

11:05:31  7  didn't tell us what your opinions were, so when you

11:05:35  8  surprised us, we came back with what we came back with.

11:05:40  9         Is that a fair summary of what you all have

11:05:42 10  written in these letters?

11:05:45 11         MR. PETRSORIC:  More or less, Your Honor.

11:05:47 12         MR. PADMANABHAN:  Yeah, I think with the

11:05:49 13  proviso, Your Honor, that we say we are here today where we

11:05:53 14  are, and we're happy to have them respond.

11:05:56 15         THE COURT:  No --

11:05:56 16         MR. PADMANABHAN:  Yeah.

11:05:57 17         THE COURT:  -- and I do appreciate that

11:06:03 18  position.  So Mr. Pacelli -- no, Mr. Petrsoric.  Sorry.  You

11:06:13 19  know, the last person I heard from was Mr. Pacelli.

11:06:18 20         In Mr. Padamanabhan's letter, is there some

11:06:22 21  extra gloss or something that you want to add in response to

11:06:25 22  his letter?

11:06:26 23         MR. PETRSORIC:  Well, I think there is, Your

11:06:28 24  Honor.  I think that the first point and probably the most

11:06:33 25  crucial is that we're here today largely because of what

11:06:36 1    came up in a reply report, not in opening or rebuttal

11:06:39 2    reports.  I think on our first point, which is the addition

11:06:44 3    of a new combination, there is question of whether there's

11:06:48 4    been a great discussion about what the Pennypack factors

11:06:53 5    are.  But I think there's a question of whether Pennypack

11:06:56 6    even applies.

11:06:58 7            Given the law in the district patent litigation,

11:07:03 8    sophisticated entities, sophisticated counsel engaging in a

11:07:11 9    negotiation to streamline discovery in the case, I think

11:07:16 10   there's a question of whether we even need to get into the

11:07:19 11   Pennypack factors as to whether or not the proposed fifth

11:07:24 12   combination, obviousness combination that defendants seek to

11:07:27 13   add, is subject to those factors.

11:07:30 14           THE COURT:  So my understanding of this fifth

11:07:33 15   combination is it does not involve any new art.  It's just

11:07:40 16   art that was at least, in part, asserted elsewhere or

11:07:47 17   against something else; is that right?

11:07:48 18           MR. PETRSORIC:  That is correct, Your Honor.

11:07:51 19           THE COURT:  So before we go on, let me just see.

11:08:00 20   There was some reference in here, and I did not check any of

11:08:02 21   this out, that we don't have any particular schedule in

11:08:06 22   these cases; is that right?

11:08:08 23           MR. PADMANABHAN:  It's correct, Your Honor.

11:08:10 24           MR. PETRSORIC:  I think there is no trial

11:08:11 25   scheduled at this point, Your Honor.

11:08:13  1              THE COURT:  Is there any other schedule?

11:08:15  2              MR. PETRSORIC:  The schedule for summary

11:08:17  3     judgment and dispositive motions is in place beginning

11:08:20  4     April 2nd.

11:08:20  5              MR. PADMANABHAN:  But we don't have a date for a

11:08:22  6     summary judgment hearing, though, Your Honor.

11:08:24  7              THE COURT:  Yeah.  All right.  So just a second.

11:08:29  8              So what about on this fifth combination, what

11:08:47  9     about the claim that it was because of something you did

11:08:50 10     first that got us to this point?

11:08:52 11              MR. PETRSORIC:  Well, Your Honor, I think we

11:08:55 12     disagree with that.  There has been a lot made of by

11:09:00 13     defendants of our lack of significant explanation in our

11:09:07 14     responses to interrogatories seeking our validity

11:09:11 15     contentions.  And I think the problem with it, Your Honor,

11:09:14 16     is, yes, there's not a lot of explanation.  But there wasn't

11:09:19 17     the requisite explanation in defendant's invalidity

11:09:23 18     contentions.

11:09:24 19              So --

11:09:24 20              THE COURT:  Oh, yeah, so that's it.  So that's

11:09:26 21     where we are is they've added something new.  They only did

11:09:30 22     that because you were bad.  You were bad because they were

11:09:33 23     only bad.

11:09:34 24              Okay.  Mr. Padmanabhan, now it's your turn.

11:09:37 25              MR. PADMANABHAN:  Your Honor, our invalidity

11:09:39 1    contentions for each of these references, it was a 200-page

11:09:42 2    chart.

11:09:42 3             THE COURT:  Yeah, probably should have been

11:09:46 4    500 pages.

11:09:46 5             MR. PADMANABHAN:  Yeah.

11:09:47 6             THE COURT:  Okay.  So, look, I'm trying to

11:10:02 7    figure out where we got slightly off the rails here.  It is

11:10:10 8    not one of the favorite occupations of me, it may not

11:10:14 9    generally be a favorite occupation of judges generally.

11:10:19 10            So you know, I naturally gravitate, and I guess

11:10:23 11   I've seen Mr. Padmanabhan enough.  So with the help of

11:10:27 12   Ms. Ying, he probably figured this out.  I naturally

11:10:30 13   gravitate to, oh, okay, do a sur-reply.

11:10:41 14            What else do you need to make things right?

11:10:43 15            MR. PETRSORIC:  I think if Your Honor is leaning

11:10:49 16   towards the sur-reply, well there are certain costs involved

11:10:53 17   with the sur-reply.  We had an agreement with the defendant

11:10:55 18   with respect to reducing claims and reducing the number of

11:10:58 19   prior art references and combinations.  And I understand

11:11:02 20   that the art that they're seeking now to combine, it was out

11:11:09 21   front and notorious previously.  But at the same time, it

11:11:14 22   was well known to them.  And it is a bit of a head scratcher

11:11:19 23   as to why they needed to wait to assert a combination on two

11:11:23 24   references that were the first and second primary references

11:11:28 25   they used in their invalidity contentions and their expert

11:11:31 1    report to begin with.

11:11:32 2              So I think the issue we're dealing with, Your

11:11:36 3    Honor, is well, defendants had opportunity after opportunity

11:11:42 4    in fact discovery to modify their identification of asserted

11:11:47 5    art, and they did so.  But at this point, we're left

11:11:52 6    scratching our head as to, well, how do we now come to an

11:11:57 7    agreement with counsel on things going forward where we're

11:12:00 8    looking to hold -- not hold each other's feet to the fire,

11:12:05 9    but to have some trust in the process, and then having

11:12:12 10   things change at the 11th hour?

11:12:15 11             THE COURT:  Fortunately, we're not at the 11th

11:12:18 12   hour.

11:12:18 13             MR. PETRSORIC:  But I think, Your Honor, we're

11:12:21 14   also at the point now where we've completed expert

11:12:24 15   discovery.  And even assuming a sur-reply, if Your Honor is

11:12:27 16   leaning toward granting a sur-reply, the question becomes

11:12:31 17   what --

11:12:31 18             THE COURT:  And I'm sorry, Mr. Petrsoric, to

11:12:35 19   interrupt here, but you said you completed expert discovery.

11:12:38 20   Does that mean that which of the experts we're talking about

11:12:40 21   here have already been deposed?

11:12:42 22             MR. PETRSORIC:  All of the experts have been

11:12:43 23   deposed.

11:12:44 24             THE COURT:  So sur-reply sort of gives you a

11:12:47 25   free shot to say things that they're not going to get to

11:12:49 1   depose you on.

11:12:50 2                    MR. PETRSORIC:  If that's the way Your Honor is

11:12:54 3   leaning, I think that is something we would obviously

11:12:58 4   consider.

11:12:59 5                    THE COURT:  It's not a negotiation.

11:13:05 6                    MR. BRAUERMAN:  Your Honor, may I just say one

11:13:06 7   thing?  One thing that I don't think a sur-reply addresses,

11:13:09 8   we were limited to the asserted claims that we have limited

11:13:12 9   ourselves to.  And if we have the ability to look at the

11:13:15 10  asserted claims today, we might assert different claims.

11:13:19 11                   THE COURT:  Would you like to do that?

11:13:20 12                   MR. BRAUERMAN:  Well, that creates problems and

11:13:22 13  gets into costs because that would require redoing expert

11:13:25 14  discovery for all parties.  I think we would like that at

11:13:29 15  their cost.

11:13:29 16                   THE COURT:  Yeah, that's not going to happen.

11:13:32 17                   MR. BRAUERMAN:  But that's why it's not so

11:13:34 18  simple.  I mean, our first choice is that this claim

11:13:37 19  should -- this art should be out.  They had the opportunity

11:13:40 20  to do it.

11:13:41 21                   And the point is simply that revisiting it late

11:13:43 22  does not -- and just a sur-reply does not make up for the

11:13:48 23  prejudice because we can't, without substantial expense,

11:13:51 24  take advantage of if Your Honor were to allow us to revisit

11:13:55 25  our claims because that may be cost prohibitive at this

11:13:58  1   point in time.  So without cost shifting, we can't undertake

11:14:02  2   that.  And I understand Your Honor is not going to cost

11:14:04  3   shift.

11:14:04  4        I'm just saying that that is an argument in

11:14:07  5   favor of excluding this prior art.  It does not -- because

11:14:11  6   you cannot fully remedy it.  I know Your Honor's pragmatic,

11:14:14  7   but a sur-reply just doesn't fully remedy the prejudice we

11:14:18  8   suffer.

11:14:18  9        THE COURT:  Well, all right.  Mr. Padmanabhan,

11:14:25 10   what do you have to say about that?

11:14:26 11        MR. PADMANABHAN:  As an initial point, I'd say

11:14:28 12   that is not the agreement the parties came to.  They were to

11:14:30 13   identify or down select claims, and we were to identify art.

11:14:35 14   At no point during this process -- now, we're multiple

11:14:39 15   litigations -- have they ever identified that they had any

11:14:42 16   interest in changing their claims or --

11:14:43 17        THE COURT:  But that's based on you didn't just

11:14:46 18   identify art, but you identified specific combinations of

11:14:50 19   art; right?

11:14:51 20        MR. PADMANABHAN:  I mean, if they're saying that

11:14:54 21   they selected their claims based on the prior art we

11:14:58 22   identified as opposed to the infringement contentions that

11:15:00 23   they had, I find that hard to believe.  But even if that's

11:15:05 24   the case, Your Honor, this all comes down to the parties

11:15:09 25   tried to -- were to exchange information.

11:15:12  1            THE COURT:  And so let me just ask a slightly

11:15:14  2    different question.  I'm sorry to interrupt,

11:15:17  3    Mr. Padmanabhan.  So they've got 18 claims right now.

11:15:21  4    This -- the replacement of an obviousness combination, how

11:15:28  5    many of the 18 claims does that impact?

11:15:30  6            MR. PETRSORIC:  I don't know that that

11:15:34  7    particular obviousness combination would impact more than

11:15:39  8    two to three claims at most.

11:15:44  9            THE COURT:  Okay.

11:15:52 10            MR. YING:  I think, Your Honor, if I could make

11:15:53 11    a point, we heard argument about the down selection of

11:15:56 12    claims.  But I think, as Mr. Padmanabhan pointed out, and I

11:15:59 13    think as the Court recognized really, these references have

11:16:01 14    been part of the case for over a year and a half.  These

11:16:05 15    aren't new references that we all of a sudden sprung on them

11:16:07 16    at the last minute.  These are references that were

11:16:09 17    discussed at length in the parties' respective expert

11:16:14 18    reports.

11:16:15 19            And I think, as we noted, their expert appears

11:16:18 20    to be prepared to serve a sur-reply.  You know, he said at

11:16:22 21    his deposition he would be welcome to do that.  So you know,

11:16:26 22    we think that if their expert says it's okay, why isn't that

11:16:30 23    the best way to move forward?  And I think based upon

11:16:33 24    discovery that we have in place, we would suggest that, you

11:16:37 25    know, if they were going to serve a sur-reply, it be limited

11:16:40  1  to issues that they identified in their letter.

11:16:42  2          They could have, you know, two weeks to serve

11:16:44  3  it.  We don't think that would be terribly burdensome.  And

11:16:47  4  we would, you know --

11:16:50  5          THE COURT:  So just go over the way we got here.

11:16:55  6  When did you down select the 18 claims?

11:16:58  7          MR. PETRSORIC:  November 2017, Your Honor.

11:17:00  8          THE COURT:  Okay.  And at the time, you were

11:17:07  9  down selecting with a universe that was somewhat larger than

11:17:13 10  four obviousness combinations because, I guess, they were

11:17:16 11  doing and/or and/or.  So against a large field when you down

11:17:23 12  selected; right?

11:17:24 13          MR. PETRSORIC:  Correct, Your Honor.

11:17:25 14          THE COURT:  And so they then, I guess, not the

11:17:30 15  phrase I've ever heard before, but Mr. Padmanabhan's phrase,

11:17:37 16  they down selected the art combinations.  And then you all

11:17:40 17  did some more discovery for a year.

11:17:42 18          Something like that?

11:17:43 19          MR. PETRSORIC:  Yes.  And I would add, in the

11:17:45 20  interim, they modified their down selections of the art

11:17:49 21  three times.

11:17:50 22          THE COURT:  Okay.  But I guess what I'm

11:17:52 23  wondering is back in November of 2017, they could have

11:17:57 24  selected the art that they now assert.  And I gather that,

11:18:03 25  at least for some of the other combinations, they did select

11:18:06 1    the art, just not in this particular combination; is that

11:18:10 2    right?

11:18:11 3            MR. PETRSORIC:  I believe that is correct, Your

11:18:13 4    Honor.

11:18:14 5            THE COURT:  And so in the course since

11:18:24 6    November 2017, I take it whatever 18 claims you went to, you

11:18:28 7    have stuck with those 18 and have not changed?

11:18:30 8            MR. PETRSORIC:  That is correct, Your Honor.

11:18:32 9            THE COURT:  And in the meantime, the defendants

11:18:50 10   have modified some of their combinations.  But the parties

11:18:56 11   have worked it out so that that was done, so to speak, with

11:19:01 12   consent.

11:19:02 13           MR. PETRSORIC:  Understanding the general nature

11:19:07 14   of such amendments in the district, Your Honor, the

11:19:13 15   defendants served amendments, and we did not object to the

11:19:18 16   service of those amendments.

11:19:19 17           THE COURT:  Okay.  And so what I'm wondering is

11:19:29 18   how devastating this new fifth combination can be that would

11:19:34 19   be causing you to want to change your claims as

11:19:43 20   Mr. Brauerman suggests.

11:19:44 21           MR. BRAUERMAN:  Can I -- before Mr. Petrsoric

11:19:47 22   addresses that, I think we're -- and this is probably my

11:19:50 23   fault.  I think we may be missing the point slightly on the

11:19:52 24   change in claims.

11:19:53 25           One, I don't think the prior art reference is

11:19:55  1    that devastating, and Mr. Petrsoric will address that.  The

11:19:58  2    issue is we had deadlines to accomplish certain things, and

11:20:02  3    we were required to make decisions at that time.  We're now

11:20:05  4    a year and a half past that, and we have a lot more

11:20:08  5    information about the case.

11:20:10  6           If we're not bound by that prior agreement, and

11:20:12  7    we get to revisit it, we have more information.  So we may

11:20:15  8    want to assert a different claim.  That's what they're

11:20:18  9    doing.  And they did it in a less-than-obvious manner by

11:20:25 10    burying it in the middle of a reply report.  They don't come

11:20:28 11    out and say, We want to add this new one.  They just tried

11:20:30 12    to slide it in under a reply report.

11:20:33 13           We may now, if that's the rule and the parties

11:20:35 14    are allowed to with the benefit of the last 18 months of

11:20:38 15    litigation and IPRs, change what they're going to rely upon.

11:20:43 16    We think it's only fair that we get to do that, too.

11:20:47 17    Unfortunately, though, that requires the parties to revisit

11:20:50 18    expert discovery which is a tremendous cost.  So we don't

11:20:53 19    want to do that.

11:20:53 20           What we think the Court should do is hold the

11:20:56 21    parties to their agreement which we've lived with, even if

11:20:59 22    we would change it, and they want to change.  The point is

11:21:02 23    simply with the benefit of the last 18 months, we would

11:21:06 24    choose different claims today than we did 18 months ago

11:21:09 25    because we've had the benefit of litigation, and we have

11:21:11  1   more information.

11:21:12  2          It's not necessarily directly dependent on the

11:21:16  3   prior art.  It's just if we are allowed to revisit it like

11:21:18  4   they are, we would like to revisit it using information.  I

11:21:21  5   don't think they changed the prior art based on the claim

11:21:24  6   we're asserting.  They changed the prior art based on the

11:21:26  7   strategy and litigation they've pursued over the past

11:21:29  8   18 months that they've learned about.  That's the point, and

11:21:34  9   we think that is prejudicial to ChanBond.

11:21:37 10          THE COURT:  All right.

11:21:39 11          MR. PADMANABHAN:  Your Honor, the addition of

11:21:41 12   this combination is in response to arguments that we asked

11:21:45 13   for during discovery and which they refused to give us.

11:21:49 14   They gave us -- when we asked for validity contentions, what

11:21:52 15   they gave us was something that says, This reference does

11:21:56 16   not have and then boilerplate just listed nine limitations

11:22:00 17   without any explanation.

11:22:01 18          We had a meet and confer.  We said, This is

11:22:03 19   useless.  We can't understand the positions based on this.

11:22:08 20   Please help us form our case.

11:22:11 21          They said, Okay.  They agreed.  They never gave

11:22:14 22   it to us.

11:22:14 23          So we saw their positions for the first time in

11:22:17 24   their responsive report.  Our expert looks at that and says,

11:22:21 25   If that's what their argument is, then this is what I would

11:22:24 1   do.  And, look, we are fully committed to limiting the scope

11:22:31 2   of the case because we dropped another obviousness

11:22:34 3   combination to say, We'll fall within the four.  We agreed

11:22:37 4   to four.  We're happy to stay within four to limit what it

11:22:41 5   is that we're going to be fighting about as we go through

11:22:44 6   summary judgment and towards trial.  But if we're getting

11:22:48 7   arguments for the first time in their reports --

11:22:52 8          MR. YING:  Yeah.  I would say, Your Honor, I

11:22:54 9   don't think that saying that we somehow buried it in our

11:22:57 10   reply report is really a fair characterization of how things

11:23:00 11   transpired.  I think, you know, our Exhibit D to our letter

11:23:03 12   set out exactly what their supplemental validity contentions

11:23:06 13   were.  And if you look, it literally is just a listing with

11:23:09 14   semicolons of claim elements.  There's no explanation

11:23:12 15   provided whatsoever.

11:23:13 16          So I think, as we noted in our letter, we fairly

11:23:16 17   responded to what their expert presented for the first time.

11:23:20 18   But, again, I think it goes back to, as the plaintiff

11:23:25 19   acknowledges, we modified our prior art selections with

11:23:30 20   different references and different combinations during fact

11:23:33 21   discovery, and not once did they ever change their selection

11:23:35 22   of claims.  So we really don't think that this "combination

11:23:39 23   of references" are already part of the case that would

11:23:43 24   really change the picture.  And that just hasn't been how

11:23:46 25   the parties have litigated.

11:23:50  1          THE COURT:  All right.  Anything else for you

11:23:52  2  all to say?

11:23:52  3          MR. PETRSORIC:  I would just say this, Your

11:23:53  4  Honor.  I understand what counsel is saying with respect to

11:23:57  5  our validity interrogatory responses.  But at the same time,

11:24:02  6  we could pull out their invalidity contentions, and they're

11:24:06  7  largely just copy and paste from the invalidity references

11:24:10  8  with no reference to how they believe the material contained

11:24:15  9  therein meets the limitations of the asserted claims.  And

11:24:20 10  so this becomes an issue of, well, at what point and to what

11:24:27 11  degree of explanation is required?

11:24:30 12          And I believe that in this type of litigation,

11:24:36 13  it really comes down to expert discovery.  And the idea is

11:24:40 14  to set forth a general limitation of the scope of how things

11:24:47 15  are going to be addressed by the experts, and everything to

11:24:51 16  this point has been consistent with the approach the parties

11:24:54 17  have taken.

11:24:58 18          THE COURT:  I'm sorry.  Can you say the last

11:25:00 19  thought again?

11:25:01 20          MR. PETRSORIC:  My last point, Your Honor, is

11:25:04 21  that the parties, in their various infringement contentions

11:25:09 22  and invalidity contentions, have laid out the basic

11:25:12 23  framework for the direction of the case upon which discovery

11:25:15 24  could be taken.  The defendants did not provide any form of

11:25:21 25  explanation as to how the prior art meets the limitations of

11:25:26 1   the claims.  They just identified the art and the various

11:25:29 2   passages from the art that is addressing the particular

11:25:35 3   asserted claims.

11:25:37 4        So I understand that they believe that we did

11:25:43 5   not sufficiently identify our validity positions, but at the

11:25:48 6   same time without a full -- without any explanation or very

11:25:53 7   limited explanation of how the prior art references meet the

11:25:57 8   claims, we're subject to a limited ability without relying

11:26:03 9   on their opening expert reports to provide a validity reply.

11:26:11 10        MR. BRAUERMAN:  And Your Honor, may I make a

11:26:13 11   suggestion?  I don't think you need to get into whether our

11:26:15 12   discovery responses were deficient or their invalidity

11:26:19 13   contentions were deficient because nobody presented that to

11:26:22 14   Your Honor.  Their argument is that we can avoid a

11:26:25 15   stipulation without seeking leave of Court simply by helping

11:26:29 16   ourself to a new reference that we put in in a reply report

11:26:33 17   because we believe that, even though we didn't act on it,

11:26:37 18   their interrogatory response was deficient.

11:26:39 19        THE COURT:  Well, of course, what they said was

11:26:41 20   they did act on it.  They had a meet and confer, and that

11:26:44 21   you agreed to do something, and that you didn't do it.  I

11:26:48 22   don't think it's in my general interest to say, unless they

11:26:53 23   brought it to court, it doesn't count.

11:26:55 24        MR. BRAUERMAN:  No, I don't, and I'm not

11:26:56 25   suggesting that, either.  But we did meet and confer.  We

11:27:00  1    addressed it in some respects.  I'm not saying had they

11:27:04  2    brought a discovery dispute, that we wouldn't have

11:27:07  3    supplemented further.

11:27:08  4             All I'm saying is those issues are in the past.

11:27:11  5    I don't think it's in Your Honor's interest, either, that

11:27:14  6    you can violate a stipulation that you make simply because

11:27:16  7    you've unilaterally decided another party's discovery is

11:27:19  8    deficient.  I think that's going to create problems for the

11:27:22  9    Scheduling Order as well.

11:27:23 10             All I'm saying is I don't think it matters

11:27:26 11    whether the discovery is deficient.  We're past that.  They

11:27:29 12    didn't move on it.  We didn't move on it.

11:27:31 13             Nobody addressed it, even without bothering the

11:27:33 14    Court.  We didn't address theirs.  They didn't address ours.

11:27:36 15             THE COURT:  Well, so one of the things that I

11:27:38 16    appreciated is that you all did bring this to court now as

11:27:42 17    opposed to waiting around until filing a motion in limine to

11:27:49 18    exclude their combination.  I encourage that because it's a

11:27:54 19    lot easier to resolve it at this stage than at a later

11:27:58 20    stage.

11:27:58 21             Of course, the downside of that is my general

11:28:02 22    inclination in connection with my general perception of the

11:28:11 23    Third Circuit view of things is that we don't throw things

11:28:27 24    out on the merits, particularly when they have a plausible

11:28:36 25    explanation that the answering reports said something

11:28:45 1   different than what they expected.

11:28:48 2             So let me just go and think about this for a

11:28:52 3   minute, and then I'll be back.  All right?

11:28:56 4             (Recess was taken.)

11:50:10 5             THE COURT:  You can be seated.  All right.

11:50:14 6             So the way the plaintiff's letter is written,

11:50:18 7   it says, There's three different things here.  There's the

11:50:22 8   Amit and Lee combination which is point number one which is

11:50:26 9   said to be in violation of the Court's Scheduling Order.

11:50:29 10            And there's two and three which seem to be

11:50:32 11  essentially just the same things from the reply report that

11:50:36 12  should have been in the opening report; is that right?

11:50:38 13            MR. PETRSORIC:  That's accurate.

11:50:40 14            THE COURT:  Okay.  So on two and three, it seems

11:50:44 15  to me then that letting the plaintiff do a sur-reply sort of

11:50:51 16  takes care of that problem; right?

11:50:54 17            I mean, and other than the irritation of having

11:50:58 18  to do a sur-reply, there's no particular prejudice because

11:51:02 19  you're basically just doing expert reports back and forth;

11:51:05 20  right?

11:51:05 21            MR. PETRSORIC:  That is correct, Your Honor.

11:51:06 22            THE COURT:  Okay.  So that's how I'm going to

11:51:08 23  resolve two and three.

11:51:15 24            Ms. Ying earlier suggested two weeks would be

11:51:20 25  fine by the defendants.  Of course, they don't get to set

11:51:28  1    the schedule, but it's good to have a schedule set.

11:51:31  2              Is that fine by you?

11:51:32  3              MR. PETRSORIC:  I believe so, Your Honor.

11:51:35  4              THE COURT:  Okay.

11:51:35  5              MR. PETRSORIC:  If -- obviously, without

11:51:38  6    consulting with their expert.  If something comes up,

11:51:40  7    we'll --

11:51:41  8              THE COURT:  Yeah.  Yeah.  But as a presumptive

11:51:44  9    date, two weeks.

11:51:45 10              MR. PETRSORIC:  Yes.

11:51:45 11              THE COURT:  So in terms of the first one, I

11:51:52 12    think the standard here is perhaps a little bit different

11:51:58 13    than in terms of dealing with the second and third one

11:52:02 14    because the point that's being made is there's a Court

11:52:07 15    Order, so you need to show good cause.  Right?

11:52:11 16              MR. PADMANABHAN:  So the cases we looked at said

11:52:17 17    exclusion of expert evidence falls under Pennypack which is

11:52:21 18    what we applied.  So we're -- we didn't really see it that

11:52:24 19    way, but --

11:52:25 20              THE COURT:  Okay.  Well, so here's the thing,

11:52:31 21    you know, and I think that, to some extent, the point that

11:52:34 22    Mr. Brauerman has been making or arguing, I guess, is there

11:52:45 23    was an Order that was agreed to.  You know, first there was

11:52:52 24    an agreement by the parties.  Then it turned into a Court

11:52:52 25    Order.

11:52:58  1          The agreement of the parties was made against

11:53:00  2   the backdrop of a certain amount of uncertainty.  And the

11:53:08  3   Scheduling Order was originally entered -- I don't have the

11:53:12  4   exact date in my head, but it was something like they will

11:53:15  5   down select the 18 in October of 2017.  Four weeks later,

11:53:19  6   November of 2017, you'll down select through your pieces of

11:53:23  7   art, and there will be another month for fact discovery.

11:53:26  8   And another month later, you're submitting expert reports.

11:53:29  9          And so I think this is primarily a good cause

11:53:44 10   sort of thing because both parties entering into the

11:53:56 11   stipulation were making an agreement in order to perhaps

11:54:09 12   lower the cost, certainly to streamline the case to try and

11:54:13 13   focus it, and get it done.  All very admirable.

11:54:19 14          And so to say that, well, we want to change our

11:54:34 15   position now, you're either saying it based on something

11:54:37 16   that was known to you at the time you entered into it, or

11:54:44 17   you're saying you want to change it based on something that

11:54:48 18   happened afterwards.  But it seems like the things that

11:54:54 19   happened afterwards were things that are not things that are

11:55:10 20   contrary to things that had happened before.

11:55:14 21          They may not have been known to you based on the

11:55:18 22   things that have been disclosed to you before, but they're

11:55:23 23   not like the plaintiff was reversing itself or doing

11:55:29 24   something else.  There was a certain amount of haziness as

11:55:33 25   to what their positions were, and it became less hazy when

11:55:37 1    they were busy writing rebuttal reports.

11:55:42 2            And so I'm having trouble seeing it as good

11:55:46 3    cause to essentially allow for the substitution of a

11:55:59 4    different combination when you have four combinations, and

11:56:07 5    three of them are going to continue.  In other words, the

11:56:11 6    one that you were willing to drop for this one may be -- I

11:56:19 7    guess, that was in fifth place in terms of the various

11:56:22 8    combinations, but you've still got three of them left.  So

11:56:31 9    I'm having trouble seeing that there's good cause.

11:56:36 10           And then to some extent, if we get to Pennypack

11:56:43 11   as a sort of a backup, while I certainly would not find any

11:56:49 12   bad faith on the part of the defendants, it also seems to me

11:56:56 13   to be not very important to your case when, you know, it

11:57:04 14   affects two or three of the 18 claims at most.  You still

11:57:07 15   have whatever your non-infringement defenses are.  You still

11:57:11 16   have three.

11:57:12 17           Plus, if you wanted the fourth combination that

11:57:14 18   you're willing to get rid of, you still have multiple

11:57:17 19   obviousness combinations.  Who knows, you probably have

11:57:20 20   other invalidity defenses, too.

11:57:22 21           And so Pennypack is not always the best vehicle

11:57:35 22   for trying to factor into the fact that underlying the Court

11:57:41 23   Order, there's an agreement which I've heard nothing other

11:57:45 24   than plaintiff has lived up to its side which was down

11:57:50 25   select the 18, and they still have the 18.  So that's the

11:57:55  1    way that I'm pretty much leaning.

11:57:58  2             But Mr. Padmanabhan, is there something I'm

11:58:03  3    overlooking here?

11:58:04  4             MR. PADMANABHAN:  Yeah, so a couple of things.

11:58:06  5    I don't think Mr. Petrsoric, when he was talking about two

11:58:10  6    or three claims, was saying that this invalidity combination

11:58:13  7    addresses only two or three claims --

11:58:14  8             THE COURT:  That's what I thought he was saying.

11:58:16  9             MR. PETRSORIC:  No, Your Honor.  I think I was

11:58:18 10    saying that there would be substitution of two or three

11:58:22 11    claims potentially based on this obviousness combination.

11:58:26 12             THE COURT:  Okay.

11:58:27 13             MR. PADMANABHAN:  The actual invalidity

11:58:29 14    combination, it's fairly central, and it addresses, I

11:58:33 15    believe, nine of the -- is that right?  Or more than nine,

11:58:40 16    maybe 12 of the 18 claims at issue right now.  So it's --

11:58:44 17             MR. PETRSORIC:  I think it's --

11:58:45 18             MR. PADMANABHAN:  -- something in there.

11:58:46 19             MR. PETRSORIC:  -- only the '679 patent.

11:58:48 20             MR. PADMANABHAN:  Right, but has the bulk of the

11:58:50 21    claims at issue in the case.  So that's the first thing.

11:58:54 22             The second thing is I think from an invalidity

11:58:59 23    perspective, I understand we may have other arguments, but

11:59:03 24    we understood the argument that the plaintiff has made is

11:59:08 25    fairly fundamental, and we did not understand them to be

11:59:11  1    making it.  If we understood that, we would have put this at

11:59:15  2    the head of our invalidity case, but we did not understand

11:59:19  3    them to be making this argument.

11:59:20  4              And so, you know, we are a little bit sort of

11:59:28  5    playing defense on the thing where we specifically went

11:59:31  6    through the task of serving interrogatories to get the

11:59:35  7    information we needed in order to shape the case the way we

11:59:38  8    thought it should be shaped.  Effectively, I think they're

11:59:44  9    going to get rewarded for hiding the ball.  That's the way

11:59:47 10    we see it.

11:59:47 11              THE COURT:  But even looking at it from your

11:59:53 12    perspective, the ball was hidden when you made the

11:59:56 13    agreement; right?

11:59:58 14              MR. YING:  Well, I don't think so, Your Honor.

11:59:59 15    I think this goes back to we had written to them, and we had

12:00:03 16    a meet and confer with them about the sufficiency of their

12:00:07 17    validity contentions.  And what they gave us we put in

12:00:10 18    Exhibit D, and it literally just has --

12:00:14 19              THE COURT:  And I just looked at that.

12:00:15 20              MR. YING:  So the problem that we have is they

12:00:17 21    downsized their selection of claims --

12:00:19 22              THE COURT:  But Ms. Ying, let me interrupt you

12:00:22 23    just for a second.  The first round of that I think was

12:00:27 24    dated after the down selection occurred; right?

12:00:32 25              MR. PADMANABHAN:  Two things with that, Your

12:00:34 1    Honor.  The first thing is we had many extensions in the

12:00:36 2    schedule.  That's sort of -- this all played out with the

12:00:36 3    backdrop of the extension.

12:00:41 4            But the flip side is when they were selecting

12:00:44 5    claims, they served infringement contentions, and they asked

12:00:46 6    us for our positions.  Their infringement contentions had

12:00:50 7    zero explanation, and we gave them lengthy, lengthy

12:00:52 8    non-infringement contentions.  We dug through, and we did

12:00:55 9    our best to give them our positions.

12:00:58 10           We could have just said, no, this limitation is

12:01:00 11   not satisfied, just said no for each limitation.  We did not

12:01:03 12   do that.

12:01:03 13           THE COURT:  Well, so I'm sorry to interrupt, but

12:01:12 14   in some ways, I'm not that interested in what happened.

12:01:14 15           MR. PADMANABHAN:  Sure.

12:01:16 16           MR. YING:  I think maybe the way to look at it

12:01:17 17   is we truly did not think that they had disclosed their

12:01:23 18   validity position that they presented in their answering

12:01:26 19   form, and we noted that in our letter.  The alternative that

12:01:29 20   we would propose is if that expert opinion on their

12:01:33 21   answering side goes out, then our reply is sort of moot,

12:01:36 22   too.  That is, we just take both of those things out of the

12:01:39 23   equation and leave it at what the picture looked like when

12:01:42 24   we finished fact discovery.

12:01:44 25           THE COURT:  But in some ways, the difficulty

12:01:51 1   with the argument you just made, I think, is you're saying,

12:01:57 2   on the one hand, we were surprised.  And on the other hand,

12:02:03 3   you're saying, they had given us no useful information for

12:02:07 4   us to know what was coming.

12:02:09 5           Right?

12:02:10 6           MR. YING:  Right, but I don't think they're

12:02:12 7   inconsistent with each other.

12:02:13 8           THE COURT:  And I'm not saying they're

12:02:15 9   inconsistent, like you know, one's left and one's right,

12:02:21 10  whatever.  But it's saying we didn't have any information,

12:02:30 11  and when they then gave us some information, we were

12:02:33 12  surprised by it.  In some ways, if you don't have any

12:02:35 13  information, you should be surprised by it.

12:02:38 14          MR. YING:  Well, I think we were surprised by it

12:02:39 15  because we didn't think that they were going to provide the

12:02:42 16  explanation that they did.  I mean, it's one thing to say

12:02:45 17  you don't have "X".  It's another thing to say you don't

12:02:48 18  have "X" because "Y."

12:02:49 19          And we didn't get the because "Y" until their

12:02:52 20  answering report.  That's the problem.

12:02:54 21          THE COURT:  Okay.

12:02:56 22          MR. PETRSORIC:  And on the flip side, Your

12:02:57 23  Honor, the argument I presented earlier was the because "Y"

12:03:02 24  with respect to their invalidity contentions, we didn't see

12:03:05 25  until their opening expert report on invalidity.

12:03:09 1                      THE COURT:  Okay.  Well, so here's what I'm

12:03:14 2      going to do:  The points two and three, I've resolved.

12:03:18 3                      Point one, there's a lot of argument back and

12:03:22 4      forth.  You did write three-page letters which only two

12:03:29 5      pages dealt with this.

12:04:11 6                      Well, so actually let me ask you this,

12:04:15 7      Mr. Padamanabhan:  So you said, and it seems to be agreed by

12:04:21 8      the parties, that the obvious combination impacts somewhere

12:04:26 9      between like ten and 12 of the asserted 18 claims.  Does

12:04:34 10     this mean that in terms of your obviousness combinations,

12:04:37 11     it's now your lead obviousness combination on these ten or

12:04:42 12     12?

12:04:43 13                     MR. PADMANABHAN:  Yes, Your Honor.  It is very

12:04:44 14     important to our invalidity case.

12:04:48 15                     MR. YING:  And to point out, it's important

12:04:50 16     because of what they said in their answering, not because we

12:04:53 17     thought it was necessarily the most important before the

12:04:58 18     opening expert reports.

12:05:01 19                     THE COURT:  And is it the lead combination for

12:05:09 20     essentially all ten to 12?

12:05:15 21                     MR. PADMANABHAN:  Correct.  Yeah, there's no --

12:05:18 22     yes.

12:05:18 23                     THE COURT:  Yes.

12:05:19 24                     MR. PADMANABHAN:  That is the simple answer.

12:05:20 25                     THE COURT:  All right.  So I'll give you some

12:05:37  1    choices.

12:05:47  2            One is you can work this out between yourselves

12:05:53  3    which perhaps part of the way you'd work it out is by

12:05:58  4    dropping all the other combinations on the ten to 12 and

12:06:01  5    just doing the one that you've said is your best

12:06:04  6    combination.  Because by the time you get to trial, you're

12:06:07  7    only going to have one combination anyhow.  But like I said,

12:06:12  8    if you wanted to do that or something else, that would be

12:06:15  9    fine.

12:06:16  10           The other alternative, given the kind of

12:06:22  11   evolving argument that we're having here, is you can

12:06:26  12   actually brief this like it's an important issue.  And so

12:06:32  13   defendant, you can file a brief with whatever they think an

12:06:37  14   appropriate motion is according to whatever schedule you

12:06:41  15   want to work out.  Plaintiffs can answer.  Defendants can

12:06:45  16   reply.  And in due course, I will decide this.

12:06:52  17           And maybe there's some third alternative I'm not

12:07:00  18   thinking of which you can work out between yourselves.  But

12:07:05  19   I don't think it's necessarily in the interest of justice

12:07:08  20   that I decide this right now based on the presentations that

12:07:16  21   I have.  But the other two, that should go forward.

12:07:18  22           So why don't you all agree on a schedule.  You

12:07:23  23   can submit a stipulation, or agree on whatever it is you

12:07:27  24   want to do.  But if what you want to do is briefing, agree

12:07:30  25   on a schedule.  And you can submit it, and I will deal with

12:07:35 1    it.

12:07:36 2                        Okay?  All right?

12:07:38 3                        Okay.  So thank you.

12:07:40 4                        MR. BRAUERMAN:  Your Honor, I don't know if this

12:07:42 5    makes sense.  I just want to make sure Your Honor wouldn't

12:07:44 6    have a problem with it.  If we decide it makes efficient

12:07:47 7    sense to do all of the briefing, the reply reports at the

12:07:52 8    same time, would Your Honor have any objection to us sitting

12:07:54 9    tight on two and three until one was resolved just so we did

12:07:58 10   it all at the same time, if that's the way we go?

12:08:00 11                       THE COURT:  I don't care if that's what you

12:08:02 12   decide to do between yourselves.  I'm indifferent.

12:08:12 13                       MR. BRAUERMAN:  Okay.  Thank you, Your Honor.

12:08:13 14                       MR. YING:  Thank you, Your Honor.

12:08:14 15                       THE COURT:  All right.  Thank you.

12:08:18 16                       (Everyone said, Thank you, Your Honor.)

12:08:18 17                       (Discovery Dispute Conference in chambers was

12:08:19 18   concluded at 12:08 p.m.)

19                       I hereby certify that the foregoing is a true

20   and accurate transcript from my stenographic notes in the

21   proceeding.

22                                 /s/ Heather M. Triozzi
                                   Official Merit Reporter
23                                 U.S. District Court

24

25