## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| **IN RE CHANBOND, LLC PATENT LITIGATION** | C.A. No. 15-842-RGA<br><br>CONSOLIDATED<br><br>**REDACTED** |

**PLAINTIFF CHANBOND LLC'S OPENING BRIEF IN SUPPORT OF ITS MOTION TO EXCLUDE THE EXPERT OPINIONS OF CATHLEEN THOMAS QUIGLEY REGARDING WRITTEN DESCRIPTION AND ENABLEMENT, OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

Date: April 5, 2019

*Of Counsel:*

Robert A. Whitman *(pro hac vice)*
Mark S. Raskin *(pro hac vice)*
John F. Petrsoric *(pro hac vice)*
Michael DeVincenzo *(pro hac vice)*
Andrea Pacelli *(pro hac vice)*
**MISHCON DE REYA NEW YORK LLP**
156 Fifth Avenue, suite 904
New York, New York 10010
(212) 612-3270
robert.whitman@mishcon.com
mark.raskin@mishcon.com
john.petrsoric@mishcon.com
michael.devincenzo@mishcon.com
andrea.pacelli@mishcon.com

**BAYARD, P.A.**

Stephen Brauerman (sb4952)
Sara E. Bussiere (sb5725)
600 N. King Street, Suite 400
Wilmington, Delaware 19801
(302) 655-5000
sbrauerman@bayardlaw.com
sbussiere@bayardlaw.com
*Counsel for Plaintiff*
*ChanBond, LLC*

## TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................................................... 1

II.     NATURE AND STAGE OF THE PROCEEDING........................................................... 1

III.    LEGAL STANDARD...................................................................................................... 2

        A.      *Daubert* ............................................................................................................... 2

        B.      Summary Judgment .............................................................................................. 3

        C.      Enablement ........................................................................................................... 3

        D.      Written Description............................................................................................... 5

IV.     ARGUMENT ................................................................................................................... 6

        A.      The Specification Supports and Enables Transmitting to or from the Claimed
                "Wideband Signal Distribution System" .............................................................. 6

                1.      Ms. Quigley Concedes that the Specification Describes and Enables the
                        Asserted Claims as Written and Construed ................................................ 6

                2.      Ms. Quigley Sets Forth the Same Arguments the Court Rejected During
                        Claim Construction .................................................................................... 9

        B.      The Specification Supports and Enables the Claimed "Combiner"...................... 12

        C.      The Specification Supports and Enables "Channel in Use Information" ............. 14

                1.      The Claims of the '679 and '565 Patents Do Not Require the "Intelligent
                        Device" to Receive "Channel in Use Information" ................................... 15

                2.      The Claims Do Not Require "Channel in Use Information" Contained in a
                        Modulated RF Signal or that Identifies Specific Addressable Devices.... 16

                3.      Ms. Quigley Concedes that the Specification Supports the Claimed
                        "Channel in Use Information" ................................................................... 18

V.      CONCLUSION............................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AK Steel Corp. v. Sollac*,
  344 F.3d 1234 (Fed. Cir. 2003)........................................................................3

*Amgen Inc. v. Hoechst Marion Roussel, Inc.*,
  314 F.3d 1313 (Fed. Cir. 2003)....................................................................4, 12

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986)........................................................................................3

*Ariad Pharm., Inc. v. Eli Lilly and Co.*,
  598 F.3d 1336 (Fed. Cir. 2010)........................................................................5

*Daubert v. Merrell Dow Pharm., Inc.*,
  509 U.S. 579 (1993)........................................................................................2

*Dominion Res. Inc. v. Alstom Grid, Inc.*,
  No. 15-224-MAK, 2016 WL 7365185 (E.D. Pa. May 16, 2016) ......................9, 12

*Durel Corp. v. Osram Sylvania Inc.*,
  256 F.3d 1298 (Fed. Cir. 2001)................................................................4, 12, 14

*Edwards Lifesciences AG v. CoreValve, Inc.*,
  No. 08-91-GMS, 2011 WL 446203 (D. Del. Feb. 7, 2011).................................4

*Falkner v. Inglis*,
  448 F.3d 1357 (Fed. Cir. 2006)........................................................................4

*In re Gay*,
  309 F.2d 769 (C.C.P.A. 1962)........................................................................4

*Hologic, Inc. v. Minerva Surgical, Inc.*,
  325 F. Supp. 3d 507 (D. Del. 2018).................................................................5

*Inline Connection Corp. v. AOL Time Warner Inc.*,
  Nos. 02-272-MPT, 02-477-MPT, 2007 WL 275928 (D. Del. Jan. 29, 2007) ..............7, 11, 12

*Intel Corp. v. U.S. Int'l Trade Comm'n*,
  946 F.2d 821 (Fed. Cir. 1991)........................................................................5

*Johns Hopkins Univ. v. CellPro, Inc.*,
  152 F.3d 1342 (Fed. Cir. 1998)........................................................................4

*Koito Mfg. Co., Ltd. v. Turn-Key-Tech, LLC*,
   381 F.3d 1142 (Fed. Cir. 2004)...................................................................................4

*Kraft Foods Group Brands LLC v. TC Heartland, LLC*,
   232 F. Supp. 3d 632 (D. Del. 2017)......................................................................9, 14

*Liebel–Flarsheim Co. v. Medrad, Inc.*,
   481 F.3d 1371 (Fed. Cir. 2007)...................................................................................3

*Liquid Dynamics Corp. v. Vaughan Co., Inc.*,
   449 F.3d 1209 (Fed. Cir. 2006)...................................................................................8

*LizardTech, Inc. v. Earth Res. Mapping, Inc.*,
   424 F.3d 1336 (Fed. Cir. 2005)...............................................................................4, 5

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986)....................................................................................................3

*Microsoft Corp. v. i4i Ltd. P'ship*,
   564 U.S. 91 (2011)......................................................................................................5

*Personalized Media Comms., LLC v. Zynga, Inc.*,
   No. 2:12-00068-JRG, 2013 WL 5962812 (E.D. Tex. Nov. 7, 2013) ......................12

*Plant Genetic Sys., N.V. v. DeKalb Genetics Corp.*,
   315 F.3d 1335 (Fed. Cir. 2003)...................................................................................5

*Podobnik v. U.S. Postal Service*,
   409 F.3d 584 (3d Cir. 2005).........................................................................................3

*PowerOasis, Inc. v. T–Mobile USA, Inc.*,
   522 F.3d 1299 (Fed. Cir. 2008)...................................................................................6

*Streck, Inc. v. Research & Diagnostic Sys., Inc.*,
   665 F.3d 1269 (Fed. Cir. 2012)...............................................................................4, 5

*Tobinick v. Olmarker*,
   753 F.3d 1220 (Fed. Cir. 2014)...................................................................................5

*Universal Elec., Inc. v. Universal Remote Control, Inc.*,
   No. 12-00329-AG, 2014 WL 8096334 (C.D. Cal. Apr. 21, 2014) ............................9

**Statutes**

35 U.S.C. § 112...................................................................................................... *passim*

## I.      INTRODUCTION

Defendants retained Cathleen Quigley to provide opinions under 35 U.S.C. § 112 regarding written description and enablement of the asserted claims.  Ms. Quigley directed her opinions to certain claim terms, including claim terms that the Court has construed.  In purportedly analyzing whether the asserted *claims* were enabled and supported by the patents' common specification, however, Ms. Quigley never applied or even considered the Court's construction of these terms.  Rather, Ms. Quigley analyzed whether the *accused devices* were enabled and supported by the patents' specification, which is contrary to law.  In so doing, she injected artificial limitations that neither the claims, nor the Court's construction require.  As a result, Ms. Quigley's opinions are legally flawed and should be excluded.

Moreover, at her deposition, Ms. Quigley conceded that the claims, as written and as construed by the Court, were fully supported and enabled by the patents' specification.  Since defendants' expert has conceded that the asserted claims, as written and construed by the Court, are fully supported and enabled, the Court should grant summary judgment that the common specification enables and provides written description for such terms.

## II.     NATURE AND STAGE OF THE PROCEEDING

ChanBond filed this patent case in September 2015.  ChanBond is asserting claims from three related patents, all of which share a common specification that was originally filed in December 2000.  The asserted patents are U.S. Patent Nos. 7,941,822 (the "'822 Patent"), 8,341,679 (the "'679 Patent") and 8,984,565 (the "'565 Patent") (collectively, the "Asserted Patents"), Exhibits A–C, respectively.[1]  Generally, the claimed inventions are directed to a type of data transmission technology that is now known as "channel bonding."  A particular channel

---

[1] Exhibits are attached to the Declaration of Robert Whitman in Support of Plaintiff ChanBond LLC's Motion to Exclude the Expert Opinions of Cathleen Thomas Quigley Regarding Written Description and Enablement, or in the Alternative, for Summary Judgment.

is constrained by the amount of data it can transmit.  The asserted patents teach and claim apparatus that "bonds" multiple channels together to allow for increased data transmission. Defendants use the patented technology to transmit Internet data over coaxial cables at speeds greater than the capacity of a single channel (approximately 40 megabits per second). Defendants adopted the patented technology in 2005, with the release of an industry specification called DOCSIS (Data Over Cable Service Interface Specification) version 3.0.  DOCSIS 3.0 introduced the patented channel bonding features to DOCSIS compliant products that transmit data over coaxial cables.  ChanBond is seeking damages in the form of reasonable royalties.

The Court held a *Markman* hearing on November 15, 2016, and issued its memorandum opinion regarding claim construction (D.I. 86) and its claim construction order (D.I. 89) on December 9 and 21, 2016, respectively.  As is relevant to the present motion, the Court construed the claim terms "wideband signal distribution system" and "combiner," but the parties did not request construction of the term "channel in use information."  *See id.*

## III.    LEGAL STANDARD

### A.    *Daubert*

Federal Rule of Evidence 702 requires that expert testimony "help the trier of fact to understand the evidence or to determine a fact in issue."  FED. R. EVID. 702.  Expert testimony is admissible only if "the testimony is based on sufficient facts or data," "the testimony is the product of reliable principles and methods," and "the expert has reliably applied the principles and methods to the facts of the case."  *Id.*  "[T]he Rules of Evidence—especially Rule 702—… assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand."  *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993).  Expert testimony that is not relevant, unfairly prejudicial, confusing, or misleading to the jury should also be excluded.  *See* FED. R. EVID. 402, 403.

B.    **Summary Judgment**

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see Liebel–Flarsheim Co. v. Medrad, Inc*., 481 F.3d 1371, 1377 (Fed. Cir. 2007).  In viewing the record, all justifiable inferences are to be drawn in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986).  In determining whether summary judgment is appropriate, the Court "must view the evidence presented through the prism of the substantive evidentiary burden that would inhere at trial." *AK Steel Corp. v. Sollac*, 344 F.3d 1234, 1238 (Fed. Cir. 2003) (quoting *Anderson*, 477 U.S. at 245).

To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also Podobnik v. U.S. Postal Service*, 409 F.3d 584, 594 (3d Cir. 2005) (A party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue.") (internal quotation marks omitted).  Although the "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment," a factual dispute is genuine where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 247–48.

C.    **Enablement**

Paragraph 1 of Section 112 states in pertinent part:

> The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same . . . .

35 U.S.C. § 112 ¶ 1.  "The enablement requirement is met where one skilled in the art, having

read the specification, could practice the invention without 'undue experimentation.'" *Streck,*

*Inc. v. Research & Diagnostic Sys., Inc*., 665 F.3d 1269, 1288 (Fed. Cir. 2012) (citation omitted).

The "dispositive question of enablement does not turn on whether the accused product is

enabled," but, instead, on whether the specification "teach[es] those skilled in the art how to

make and use the *full scope* of the claimed invention without undue experimentation." *Durel*

*Corp. v. Osram Sylvania Inc*., 256 F.3d 1298, 1306 (Fed. Cir. 2001); *see also Edwards*

*Lifesciences AG v. CoreValve, Inc*., No. 08-91-GMS, 2011 WL 446203, at *6 (D. Del. Feb. 7,

2011) ("It is the asserted claims rather than the accused device which must be 'enabled' by the

patent-in-suit."), *aff'd in relevant part*, *Edwards Lifesciences AG v. CoreValve, Inc*., 699 F.3d

1305 (Fed. Cir. 2013).

      The Federal Circuit has instructed that "it is unnecessary to spell out every detail of the

invention in the specification" to satisfy the enablement requirement. *LizardTech, Inc. v. Earth*

*Res. Mapping, Inc.*, 424 F.3d 1336, 1345 (Fed. Cir. 2005). Moreover, the patent application does

not need to disclose specific examples corresponding to every claimed embodiment. *See Falkner*

*v. Inglis*, 448 F.3d 1357, 1366 (Fed. Cir. 2006); *Amgen Inc. v. Hoechst Marion Roussel, Inc*., 314

F.3d 1313, 1335 (Fed. Cir. 2003) ("[T]he law makes clear that the specification need teach only

one mode of making and using a claimed composition.") ; *Johns Hopkins Univ. v. CellPro, Inc*.,

152 F.3d 1342, 1361 (Fed. Cir. 1998) ("The enablement requirement is met if the description

enables any mode of making and using the invention.") (citation omitted); *Koito Mfg. Co., Ltd. v.*

*Turn-Key-Tech, LLC*, 381 F.3d 1142, 1156 (Fed. Cir. 2004) ("[A] patent applicant does not need

to include in the specification that which is already known to and available to one of ordinary

skill in the art."); *In re Gay*, 309 F.2d 769, 774 (C.C.P.A. 1962) ("Not every last detail is to be

described, else patent specifications would turn into production specifications, which they were

never intended to be.").

Whether the specification enables the full scope of its claims without undue experimentation is measured as of the filing date of the patent application, here December 2000. *Plant Genetic Sys., N.V. v. DeKalb Genetics Corp.*, 315 F.3d 1335, 1339 (Fed. Cir. 2003). Whether a claim is enabled is a question of law that turns on the underlying facts. *Streck,* 665 F.3d at 1268. A patent is presumed valid, and invalidity must be proved by clear and convincing evidence. *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 95 (2011). Clear and convincing evidence is defined as evidence that "proves in the mind of the trier of fact an abiding conviction that the truth of [the] factual contentions [is] highly probable." *Intel Corp. v. U.S. Int'l Trade Comm'n*, 946 F.2d 821, 830 (Fed. Cir. 1991).

### D.    Written Description

A patent must disclose a written description of the invention. 35 U.S.C. § 112 ¶ 1; *Ariad Pharm., Inc. v. Eli Lilly and Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010). This ensures that "the patentee had possession of the claimed invention at the time of the application, *i.e.*, that the patentee invented what is claimed." *LizardTech,*, 424 F.3d at 1344–45. This is an "objective inquiry into the four corners of the specification from the perspective of a person of ordinary skill in the art. Based on that inquiry, the specification must describe an invention understandable to that skilled artisan and show that the inventor actually invented the invention claimed." *Ariad*, 598 F.3d at 1351. The inventor need only "reasonably convey to one skilled in the art that [the inventor] had possession of *at least one* embodiment that meets the [proper] construction . . . ." *Tobinick v. Olmarker*, 753 F.3d 1220, 1227 (Fed. Cir. 2014). As with enablement, there is no requirement "that a patent describe the unclaimed features of the infringing product." *Hologic, Inc. v. Minerva Surgical, Inc.*, 325 F. Supp. 3d 507, 526 (D. Del. 2018).

To succeed on written description, a defendant must provide clear and convincing evidence that persons skilled in the art would not recognize in the disclosure a description of the claimed invention. *See PowerOasis, Inc. v. T–Mobile USA, Inc*., 522 F.3d 1299, 1306–07 (Fed. Cir. 2008). While compliance with the written description requirement is a question of fact, the issue is "amenable to summary judgment in cases where no reasonable fact finder could return a verdict for the non-moving party." *Id.* at 1307.

## IV.   ARGUMENT

The Court should exclude under Rule 702 Ms. Quigley's opinions on written description and enablement as legally erroneous because she assessed whether the asserted patents described and enabled the accused *devices* rather than the asserted *claims*, and she failed to apply the Court's claim construction. ChanBond hereby moves to exclude Ms. Quigley's written description and enablement opinions regarding: (i) transmitting to or from a "cable headend" (Quigley Op. (relevant portions of which are attached hereto as Ex. D) at ¶¶ 181–207); (ii) transmitting on a "non-local network" (¶¶ 208–211); (iii) "a device that performs processing as opposed to multiplexing" (¶¶ 236–243); (iv) a "router" (¶¶ 244–251); (v) "an intelligent device which receives the claimed channel in use information" (¶¶ 212–222, 233–235)[2]; and (iv) an intelligent device receiving, as opposed to detecting, "channel in use information" (¶¶ 223–232). (*See also* Quigley Reply (relevant portions of which are attached hereto as Ex. E) at ¶¶ 8–119.)

### A.   The Specification Supports and Enables Transmitting to or from the Claimed "Wideband Signal Distribution System"

#### 1.   Ms. Quigley Concedes that the Specification Describes and Enables the Asserted Claims as Written and Construed

The Court should exclude Ms. Quigley's opinions that the specification of the Asserted

---

[2] Ms. Quigley's "receiving as opposed to detecting channel in use information" opinions at ¶¶ 233–35 of her opening report (Ex. D) are coextensive with her previous opinions on "channel in use information." *See id.* at ¶ 234 (citing back to ¶¶ 212–221).

Patents does not support claims directed to an "intelligent device" that receives data from, or transmits data to, a "cable headend" or a "non-local network."[3] No claim recites a "cable headend" or a "non-local network" (or, for that matter, any "network"). These are all features of defendants' accused DOCSIS devices and none of these features are required by the asserted claims. Inventors are not required to describe or enable the accused devices, only the asserted claims. *See, e.g., Inline Connection Corp. v. AOL Time Warner Inc.*, Nos. 02-272-MPT, 02-477 MPT, 2007 WL 275928, at *5 (D. Del. Jan. 29, 2007) (Expert's "opinion is not reliable and is not admissible on enablement" because expert analyzed enablement of the accused device.).

The asserted claims recite an "intelligent device" that receives data from or transmits data to a "wideband signal distribution system" or "wideband distribution unit." (*See, e.g*., Ex. B, '679 Patent, at 15:44–46 (independent claim 12 reciting "output a second modulated RF signal … to a wideband signal distribution system."); Ex. C, '565 Patent, at 12:66–13:2 (independent claim 1 reciting "output the at least two dynamically allocated RF channels … to the wideband signal distribution system."); Ex. A, '822 Patent, at 14:9–13 (dependent claim 13 reciting "output the digital information … to a wideband distribution unit.").)

The Court construed the term "wideband signal distribution system," stating:

> I note that the patentee chose to expressly define "wideband" in the specification to mean "a signal or signal sets having an analog or digital characteristic that can be distributed on a carrier of 5 MHz to in excess of 1 GHz, for example." ('822 patent at 7:6–9). Therefore, I will construe this term [wideband signal distribution system] to mean "a system that distributes signals on a wide band of frequencies with wideband as defined in the specification."

(D.I. 86 (Claim Construction Op.) at 10; *see* D.I. 89 (Claim Construction Order) at 2.)

---

[3] Ms. Quigley's opinions regarding transmitting to or from a "cable headend" are set forth in Ex. D, Quigley Op., at ¶¶ 181–207; her opinions regarding transmitting on a "non-local network" are set forth in *id*. at ¶¶ 208–211. She combined "cable headend" and "non-local network" arguments in her Reply Report, Ex. E, at ¶¶ 8–67.

Ms. Quigley, however, never applies the Court's construction to her analysis, and only references it once in her opening report. In fact, when asked at deposition, Ms. Quigley readily agreed that *the specification described and enabled the actual claims as written and as construed by the Court*:



(Ex. F, Quigley Tr. at 100:25–102:15.)

The uncontested fact that the specification supports, describes and enables an intelligent device that transmits to and from a wideband signal distribution system—as recited in the claims and construed by the Court—ends the inquiry. *See, e.g., Liquid Dynamics Corp. v. Vaughan Co., Inc.,* 449 F.3d 1209, 1224 n.2 (Fed. Cir. 2006) (finding that the district court properly excluded accused infringer's expert testimony because it was based on an incorrect claim construction, and because it might prejudice and confuse the jury); *Kraft Foods Group Brands LLC v. TC*

*Heartland, LLC*, 232 F. Supp. 3d 632, 635 (D. Del. 2017) ("[E]xpert testimony that is inconsistent with the Court's claim construction is unreliable and unhelpful to the finder of fact . . . ."); *Dominion Res. Inc. v. Alstom Grid, Inc*., No. 15-224-MAK, 2016 WL 7365185, at *1 (E.D. Pa. May 16, 2016) ("Expert opinions in patent litigation must be based on the court's claim construction in order to be considered relevant and reliable and therefore admissible.") (citation omitted); *Universal Elec., Inc. v. Universal Remote Control, Inc*., No. 12-00329-AG, 2014 WL 8096334, at *2 (C.D. Cal. Apr. 21, 2014) (striking accused infringer's expert's opinion that relied on an improper claim construction).

The Court should thus exclude Ms. Quigley's opinions regarding written description and enablement for transmitting to or from "cable headends" and "non-local networks" as contradicting the Court's claim construction.  Alternatively, the Court should grant summary judgment because there is no dispute that the *asserted claims*, as construed (*i.e*., an intelligent device that transmits to or from a wideband signal distribution system and/or wideband distribution unit) satisfy the written description and enablement requirements.

> **2.    Ms. Quigley Sets Forth the Same Arguments the Court Rejected During Claim Construction**

Ms. Quigley opined that ███████████████████████

████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████ (Ex. D, Quigley Op., at ¶ 199; *see also id*. at ¶ 204

██████████████████████████████████

███████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████████████████████████ *id.*
at ¶ 205 ████████████████████████████████████████████████████

██████████████████████████████████████████████████

Ms. Quigley applies an erroneous legal standard.  Non-local networks, DOCSIS

networks, and cable headends are ***not*** elements of the claims.  The issue is not whether the

claims describe or enable the accused DOCSIS devices, but whether the specification describes

and enables the asserted claims.  The claims recite an intelligent device that transmits to or

receives from a *wideband signal distribution system*, which the Court construed as "a system that

distributes signals on a wide band of frequencies with wideband as defined in the specification,"

i.e., "a signal or signal sets having an analog or digital characteristic that can be distributed on a

carrier of 5 MHz to in excess of 1 GHz, for example."  (D.I. 86 at 10.)  As explained above, it is

uncontested that the specification supports and enables the asserted claims as construed.

In an attempt to support her irrelevant and erroneous argument that the specification must

describe and support the accused products, Ms. Quigley re-hashes the same arguments that

defendants set forth during claim construction regarding the term "wideband signal distribution

system," and that the Court has already rejected.  For example, Ms. Quigley argues that the

preferred embodiment is purportedly limited to ██████████████████████████

███████████████████████████████████████████████████████████████

████████  (*See, e.g.*, Ex. D, Quigley Op., at ¶¶ 185–192.)  The Court expressly rejected these

arguments during claim construction:

> As to whether the system must have "local infrastructure," I agree with Plaintiff that the
> claims and specification do not support limiting the meaning of wideband signal
> distribution system in this way.  As an initial matter, it is not clear what precisely
> Defendants mean by "local" and I am not inclined to construe a claim term using words
> that themselves are ambiguous or unclear.  Defendants argue that the patentee defined the
> wideband signal distribution system to be the system described in the Flickinger patent

referenced in the specification. (D.I. 68 at 77).  The specification is not so limiting, however, stating only that this invention uses a wideband signal distribution system "such as that disclosed" in the Flickinger patent. ('822 patent at 1:41–42).  This is not a clear definition of the wideband signal distribution system disclosed in the patent, nor is it a disavowal of other possible types of wideband signal distribution systems.

Furthermore, the restriction to a local infrastructure is not supported by the patent.

(D.I. 86 at 9–10.)

By focusing on whether the accused technology is enabled instead of the actual claims,

Ms. Quigley makes the same error as the expert in *Inline Connection*:

By requiring that the patent enable an end-to-end ADSL system, defendants ignore the rule that the specification "need not enable anything broader than the scope of the claims."  This protects patentees from having someone avoid infringement merely by adding one additional element to an otherwise infringing product.  This distinction is particularly important in the present matter because the accused system contains features that are not part of the claimed system, but which [defendant's expert] contends must be enabled by the specification.  For example, according to [the expert], "ADSL is designed to operate over distances of up to approximately three miles [approx. 18,000 feet] and do so without any additional amplification mid-way along the transmission path."  He concludes that 1,000 feet is the farthest distance discussed in the patent specifications, and therefore, the patents do not enable one of ordinary skill in the art to make an ADSL system which operates distances of 18,000 feet. . . . [W]hile defendants' ADSL service allegedly uses the claimed system to infringe, that does not mean that the patent specification must enable the ADSL service as opposed to merely the claimed system.

At no time did [the expert] evaluate whether the patents would enable one of skill in the art to make or use the claimed invention without undue experimentation . . . . Because [the expert] did not conduct a proper enablement analysis, his opinion is not reliable and is not admissible on enablement.

*Inline Connection Corp.*, 2007 WL 275928, at *4–5 (footnotes omitted).

In fact, Ms. Quigley provides opinions strikingly similar to those excluded in *Inline Connection* regarding the specification's purported failure to enable long distance communications.  (*See, e.g.*, Ex. D, Quigley Op., at ¶ 210 ███████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████

11

██████████████████████████████ ███ ██████████

███████████████████████ Like the expert in *Inline Connection*, Ms. Quigley never evaluated

whether the patents described or enabled the *claimed invention* as required by Section 112, but

instead evaluated whether the specification describes and enables the accused DOCSIS products,

which is irrelevant and contrary to law. *Id.*; *see Amgen Inc.*, 314 F.3d at 1335 ("[T]he

specification's failure to disclose [the accused infringer's technology is] legally irrelevant.");

*Durel Corp. v. Osram Sylvania Inc.*, 256 F.3d 1298, 1306 (Fed. Cir. 2001) ("The dispositive

question of enablement does not turn on whether the accused product is enabled."); *Dominion*

*Res. Inc.*, 2016 WL 7365185, at *3 ("[T]o the extent [the expert] opines the accused system is

not sufficiently enabled or described, his opinion is not helpful to the trier of fact" and is

therefore "unreliable and not admissible."); *Personalized Media Commc'n., LLC v. Zynga, Inc.*,

No. 2:12-00068-JRG, 2013 WL 5962812, at *2 (E.D. Tex. Nov. 7, 2013) (striking expert's

opinion that claims were not enabled because specification did not teach how to make the

accused product).

Ms. Quigley's opinion that the specification fails to describe or enable an intelligent

device that transmits to or from the accused cable systems (*e.g.*, cable headends, DOCSIS

networks, or non-local networks) rather than the claimed wideband signal distribution system

should be excluded. *See id.* Alternatively, the Court should grant summary judgment on this

issue because there is no dispute that the specification fully describes and enables the asserted

claims, *i.e.*, an intelligent device that transmits to or from a wideband signal distribution system.

### B.    The Specification Supports and Enables the Claimed "Combiner"

The claim term "combiner" appears in asserted claims 12, 26, 36 and 37 of the '679

Patent, claims 1, 13 and 14 of the '822 Patent, and claim 11 of the '565 Patent. (*See, e.g.*, Ex. B,

'679 Patent, at 15:23, 17:46, 19:9, 19:19, 19:24 ("first combiner" and "second combiner"); Ex. C, '565 Patent, at 14:27, 14:31 ("combiner"); Ex. A, '822 Patent, at 12:34, 14:9, 14:13–14 ("combiner").)  The Court construed "combiner" to mean "multiplexer that, when it receives multiple channels or inputs, performs parallel to serial conversion on those channels or inputs." (D.I. 89 at 1.)

Ms. Quigley made the same legal errors regarding the claimed "combiner" as she did regarding the claimed "wideband signal distribution system."  Specifically, she erroneously assessed whether the specification described and enabled the accused devices rather than the asserted claims, and she failed to consider or apply the Court's claim construction.  In her expert reports, Ms. Quigley never analyzed or opined whether the specification described or supported a "combiner" as construed by the Court.  Instead, she improperly analyzed the accused devices, opining that, purportedly, there is no written description or an enabling disclosure for a "combiner" that (i) "performs processing," or (ii) is a "router."[4]  But these are features of the accused devices and not claim limitations.

When asked whether the specification described and enabled a combiner as construed by the Court, *i.e.*, as a "multiplexer that, when it receives multiple channels or inputs, performs parallel to serial conversion on those channels or inputs," she conceded it did:

---

[4] Ms. Quigley's opinions regarding written description and enablement of "a device that performs processing as opposed to multiplexing" are set forth in Ex. D, Quigley Op., at ¶¶ 236–243 and Ex. E, Quigley Reply, at ¶¶ 100–113.  Her opinions regarding a "router" are set forth in Ex. D at ¶¶ 244–251 and Ex. E at ¶¶ 114–119.

████████████████████████████████████████████████

████████████████████████████████████████████

██████

████████████████████

(Ex. F, Quigley Tr., at 160:2–15.)

It is thus undisputed that the specification enables, describes and supports the claimed "combiner" as written and construed by the Court. This is all that Section 112 requires. Ms. Quigley's opinions directed to a purported lack of enablement and written description regarding the claimed combiner being a "processor" or "router" fail to apply the Court's claim construction and are improperly directed to the accused products. *See, e.g., Durel Corp.* 256 F.3d at 1306; *Kraft Foods*, 232 F. Supp. 3d at 635. Since Ms. Quigley's opinions are legally erroneous and would confuse the jury, they should be excluded at least under Rule 702. *Id.* Alternatively, the Court should grant summary judgment on this issue because there is no dispute that the specification fully supports, describes and enables the asserted claims as written and construed.

### C.     The Specification Supports and Enables "Channel in Use Information"

The term "channel in use information" appears in each asserted independent claim. (*See, e.g.*, Ex. B, '679 Patent (claim 12); Ex. C, '565 Patent (claim 1); Ex. A, '822 Patent (claim 1).) The parties did not request construction of this term. Ms. Quigley opined that there is no written description or enabling disclosure for (i) the claimed "channel in use information," or (ii) an intelligent device receiving (as opposed to detecting) "channel in use information."[5] Ms. Quigley, however, conceded that the specification discloses an intelligent device that receives the

---

[5] Ms. Quigley's opinions regarding written description and enablement of "channel in use information" for the '822 and '679 Patents are set forth in Ex. D, Quigley Op., at ¶¶ 212–222 and 233–235. Her opinions regarding written description and enablement of receiving, as opposed to detecting, "channel in use information" for the '822, '679 and '565 Patents are set forth at ¶¶ 223–232. She combined the two issues in her Reply Report (Ex. E) at ¶¶ 68–99.

claimed "channel in use information."  Further, Ms. Quigley, once again, erroneously assessed whether the specification describes and enables non-claimed features.  Accordingly, Ms. Quigley's opinions should be excluded, or the Court should grant summary judgment.

### 1.   The Claims of the '679 and '565 Patents Do Not Require the "Intelligent Device" to Receive "Channel in Use Information"

Ms. Quigley's opinions rest on the assumption that the "intelligent device" *receives* the "channel in use information."  For example, Ms. Quigley states that █████████████ ███████████████████████████████████████████████████████████ ████████████████████████████████ (Ex. D, Quigley Op., at ¶ 212.)  Likewise, she opines that the independent claims of the '822, '679 and '565 Patents are not supported by the specification, because █████████████████████████████████████████ ████████████████████████████████████████████████████ ██████████████████████████████████████████ (*Id.* at ¶ 232.)

Ms. Quigley's opinions, however, have no applicability to the claims of the '679 and '565 Patents, because those claims do not require the claimed "intelligent device" to *receive* "channel in use information" at all.  Specifically, claim 12 of the '679 Patent recites:

> 12.   An intelligent device for bi-directional distribution of modulated RF signals, comprising: a first input configured to receive a first modulated RF signal containing multiple channels; a demodulator unit configured to demodulate at least two channels contained in the first modulated RF signal ***when channel in use information identifies the at least two channels as containing information addressed to at least one addressable device***; . . . .

(Ex. B, '679 Patent at 15:14–22 (emphasis added).)  The claim language plainly does not require the "channel in use information" to be *received* by the "intelligent device."  Similarly, claim 1 of the '565 Patent recites:

> 1.   An intelligent device for transmitting information on a modulated RF signal, comprising: . . . ***a processor*** . . . ***being configured to***: . . . ***receive channel in use***

      ***information*** identifying which dynamically allocated RF channels are currently being used in a wideband signal distribution system; . . . .

(Ex. C, '565 Patent at 12:21–33 (emphasis added).)  This claim also does not require the "intelligent device" itself (as opposed to the "processor," which is just a component of the "intelligent device") to receive the "channel in use information."  For example, the "processor" could receive the "channel in use information" from another component of the "intelligent device," without necessarily requiring the "intelligent device" to receive the "channel in use information" from anywhere else.  Indeed, Ms. Quigley concedes that the intelligent device contains components that generate the "channel in use information" and provide it to other components of the "intelligent device," such as a "processor."  (*See* Ex. D, Quigley Op., at ¶ 227

███████████████████████████████████████████████████████████████

███████████████████████████████████

      Thus, Ms. Quigley's opinions regarding written description and enablement of (i) "channel in use information" and (ii) receiving, as opposed to detecting, "channel in use information" should be excluded at least with respect to the claims of the '679 and '565 Patents.

      **2.**    **The Claims Do Not Require "Channel in Use Information" Contained in a Modulated RF Signal or that Identifies Specific Addressable Devices**

      With respect to the '822 and '679 Patents, Ms. Quigley's opinions are predicated on the addition of non-existent features to claimed "channel in use information."   Ms. Quigley's opinions are thus legally irrelevant and should be excluded.

      Ms. Quigley opines that ████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

█████████████████████████████████████████████████████ (Ex. D,

Quigley Op., at ¶ 222; *see also id.* at ¶¶ 212–221 and 233–235; Ex. E, Quigley Reply, at ¶¶ 68–98.)  As discussed above, these opinions are inapplicable to the '679 Patent, which does not require the "intelligent device" to receive the "channel in use information."  Moreover, Ms. Quigley wrongly assumes that the claims require the ███████████████████████████ ████████████████████████████ (Ex. D, Quigley Op., at ¶ 218.)  Claim 1 of the '822 Patent, however, recites "an input configured ***to receive a modulated RF signal*** containing multiple channels, ***and to receive channel in use information*** which identifies each channel in the modulated RF signal that includes information addressed to at least one addressable device." (Ex. A, '822 Patent at 12:24–28 (emphasis added).)  Ms. Quigley's legal error is that she conflates the two distinct "receiv[ing]" claim limitations, and incorrectly assumes that the claimed "channel in use information" must be received as part of the claimed "modulated RF signal."   Claim 1 of the '822 Patent plainly recites "an input . . . to receive channel in use information," but the claim does not require the "channel in use information" to be in the separately claimed "modulated RF signal containing multiple channels."  (*Id.*)  To the contrary, the channel in use information simply has to be "receive[d]."

Similarly, Ms. Quigley assumes that ██████████████████████████████ ███████████████████████████████████████ (Ex. D, Quigley Op., at ¶ 216; *see also id.* at ¶ 213 █████████████████████████████████ ¶ 215 ████████████████████████████████████████ Ex. E, Quigley Reply, at ¶ 72 █████████████████████████████

████████████████████████████████████████████ ███████████████████  The claimed "channel in use information," however, identifies *channels*, not *addressable devices*.  For example, claim 1 of the '822 Patent recites "channel in

use information which identifies each **_channel_** in the modulated RF signal that includes information addressed to at least one addressable device." (Ex. A, '822 Patent at 12:25–28 (emphasis added).) Nowhere does the claim require the "channel in use information" to include

████████████████████████████████████████████████████████████████

████████████████████████ (Ex. D, Quigley Op., at ¶¶ 215, 216), or any other identification of devices. The claimed "channel in use information" plainly and expressly identifies channels, not devices.

Since Ms. Quigley's opinions regarding written description and enablement of "channel in use information" in the '822 and '679 Patents are based on a legally erroneous reading of the claims, they should be excluded.

### 3.   Ms. Quigley Concedes that the Specification Supports the Claimed "Channel in Use Information"

Regardless of her misunderstanding of claim scope, Ms. Quigley concedes that the specification supports the "channel in use information" claim limitation. Accordingly, the Court should grant summary judgment.

With respect to the '822 and '679 Patents, Ms. Quigley opines that the claims cover ████

██████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████ (Ex. D, Quigley Op., at ¶ 222.) Yet, she concedes that the specification discloses just such an "intelligent device," and agrees that

██████████████████████████████████████████████████████

██████████████████████ (Ex. E, Quigley Reply, at ¶ 71.) Specifically, Ms. Quigley concedes that this limitation "██████████████████████████████████████████████████

████████████████████████████████████████████████████████████████



(Ex. D, Quigley Op., at ¶ 217; *see also id.* at ¶ 218.)  Ms. Quigley also concedes that (*Id.* at ¶ 225.)

(*Id.* at ¶ 227.)  Based on Ms. Quigley's own opinions, there is no issue of material fact that the specification provides written description for the "channel in use information" of the '822 and '679 Patents, as even Ms. Quigley understands that limitation.

With respect to the '565 Patent, Ms. Quigley concedes that claim 1 of the '565 Patent

(Ex. D, Quigley Op., at ¶ 220 (emphasis added); *see also id.* at ¶ 221 As such, there is no issue of material fact that the Asserted Patents provide written description and enablement for the "channel in use information" of the '565 Patent, as Ms. Quigley understands that limitation.

Consistent with her report, Ms. Quigley conceded at her deposition that the specification discloses that the "channel in use information" can be received by the intelligent device via a

wire, as shown for example in Figure 4.  (Ex. F, Quigley Dep. Tr., at 139:3–17.)  This is shown

below in annotated Figure 4 (in which the intelligent device is depicted as reference numeral

402).  Notably, Figure 4 is a preferred embodiment that teaches that the "channel in use

information" is received via an input (depicted as Pair Pin 3,4), then sent to box 422 (RF System

Channel Detection) and on to DSP 420.  (*See* Ex. A, '822 Patent at 9:30–33, 10:14–18.)



FIG. 4

All parties thus agree that the specification teaches an intelligent device having an input

that receives the claimed "channel in use information."  Accordingly, summary judgment is

appropriate as to written description and enablement[6] of "channel in use information" and of

receiving, as opposed to detecting, "channel in use information" in the Asserted Patents.

## V.     CONCLUSION

For the foregoing reasons, ChanBond's motion to exclude Ms. Quigley's opinions

regarding written description and enablement or, in the alternative, for summary judgment,

should be granted.

---

[6] Although the section heading in Ms. Quigley's report mentions enablement, Ms. Quigley's
opinions only relate to written description of receiving, as opposed to detecting, "channel in use
information."  (*See* Ex. D, Quigley Op., at ¶¶ 223–232; Ex. E, Quigley Reply, at ¶ 99.)

Date: April 5, 2019

BAYARD, P.A.

*Of Counsel:*

*/s/ Stephen B. Brauerman*
Stephen Brauerman (sb4952)
Sara E. Bussiere (sb5725)
600 N. King Street, Suite 400
Wilmington, Delaware 19801
(302) 655-5000
sbrauerman@bayardlaw.com
sbussiere@bayardlaw.com
*Counsel for Plaintiff*
*ChanBond, LLC*

Robert A. Whitman *(pro hac vice)*
Mark S. Raskin *(pro hac vice)*
John F. Petrsoric *(pro hac vice)*
Michael DeVincenzo *(pro hac vice)*
Andrea Pacelli *(pro hac vice)*
**MISHCON DE REYA NEW YORK LLP**
156 Fifth Avenue, suite 904
New York, New York 10010
(212) 612-3270
robert.whitman@mishcon.com
mark.raskin@mishcon.com
john.petrsoric@mishcon.com
michael.devincenzo@mishcon.com
andrea.pacelli@mishcon.com