# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

**IN RE CHANBOND, LLC
PATENT LITIGATION**

C.A. No. 15-842-RGA

CONSOLIDATED

**PUBLIC REDACTED VERSION**

## PLAINTIFF CHANBOND, LLC'S BRIEF IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF NO INFRINGEMENT OF THE CHANBOND PATENTS

Date: May 16, 2019
*Of Counsel:*

Robert A. Whitman *(pro hac vice)*
Mark S. Raskin *(pro hac vice)*
John F. Petrsoric *(pro hac vice)*
Michael DeVincenzo *(pro hac vice)*
Andrea Pacelli *(pro hac vice)*
**MISHCON DE REYA NEW YORK LLP**
156 Fifth Avenue, suite 904
New York, New York 10010
(212) 612-3270
robert.whitman@mishcon.com
mark.raskin@mishcon.com
john.petrsoric@mishcon.com
michael.devincenzo@mishcon.com
andrea.pacelli@mishcon.com

**BAYARD, P.A.**
Stephen Brauerman (sb4952)
Sara E. Bussiere (sb5725)
600 N. King Street, Suite 400
Wilmington, Delaware 19801
(302) 655-5000
sbrauerman@bayardlaw.com
sbussiere@bayardlaw.com
*Counsel for Plaintiff
ChanBond, LLC*

## TABLE OF CONTENTS

I. INTRODUCTION AND SUMMARY OF THE ARGUMENT ............................................. 1

II. ARGUMENT ..................................................................................................................... 1

   A. Defendants' CMTS and CMs Meet the '679 and '565 "Modulator Unit" Limitation ... 1

     1. Defendants Cannot Escape Infringement by Practicing Non-Claimed Features ............ 1

     2. Defendants Misrepresent the Operation of the Accused Devices .................................... 6

     3. Expected Expert Testimony at Trial Proves CMTS Infringement .................................. 8

     4. Expected Expert Testimony at Trial Proves CM Infringement........................................ 9

   B. Defendants' CMTS and CMs Meet the '679 and '822 "Combiner" Limitation .......... 10

     1. The Claims Do Not Prevent the "Intelligent Device" from Operating on Additional, Unclaimed Data ....................................................................................... 10

     2. Even Under Defendants' Reading of the Claims, the Accused CMTS and CMs Meet All of the Claim Limitations.................................................................................. 14

     3. The Accused CMTS and CMs Have a "Multiplexer" that "Performs Parallel to Serial Conversion" on the Received "Channels" ............................................................ 17

   C. Defendants' CMs Meet the "Combiner" Limitations of '822 Claim 14 ....................... 19

III. CONCLUSION ................................................................................................................ 20

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*01 Communique Lab., Inc. v. LogMeIn, Inc.*,
    687 F.3d 1292 (Fed. Cir. 2012)............................................................................20

*AutoAlert, Inc. v. DealerSocket, Inc.*,
    No. SA CV 13-00657-SJO-JPRx, 2014 WL 12576818 (C.D. Cal. June 18, 2014)..................4

*Baldwin Graphic Sys., Inc. v. Siebert, Inc.*,
    512 F.3d 1338 (Fed. Cir. 2008)............................................................................20

*Boehringer Ingelheim Int'l GmbH v. Barr Labs., Inc.*,
    No. 05-cv-700-JJF, 2008 WL 2756127 (D. Del. July 15, 2008) ............................10

*Carl Zeiss Stiftung v. Renishaw PLC*,
    945 F.2d 1173 (Fed. Cir. 1991)......................................................................3, 4, 14

*Core Wireless Licensing S.A.R.L. v. Apple Inc.*,
    899 F.3d 1356 (Fed. Cir. 2018)............................................................................14

*Eon Corp IP Holdings LLC v. Aruba Networks, Inc.*,
    62 F. Supp. 3d 942 (N.D. Cal. 2014) ..................................................................4, 5

*Finisar Corporation v. DirecTV Group., Inc.*,
    523 F.3d 1323 (Fed. Cir. 2008)............................................................................12

*Finjan, Inc. v. Secure Computing Corp.*,
    626 F.3d 1197 (Fed. Cir. 2010)............................................................................14

*FlatWorld Interactives LLC v. Samsung Elecs. Co., Ltd.*,
    No. 12-cv-804-LPS, 2014 WL 7464143 (D. Del. Dec. 31, 2014) ............................3

*Free Motion Fitness, Inc. v. Cybex Int'l, Inc.*,
    423 F.3d 1343 (Fed. Cir. 2005)......................................................................11, 14

*Harris Corp. v. Federal Exp. Corp.*,
    502 F. App'x 957 (Fed. Cir. 2013). (Op. Br. .)......................................................16

*Hologic, Inc. v. Minerva Surgical, Inc.*,
    325 F. Supp. 3d 507, 526 (D. Del. 2018)..............................................................14

*Howmedica Osteonics Corp. v. Wright Med. Tech., Inc.*,
    540 F.3d 1337 (Fed. Cir. 2008)......................................................................12, 13

*KCJ Corp. v. Kinetic Concepts, Inc.*,
   223 F.3d 1351 (Fed. Cir. 2000)..................................................................................19

*Lugus IP, LLC v. Volvo Car Corp.*,
   No. 12-2906, 2014 WL 2094086 (D.N.J. May 20, 2014)............................................4

*M2M Solutions LLC v. Motorola Solutions, Inc.*,
   No. CV 12-33-RGA, 2016 WL 70814 (D. Del. Jan. 6, 2016) ...........................14, 15

*Microprocessor Enhancement Corp. v. Tex. Instruments Inc.*,
   520 F.3d 1367 (Fed. Cir. 2008)..................................................................................13

*N. Telecom, Inc. v. Datapoint Corp.*,
   908 F.2d 931 (Fed. Cir. 1990)......................................................................................3

*Paragon Solutions., LLC v. Timex Corp.*,
   566 F.3d 1075 (Fed. Cir. 2009)..................................................................................15

*Process Control Corp. v. HydReclaim Corp.*,
   190 F.3d 1350 (Fed. Cir. 1999)..................................................................................13

*Sprint Commc'ns Co. L.P. v. Comcast Cable Commc'ns LLC*,
   225 F. Supp. 3d 1233, 1253 (D. Kan. 2016)..............................................................10

*SRI Int'l v. Matsushita Elec. Corp. of Am.*,
   775 F.2d 1107 (Fed. Cir. 1985)..................................................................................19

*Tech. Patents LLC v. Deutsche Telekom AG*,
   774 F. Supp. 2d 732 (D. Md. 2010)..............................................................................5

*Tex. Advanced Optoelectronic Sols., Inc. v. Renesas Elecs. Am., Inc.*,
   895 F.3d 1304 (Fed. Cir. 2018)..................................................................................14

*Versata Software, Inc. v. SAP Am., Inc.*,
   717 F.3d 1255 (Fed. Cir. 2013)..................................................................................14

# TABLE OF EXHIBITS

All exhibits are attached to the *Declaration of John F. Petrsoric in Support of Plaintiff ChanBond LLC's Brief In Opposition To Defendants' Motion for Summary Judgment of No Infringement of the ChanBond Patents*, submitted herewith.

| EXHIBIT | ABBREVIATION | FULL TITLE |
|---|---|---|
| A | '679 Patent | U.S. Patent No. 8,341,679 |
| B | '565 Patent | U.S. Patent No. 8,984,565 |
| C | Cromarty Rpt. | Excerpts from the November 30, 2018 *Rebuttal Expert Report of Dr. Andrew S. Cromarty* |
| D | Nettles Tr. | Excerpts from the transcript of the January 31, 2019 deposition of Dr. Scott Nettles |
| E | Nettles Reply | Excerpts from the January 4, 2019 *Reply Expert Report of Scott M. Nettles, Ph.D.* |
| F | CM App. | Excerpts from Appendix 15, entitled "Cable Modem (CM) Appendix," to the September 12, 2018 *Opening Expert Report of Scott M. Nettles, Ph.D.* |
| G | Nettles Op. | Excerpts from the September 12, 2018 *Opening Expert Report of Scott M. Nettles, Ph.D.* |
| H | Standards App. | Excerpts from Appendix 14, entitled "Standards Appendix," to the September 12, 2018 *Opening Expert Report of Scott M. Nettles, Ph.D.* |
| I | ▮ App. | Excerpts from Appendix 16, entitled "▮ Appendix," to the September 12, 2018 *Opening Expert Report of Scott M. Nettles, Ph.D.* |
| J | ▮ App. | Excerpts from Appendix 17, entitled "▮ Appendix," to the September 12, 2018 *Opening Expert Report of Scott M. Nettles, Ph.D.* |
| K | ▮ App. | Excerpts from Appendix 18, entitled "▮ Systems Appendix," to the September 12, 2018 *Opening Expert Report of Scott M. Nettles, Ph.D.* |
| L | '822 Patent | U.S. Patent No. 7,941,822 |
| M | Padmanabhan email (Nov. 21, 2016) | November 21, 2016 email from Krishnan Padmanabhan to counsel for ChanBond |

## I.      INTRODUCTION AND SUMMARY OF THE ARGUMENT

Defendants' opening brief ("Op. Br.," D.I. 365) is based on a misunderstanding of claim scope, applicable law, and the record evidence.  With respect to the '679 and '565 Patents, Defendants contend that their cable modem termination systems ("CMTSs") and cable modems ("CMs") do not meet the "modulator unit" limitation because they "always" use multiple channels.  (Op. Br. at 2–12.)  Defendants' argument, however, is premised on a mischaracterization of the claim scope, and it ignores the contrary testimony of Plaintiff ChanBond, LLC's ("ChanBond's") expert, Dr. Nettles, who opined that the accused CMTSs and CMs do not in fact "always" perform the alleged functionality.

With respect to the '679 and '822 Patents, Defendants argue that the CMTSs and CMs do not meet the "combiner" limitation because they do not combine "the channels" that are demodulated.  (Op. Br. at 12–19.)  This argument similarly fails because it ignores the express claim language, applicable law, and expert testimony.  Defendants also argue that the accused devices lack a "combiner" having multiple physical inputs, but the Court's construction does not include such a requirement.  Finally, with respect to the '822 Patent, Defendants argue that the accused CMs do not include a single "combiner" (Op. Br. at 19–20), contrary to the general rule that "a" combiner includes "one or more" combiners.

## II.     ARGUMENT

### A.      Defendants' CMTSs and CMs Meet the '679 and '565 "Modulator Unit" Limitation

#### 1. Defendants Cannot Escape Infringement by Practicing Non-Claimed Features

The asserted claims of the '679 and '565 Patents recite an apparatus configured to "distribute" and "modulat[e]" a digital stream "across at least two separate RF channels … *when* the traffic information indicates that the information throughput … exceeds an information

capacity of a single RF channel."[1]  (Ex. A, '679 Patent at 15:37–43; *see also* Ex. B, '565 Patent at 12:48–55.)  Defendants do not dispute that, as shown by Dr. Nettles's infringement analysis, their CMTSs and CMs distribute and modulate a digital stream across multiple channels under the conditions explicitly recited in the claims (*i.e.*, "when" the information throughput exceeds the capacity of a single channel).  Instead, Defendants attempt to circumvent infringement by contending that the accused devices also distribute data across multiple channels under conditions ***other than*** those recited in the claims and, hence, "***always*** use multiple channels." (Op. Br. at 10.)  As explained below, Dr. Nettles disputes this characterization of the CMTS and CM operation.  But even before reaching that factual dispute, Defendants' argument fails as a matter of law because it ignores express claim language and reads in non-claimed limitations.

The '679 and '565 Patent claims are drafted in open-ended form, and are directed to a device "comprising" a "modulator unit" configured to distribute data across at least two RF channels "***when*** the traffic information indicates that the information throughput … exceeds an information capacity of a single RF channel."  The parties appear to agree that the term "when" carries its ordinary meaning of a conditional limitation, namely "if" or "in the event that."  (*See* Op. Br. at 7–8.)  Indeed, Defendants' expert adopted Dr. Nettles's opinion that ███████████ ████████████████████████████████████████████████████████ ██████████████████████████████████  (Ex. C, Cromarty Rpt. at ¶ 826.)

Ignoring the claims' plain language and the undisputed interpretation of "when," Defendants contend that the claims are met only if a device "(1) determines whether [the information] throughput exceeds the capacity of a single channel, and (2) 'when' it does, ***begins*** transmitting across two or more channels."  (Op. Br. at 1.)  The claims, however, do not require

---

[1]  In all quotations in this brief, emphasis is added unless indicated to the contrary.

the "intelligent device" to **begin for the very first time** to distribute data across multiple channels "when" the information throughput exceeds the capacity of a single channel.  This Court has rejected similar attempts to inject a temporal limitation into claims reciting a conditional "when." *See FlatWorld Interactives LLC v. Samsung Elecs. Co., Ltd.*, No. 12-cv-804-LPS, 2014 WL 7464143, at *7 (D. Del. Dec. 31, 2014) (construing "when" as "in view of the fact that; in the event that; if," where "[t]here is no suggestion that the [claimed action] must be instantaneous, at a precise moment, or during a particular window").

Similarly, Defendants analogize the asserted claims to a highway, premised on "only one of the lanes [being] open **until** that first lane **starts** to back up."  (Op. Br. at 9.)  The claims, however, do not require data distribution across multiple channels only when the throughput exceeds the single-channel capacity, nor do they include the temporal requirement that a single channel be used "until" the information throughput "starts" to exceed the single-channel capacity.  A more instructive analogy is that of an air conditioner required to be on "when" the ambient temperature is above a predetermined threshold.  This does not preclude the air conditioner from turning on for other reasons, *e.g.*, "when" the humidity level exceeds a predetermined threshold.  It is axiomatic that "infringement [is not] avoided if a claimed feature performs not only as shown in the patent, but also performs an additional function."  *N. Telecom, Inc. v. Datapoint Corp.*, 908 F.2d 931, 945 (Fed. Cir. 1990).  A claim "which uses the term 'comprising,' is an 'open' claim which will read on devices which add additional elements." *Carl Zeiss Stiftung v. Renishaw PLC*, 945 F.2d 1173, 1178 (Fed. Cir. 1991) (reversing finding of no infringement of claims reciting a "when" clause because "other variations meeting all claim requirements may be created so long as … a signal is generated 'when' the [recited condition is met]").  Here, the claims are drafted in open-ended format and do not exclude additional conditions, where "there is no suggestion in the specification, prosecution history, or other

3

claims that such a limitation is intended." *Id.*; *see also AutoAlert, Inc. v. DealerSocket, Inc.*, No. SA CV 13-00657-SJO-JPRx, 2014 WL 12576818, at *8–10 (C.D. Cal. June 18, 2014) (declining "to construe the term 'if' so that it limits the number of additional, unrecited conditions precedent to perform a step when the term is used in a claim containing an open-ended transitional phrase").

Contrary to Defendants' contention, the specification does not teach that the claimed apparatus "transitions from a state of transmitting the digital information over a single channel to using multiple channels when throughput increases beyond what can be handled on a single channel." (Op. Br. at 8.)  As Defendants agree, "the disclosed intelligent device determines whether the information for transmission exceeds the capacity of a single RF channel, and uses additional channels when needed." (*Id.* at 3.)  The specification never mentions any "transition," and certainly does not prevent the use of additional channels for reasons ***other*** than those disclosed.  *See Carl Zeiss,* 945 F.3d at 1178 ("The point is … whether the claim and specification … require that the claim be limited to devices containing *only* the structures of the embodiments specifically described in the specification." (emphasis in original)).  And of course the claims do not preclude additional features, such as allocating a set of channels when a CM joins the cable network.  (Op. Br. at 5, 10.)

The cases cited by Defendants (Op. Br. at 7–8) do not support, and in fact contradict, their argument.  *Lugus IP, LLC v. Volvo Car Corp.*, No. 12-2906, 2014 WL 2094086 (D.N.J. May 20, 2014), involved the construction of the means-plus-function term "retracting means for automatically retracting said child safety seat … ***when*** said child is not located in said child safety seat." *Id.* at *5.  The court determined that "when" should be construed as "in the event that," and rejected a construction that made "the presence of a child … irrelevant to the seat's operation." *Id*. at *8.  *Eon Corp IP Holdings LLC v. Aruba Networks, Inc.*, 62 F. Supp. 3d 942

(N.D. Cal. 2014), involved claim terms such as "transferring … *if* said local subscriber units are unable to directly communicate." *Id.* at 962.  The *Eon* court addressed a different temporal issue from the present one, *i.e.*, "whether the claim scope extends only to situations in which the condition of being unable to communicate *exists*, or whether it also extends to situations in which the condition *ever* existed in the past," and selected the former construction because "it makes no sense to link the capability of transfer to an inability to communicate that happened at an undefined time in the past."  *Id.* at 963 (emphasis in original).  Here, Defendants' devices meet the asserted claim language *in the present*, *i.e.*, they are configured to distribute data over multiple channels in the event that the information throughput exceeds the capacity of a single channel.  Finally, *Tech. Patents LLC v. Deutsche Telekom AG*, 774 F. Supp. 2d 732 (D. Md. 2010), addressed the claim limitation "*when* the paging system determines that the second country has not been designated."  *Id.* at 746–47.  The *Tech. Patents* court construed "when" as "in the event that," and rejected a temporal construction of "when" as "at the time that."  *Id.* *Lugus*, *Eon*, and *Tech. Patents* also fail to support any proposition that the simple conditional assessment "when" dictates consequences if the condition is *not* met.  Unlike here, the claims in those cases expressly defined the consequences for a complete set of conditions.  *See, e.g., Eon*, 62 F. Supp. 3d at 962 (The claimed invention "discloses a binary system where the subscriber unit either communicates over Path A or Path B" based on a conditional assessment.).

In sum, Defendants' argument rests on a mischaracterization of the claim scope and of ChanBond's infringement positions.  ChanBond has never alleged infringement based on the fact that the claims can be met by modulating and distributing data on multiple channels "*at all times*," or "*regardless* of 'information throughput.'"  (Op. Br. at 8, 9.)  As Dr. Nettles explained,

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████ (Ex. D, Nettles Tr. at 195:2–7.)

Nothing in the intrinsic record, however, requires that two channels can be used when *and only when* the claimed condition is satisfied.

### 2.    Defendants Misrepresent the Operation of the Accused Devices

In addition to mischaracterizing claim scope, Defendants also mischaracterize their devices' operation.  Defendants rely on "test results," prepared by ████████████, to argue that the accused CMTSs and CMs "always transmit across multiple channels, *regardless* of whether the throughput exceeds the capacity of a single channel."  (Op. Br. at 8 (emphasis in original); *see also id.* at 5–7.)  However, Dr. Nettles provided a reasoned explanation of why that statement is factually incorrect.  This divergence of expert opinions creates an issue of material fact that, alone, precludes summary judgment even under Defendants' incorrect claim reading.

Defendants point to the following charts to argue that "████ testing shows that multiple channels are used in both the downstream and upstream directions when the throughput is far below the capacity of a single channel" (Op. Br. at 6–7):





But these "test results" lack any information about which channel is being utilized at which time.  Dr. Nettles disputed Defendants' interpretation of the "test results," pointing out that ████████

█████████████████████████████████████████████ (Ex. E, Nettles Reply at ¶ 177; *see also id.* at ¶ 226 █████████████████████████

████████████████████████████████████████



.)  Consistent with that opinion, Dr. Nettles confirmed at deposition that ████████████████████████ ██████ (Ex. D, Nettles Tr. at 43:8–10.)  But the claims do not preclude the ***use*** of ***different*** channels, one at a time, over some undefined period of time.[2]

The nature of the factual dispute can be understood using Defendants' own analogy. Defendants argue that "the networks comprising the accused cable modems and CMTSs are like a highway where all of the lanes … are used at all times."  (Op. Br. at 9.)  More properly, the accused devices work like a toll-booth entrance to a multi-lane, e.g., four-lane, highway, where each lane has its own toll booth, but all four toll booths receive traffic from a common access road.  Defendants' CMs and CMTSs act like an "intelligent" traffic signal that measures if the traffic exceeds the capacity of a single lane (*e.g.*, by "sensing" how many cars are queued at each toll booth).  In prior art cable systems, cars (i.e., data) would continue to be queued up at a single "toll booth."  In the invention, however, the "intelligent device" is configured to "distribute" cars to multiple toll booths "when" the traffic exceeds the capacity of a single lane.

Defendants' purported testing, in contrast, is akin to measuring the occupancy of each highway lane over an undefined period of, for example, 24 hours.  Such aggregate lane usage information says nothing about whether incoming traffic is "distribute[d] … across at least two separate [lanes]" when the traffic volume exceeds or does not exceed the "capacity of a single

---

[2] Defendants also contend that "Dr. Nettles' own testing of an ████ cable modem similarly showed that multiple channels are used for 11.9 Mbps throughput (18.1 Mbps below the capacity of an upstream DOCSIS channel)."  (Op. Br. at 7.)  However, Dr. Nettles's expert report states that for that particular test, ████████████████████████████████████ ██████ (Ex. F, CM App. at ¶ 213), and ultimately concluded that the accused CMs infringe the '679 and '822 Patents.  (*See* Ex. G, Nettles Op. at ¶ 5.)

[lane]."  For example, the intelligent traffic signal could assign single cars to random toll booths when traffic is light, one lane at a time, in order to even out the wear-and-tear on the asphalt.

### 3.    Expected Expert Testimony at Trial Proves CMTS Infringement

With respect to the CMTSs, Defendants' argument, again, boils down to endorsing their own expert's opinions over ChanBond's expert's opinions.  For example, Defendants characterize Dr. Nettles's CMTS infringement analysis as "profoundly wrong" and "implausible," based on their contention that "the accused … CMTSs always use multiple channels regardless of throughput."  (Op. Br. at 9–10 & n.4.)  As explained above, Dr. Nettles disputed Defendants' litigation-driven view of how their CMTSs operate, and explained in great detail how Defendants' CMTSs determine if "the information throughput … exceeds an information capacity of a single RF channel," and if so, "distribute the digital information … across at least two separate RF channels," exactly as recited by the asserted '565 and '679 Patent claims.  (*See, e.g.*, Ex. G, Nettles Op. at ¶¶ 78–79; Ex. H, Standards App. at ¶¶ 284–304, 401–03, 506–33, 813–45; Ex. I, ███ App. at ¶¶ 346–404, 585–603, 762–800; Ex. J, ███ App. at ¶¶ 170–206, 377–95, 549–86; Ex. K, ███ App. at ¶¶ 64–90, 175–193, 347–83; Ex. E, Nettles Reply at ¶¶ 192–236.)  Dr. Nettles further opined that the accused CMTSs meet the claim language even under Defendants' improper reading of the claims as requiring distributing and modulating data across multiple channels ***only if*** and/or ***beginning when*** the information throughput exceeds an information capacity of a single RF channel:



███████████████████████████████████████████████████

███████████████████████

(Ex. E, Nettles Reply at ¶ 231.)  At the very least, Dr. Nettles's opinions (which Defendants' opening brief conveniently ignores) raise issues of material fact under any reading of the claims.

### 4.    Expected Expert Testimony at Trial Proves CM Infringement

With respect to the CMs, Defendants argue that "neither of Dr. Nettles's expert reports explain how the 'when' limitation is satisfied," and that "Dr. Nettles tried to offer a theory during deposition regarding how the 'when' limitation might be satisfied for cable modems."  (Op. Br. at 10, 11.)  That is false.  Dr. Nettles's expert reports provide a detailed explanation of how and why the accused CMs meet the "when" limitation in the claims of the '679 Patent (the '565 Patent is not asserted against the Defendants' CMs).  (*See, e.g.*, Ex. G, Nettles Op. at ¶¶ 88–89; Ex. H, Standards App. at ¶¶ 347–75, 415–16, 506–33; Ex. F, CM App. at ¶¶ 564–91, 684–95; Ex. E, Nettles Reply at ¶¶ 162–191.)  As explained by Dr. Nettles, ████████████████████

█████████████████████████████████████████████████

███████████████████████████████████████████

██████  (Ex. H, Standards App. at ¶ 526.)

At Dr. Nettles's deposition, Defendants' counsel spent close to one hour on the record asking irrelevant questions regarding the purported role of the ███████████████████ implemented in the ***CMTS*** in meeting the "when" limitation by the ***CM***.  (*See* Ex. D, Nettles Tr. at 308:12–353:13.)  Dr. Nettles explained that a detailed discussion of the CMTS ████████ ██████████ was not necessary because the CM included the infringing apparatus satisfying the "when" clause, but the operation of the CMTS further showed that the "when" clause is actually met.  (*See id.* at 316:5–318:12, 338:3–13, 340:17–341:14, 350:19–24.)  Defendants have now fashioned a straw-man argument regarding Dr. Nettles's purported failure to disclose opinions

about unclaimed **CMTS** features that are not necessary, or even relevant, to the ultimate issue of infringement by the **CMs**.  Moreover, because Dr. Nettles's testimony merely offered further explanation for opinions disclosed in his expert reports, and was elicited by Defendants themselves at deposition, Defendants can hardly claim surprise for his explanations.  *See Boehringer Ingelheim Int'l GmbH v. Barr Labs., Inc.*, No. 05-cv-700-JJF, 2008 WL 2756127, at *2 (D. Del. July 15, 2008) (overruling Plaintiff's evidentiary objections where "the nature of the questions raised by Plaintiffs during the depositions of Defendants' expert witnesses leads the Court to conclude that Plaintiffs were on notice of Defendants' contentions"); *Sprint Commc'ns Co. L.P. v. Comcast Cable Commc'ns LLC*, 225 F. Supp. 3d 1233, 1253 (D. Kan. 2016) (denying motion to exclude expert opinion where "[o]pposing counsel solicited this opinion by his questioning at the deposition, and [the expert] was certainly entitled to give his answer").

**B.    Defendants' CMTSs and CMs Meet the '679 and '822 "Combiner" Limitation**

**1.    The Claims Do Not Prevent the "Intelligent Device" from Operating on Additional, Unclaimed Data**

Dr. Nettles opined that the accused CMTSs and CMs meet the limitations of "a demodulator unit" and "a [first] combiner configured to combine … the at least two channels demodulated by the demodulator unit" as recited in the '679 and '822 Patent claims.  (*See, e.g.*, Ex. G, Nettles Op. at ¶¶ 83–84, 93–94; Ex. H, Standards App. at ¶¶ 407–10, 420–21, 472–99, 742–51; Ex. F, CM App. at ¶¶ 511–42, 666–77, 814–23; Ex. I, ▮▮ App. at ¶¶ 444–516, 567–78; Ex. J, ▮▮ App. at ¶¶ 242–311, 359–70; Ex. K, ▮▮ App. at ¶¶ 112–24, 157-68; Ex. E, Nettles Reply at ¶¶ 114–60.)  For purposes of this motion Defendants do not dispute that the accused devices demodulate and combine the digital streams contained in the received channels (*see* Op. Br. at 13–15), but they argue that "even if the cable modems and CMTSs had combiners, they do not combine 'at least two channels,'" because (i) "the cable modems discard

packets addressed to other cable modems prior to sending them to the alleged combiner," and thus "do[] not resequence **all** packets transmitted," and (ii) "the CMTS discards management packets sent by the cable modems so that those packets … never reach the accused combiner in the CMTS."  (Op. Br. at 15, 16.)  The '679 and '822 Patent claims, however, do not recite "packets," and Defendants do not explain why discarding unclaimed "packets" would avoid infringement where the accused devices otherwise combine "the channels" as claimed.  In fact, the claims expressly recite that channels "contain[] information addressed to the at least one addressable device," thus allowing channels to contain other unclaimed information.  Likewise, Defendants argue that the claims "require combining the same 'at least two channels' 'receive[d] by the intelligent device' and 'demodulated by the demodulator unit.'"  (*Id.* at 16 (emphasis in original).)  Defendants' argument, however, is predicated on the false assumption that the claims require a one-to-one correspondence between **any and all** data carried by the channels received by the intelligent device's "[first] input," **any and all** data demodulated by the "demodulator unit," and **any and all** data combined by the "[first] combiner."  These assumptions are unsupported by the claim language and contrary to the applicable law.

As a threshold matter, the claims recite a device configured to "receive … **multiple** channels" and to "demodulate **at least two** channels."  (*See* Ex. A, '679 Patent at 15:14–29; Ex. L, '822 Patent at 12:22–40.)  Thus, the claims expressly allow demodulating a subset ("at least two") of the received channels.  Moreover, the claims are drafted in open-ended format, as an "intelligent device … **comprising**" certain structural elements.  "Basic patent law holds that a party may not avoid infringement of a patent claim using an open transitional phrase, such as comprising, by adding additional elements."  *Free Motion Fitness, Inc. v. Cybex Int'l, Inc.*, 423 F.3d 1343, 1353 (Fed. Cir. 2005).  Thus, the asserted claims do not prevent the "[first] input," "demodulator unit," and "[first] combiner" from implementing additional, unclaimed

11

functionality, including (i) receiving additional, unclaimed data that does not reach the "demodulator unit" and/or the "combiner," (ii) demodulating and/or combining additional, unclaimed "digital information stream[s]," or (iii) discarding unclaimed data between the "demodulator unit" and the "combiner."

*Finisar Corporation v. DirecTV Group., Inc.*, 523 F.3d 1323 (Fed. Cir. 2008), is directly on point. The claim at issue in *Finisar* recited the step of "scheduling transmission of selected portions of [an] information database, including assigning each selected portion of said information database one or more scheduled transmission times." *Finisar*, 523 F.3d at 1329. DirecTV argued that "only 3% of [its] programming (i.e. its data selected for transmission) comprise[d] playback programming that fits within this meaning of 'scheduled,'" and therefore it could not infringe because third parties scheduled the remaining 97% of the programming. *Id.* at 1334. The Federal Circuit upheld the jury's finding that the "scheduling" step was met, because the claim "does not require scheduling for *all* transmitted information, but "[r]ather the claim specifies scheduling for 'each part of the information database selected for transmission.'" and "thus the claim leaves room for transmission of other data in other, i.e. non-scheduled, ways because [the claim] is written using an open-ended format, using the transitional term 'comprising.'" *Id.* (emphasis in original). Defendants' argument here is strikingly similar to the argument rejected by the *Finisar* court. (*See* Op. Br. at 16 (relying on the fact that, purportedly, only "2% of the data" is combined as claimed).)

Similarly, in *Howmedica Osteonics Corp. v. Wright Med. Tech., Inc.*, 540 F.3d 1337 (Fed. Cir. 2008), the claim at issue was directed to a knee prosthesis "including at least one condylar element," and further required "***the*** condylar element" to meet certain geometric limitations (constant radius). *Id.* at 1340. The district court construed the claim as requiring, in a "bicondylar" prosthesis with two condylar elements, *both* elements to meet the constant-radius

limitations. *Id.* at 1343.  The Federal Circuit reversed, explaining that "the mere fact that both condyles are involved in articulation of the prosthesis does not require a construction of [the claim] in which both condyles must conform to the specified geometry." *Id.* at 1344–45.  The Court noted that "[i]f the patentee had intended both condyles in a bicondylar prosthesis to meet [the geometric] limitations, he could have drafted [the claim] to require that 'both condylar elements' do so" and the "more natural way of drafting the claim language to achieve that result would be to require 'each condylar element,' rather than 'the condylar element,' to conform to the constant-radius geometry." *Id.* at 1344.  Here, Defendants wish to rewrite the claims to require combining ***all*** of the packets or data contained in the demodulated channels.  But that is not what the claims recite.[3]

Finally, Defendants argue that "nothing in the specification could possibly support anything other than combining the entirety of 'the at least two channels.'"  (Op. Br. at 17.) Defendants' alleged support for this statement is their own annotation of Figure 2.  (*Id.*) Defendants' own figure plainly shows that some of the channels and data received by intelligent device 200 bypass the demodulator 220 and combiner 212, and instead are fed to the outlet 232 and/or the DSP 230 (*e.g.*, management data).  (*Id.*; *see also* Ex. L, '822 Patent at 8:35–9:12.) Moreover, a purported illustration of "parallel inputs … directly from the demodulator(s) … into the combiner" (Op. Br. at 17) is a far cry from a "clear and unmistakable disclaimer of claim

---

[3] *Howmedica* also disposes of Defendants' misguided focus on antecedent basis for "the at least two channels."  (Op. Br. at 16 (citing *Process Control Corp. v. HydReclaim Corp.*, 190 F.3d 1350 (Fed. Cir. 1999).)  The "demodulator unit" and "combiner" are separate limitations, and the fact that the "demodulator unit" may operate on additional, unclaimed data does not require that those additional channels must also be received by the "combiner."  *See Howmedica*, 540 F.3d at 1344 (While the "'articulation' requirement of the preamble is a claim limitation," "it is a separate limitation from the geometric requirements appearing in the body of the claim."); *see also Microprocessor Enhancement Corp. v. Tex. Instruments Inc.*, 520 F.3d 1367, 1375 (Fed. Cir. 2008) ("*Process Control* did not announce a rule that the reference to an antecedent absolutely requires a term to be consistently construed across uses.").

scope." *Free Motion Fitness*, 423 F.3d at 1353; *see also Carl Zeiss,* 945 F.3d at 1178.  And of

course, "[t]here is no requirement that a patent describe the unclaimed features of the infringing

product."  *Hologic, Inc. v. Minerva Surgical, Inc.*, 325 F. Supp. 3d 507, 526 (D. Del. 2018).

> **2.      Even Under Defendants' Reading of the Claims, the Accused CMTSs and CMs Meet All of the Claim Limitations**

As explained above, the '679 and '822 Patent claims do not require a one-to-one

correspondence between the data carried by the "channels" that are received, demodulated and

combined.  But even if they did, Defendants ignore that the claims are directed to an ***apparatus***

and the limitation at issue recites "a first combiner ***configured to*** combine the at least two

channels demodulated by the demodulator unit."   The accused devices, out of the box, are

configured to operate exactly as claimed.  "[T]o infringe a claim that recites capability and not

actual operation, an accused device need only be capable of operating in the described mode."

*Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1204 (Fed. Cir. 2010) (internal

quotation marks and citation omitted); *see also Core Wireless Licensing S.A.R.L. v. Apple Inc.*,

899 F.3d 1356, 1359–60, 1362–63 (Fed. Cir. 2018) (upholding infringement of claims directed to

an apparatus "configured to" perform certain recited functions, where the accused devices "are

configured to operate in [the infringing] mode."); *Tex. Advanced Optoelectronic Sols., Inc. v.

Renesas Elecs. Am., Inc.*, 895 F.3d 1304, 1327 (Fed. Cir. 2018) ("[I]nfringement does not require

actual use of [the accused] products in [the infringing mode].").  Nor do Defendants allege that

the accused products require modification in order to meet the claim limitations.  *See Versata

Software, Inc. v. SAP Am., Inc.*, 717 F.3d 1255, 1261–63 (Fed. Cir. 2013).

This Court has applied these very principles in *M2M Solutions LLC v. Motorola

Solutions, Inc.*, No. CV 12-33-RGA, 2016 WL 70814 (D. Del. Jan. 6, 2016).  The claims at issue

were directed to a "programmable communicator device" including structural components

reciting functionality, *e.g.*, "a processing module for authenticating an at least one transmission." *Id.* at *1. The Court denied summary judgment of non-infringement, holding that the claims "unquestionably cover[] an apparatus" and that each claim limitation "is described in terms of each component of the device's function," and therefore "the accused devices need only be capable of operating in the allegedly infringing modes." *Id.* at *5, *7. The Court also rejected the argument that the claim language required actual performance of the recited functionality, observing that there is no "express requirement that the words 'capability' or 'capable' actually be used in the claims." *Id.* at *6.

For both CMs and CMTSs, Defendants' non-infringement argument relies on the way the accused apparatus is purportedly ***used***, as opposed to its ***structure***. But "[a]bsent an express limitation to the contrary, *any* use of a device that meets all of the limitations of an apparatus claim written in structural terms infringes that apparatus claim." *Paragon Solutions., LLC v. Timex Corp.*, 566 F.3d 1075, 1091 (Fed. Cir. 2009) (emphasis in original). With respect to the CMs, Defendants argue that the accused apparatus does not infringe when used in combination with other CMs sharing the same cable network, because in that case a CM may drop packets— from a different information stream—that are addressed to different CMs. (*See* Op. Br. at 16.) However, as Dr. Nettles explains:



(Ex. E, Nettles Reply at ¶ 130.) Similarly, Defendants argue that their CMTSs do not infringe when they drop management packets—which were never a part of a digital information stream to begin with—before sending them to the accused "combiner." (Op. Br. at 15–16.) Dr. Nettles, however, explains:



(Ex. E, Nettles Reply at ¶ 148.)  Notably, Defendants' opening brief does not dispute (or even

mention) Dr. Nettles's infringement opinions under Defendants' own reading of the claims.

Defendants state, incorrectly, that "[t]he Federal Circuit has considered this exact issue,"

pointing to a non-precedential decision in *Harris Corp. v. Federal Exp. Corp.*, 502 F. App'x 957

(Fed. Cir. 2013).  (Op. Br. at 17.)  In fact, *Harris* did not address the issue here—infringement of

an ***apparatus*** claim—but rather the construction of a ***method*** claim.  *Harris*, 502 F. App'x at

960.  Moreover, the *Harris* court relied on the fact that the claim "introduces the relevant data set

by describing how it is first 'generated' … and then 'accumulated' and 'stored' between take-off

and landing" of an aircraft, and finally "describes transmitting 'the' data using identical language

as the previous claim steps."  *Id.* at 963.  The present claims, in contrast, expressly allow for

additional data, by reciting an apparatus configured to receive "multiple channels," and then

demodulate and combine "at least two [of those] channels."  Moreover, even assuming that

*Harris* applies to the facts of this case, it does not help Defendants' motion, and in fact counsels

against granting it.  The *Harris* court remanded the case to the trial court for further

determination because record evidence showed that "the [accused system] might … infringe

certain asserted ***system claims*** due to its capability to behave like the [patented system]" even

under the narrow construction.  *Harris*, 502 F. App'x at 965.

**3.    The Accused CMTSs and CMs Have a "Multiplexer" that "Performs Parallel to Serial Conversion" on the Received "Channels"**

Defendants' second argument with respect to the "combiner" limitation is that "[f]or the combiners to satisfy the Court's construction, they must have *multiple inputs*."  (Op. Br. at 19; *see also id.* at 18 (alleging combiner must have "*multiple inputs* as required by the Court's construction").)  On its face, this argument contradicts the Court's construction of the term "combiner," which Defendants themselves proposed: "multiplexer that, when it receives *multiple channels or inputs*, performs parallel to serial conversion on those *channels or inputs*."  (D.I. 86 at 8.)  The Court's construction allows the combiner to operate on multiple *channels*, and is not limited to multiple *inputs* as Defendants now purport.[4]

Further, Defendants contend that the "combiner" must have multiple *physical* inputs, such as electrical wires, terminals, or pins.  For example, Defendants asked ChanBond's expert, Dr. Nettles, at his deposition, ███████████████████████████████ (Op. Br. at 18 (quoting Ex. D, Nettles Tr. at 281:25–282:3); *see also*  Ex. D, Nettles Tr. at 293:16–20 (counsel asking whether it matters ███████████████████████████).) Defendants' addition of "multiple [physical] inputs" is inconsistent with the Court's construction, which does not require specific "inputs" at all, let alone multiple *physical* inputs, *e.g.*, wires or pins.  The construction recites a "multiplexer that … *receives* multiple channels or inputs," with "channels or inputs" being the *object* of "receiv[ing]" (*e.g.*, input data), and not the *physical means* of the "receiv[ing]" (*e.g.*, input wires).  In Defendants' own words, "a combiner

---

[4] Defendants' current "inputs" argument contradicts their prior representation that the claimed "combiner" combined "channels."  (Ex. M, Padmanabhan email (Nov. 21, 2016) (Defense counsel representing that including "channels or inputs" in the construction was intended to "address[] both downstream (combining *channels*) and upstream (combining inputs) transmissions."); *see also* Op. Br. at 12 ("The specification describes the combiner as a multiplexer ('mux') that performs parallel to serial conversion on the *channels*.").)

is configured … to convert **parallel data** – the data on, e.g., the 'two channels demodulated by the demodulator unit' – into **serial data** – 'a [single] digital stream.'"  (D.I. 68 at 16.)

Moreover, the Court's construction requires a "multiplexer."  As a factual matter, a multiplexer does not require any specific type of input wiring, let alone "multiple [physical] inputs."  Dr. Nettles explains that a person of skill in the art would understand that multiplexers known in the art include integrated circuits, as well as software, and that a multiplexer may receive "channels or inputs" via different physical means, *e.g.*, from a memory buffer or from a bus interface.  (Ex. E, Nettles Reply at ¶¶ 98–99, 111–113, 125, 146.)  As Dr. Nettles explained at his deposition:

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

(Ex. D, Nettles Tr. at 284:17–23; *see also id.* at 292:23–293:15.)  This is exactly the Court's construction of "combiner," which Dr. Nettles applied in forming his opinions on infringement. In fact, Defendants agree that ChanBond's expert Dr. Nettles provided ample testimony regarding infringement under the Court's construction.  (*See, e.g.*, Op. Br. at 19 (citing Ex. D, Nettles Tr. at 272:10–14 ███████████████████████████████

███████████████████████ ; *see also* Ex. D, Nettles Tr. at 269:10–15, 270:7–20, 278:10–22, 283:22–285:22; Ex. E, Nettles Reply at ¶¶ 114–28, 135–46.)

Defendants further point to an annotated version of the preferred embodiment of Fig. 2 (Op. Br. at 12), and contend that "the demodulator unit [220] feeds the combiner [212] the channels in parallel … and the channels undergo parallel to serial conversion to produce a serial output."  (*Id.* at 13.)  But Defendants' interpretation of the lines they colored in blue is just attorney argument.  The specification is silent regarding the physical wiring of demodulators 220 and combiner 212, and it certainly does not indicate that combiner 212 has multiple physical

inputs.  (*See* Ex. L, '822 Patent at 9:3–5.)  Moreover, it is blackletter law that infringement "is determined by comparing an accused product not with a preferred embodiment described in the specification … but with the properly and previously construed claims in suit."  *SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1121 (Fed. Cir. 1985).

In sum, Dr. Nettles is expected testify at trial that the accused CMs and CMTSs include a "multiplexer" that "performs parallel to serial conversion" on multiple channels or inputs, applying the Court's construction of "combiner."  Rather than challenging ChanBond's infringement case under the construction that they proposed and the Court adopted, Defendants now seek to add a new requirement of "multiple [physical] inputs."  Such belated revision of the Court's construction is unsupported by the intrinsic or extrinsic evidence and inconsistent with the existing construction, and should be rejected.

### C.     Defendants' CMs Meet the "Combiner" Limitations of '822 Claim 14

Claim 1 of the '822 Patent recites an "intelligent device … *comprising* … *a combiner* configured to combine … at least two channels*"; dependent claims 13 and 14 further recite that "*the combiner* is configured to output the digital information demodulated by the wireless demodulator unit," and that "*the combiner* is configured to combine the digital information demodulated by the wireless demodulator unit with digital information received from at least one addressable device," respectively.  (Ex. L, '822 Patent at 12:22–40, 14:4–19.)  Defendants claim that "a *single* combiner must be 'configured' in the manner required by claims 1, 13, and 14." (Op. Br. at 20.)  That contention, however, directly contradicts the general rule that "an indefinite article 'a' or 'an' in patent parlance carries the meaning of 'one or more' in open-ended claims containing the transitional phrase 'comprising'" and, "[u]nless the claim is specific as to the number of elements, the article 'a' receives a singular interpretation only in rare circumstances when the patentee evinces a clear intent to so limit the article."  *KCJ Corp. v. Kinetic Concepts,*

*Inc.*, 223 F.3d 1351, 1356 (Fed. Cir. 2000).  Further, "[t]he subsequent use of definite articles 'the' or 'said' in a claim to refer back to the same claim term does not change the general plural rule, but simply reinvokes that non-singular meaning."  *Baldwin Graphic Sys., Inc. v. Siebert, Inc.*, 512 F.3d 1338, 1342 (Fed. Cir. 2008).[5]

Defendants do not contend that this is one of those "rare circumstances" when "a combiner" is construed as "a *single* combiner."  Thus, the limitation of "a combiner" in claim 1 of the '822 Patent can be met by *two or more* combiners, which "combine … at least two channels" per claim 1, and "output … digital information" and "combine the digital information" per claims 13 and 14, respectively.  *See 01 Communique Lab., Inc. v. LogMeIn, Inc.*, 687 F.3d 1292, 1296–97 (Fed. Cir. 2012) (The limitation of "a location facility" can be met by multiple computers, each performing one of four recited functions.).  This is confirmed by the specification, which discloses *two* combiners performing the claimed functions.  For example, Figure 6 depicts two elements labelled "digital combiner (MUX)," one for combining signals from demodulators 220 and another for combining signals from wireless demodulator 606— which matches the claim at issue.  (Ex. L, '822 Patent at 9:1–7, 11:32–41.)  *See 01 Communique Lab.*, 687 F.3d at 1297 (relying on the specification's disclosure of "one or more computers").  Defendants' argument that the claimed "combiner" must be a *single* combiner contradicts the intrinsic evidence and should be rejected.

## III.   CONCLUSION

For the foregoing reasons, the Court should deny Defendants' motion for summary judgment of no infringement.

---

[5] Defendants point to MPEP § 2173.05(e) as "recognizing the need for antecedent basis" (Op. Br. at 20), but the Federal Circuit has rejected this argument.  *See Baldwin*, 512 F.3d at 1343 (finding that "MPEP § 2173.05(e) is inapposite" because it relates to definiteness, not to claim scope).

Date: May 16, 2019

*Of Counsel:*

Robert A. Whitman *(pro hac vice)*
Mark S. Raskin *(pro hac vice)*
John F. Petrsoric *(pro hac vice)*
Michael DeVincenzo *(pro hac vice)*
Andrea Pacelli *(pro hac vice)*
**MISHCON DE REYA NEW YORK LLP**
156 Fifth Avenue, suite 904
New York, New York 10010
(212) 612-3270
robert.whitman@mishcon.com
mark.raskin@mishcon.com
john.petrsoric@mishcon.com
michael.devincenzo@mishcon.com
andrea.pacelli@mishcon.com

**BAYARD, P.A.**

*/s/ Stephen Brauerman*
Stephen Brauerman (sb4952)
Sara E. Bussiere (sb5725)
600 N. King Street, Suite 400
Wilmington, Delaware 19801
(302) 655-5000
sbrauerman@bayardlaw.com
sbussiere@bayardlaw.com
*Counsel for Plaintiff*
*ChanBond, LLC*

21

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 16, 2019, a true and correct copy of the foregoing

**[SEALED] PLAINTIFF CHANBOND, LLC'S BRIEF IN OPPOSITION TO**

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF NO INFRINGMENT OF**

**THE CHANBOND PATENTS** has been served upon the following parties via electronic mail.


Jack B. Blumenfeld
Jennifer Ying
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899

Michael L. Brody
Jonathan E. Retsky
Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL 60601

Krishnan Padmanabhan
Anup K. Misra
Winston & Strawn LLP
200 Park Avenue
New York, NY 10166

James C. Lin
Winston & Strawn LLP
275 Middlefield Road, Suite 205
Menlo Park, CA 94025


*/s/ Stephen B. Brauerman*
Stephen B. Brauerman (No. 4952)

## Briefs, Responses and Replies

1:15-cv-00842-RGA ChanBond, LLC v. Atlantic Broadband Group, LLC

LEAD,MEDIATION-MPT,PATENT

### U.S. District Court

### District of Delaware

## Notice of Electronic Filing

The following transaction was entered by Brauerman, Stephen on 5/16/2019 at 4:56 PM EDT and filed on 5/16/2019

**Case Name:**          ChanBond, LLC v. Atlantic Broadband Group, LLC
**Case Number:**        1:15-cv-00842-RGA
**Filer:**              ChanBond, LLC
**Document Number:** 392

**Docket Text:**
**[SEALED] ANSWERING BRIEF in Opposition re [364] MOTION for Summary Judgment of No Infringement of the ChanBond Patents filed by ChanBond, LLC.Reply Brief due date per Local Rules is 5/23/2019. (Attachments: # (1) Certificate of Service)(Brauerman, Stephen)**


**1:15-cv-00842-RGA Notice has been electronically mailed to:**

James C. Lin    jalin@winston.com

Jennifer Ying     jying@mnat.com, jyefiling@mnat.com, winston-strawn-7942@ecf.pacerpro.com

Jonathan E. Retsky     jretsky@winston.com, ahodgson@winston.com

Krishnan Padmanabhan     kpadmanabhan@winston.com, ecf_ch@winston.com

Mark S. Raskin     mark.raskin@mishcon.com, allnypatent@mishcon.com

Michael L. Brody     mbrody@winston.com, vkennedy@winston.com

Sara E. Bussiere     sbussiere@bayardlaw.com, jlately@bayardlaw.com, Njoyce@Bayardlaw.com, ntalarowski@bayardlaw.com, tdevine@bayardlaw.com

Stephen B. Brauerman     sbrauerman@bayardlaw.com, jlately@bayardlaw.com, Njoyce@Bayardlaw.com, ntalarowski@bayardlaw.com, SBussiere@bayardlaw.com, tdevine@bayardlaw.com

**1:15-cv-00842-RGA Filer will deliver document by other means to:**

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1079733196 [Date=5/16/2019] [FileNumber=3827836-0
] [c7aa87232034ca04fcc785de58db63b102bcbbf4213870e9275d5dd7e48ff8cd5d5
9afc99d8854e8c04ca0d6b48844ac366e3457c02b932c9c7c39ca2b107a18]]
**Document description:** Certificate of Service
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1079733196 [Date=5/16/2019] [FileNumber=3827836-1
] [5ba99ab4734312e6755b3de733ccfb10ded2d671d5bc6b6a33b9a0796f83ccc83de
05f6130a28c62d73fec36723d5347f885491546f17aecd6e353cd54c7f028]]