IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE CHANBOND, LLC<br>PATENT LITIGATION | C.A. No. 15-842-RGA<br><br>CONSOLIDATED |

## MEMORANDUM OPINION

Stephen B. Brauerman, Sara E. Bussiere, BAYARD, P.A., Wilmington, DE; Mark S. Raskin, Robert A. Whitman, Michael S. DeVincenzo, John F. Petrsoric, Andrea Pacelli (argued), MISHCON DE REYA NEW YORK LLP, New York, NY.

    Attorneys for Plaintiff

Jack B. Blumenfeld, Jennifer Ying, MORRIS NICHOLS ARSHT & TUNNELL LLP, Wilmington, DE; Michael Brody, Jonathan Retsky (argued), WINSTON & STRAWN LLP, Chicago, IL; David P. Enzminger, WINSTON & STRAWN LLP, Los Angeles, CA; Krishnan Padmanabhan (argued), WINSTON & STRAWN LLP, New York, NY; James Lin, WINSTON & STRAWN LLP, Menlo Park, CA;

    Attorneys for Defendants

December 19, 2019


**ANDREWS, U.S. DISTRICT JUDGE:**

Pending before the Court is Plaintiff's Motion to Exclude the Expert Opinions of Cathleen Thomas Quigley Regarding Written Description and Enablement, or in the Alternative, for Summary Judgment. (D.I. 367). I have reviewed the parties' briefing and heard oral argument. (D.I. 368, 396, 413, 471).

## I.  BACKGROUND

In September 2015, Plaintiff ChanBond, LLC filed thirteen suits against numerous defendants (collectively, "Defendants") asserting infringement of U.S. Patent Nos. 7,941,822 ("the '822 Patent"), 8,341,679 ("the '679 Patent"), and 8,984,565 ("the '565 Patent"). (*See, e.g.*, D.I. 1 (complaint against Atlantic Broadband Group, LLC)). The actions were consolidated for all pre-trial purposes. (D.I. 107).

In the instant dispute, Plaintiff challenges three written description opinions offered by Defendants' expert, Ms. Quigley: (1) that the asserted patents lack written description support for an "intelligent device" that receives data directly from, or transmits data directly to, a cable headend as claimed (the '822, '679, and '565 patents); (2) that the asserted patents lack written description support for an "intelligent device" that receives "channel in use information which identifies each channel in the modulated RF signal that includes information addressed to at least one addressable device" (the '822 and '679 patents); and (3) that the asserted patents lack written description support for an "intelligent device" that "receives" channel in use information rather than one that "generates" channel in use information (the '822, '679, and '565 patents).[1] (D.I. 396 at 1-2).

---

[1] Plaintiff's motion also sought exclusion of other of Ms. Quigley's opinions, but Defendants have dropped those § 112 arguments. Thus those issues are moot. (D.I. 396 at 1 n.1).

## II. LEGAL STANDARD

### A. *Daubert*

Federal Rule of Evidence 702 sets out the requirements for expert witness testimony and states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The Third Circuit has explained:

> Rule 702 embodies a trilogy of restrictions on expert testimony: qualification, reliability and fit. Qualification refers to the requirement that the witness possess specialized expertise. We have interpreted this requirement liberally, holding that "a broad range of knowledge, skills, and training qualify an expert." Secondly, the testimony must be reliable; it "must be based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation'; the expert must have 'good grounds' for his o[r] her belief. In sum, *Daubert* holds that an inquiry into the reliability of scientific evidence under Rule 702 requires a determination as to its scientific validity." Finally, Rule 702 requires that the expert testimony must fit the issues in the case. In other words, the expert's testimony must be relevant for the purposes of the case and must assist the trier of fact. The Supreme Court explained in *Daubert* that "Rule 702's 'helpfulness' standard requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility."
>
> By means of a so-called "*Daubert* hearing," the district court acts as a gatekeeper, preventing opinion testimony that does not meet the requirements of qualification, reliability and fit from reaching the jury. *See Daubert* ("Faced with a proffer of expert scientific testimony, then, the trial judge must determine at the outset, pursuant to Rule 104(a) [of the Federal Rules of Evidence] whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue.").

2

*Schneider ex rel. Estate of Schneider v. Fried*, 320 F.3d 396, 404-05 (3d Cir. 2003) (footnote and internal citations omitted).[2]

**B.  Written Description**

The written description requirement of 35 U.S.C. § 112, ¶ 1 requires that the specification "clearly allow persons of ordinary skill in the art to recognize that [the inventor] invented what is claimed." *Ariad Pharm. Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (en banc) (alteration in original) (internal quotation marks omitted). "[T]he purpose of the written description requirement is to 'ensure that the scope of the right to exclude, as set forth in the claims, does not overreach the scope of the inventor's contribution to the field of art as described in the patent specification.'" *Univ. of Rochester v. G.D. Searle & Co.*, 358 F.3d 916, 920 (Fed. Cir. 2004). "In other words, the test for sufficiency is whether the disclosure of the application relied upon reasonably conveys to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date." *Ariad*, 598 F.3d at 1351. The written description inquiry is a question of fact. *See id.* "A party must prove invalidity for lack of written description by clear and convincing evidence." *Vasudevan Software, Inc. v. MicroStrategy, Inc.*, 782 F.3d 671, 682 (Fed. Cir. 2015).

**C.  Summary Judgment**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the initial burden of proving the absence of a genuinely disputed material fact relative to the claims in question. *Celotex Corp. v. Catrett*, 477 U.S. 317,

---

[2] The Court of Appeals wrote under an earlier version of Rule 702, but the subsequent amendments to it were not intended to make any substantive change.

3

330 (1986). Material facts are those "that could affect the outcome" of the proceeding, and "a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party." *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The burden on the moving party may be discharged by pointing out to the district court that there is an absence of evidence supporting the non-moving party's case. *Celotex*, 477 U.S. at 323.

The burden then shifts to the non-movant to demonstrate the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460-61 (3d Cir. 1989). A non-moving party asserting that a fact is genuinely disputed must support such an assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials; or (B) showing that the materials cited [by the opposing party] do not establish the absence . . . of a genuine dispute . . . ." Fed. R. Civ. P. 56(c)(1).

When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). A dispute is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson*, 477 U.S. at 247-49. If the non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp.*, 477 U.S. at 322.

4

## III. DISCUSSION

The '822 patent is directed to an intelligent device system and method for distribution of digital signals on a wideband signal distribution system. Claim 1 is representative and reads as follows:

> 1. An intelligent device for receiving and processing RF signals, comprising:
> an input configured to receive a modulated RF signal containing multiple channels, and to receive channel in use information which identifies each channel in the modulated RF signal that includes information addressed to at least one addressable device;
> a demodulator unit configured to demodulate at least two channels contained in the modulated RF signal when the channel in use information identifies the at least two channels as containing information addressed to the at least one addressable device; and
> a combiner configured to combine the at least two channels demodulated by the demodulator unit into a digital stream when the channel in use information identifies the at least two channels as containing information addressed to the at least one addressable device, and to output the digital stream to the at least one addressable device.

('822 patent, claim 1).

The '679 patent is also directed to an intelligent device system and method for distribution of digital signals on a wideband signal distribution system. Claim 1 is representative and reads as follows:

> 1. An intelligent device for transmitting information on a modulated RF signal, comprising:
> an input configured to receive a digital stream containing digital information, the digital information containing at least one destination address to which the digital information is to be sent;
> an RF channel detector configured to detect which dynamically allocated RF channels are currently being used in a wideband signal distribution system, and to generate RF channel in use information identifying which of the dynamically allocated RF channels are currently being used in the wideband signal distribution system;
> a traffic sensor configured to measure an information throughput of the digital information received by the input, and to generate traffic information identifying the information throughput of the received digital information;
> a modulator unit configured to modulate the digital information into at least two separate dynamically allocated RF channels when the traffic information

5

indicates that the information throughput of the digital information exceeds an information capacity of a single RF channel, and to output a modulated RF signal containing the at least two separate dynamically allocated RF channels to the wideband signal distribution system such that the digital information contained in the received digital stream is distributed across the at least two dynamically allocated RF channels output to the wideband signal distribution system; and

    a processor configured to

        receive the RF channel in use information generated by the RF channel detector and the traffic information generated by the traffic sensor,

        determine which dynamically allocated RF channels are available to carry the digital information, from among a plurality of RF channels contained in the modulated RF signal, based on the RF channels which are identified in the RF channel in use information as not currently being used in the wideband signal distribution system,

        determine a number of dynamically allocated RF channels from among the plurality of RF channels contained in the modulated RF signal on which to carry the digital information received by the input based on the information throughput of the digital information and the information capacity of a single RF channel,

        instruct the modulator unit to distribute the received digital information across at least two dynamically allocated RF channels by modulating the received digital information into the at least two dynamically allocated RF channels when the traffic information indicates that the information throughput of the digital information exceeds an information capacity of a single RF channel, and

        instruct the modulator unit on which specific dynamically allocated RF channels from among the plurality of RF channels to carry the digital information in the modulated RF signal based on the determined number of dynamically allocated RF channels on which to carry the digital information, the at least one destination address contained in the digital information, and the determined available dynamically allocated RF channels which are not currently being used in the wideband signal distribution system.

('679 patent, claim 1).

The '565 patent is also directed to an intelligent device system and method for distribution of digital signals on a wideband signal distribution system. Claim 1 is representative and reads as follows:

1. An intelligent device for transmitting information on a modulated RF signal, comprising:
    a non-transitory computer-readable recording medium having instructions recorded thereon; and

6

a processor, by executing the instructions recorded on the computer-readable recording medium, being configured to:
receive a digital stream containing digital information, the digital information containing at least one destination address to which the digital information is to be sent;
receive channel in use information identifying which dynamically allocated RF channels are currently being used in a wideband signal distribution system;
receive traffic information identifying an information throughput of the received digital information;
determine which dynamically allocated RF channels are available to carry the digital information, from among a plurality of RF channels contained in a modulated RF signal, based on the RF channels which are identified in the channel in use information as not currently being used in the wideband signal distribution system;
determine a number of dynamically allocated RF channels from among the plurality of RF channels contained in the modulated RF signal on which to carry the received digital information based on the information throughput of the digital information and the information capacity of a single RF channel;
instruct the modulator unit to distribute the received digital information across at least two dynamically allocated RF channels by modulating the received digital information into at least two dynamically allocated RF channels to be output to the wideband signal distribution system, when the traffic information indicates that the information throughput of the digital information exceeds an information capacity of a single RF channel;
instruct the modulator unit on which specific dynamically allocated RF channels from among the plurality of RF channels to carry the digital information in the modulated RF signal based on the determined number of dynamically allocated RF channels on which to carry the digital information, the at least one destination address contained in the digital information, and the determined available dynamically allocated RF channels which are not currently being used in the wideband signal distribution system; and
instruct the modulator unit to output the at least two dynamically allocated RF channels over which the received digital information is distributed to the wideband signal distribution system.

('565 patent, claim 1).

At claim construction, I construed "wideband signal distribution system" to mean "a system that distributes signals on a wide band of frequencies with wideband as defined in the specification." (D.I. 86 at 9).

### A. "Intelligent Device" Transmitting to or from a "Wideband Signal Distribution System"

Ms. Quigley opines that "every embodiment in the specification consists of an 'intelligent device' that receives and transmits data *through a distribution unit* . . . onto the 'wideband signal distribution system.'" (D.I. 396 at 3; D.I. 397, Ex. A at ¶193). Defendants contend that, despite the way the embodiments are described in the specification, the claims themselves are not limited to an "intelligent device" that communicates through a "distribution unit" but also include those that communicate directly to a cable network. (D.I. 396 at 6). Ms. Quigley's opinion states that "a person of ordinary skill in the art . . . would not understand the inventors to have been in possession of an invention in which the 'intelligent device' receives transmissions from, or sends transmissions to a cable headend—which is to say, an invention that operates over a cable system or a DOCSIS network." (D.I. 397, Ex. A at ¶ 204). Thus, Defendants argue that the claims are broader than what is disclosed in the specification because they do not include a "distribution unit" through which the "intelligent device" communicates, as described in the specification. (D.I. 396 at 6).

Plaintiff challenges Ms. Quigley's opinion, arguing that she uses an erroneous legal standard by determining whether the specification of the patents-in-suit describes the accused DOCSIS devices rather than describes the asserted claims. (D.I. 368 at 6-7). Plaintiff contends that under *Inline Connection Corp. v. AOL Time Warner Inc.*, 2007 WL 275928 (D. Del. Jan. 29, 2007), Ms. Quigley's opinions should be excluded.[3] In *Inline*, the defendants' expert opined that, because the asserted patent did not enable an end-to-end ADSL system (the accused product), the specification did not enable the asserted claims and thus the claims were invalid.

---

[3] Although *Inline* is an enablement case, Defendants do not contest the application of its logic to a written description issue.

8

*Inline*, 2007 WL 275928, at *1. The court determined that "while defendants' ADSL service allegedly uses the claimed system to infringe, that does not mean that the patent specification must enable the ADSL service as opposed to merely the claimed system." *Id.* at *4. Because defendants' expert did not evaluate whether the specification enabled a person of ordinary skill in the art "to make or use *the claimed invention* without undue experimentation," the court excluded his enablement testimony. *Id.* at *5.

Defendants argue that Ms. Quigley's report is different from the expert's report in *Inline*. (D.I. 396 at 14-15). The expert in *Inline* opined that "the accused system contains features that are not part of the claimed system, but . . . must be enabled by the specification." *Id.* at *4. Defendants contend that Ms. Quigley's opinion, however, focuses on the requirements of the claims, which do not recite a "distribution unit," to communicate directly on a cable network. (D.I. 396 at 6; *see* D.I. 397, Ex. A at ¶¶ 182-83). Defendants argue that, based on the court's claim construction, Plaintiff reads the "wideband signal distribution system" claim term to allow for signal distribution not limited to that "between a distribution unit and addressable device and outlets." (D.I. 471 at 99:17-22; *see* D.I. 86 at 9). Without a "distribution unit," the "intelligent device" transmits data over "a system that distributes signals on a wide band of frequencies with wideband as defined in the specification." (*See* D.I. 86 at 9). According to Ms. Quigley, this construction means,

> [The claims] are not limited to networks that transmit data between an addressable device and the disclosed distribution units of the Asserted Patents, and presuming all other limitations are met, the scope of these claims may include cable networks, including DOCSIS 3.0 cable networks, that transmit data between a CMTS at a cable headend and a CM at a customer's premises.

(D.I. 397, Ex. A at ¶ 183).

9

Rather than opining on whether the specification sufficiently describes the claims, Ms. Quigley's analysis erroneously focuses on the accused technologies. Her opinion addresses whether the specification adequately describes "intelligent devices" that communicate over a cable network and associated technologies. (*See, e.g., id.* at ¶¶ 186-87, 194-95, 197-99). A cable network and DOCSIS devices may be within the scope of the claims as they are argued by Plaintiff's experts, but analyzing whether they are supported by the specification is not the correct written description inquiry under § 112 ¶ 1. To be reliable, an expert's written description opinion must evaluate whether the asserted patents sufficiently describe the asserted claims, not the accused products. *See Ariad*, 598 F.3d at 1351; *Hologic, Inc. v. Minerva Surgical, Inc.*, 325 F. Supp. 3d 507, 526 (D. Del. 2018). Ms. Quigley's analysis did not address the asserted claims and thus she did not conduct a proper written description assessment. Therefore, I will exclude as unreliable Ms. Quigley's opinions regarding written description for the "intelligent device" that transmits to or from a "wideband signal distribution signal" (D.I. 397, Ex. A at ¶¶ 181-207; D.I. 397, Ex. B at ¶¶ 8-67).

**B.** **"Intelligent Device" That Receives "Channel In Use Information"**

I consider the second and third challenged opinions of Ms. Quigley together. Defendants argue that there is a lack of written description for the claimed "channel in use information" because the specification lacks support for the "channel in use information" identifying addressable devices and for how the "channel in use information" is obtained. (D.I. 396 at 15-16).

Ms. Quigley states that a person of skill in the art would not understand the specification to disclose "inspecting a packet for information to identify where the data on a channel is destined (i.e., the identity of the addressable device) to determine if there is information

10

addressed to at least one addressable device, as recited in the asserted claims of the '822 and '679 patents." (D.I. 397, Ex. A at ¶ 231). Plaintiff, however, contends that the claims do not require that the "channel in use information" includes "address information" or "information that 'identifies the addressable devices to which the information is addressed.'" (D.I. 368 at 17-18; D.I. 397, Ex. A at ¶¶ 215-16). Plaintiff asserts that the claimed "channel in use information" identifies channels rather than addressable devices. (D.I. 368 at 17).

Defendants also argue that the specification only discloses a single embodiment for obtaining "channel in use information" (using a "detector") and that there is no support for obtaining the "channel in use information" through any other means. (D.I. 396 at 15-16). Ms. Quigley contends that, despite the limited disclosure in the specification, the claims are broad enough to cover any means of obtaining "channel in use information." (*Id.*; *see* D.I. 397, Ex. A at ¶¶ 223-32). Plaintiff counters that the '679 and '565 patents do not require that the "intelligent device" receive the "channel in use information." (D.I. 413 at 6). Plaintiff also argues that Ms. Quigley concedes that the specification supports the claimed "channel in use information" for all three patents-in-suit. (*Id.* at 9-10).

While Plaintiff disagrees with Ms. Quigley's opinions on "channel in use information," her opinions are not legally erroneous under § 112 ¶ 1. Ms. Quigley assesses whether the claimed "channel in use information" is disclosed in the patents, thereby evaluating "whether the disclosure of the application relied upon reasonably conveys to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date." *Ariad*, 598 F.3d at 1351; (*see* D.I. 397, Ex. A at ¶¶ 223-32). Ms. Quigley's "channel in use information" opinions are therefore reliable under Rule 702 and there is no reason to exclude them.

11

Plaintiff also has not shown that summary judgment is appropriate regarding the specification's support of "channel in use information." Plaintiff argues that Ms. Quigley conceded at her deposition and in her report that the specification supports the claimed "channel in use information." (D.I. 368 at 18-20). Plaintiff, however, has not demonstrated that there is no genuine dispute as to any material fact and that a reasonable jury could not find that there is a lack of written description for "channel in use information." Thus, Plaintiff's motion is denied as to Ms. Quigley's "channel in use information" opinions.

## IV. CONCLUSION

For the reasons set forth above, Plaintiff's Motion to Exclude the Expert Opinions of Cathleen Thomas Quigley Regarding Written Description and Enablement, or in the Alternative, for Summary Judgment (D.I. 367) is granted-in-part and denied-in-part. A separate order will issue.