1                    IN THE UNITED STATES DISTRICT COURT

2                      FOR THE DISTRICT OF DELAWARE

3

4      CHANBOND, LLC,                      )
                                           )
5                     Plaintiff,           )
                                           ) C.A. No. 15-842-RGA
6      v.                                  )
                                           )
7      ATLANTIC BROADBAND GROUP, LLC,      )
                                           )
8                     Defendant.           )
       - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
9      CHANBOND, LLC,                      )
                                           )
10                    Plaintiff,           )
                                           ) C.A. No. 15-843-RGA
11     v.                                  )
                                           )
12     BRIGHT HOUSE NETWORKS, LLC,         )
                                           )
13                    Defendant.           )
       - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
14     CHANBOND, LLC,                      )
                                           )
15                    Plaintiff,           )
                                           ) C.A. No. 15-844-RGA
16     v.                                  )
                                           )
17     CABLE ONE, INC.,                    )
                                           )
18                    Defendant.           )
       - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
19     CHANBOND, LLC,                      )
                                           )
20                    Plaintiff,           )
                                           ) C.A. No. 15-845-RGA
21     v.                                  )
                                           )
22     CABLEVISION SYSTEMS CORPORATION )
       and CSC HOLDINGS, LLC,              )
23                                         )
                      Defendants.          )
24     - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

25

```
1    CHANBOND, LLC,                     )
                                        )
2                   Plaintiff,          )
                                        ) C.A. No. 15-846-RGA
3    v.                                 )
                                        )
4    CEQUEL COMMUNICATIONS, LLC and     )
     CEQUEL COMMUNICATIONS HOLDINGS     )
5    I, LLC d/b/a SUDDENLINK            )
     COMMUNICATIONS,                    )
6                                       )
                    Defendant.          )
7    - - - - - - - - - - - - - - - - - - - - - - - - - - - -
     CHANBOND, LLC,                     )
8                                       )
                    Plaintiff,          )
9                                       ) C.A. No. 15-847-RGA
     v.                                 )
10                                      )
     CHARTER COMMUNICATIONS, INC.,      )
11                                      )
                    Defendant.          )
12   - - - - - - - - - - - - - - - - - - - - - - - - - - - -
     CHANBOND, LLC,                     )
13                                      )
                    Plaintiff,          )
14                                      ) C.A. No. 15-848-RGA
     v.                                 )
15                                      )
     COMCAST CORPORATION and COMCAST    )
16   CABLE COMMUNICATIONS, LLC,         )
                                        )
17                  Defendants.         )
     - - - - - - - - - - - - - - - - - - - - - - - - - - - -
18   CHANBOND, LLC,                     )
                                        )
19                  Plaintiff,          )
                                        ) C.A. No. 15-849-RGA
20   v.                                 )
                                        )
21   COX COMMUNICATIONS, INC.,          )
                                        )
22                  Defendant.          )

23                                      Thursday, July 2, 2020
                                        10:02 a.m.
24                                      Pretrial Videoconference

25
     BEFORE:  THE HONORABLE RICHARD G. ANDREWS, U.S.D.C.J.
```

```
 1    APPEARANCES:

 2              BAYARD, P.A.
              BY:  STEPHEN B. BRAUERMAN, ESQUIRE
 3
                        -and-
 4
              KING & WOOD MALLESONS LLP
 5            BY:  MARK S. RASKIN, ESQUIRE
              BY:  JOHN PETRSORIC, ESQUIRE
 6            BY:  ROBERT WHITMAN, ESQUIRE
              BY:  ANDREA PACELLI, ESQUIRE
 7            BY:  MICHAEL S. DeVINCENZO, ESQUIRE

 8                                   For the Plaintiff

 9            MORRIS NICHOLS ARSHT & TUNNELL LLP
              BY:  JENNIFER YING, ESQUIRE
10
                        -and-
11
              WINSTON & STRAWN
12            BY:  DAVID ENZMINGER, ESQUIRE
              BY:  THOMAS M. MELSHEIMER, ESQUIRE
13            BY:  KRISHNAN PADMANABHAN, ESQUIRE

14    Also Present:

15              Kelly E. Farnan, Esquire
              Miss Cythia Biron
16

17                 ***  PROCEEDINGS  ***

18

19              THE COURT:  Good morning.  This is Judge Andrews

20    in ChanBond versus Cox Communications which is Civil Action

21    Number 15-849 and part of the consolidated 15-842 case.

22              I thought I saw that my court reporter is on the

23    line; is that correct?

24              THE REPORTER:  Yes, Judge.

25              THE COURT:  And I saw that my deputy clerk is on
```

1    the line; is that correct?

2              DEPUTY CLERK:  Yes, Judge.

3              THE COURT:  All right.  And I think possibly I

4    saw that, though I'm just looking at out-of-town counsel

5    here, Mr. Brauerman, do you represent the plaintiff?

6              MR. BRAUERMAN:  I do, Your Honor, and I am on

7    the line.

8              THE COURT:  Okay.  So tell me who's on and who's

9    going to be speaking for your side.

10              MR. BRAUERMAN:  Thank you, Your Honor.  I am

11    joined by my co-counsel Mark Raskin, Robert Whitman, Michael

12    DeVincenzo, Andrea Pacelli, and John Petrsoric.  We're also

13    joined by Dominick Vitaliano, who is lead counsel's

14    paralegal on behalf of the plaintiff.

15              And depending on the particular issue, Your

16    Honor, I think various of my co-counsel will be addressing

17    the Court.  I expect Mr. Whitman will be taking the lead on

18    most issues, but there are other folks who I expect will

19    speak as well, Your Honor.

20              THE COURT:  All right.  Thank you,

21    Mr. Brauerman.

22              And who represents the defendant here?

23              MS. YING:  Your Honor, this is Jennifer Ying

24    from Morris Nichols.  Good morning.  And I have with me on

25    the line here co-counsel from Winston & Strawn.  I have Tom

1     Melsheimer, David Enzminger, Nimalka Wickramasekera, and

2     Krishnan Padmanabhan.  And we also have client

3     representatives, Marcus Delgado, and Kristen Weathersby.

4               And I believe we may have some observers on the

5     line, including Kelly Farnan from Richards Layton who are

6     just observing.  She doesn't represent the defendant in this

7     action, but I believe she's on the line so I wanted to let

8     the Court know as well.

9               THE COURT:  Okay.  Thank you, Ms. Ying.

10              MS. YING:  And as Mr. Brauerman suggested, on

11    our side is the same as well.  I believe the argument would

12    be split up between the parties depending upon what issues

13    the Court wants to hear about, if that's all right with Your

14    Honor.

15              THE COURT:  Sure.  I don't think we're going to

16    be having lots of arguments about anything today, but we'll

17    see how it goes.  And of course, my screen is filled up

18    with, you know, telephones and people who are on the line,

19    and so welcome to everybody.

20              So maybe we should deal with the elephant in the

21    room first which is somewhere near the end of the pretrial

22    order, the Cox people said we'd like to speak about the

23    trial date.  That's kind of a hard point to overlook here.

24              What do people think about the trial date and

25    the viability of having any kind of trial, but particularly

1    a jury trial at the end of August for when it's scheduled?

2              MR. PADAMANABHAN:  So good morning.  This is

3    Krishnan Padamanabhan on behalf of Cox, if I may.

4              THE COURT:  Sure.  Yes.

5              MR. PADAMANABHAN:  So we had a chance to speak

6    with plaintiffs briefly about this.  I think we're having

7    some difficulty because we definitely have witnesses that

8    are afraid to appear in person.  They have some hesitations

9    about traveling to or staying in Delaware, and so it poses

10   some substantial difficulties, I think.

11             You know, obviously, we're in unprecedented

12   times, I don't need to tell anyone that, but you know,

13   mid-August seems like still a scary time to a lot of people

14   involved in this case.  We did approach the possibility of a

15   bench trial which we could do, obviously, fully remotely, I

16   think.  You know, plaintiffs said, you know, they'd take it

17   under advisement, but they also didn't seem too keen on the

18   idea.  I'll let them, obviously, speak to their views on

19   that, but that's something that would potentially allow them

20   to maintain their date, I think.

21             THE COURT:  All right.  You know, I may hear

22   more about this from plaintiffs in a minute, but are there

23   any witnesses or potential witnesses who are coming from

24   outside the United States?

25             MR. PADAMANABHAN:  We don't have witnesses

1    coming outside the United States.  We have witnesses coming

2    from California, Colorado, Georgia, and I think Texas, and

3    we've got counsel coming from California, Texas, New York,

4    Illinois.  We've got a lot of people coming from a lot of

5    places, but I don't think there's anyone coming from outside

6    the United States.

7              THE COURT:  All right.  Okay.

8              Plaintiffs, what are your thoughts?

9              MR. WHITMAN:  Good morning, Your Honor, this is

10   Bob Whitman for ChanBond.  This case was filed almost five

11   years ago.  We're pretty anxious to go to trial.  The three

12   inventors, as you know, are all into their 70s.  They plan

13   on attending trial.  They plan on being there every day.

14             We have -- our witnesses are ready.  Their

15   schedules are booked, and we're ready to go.  I can note

16   that we did speak to defendants about this.  One of their

17   witnesses who I think is cautious about attending is within

18   driving distance.  He's, I think, in Princeton and can drive

19   down, doesn't even have to stay over night.  So we're ready

20   to go.  We'd like to proceed, if possible.

21             And --

22             THE COURT:  Well, so you know, it's hard to say

23   what's going to be possible.  I mean, for example, you

24   mentioned the three inventors who are over 70 would like to

25   attend the trial.  You know, from what I understand and what

1   my colleagues are doing, the chances are there's not going

2   to be anyone in the courtroom other than, you know, at the

3   most a small number of lawyers and, you know, anybody who's

4   actually going to be watching the trial is going to be

5   watching it on some TV in some overflow courtroom, I think.

6          You know, right now Judge Stark and Judge

7   Connolly both have trials scheduled for jury trials

8   scheduled for early August, and they're working on plans.

9   It's possible.  I've seen some order that Judge Stark was

10  either going to issue or has issued, I'm not sure which, and

11  on the off chance that he hasn't issued it, I won't say

12  anything more about it because, obviously, what I saw I

13  don't even think was going to be the final, or there's no

14  guarantee it's the final.

15         But you know, besides for the question of people

16  willing to come to trial, you know, there's also the

17  question of just how a trial would actually physically work

18  which is a significant thing that the Court is thinking

19  about.  And you know, we did cancel all jury trials through

20  the end of July recently, and that's kind of the way we've

21  been going about doing things is not looking too far into

22  the future.

23         So one of the things that I've seen a little bit

24  from other judges other places and which I think from

25  talking to my colleagues is probably generally a thought

1    that they probably share, but regardless of whether they do

2    or they don't is, you know, what one does if you have

3    witnesses who are, you know, in a high-risk category

4    which -- and of course, even when you have attorneys who are

5    in a high-risk category, you know, what are we going to do

6    about that.

7         If one side's witnesses or some of one side's

8    witnesses don't want to appear for health reasons or

9    health-related concerns in the current situation, you know,

10   I don't think we're going to be doing medical exams to

11   determine how valid is your concern.  So I don't know what

12   the answer is other than, to some extent, the approach that

13   I took when you all had damages experts and one side's

14   expert was committed somewhere else and the other side's

15   wasn't, and as I recall, you know, it kind of came down to

16   one side wanted to have their experts sit through, the other

17   side's expert couldn't show up until the second week.  And

18   so I said, No, I'm going to treat both experts the same

19   which is the reason why in the pretrial order, you know, you

20   have some paragraphs which I thought made sense as to how

21   you would deal with the expert or the damages experts.

22        So you know, I'm perfectly willing to -- well,

23   so I guess, Mr. Padamanabhan -- and of course, one of the

24   other things is I guess we have a certain amount of privacy

25   interest because I'm not really interested in having the

1    public record here going into depth about perhaps people's

2    medical, you know, why they might be in a high risk or why

3    they just might be concerned.

4              But perhaps without necessarily naming who

5    you're talking about, Mr. Padamanabhan, I mean, what are

6    your witnesses saying or whoever it is you're talking about?

7    Are they saying I'm concerned, or are they saying I'm not

8    doing that?

9              MR. PADAMANABHAN:   Sorry.   It took a second to

10   unmute, Your Honor.   I was trying to stay muted while I'm

11   not talking.

12             They are -- it's a -- I think what you're trying

13   to ask me is where they are on the dial, if you will, and I

14   think high concern as in, you know, if you tell me I have

15   to, I have no choice, then you know, I guess I'll do

16   something.   You know, different people have expressed

17   different concerns about different aspects of attending.

18   Some are afraid about flying.   Some are afraid about staying

19   outside their homes.

20             You know, and as Your Honor has expressed, I did

21   try not to probe too much, but I reported back.   I am

22   reporting back on behalf of the people who are on the far

23   end of that dial and saying, I really don't want to be doing

24   this.

25             THE COURT:   Mr. Padamanabhan --

1              MR. PADAMANABHAN:  People express concern, but

2    you know, if the concern was light, we said, Okay, you know.

3    Does that make sense, Your Honor?

4              THE COURT:  Yeah.  No, no.  Thank you.  What you

5    said made perfect sense.  I'm just trying to think a bit.

6              So I realize we're not at this point yet and

7    maybe we won't be at this point, but you know, if some of

8    the witnesses, let's say, appeared remotely -- well, so I

9    guess there's a lot of different things at play, but one is

10   if some of the witnesses -- the people who have concerns,

11   and you mentioned the possibility of a bench trial, if the

12   witnesses could appear remotely, that would be all right for

13   you all?

14             MR. PADAMANABHAN:  Yeah.  I mean, I'm thinking

15   about the logistics of some witnesses appearing remotely,

16   the optics of some witnesses appearing remotely by

17   teleconference, some appearing live.  I'm not sure that's an

18   optimal situation, but you know, I guess we'd have to think

19   about that.  I'd have to discuss that with my client.

20             But you know, it's not like these people don't

21   want to testify.  They're happy to testify.  It's an issue

22   of appearing in Delaware.

23             THE COURT:  All right.  Okay.

24             Well, so I think at this point, I'm not really

25   going to do anything.  I have my own on Monday.  I'm

1    supposed to be doing a virtual trial, so I'm going to see

2    how that goes.  So I will have at least some experience with

3    the virtuality, so to speak, by the end of next week.

4              And for sure, if both sides agreed, and I can

5    understand if you don't want to, and I'm not asking you to

6    now, it's something -- you know, basically it's best for you

7    all to talk offline to each other for sure.

8              Well, in fact, why don't I see how this virtual

9    trial goes.  But if it goes exceptionally well -- and it is

10   a virtual bench trial.  Maybe I didn't say that.  You know,

11   that's the one way to be sure that you actually get the date

12   that you have in mind is if we have a virtual bench trial.

13   But you know, honestly I don't know how that's going to even

14   actually work out.

15             But in the mean time, I guess, and maybe I

16   should go back to you, Mr. Padamanabhan, is there something

17   that you actually want me to do today, or do you just want

18   to flag -- you know, what exactly, if anything, do you want

19   me to do today, or do you just want me to have this as a

20   marker that you may be coming back to?

21             MR. PADAMANABHAN:  No, Your Honor, that's a fair

22   question.  So I guess the purpose of our statement was to,

23   obviously, A, flag it for the Court, let the Court know, we

24   obviously all have a lot of questions.  And the Court, you

25   know, we thank you for taking that up first.

1        I guess the second part of it is, you know, for

2   a trial that we don't know, you know, how it's going to be

3   conducted, A, and B, where we can't do what we normally do

4   when we prepare for a trial which involves meeting with

5   people and, you know, looking over documents, and getting

6   testimony together, it is a little difficult.  I'm not going

7   to lie.  We may have less access to some of the people that

8   we're going to be putting up because they are spread out.  I

9   guess we were asking for as much guidance as we can get

10  because we're trying to get through those hurdles.  That's

11  really what we're asking for.

12       THE COURT:  So Mr. Padamanabhan, I'm not sure

13  why, but in the last little bit that you were talking, some

14  times your voice wasn't coming through.

15       MR. PADAMANABHAN:  Yeah.  Your Honor, I

16  apologize.  I'm trying to use the computer audio because the

17  telephone wasn't calling for me.  So I was saying that, you

18  know, we tried to flag two issues.

19       One, is we didn't know how a trial would be

20  conducted, whether it would be possible to conduct a trial,

21  empanel a jury, all that stuff.  We know that's at the top

22  of the Court's mind, and we appreciate the Court sort of

23  telling us they're still figuring that out.

24       I guess the second half of it is we want to flag

25  for the Court that -- and obviously, as we explained, some

1     witnesses are not really prepared to be there in person.

2     The second half of that is we're having some difficulty

3     understanding how we're supposed to prepare.  I think we're

4     having some difficulty preparing because we have witnesses

5     all over the place.  And normally we would meet with them,

6     and we can't really do that.  And I understand that this is

7     a problem everyone is dealing with.

8           I think we may be impacted a little bit more

9     than plaintiffs because our witnesses are spread around the

10     country, and no one's really able to fly right now.  And so,

11     you know, to the extent the Court can give us guidance on

12     what the trial will look like.  If we're all video, that

13     would tell us a lot about how we're going to prepare.  If

14     we're going to have half video, half in person, that would

15     look a little different.

16           You know, but I guess what I'm hearing from the

17     Court right now is today we don't know what we're going to

18     do in mid-August, and you know, we should sort of do the

19     best we can.  And you know, I don't presume to ask the Court

20     for more guidance than that, but I wanted to express to the

21     Court some of the difficulties we're seeing in the current

22     climate.

23           THE COURT:  All right.  Well, so that's good.

24     So the only thing I would say is, and I don't know,

25     Mr. Brauerman or Ms. Ying, whether or not this order of

1    Judge Stark's that I was mentioning is something that either

2    of you have seen.

3              MR. BRAUERMAN:  Your Honor, Steve Brauerman, I

4    have not.

5              MS. YING:  I have not yet, Your Honor, either,

6    the one that you were most recently referring to.  I believe

7    the last order we saw from Judge Stark was the one

8    continuing all jury trials through the end of July.

9              THE COURT:  And I'm sorry.  It's a case-specific

10   order for whatever trial it is that he has at the beginning

11   of August.  So it's something, given the way that you all

12   monitor what we do, I figured if he issued it, you would

13   have seen it.

14             So if you find out whatever trial it is he has

15   at the beginning of August, I would keep an eye on the

16   docket for that.  Because whatever it is he puts in the

17   order are probably things that are going to be contemplated

18   by at least me.

19             And to some extent, to Mr. Padamanabhan's

20   question, something all the judges seem to be thinking about

21   is whether it's a jury trial or bench trial, whatever it is,

22   we're talking severe social distancing in the courtroom.

23   We're talking masks, and we're talking about limiting the

24   number of people.

25             Usually when I have a patent trial, there's 15

1    people sitting in the courtroom.  You know, instead, I think

2    we're talking about basically maybe a total of six people

3    other than Court personnel and the jury sitting in the

4    courtroom.  Maybe those six people are the only people who

5    are allowed to appear in the courtroom during the course of

6    the trial, something like that, but it's something other

7    judges, because they have trial dates ahead of when I do,

8    more than I have been.

9            So basically what I would say, at least as far

10   as the trial goes, I don't really have much more to say

11   other than I will see how my trial goes next week.  And by

12   then for sure Judge Stark will have issued some order in his

13   case, and I may look at that and think about what I have to

14   do in this case.

15           But I also would, to the extent that the parties

16   have experts that don't want to come to Delaware, I think,

17   you know, that's in many ways the easiest thing to deal with

18   because if one side's experts are not coming to Delaware or,

19   you know -- like I don't know how many people, technical

20   experts you have.  I'm pretty unlikely to insist that people

21   who don't want to come to Delaware come to Delaware.  And if

22   I do that, then I'm pretty unlikely to let the other side's

23   comparable witnesses come to Delaware, but that's about as

24   far as we can get on that today.

25           All right.  So there was one other thing which

1    maybe, or it seemed like it was partly related to this.

2    Mr. Padamanabhan said something about, you know, preparing

3    for this trial.  And one of the things that caught my

4    attention, and perhaps partly this is because we're having

5    the pretrial conference on July 2nd for a trial that's not

6    scheduled for a month and a half from now.  And as I'm sure

7    all of you know, certainly Delaware attorneys know, you

8    know, I normally have pretrial conferences either ten days

9    or sometimes 17 days in front of when the trial is.

10             So one of the things that caught my attention,

11   which I believe was in paragraph 64 on page 14 in footnote 5

12   was the idea that the plaintiffs have 2,000 exhibits on

13   their exhibit list, and the defendants have a thousand

14   exhibits on their exhibit list for a trial that at the end

15   you say, yeah, we can do it in 12.5 hours.  So if anyone

16   wants to say anything about that, that's fine, but what I'm

17   contemplating is directing that the plaintiffs' exhibit list

18   be, you know, brought down to something in the order of,

19   say, no more than 300 exhibits, and the defendants' list be

20   brought down to something perhaps in the order of no more

21   than 200 exhibits.

22             But in any event, have a date, and perhaps there

23   would be intermediate steps if -- part of the reason one

24   side's -- you know, it's very hard to tell.  Do you have

25   2,000 exhibits because you really have no idea what you're

1    doing, or do you have 2,000 exhibits because you really have

2    no idea what the defendant is doing or vice versa.  But it

3    seems to me that everybody ought to be able to prepare a lot

4    easier if the ball wasn't being hidden by both sides.  And I

5    don't mean that maybe intentionally, but certainly that's

6    the effect I think of having a ridiculous number of exhibits

7    on a list.

8              So what would you all think about mutual

9    reduction in force here?

10             MR. DeVINCENZO:  Your Honor, this is Mike

11   DeVincenzo on behalf of ChanBond.  We'd be open to a

12   reduction.  The one -- the reason our number is really high

13   is our damages expert did a lot of compilations with respect

14   to large numbers of documents they did.  And it's our

15   understanding that we need the underlying documents on the

16   list at least so that they -- maybe they don't have to be

17   admitted, which we are allowed to admit the compilation, but

18   if we don't have the data on the list that supports it, we

19   could have trouble with objections and things like that.

20   But if defendants are willing to work with us, we'd really

21   be able to cut it down.

22             Now, I don't know if we can get it down to 300

23   because there are a lot of products at issue, and the

24   product specs alone are a lot, but we'd be able to cut it

25   down substantially if they'll work with us so we can really

1    focus.

2            THE COURT:  Well, you say there are a lot of

3    products at issue.  I thought from some chart that I saw

4    that there are three products at issue.

5            Am I wrong?

6            MR. DeVINCENZO:  Yeah, I don't -- there's a

7    number of cable modems and CMTSs at issue.  I mean, they're

8    all either cable modems or CMTSs, but yeah, there's more

9    than three.

10            THE COURT:  And --

11            MR. DeVINCENZO:  Do you know, Steve?  I don't

12    know the exact number off the top of my head.

13            MR. PETRSORIC:  Yeah, I think given the -- oh,

14    Your Honor, it's John Petrsoric.  Sorry.

15            THE COURT:  Yes.  Hi, Mr. Petrsoric.

16            MR. PETRSORIC:  We can get it down on the order

17    of -- in the order Your Honor suggests, maybe not quite that

18    far, but within striking range.

19            THE COURT:  All right.

20            Defendant, do you have something to say?

21            MR. PADAMANABHAN:  Yes, Your Honor.  We

22    shouldn't be penalized for our reasonableness at the outset.

23    The fact that we didn't put 2,000 documents, too, it's hard

24    to find and put on a list.  So, you know, if the reduction

25    is equal, I think that would be fine meaning we are allowed

1   a comparable number of exhibits.

2           And you know, we don't believe in exhibit

3   Armageddon, either.  I think there is some value in having a

4   reduced list which is why we didn't start with a 2,000

5   exhibit list.  So, yeah.

6           THE COURT:  Okay.  So let's do this, you know, I

7   think Mr. Padamanabhan is essentially right that even though

8   I was hoping they would go for the lesser number than

9   whatever I have, that that's actually not something, unless

10  they voluntarily agree to it, that I would actually impose.

11  So why don't we do this --  well, so actually, you all tell

12  me.  Let's say, because if you have a separate list of,

13  These are our exhibits, but we're not going to introduce

14  them into evidence, you know, I mean, people -- I don't know

15  whether you all did, I'd have to be crazy to actually look

16  at your exhibit list, but you know, people often put down

17  depositions that they're going to use for cross-examination

18  or expert reports.  I mean, a lot of times exhibit lists are

19  padded with things that will never actually be exhibits.

20          And if there's some value to having, you know, a

21  shadow list of things that our expert's relying on, but in

22  fact, yeah, we're not going to be introducing this unless

23  somebody makes a point about it, you know, that's fine.  But

24  it seems to me that you ought to be able to work out in some

25  reasonable amount of time, you know, 300 exhibits for each

1   side with the idea that when you actually get to the trial,

2   you're only going to use a hundred of them anyhow.  And you

3   know, so in any event, if I said 300 per side, under the

4   sort of general with what I just said, how much time would

5   you need to do that?  And I would allow you all to -- you

6   know, I think maybe you would do it in steps or, I mean, I

7   don't know because I haven't looked at your exhibit list,

8   but if you did it in steps to make sure that, you know,

9   you're not reducing this one place where the other side is

10  not doing anything, and you know, you're worried that

11  somehow you're going to be double crossed, you know, maybe

12  it doesn't all occur at once, but if you work with each

13  other to reduce your list.

14          Could you do that by, you know, two weeks from

15  Monday?

16          MR. DeVINCENZO:  Your Honor, this is Mike

17  DeVincenzo for ChanBond.  I don't know.  We can get it down

18  substantially, but 300 by two weeks from Monday, could we

19  have until that Friday or one more Monday?

20          THE COURT:  Well, that's the reason why I'm

21  asking is I'm trying to see what's reasonable.  As far as

22  I'm concerned, yeah, the end of the week is fine by me.

23  What does defendant have to say?

24          MR. PADAMANABHAN:  Your Honor, we could do it.

25  And if you tell us Monday, you know, the way it works is we

```
 1   do it by Monday.  If you tell us Friday, we do it by Friday.

 2   So that's fine.  And you know, we're happy to be in

 3   agreement with ChanBond as to when we make the reduction,

 4   but --

 5              THE COURT:  Okay.  Well, so July 6th is this

 6   Monday, so July 20th is two weeks.  But I will make it

 7   July 24th because a little extra time, it just gives you

 8   more of a chance to work this out in a mutually satisfactory

 9   way.  But I would like the exhibit list to be down to 300

10   per side by July 24th.

11              Okay.  From looking at the pretrial order, am I

12   correct, that there's no indirect infringement here?  This

13   is all direct infringement?

14              MR. DeVINCENZO:  Yes, Your Honor.

15              THE COURT:  And I couldn't tell, maybe I didn't

16   look far enough, is it all literal infringement, or is there

17   doctrine of equivalents lurking about somewhere?

18              MR. DeVINCENZO:  Literal.

19              THE COURT:  Okay.  Well, that's good.

20              All right.  There's a point in the pretrial

21   order, I think it's at paragraph 8, where you have a list of

22   relevant claim constructions.  So if there's a jury trial,

23   some time before the jury trial, and it could be the week

24   before or something, you need to submit a cleaned up version

25   of my constructions for really -- only for -- you know, I
```

1   wouldn't be surprised because usually this is what happens,

2   particularly for the patent where you have all the dependent

3   claims, probably you're going to drop some of those.  So it

4   may be that not all of these constructions are necessary,

5   but I would like to have one order for the jury that has

6   them.  And of course, the ones that get their plain meaning,

7   they're not put in that order because everything has its

8   plain meaning unless I say otherwise.

9           So plaintiffs, you should obviously work

10   together with defendants on this, but I would like you to

11   submit some order that's actually suitable to give to the

12   jury the week before trial.

13           Hold on a minute.  Oh, so paragraph 65 says,

14   Each party shall make an omnibus submission of everything

15   that's not objected to on their exhibit list at the

16   beginning of trial.  I have no problem if you do that, but

17   with the understanding that if no one mentions it during the

18   trial, then it's not actually in evidence.

19           Okay?

20           MR. DeVINCENZO:  Yeah, I understand.  We

21   understand that.

22           THE COURT:  All right.  So in paragraph 75 and

23   76, there's these long lists of witnesses, and there is an

24   objection to Anthony Wechselberger.  And I believe he's the

25   person who was an expert in the PTAB proceedings where maybe

1    Cisco was a party or maybe the proceeding was brought by

2    Cisco.  Maybe Cox joined it.  I don't know.  That doesn't

3    really matter.

4              But he was deposed in connection with that, and

5    now plaintiffs want to use that; am I right?

6              MR. PETRSORIC:  That is correct, Your Honor.

7              THE COURT:  Okay.  And maybe it should have been

8    clear from the pretrial order or maybe it was clear, and I

9    just didn't get it, he was presumably in connection with the

10   PTAB proceedings indicating something about the prior art

11   for either the purposes of anticipation or obviousness.

12             Is that right?

13             MR. PETRSORIC:  That is correct, Your Honor.

14             THE COURT:  And so pause for a second.  So in

15   this case, defendants say they have anticipation,

16   obviousness, and I think lack of written description as

17   validity defenses for most of these claims.  Is Cox not

18   bound or estopped, I guess is the word, by anything that

19   happened in the PTAB proceedings?

20             MR. PETRSORIC:  I don't believe there's any

21   estoppel issues with respect to Cox.

22             THE COURT:  Okay.  And so, but I had the

23   impression from reading the pretrial order, because there

24   was some argument about Wechselberger later on, that there

25   seemed to be some argument by the plaintiffs that

1    Wechselberger counts as being Cox's man, so to speak.  Is

2    that right or is that not right?

3                   MR. PETRSORIC:  Well, at the very least, Your

4    Honor, we believe Cox was in privity with Cisco, and

5    therefore, Cisco at least with respect to federal rule of

6    evidence 804(b)(1) counts as a predecessor in interest and,

7    therefore, that Wechselberger's testimony would be an

8    exception to the hearsay rule.

9                   THE COURT:  And you say "predecessor in

10   interest."  I'm not sure that that's a term that I would use

11   because it's not like Cox bought Cisco.

12                  MR. PETRSORIC:  No, Your Honor, that's a term

13   that comes out of the rules themselves.

14                  THE COURT:  Okay.  And so what does that mean?

15                  MR. PETRSORIC:  That they're effectively

16   stepping into each other's shoes.

17                  THE COURT:  Okay.  All right.  And what is it

18   that Mr. Wechselberger or presumably Wechselberger said

19   that, you know, in a sentence or two, because again, at

20   least in the pretrial order, it wasn't clear to me what it

21   was that he supposedly said that was so damaging to Cox's

22   case.  What is it that he said roughly?

23                  MR. PETRSORIC:  In short, Your Honor, with

24   respect to the application of the claim language in the

25   asserted claims, Mr. Wechselberger directly and

1    unambiguously contradicts the positions that Cox's experts

2    in this case have taken with respect to the application of

3    that claim language.

4              THE COURT:  Well, so that's what you said in the

5    pretrial order pretty much and that meant nothing to me.

6    Can you be a little more detailed as to what it is that he

7    said because that sounds a lot like an infringement read,

8    and that's a strange thing to have an invalidity guy.  You

9    know, I'm not even entirely sure why he would have been

10   opining on that in a PTAB proceeding.

11             MR. PETRSORIC:  He opined as to what, from an

12   invalidity perspective, would meet the claim language.  So

13   we believe, Your Honor, that what's good for invalidity is

14   also good for infringement.

15             THE COURT:  Okay.  So he was testifying about

16   invalidity, and indeed, you want to now use his testimony in

17   connection with your infringement case?

18             MR. PETRSORIC:  Yes, Your Honor.

19             THE COURT:  Okay.  And basically he was saying

20   in connection with invalidity that there was something in

21   the prior art that met some claim limitation or maybe lots

22   of claim limitations, but I guess probably one in

23   particular.  And so you want to say that same thing is in

24   the defendant's or, yeah, the defendant's product, and so

25   therefore, that's evidence that it, too, meets the claim

1    limitation?  Is that right?

2              MR. PETRSORIC:  That's figuratively right, Your

3    Honor.  What would meet the claim limitations for purposes

4    of invalidity would also meet the claim limitations for

5    purposes of infringement.

6              THE COURT:  Yeah, I got that.  All right.  Okay.

7              So I'm not going to rule on this right now, but

8    nevertheless, Cox, is there anything you'd like to say in

9    response?

10             MR. PADAMANABHAN:  Absolutely, Your Honor.  So

11   as a preliminary point, it's about prior art that's not in

12   this case.  So there's no detailed analysis of this prior

13   art in this case.  I don't know who's going to talk to

14   exactly how this prior art operates and how it meets or

15   doesn't meet this limitation and how that's similar to the

16   accused products, and they meet or don't meet this

17   limitation.  We're effectively going to have a mini-trial on

18   opinions that haven't been expressed by anyone, number one.

19             Number two, what Mr. Petrsoric is saying is that

20   Cox was named as being a real party in interest in that IPR

21   filed by Cisco.  Now, I wouldn't know -- I don't know if

22   it's Mr. Wechselberger or Dr. Wechselberger.  I couldn't

23   pick Dr. Wechselberger out of a lineup.  I don't know the

24   guy.  Never talked to the guy.  Haven't had a chance to

25   question the guy about his opinions.  I don't know the

1    contours or extent of his opinions.

2              So what they want to do is they have taken some

3    deposition testimony that they thought would help them in

4    litigation, okay, and they want to read it in, and we don't

5    have a chance to examine on it.  I think that's plain silly.

6              THE COURT:  All right.  Well, plain silly,

7    that's an argument.

8              MR. PADAMANABHAN:  And actually, Your Honor --

9              THE COURT:  Well, so I was going to ask, because

10   one of the things that you've said is that standing alone

11   this testimony, even if I let it in, how is the jury going

12   to connect it up; right?

13             MR. PADAMANABHAN:  There's absolutely no way for

14   the jury to connect it up.  That's exactly right, Your

15   Honor.

16             THE COURT:  So let me just ask, Mr. Petrsoric,

17   how, if I let this in, would the jury connect it up?

18             MR. PETRSORIC:  The jury would connect it up

19   because we would present it in a way that would show that

20   what Mr. Wechselberger has stated with respect to the way

21   you apply the claim language is in direct contravention to

22   the way at least Dr. Cromarty, Cox's non-infringement

23   expert, is applying the claim language.

24             THE COURT:  Well, so can you be a little more

25   specific?  What are we talking about here?  What is it that

1    Wechselberger said that Cox's expert says the opposite?

2              MR. PETRSORIC:  Well, I think this also ties in

3    with respect to our first motion in limine, Your Honor, that

4    the -- that Dr. Cromarty is opining that a combiner -- in

5    the construction of a combiner requiring a multiplexer would

6    set forth a litany of other requirements.  And

7    Mr. Wechselberger's testimony directly contraverts that.

8    Contradicts that.

9              THE COURT:  And does your expert in this case

10   say whatever it is that Dr. Wechselberger, whatever his

11   title is, said in this testimony?

12             MR. PETRSORIC:  Yes, he does, Your Honor.

13             THE COURT:  Okay.  So basically you want to use

14   kind of the fact that he's allied with, or was allied, or

15   worked for Cisco to have him say the same thing because it

16   would be more effective than your expert saying that?

17             MR. PETRSORIC:  Or it at least buttresses what

18   our expert says.

19             THE COURT:  Okay.  In a claim in the pretrial

20   order, did you all, Mr. Petrsoric, actually submit whatever

21   the actual testimony was that you designated so that I could

22   actually read it if I wanted to?

23             MR. PETRSORIC:  Well, there's a list.  There's a

24   list, Your Honor, but of course, that does not allow you to

25   read it.  But we would be glad to submit a highlighted

1    transcript that corresponds to the list we submitted in our

2    Exhibit 5.

3                    THE COURT:  So, yeah, if you could file the

4    entire deposition with the highlights of whatever it is that

5    you've designated.  And if, in fact, the deposition is

6    350 pages long, and you've only designated about five or six

7    page, I think there could be a brief cover page telling me

8    which pages the designations are on because leafing

9    through 350 pages to find a yellow highlighting is something

10   I prefer not to do.

11                   Okay.  Well, so I'm going to take that under

12   advisement.  I have seen that both sides, and in particular,

13   Cox have quoted decisions that I made before for these.

14   They always keep coming up, these issues, in slightly

15   different context.  So I would want to actually review what

16   I've done before.

17                   And I know the plaintiffs also submitted some

18   citation, and I think I've actually seen some discussion of

19   this issue by Judge Bryson in some case that I think

20   postdates my cases and possibly whatever it is plaintiff

21   cited.

22                   Okay.

23                   MR. PETRSORIC:  Your Honor, may I interject?

24                   THE COURT:  Yes.

25                   MR. PETRSORIC:  With respect to Judge Bryson's

1    decision, I understand that Judge Bryson addressed the

2    issues with respect to federal rule of evidence 801.  We

3    would be seeking to get Mr. Wechselberger's testimony in

4    under the exception under 804, so it is a different issue.

5    And if the Court would allow us a paragraph or two to flush

6    it out, at least in a perfunctory fashion, that would be

7    much appreciated.

8              THE COURT:  Well, no, I don't -- so I appreciate

9    what you've said, and as I said, you know, I read whatever

10   it was Judge Bryson wrote some time ago for some reason, but

11   I obviously didn't study it other than I know he was kind of

12   addressing an issue that I had addressed before so it kind

13   of stuck in the back of my brain.  But I don't, at this

14   point, really want to get any more argument, but that does

15   bring up a slightly different thing, and maybe this will

16   just change what I've said.

17             So there's also the debate about the plaintiff's

18   use of the motions in limine.  And without going through a

19   lot of song and dance, part of the reason why I have

20   occasionally commented in these other cases that plaintiff

21   says, you know, well, that's the custom and practice for

22   people not to follow the rules is because I don't like it

23   when people don't follow the rules.  And in those cases, you

24   know, I got this for whatever reason, I don't remember

25   exactly, you know, the weekend before trial, I'm dealing

1    with these things.  And sometimes the weekend before trial,

2    you know, where neither side is objecting, you just go ahead

3    and do it.  And that may be the case.

4           As I said, most of the time I'm doing these

5    pretrials shortly before trial, but I don't feel such an

6    obligation here when we're doing it six weeks before trial.

7    From what I can see, the defendants did what I envisioned

8    the rules actually requiring.

9           So I'm going to strike all the plaintiff's

10   motions in limine, but I'll let you file three of them.  You

11   can, if you want, expand an argument to fill more pages.

12   And so I wouldn't imagine, other than selecting which ones

13   you actually want to do, this would take very long.

14          I will also let defendants revise their response

15   to whichever argument you go with, and then you can reply.

16   But I would think you could do all of this -- you know,

17   maybe plaintiffs do their three motions by the close of next

18   Wednesday.  Plaintiffs -- I'm sorry, plaintiffs do their

19   motions by the close of next Wednesday.  Defendants respond

20   by the close of Monday, and the reply can be done by the

21   close of Tuesday.  And you can file three separate motions

22   with the little package of briefing, and you don't need to

23   re-file all the appendices and exhibits.  You can just cite

24   to them so that I can actually find them pretty easily, and

25   then I will decide three motions by the plaintiffs.

1          I looked a little bit at the three motions of

2     the defendants.  At least two of them I thought require a

3     bit of thought on my part, and basically I will do all of

4     them as I usually do at the same time.  So I am not going to

5     be addressing the motions in limine anymore today.

6          All right.  And so if we are on this trial

7     schedule that we are on right now, the parties' alternative

8     order presentation of evidence as stated in paragraph 110 is

9     fine with me.  And I appreciate your thinking about that in

10     coming to what seems to be a very sensible approach to that

11     issue.  I note the statement in paragraph 111 that you can

12     do the case in 12-and-a-half hours per side for openings and

13     presentation of evidence.  As the Delaware counsel know, the

14     amount of time that's allotted to closing argument is

15     something that we usually work on.  We come to some

16     agreement in the middle of trial, but typically nobody needs

17     more than an hour per side, but that's extra time.

18          So the parties spend a lot of time on pages 31

19     and 32 talking about handling of confidential information at

20     trial.  All I would say is that's mostly between the parties

21     as to what you agree as to your people, what they do or they

22     don't do.  But the presumption is that the trial is an open

23     trial, and unless you get my express permission, everything

24     should be on public display.  If you want to take your

25     people out of the room for things by some agreement between

1    yourselves, that's fine.  But you know, when you mark things

2    confidential, or highly confidential, attorneys' eyes only,

3    that's mostly for discovery purposes, that's not for trial

4    purposes.

5            So you know, I'm going to say I have adopted the

6    order except to the extent that I've said something

7    different.  So here I'm saying something different.

8            The sequestration of witnesses, which is in

9    paragraph 121, you know, the inventors are not excepted.

10   Each party gets a corporate designee.  So you can designate

11   whoever you want, and that person, assuming that we don't

12   otherwise change the rules here, that person can be present

13   for everything.  But if there are three inventors and

14   plaintiff's calling two of them, whichever one or both, if

15   they're not the corporate designee, they're sequestered

16   until you call them.  Of course, usually if you call them,

17   they're usually at the beginning, so they don't miss a whole

18   lot.

19           You know, and if Cox has the intention of

20   calling Mr. Snyder as an adverse witness, then he's going to

21   be sequestered.  You know, whether they plan to do that or

22   not, that's something that you all can keep discussing

23   amongst yourselves.  And you know, often at some point, the

24   defendant decides, well, yeah, we're not going to spend any

25   of our valuable 12-and-a-half hours on cross-examining the

1    third inventor, but until they decide that, he's going to be

2    excluded.

3              Hold on a minute.  Oh, paragraph 123, you say

4    you're going to play the Federal Judicial Center

5    introduction of the patent system video.  The one thing that

6    I ask, and I would think Mr. Brauerman and Ms. Ying probably

7    have this available to them, is that you edit out the part

8    where Judge Fogel says, I'm a United States District Court

9    judge.  Judge Robinson had a case where the jury said they

10   were following his instructions, and that seemed like a

11   problem.  But if he's just introduced as the administrative

12   officer of the court, that's less likely to happen.

13             All right.  So in terms of the pretrial order, I

14   think that was everything that I noted in the pretrial order

15   that I wanted to discuss with you.  You know, in due course,

16   the preliminary jury instructions I will file some set that

17   I will actually give.

18             I looked at the voir dire for a minute.  Again,

19   I will look at that in some more detail and file some voir

20   dire that I would actually give, but I think you've all

21   pretty much got the general gist of how I like to approach

22   these things.  So there may be a question or two that I

23   strike or there's some times where you write have you or

24   anyone in your family or any close friend ever "X," and you

25   know, I generally don't care what their close friends do,

1    and a lot of times I don't really care what their family

2    does.  So those will probably be edited down.

3              The verdict form, you know, it's good for you

4    all to have verdict forms out there, but until we actually

5    get to trial, and you know, see what we're actually going to

6    trial on in 12-and-a-half hours, you know, I doubt that

7    plaintiff's going to go to trial on all the claims they

8    currently have.  I doubt that the defendants are going to

9    try to put up all three of the invalidity defenses the way

10   it's kind of outlined in the pretrial order.

11             So I anticipate that there will be some

12   narrowing and that all that narrowing will have an effect on

13   both the final jury instructions and the verdict form.  So

14   until we actually get to trial, I have no objection if you

15   all want to keep talking about it between yourselves, but I

16   suspect push will come to shove once we actually get

17   started.

18             And I guess one other thing is my current

19   practice is that in the final jury instructions, I don't

20   repeat what I've done in the preliminary jury instructions.

21   I will anticipate that the preliminary jury instructions

22   will be in a form suitable to give to the jury in writing so

23   they'll have that at the end of the case as well as the

24   final instructions that I give at the end of the case.

25             So I think as far as I can tell, that's all I

```
 1    have on my agenda.  And I don't want to spend too much more
 2    time with you this morning, but I'm certainly willing to
 3    spend a little more time.
 4              Plaintiffs, is there anything else you want to
 5    bring up right now?
 6              MR. DeVINCENZO:  No, Your Honor, but I would
 7    just like to say because I've got a couple emails from the
 8    team after the 300, I just -- there's 32 products at issue
 9    that we bear the burden of infringement on, and we bear the
10    burden on damages.  And there's a lot of documents that were
11    summarized.  So if we have trouble with getting it to 300
12    exactly, you know, we'll let you know, or we'll work with
13    them and --
14              THE COURT:  Okay.  Well, so --
15              MR. DeVINCENZO:  I just wanted to let you know
16    like we're going to get there eventually, but you know, it
17    might take a little while.  We've got to talk to them, and I
18    don't -- we're concerned about just cutting things off
19    without really considering everything in that context.  So I
20    just wanted to let you know that if we can't get all the way
21    down or don't feel comfortable, you know, we might have to
22    come back --
23              THE COURT:  Okay.
24              MR. DeVINCENZO:  -- if possible.
25              THE COURT:  I understand that, but that does
```

```
 1    bring up one other thing which is:  So is it really the case

 2    that these are 32 or however many you just said distinct

 3    different products, or is this something where if you have

 4    one CMTS that's accused, it will sort of go along with or be

 5    representative of the rest of the accused CMTSs?  I mean,

 6    there isn't some way you could cut this down because it's --

 7              MR. DeVINCENZO:  We're definitely going to cut

 8    it down like for the presentation, but if you say, you know,

 9    this is representative, then okay, what did you review to

10    make that -- you know, to determine that whether it was

11    representative --

12              THE COURT:  Well --

13              MR. DeVINCENZO:  -- and that's kind of -- sorry,

14    I didn't mean to cut you off.

15              THE COURT:  No, no, no.  I'm sorry.

16              So one of the things that has frustrated me over

17    the years a bit is if there's actually no dispute that it's

18    representative, and maybe there is, but if there isn't, why

19    can't you stipulate to that, and then cut out a lot of

20    redundant or possibly redundant work.  Or you know, does the

21    defendant have 32 different infringement defenses, you know,

22    for each of the accused products because somehow or other --

23    well, in any event, is there anything, Mr. Padamanabhan, you

24    care to say about that?

25              MR. PADAMANABHAN:  Your Honor, your timing is
```

1   perfect as always.  So they may say they have 32 different

2   products, their expert hasn't individually analyzed 32

3   products for sure.  In fact, he's lumped them or grouped

4   them and just said, you know, yeah, they all kind of work

5   the same.  And in fact, most of it is filled in by the

6   DOCSIS specification.

7          So I think this idea that the number of products

8   they've accused justifies an outside exhibit list is

9   probably, in our view, not quite right.  And you know, like

10  I said, we're happy to work with them to try and slim the

11  list, but I just don't think that's probably a very good

12  justification for an outsized list.

13         THE COURT:  Okay.  Well, so does your expert

14  dispute the representativeness of what the plaintiff's

15  expert says?

16         MR. PADAMANABHAN:  You know, our expert disputes

17  that, so Your Honor, yes.  Our expert does dispute the

18  representativeness --

19         THE COURT:  Okay.

20         MR. PADAMANABHAN:  -- because there's

21  insufficient analysis done.  Now, I don't think any of the

22  documents that they may say they're adding to their list in

23  order to, you know, account for the 32 products helps with

24  any of that "representativeness."  They're just filler, in

25  my mind.  And their expert hasn't analyzed them

1    individually.  So you know, but yes, we take issue with it.

2              THE COURT:  But your issue is not here's how

3    they're different.  Your issue is you didn't spend enough

4    paper proving that they're the same?

5              MR. PADAMANABHAN:  Spent zero paper, yes, Your

6    Honor.  You didn't do any analysis.

7              Mr. DeVINCENZO:  Your Honor, that's not a fair

8    characterization.  But the general gist is obviousness,

9    anticipation, written description, very few documents.  We

10   bear the burden on damages.  We bear the burden on

11   infringement.

12             So I'm not saying we're going to give an

13   oversized list.  I'm not trying to -- I'm just saying,

14   without going through all the exhibits in my mind, we're

15   going to try our best to get it to 300.  I was just making

16   the Court aware that there could potentially be an issue.

17   But if there is, we'll be able to articulate exactly what it

18   is at the relevant time.

19             THE COURT:  It's not an issue yet.

20             MR. DeVINCENZO:  It's not an issue yet.

21             THE COURT:  I appreciate that.  Earlier I said

22   somebody was laying down a marker, and you're kind of laying

23   down a marker here, and I'm fine with that because, you

24   know, I approach it more from the point of view what can you

25   possibly do in 12-and-a-half hours that makes sense.  And

1    yeah, so 300 is significantly above that number, but you

2    know, I obviously do not know your case.  As you can tell by

3    the questions, I do not actually appreciate whatever the

4    scope is of some of the issues here.

5              So I've told you what I would like to see

6    happen.  I guess it's an order, but it is certainly an order

7    that I will reconsider if you tell me, you know, the day

8    before you're done that you just can't do it, and we'll

9    figure out a way to work on it.  But I certainly expect and

10   hope for a sincere effort to accomplish that end.

11             Anything else plaintiffs want to bring up?

12             MR. DeVINCENZO:  No, Your Honor.

13             THE COURT:  All right.  Thank you.

14             Mr. Padamanabhan or anyone else on your side, is

15   there anything else you want to bring up?

16             MR. PADAMANABHAN:  Your Honor, I think -- I know

17   we addressed the Wechselberger testimony.  I just wanted to

18   mention two things that I would feel remiss if I didn't

19   mention.  I promise they'll be brief.

20             One is that the exception to hearsay that they

21   identify, we haven't seen any application of that exception

22   with respect to IPR testimony, especially to impeach an

23   expert other than the one who testified in the IPR.  So

24   they're using that testimony --

25             THE COURT:  So Mr. Padamanabhan, you can't

```
1    impeach one person with the statement of a different person,

2    so that's a non-starter.  When I read the pretrial order,

3    the plaintiff said they had three arguments.  And the first

4    two I'm not so sure about, but the third one I read and

5    said, oh, come on.  So impeachment is not what's going on

6    here, so you may continue.

7              MR. PADAMANABHAN:  The last thing is there are

8    claim terms that are construed in this case, Your Honor's

9    construed that weren't in the IPR context, and so we

10   don't -- it's not like we've got sort of a unity of issues

11   between the IPR and this district court case.  And so you

12   know --

13             THE COURT:  So --

14             MR. PADAMANABHAN:  -- it's a mini-trial that

15   we're going to have.

16             THE COURT:  So Mr. Padamanabhan, you know,

17   Mr. Petrsoric earlier said could he write a paragraph about

18   this.  Is it something, do you both want to write me a few

19   paragraphs about this?

20             MR. PADAMANABHAN:  Your Honor, I think we would

21   probably think it would be okay to not submit any paper on.

22   I think Your Honor has the issues well in hand.  If Your

23   Honor feels like you'd like to be burdened by more of our,

24   you know, writing, then we'd be happy to provide it, but I

25   think we're probably fine on what we've discussed.
```

```
 1                    THE COURT:  Mr. Petrsoric.

 2                    MR. PETRSORIC:  I think we would like a little

 3      bit of paper, Your Honor, just to be able to fully explain

 4      our position.

 5                    THE COURT:  All right.  When you say "a little

 6      bit of paper," Mr. Petrsoric, and I realize some people's

 7      idea of a little bit is different than other people's idea,

 8      what are you talking about?

 9                    MR. PETRSORIC:  I would say within two pages.

10                    THE COURT:  Single or double spaced?

11                    MR. PETRSORIC:  Double spaced.

12                    THE COURT:  Okay.  When would you like to submit

13      your two pages?

14                    MR. PETRSORIC:  Well, I think Your Honor gave us

15      a system with respect to the MILs.  Maybe we should submit

16      according to that schedule.

17                    THE COURT:  Okay.  All right.  Well, all right.

18      So, yeah.  I'm fine.  You can write three or you can write

19      two pages.

20                    Mr. Padamanabhan, do you want the opportunity to

21      write two pages in response?

22                    MR. PADAMANABHAN:  Your Honor, if they're going

23      to write something, we obviously will want to respond, so

24      we'd be happy to do that.  And as Mr. Petrsoric has

25      indicated, we can do that on the schedule that Your Honor
```

```
 1    laid out for the MILs.
 2              THE COURT:  Okay.  All right.
 3              Well, why don't you write that, and you can
 4    submit all that, package it as one so all these things will
 5    come in at the same time.
 6              Anything else, Mr. Padamanabhan?
 7              MR. PADAMANABHAN:  I think that's it, Your
 8    Honor.  I think that that's everything.
 9              THE COURT:  Okay.
10              MR. PADAMANABHAN:  Actually, Your Honor, sorry.
11    Usually in the past when we've taken up final jury
12    instructions, you know, and at a charging conference later
13    in time, I know we submitted them now, I just want -- there
14    were some substantial disputes over them, and so I just want
15    to make sure we're going to -- that we'll discuss that later
16    on down the road.  And that's --
17              THE COURT:  Yes, we will discuss that later on
18    down the road, but I do appreciate your telling me there's
19    some substantial disputes.  It makes me curious as to what
20    they could actually be.
21              Okay.  Well --
22              MR. ENZMINGER:  Your Honor, this is David
23    Enzminger.  I have one quick question for the Court, if I
24    may.
25              THE COURT:  Sure.
```

1          MR. ENZMINGER:  Returning to the topic at the

2    beginning of the hour with respect to the pandemic, nearly

3    all of our witnesses have to travel, and most all of our

4    witnesses and lawyers are from high-impact areas.  And so

5    for safety, if there is to be a trial of that kind, we have

6    some logistical things to work out with respect to making

7    sure people can be quarantined, if that's even possible.

8          And so I'm wondering if the Court has some

9    guidance on when the Court might consider whether a jury

10   trial in mid-August is feasible?

11         THE COURT:  Well, I think it's something that's

12   going to be an ongoing consideration or under consideration,

13   and you know, I am kind of hoping that my colleagues who

14   have earlier trials will blaze a path that I just have to

15   follow.  But I guess it's kind of on me right now because

16   I'm the one who has the virtual trial.  I probably have some

17   earlier knowledge of what my colleagues are actually doing.

18         I would say this:  I will some time the week of

19   July the 13th when I will have the time to digest whatever

20   happens next week, and you know, will be that much closer

21   and maybe have some insight as to, you know, which way

22   things are going and see how things are going in the

23   high-impact states you're talking about, and I will issue

24   some order or possibly I will schedule a teleconference to

25   just hear what you all are thinking then.  In fact, I have

1   the impression that's kind of what my colleagues have been

2   doing is just having status conferences periodically on the

3   cases that are coming up because it is a very fluid

4   situation.

5            So what I'd say is if you haven't heard

6   something from me by Tuesday, July 15th, why don't you all

7   call my chambers, and we'll have a teleconference, and you

8   all can tell me what's happening.  And maybe --

9            MR. ENZMINGER:  Thank you, Your Honor.

10           THE COURT:  And that will force me to think some

11  more about what I think is happening.  Okay?

12           MR. ENZMINGER:  Okay.  Thank you, Your Honor.

13           THE COURT:  All right.  If there's nothing else,

14  thank you for your time this morning.  I will enter some

15  order adopting the pretrial order as modified by what I've

16  said here.  I will plan to work on the motions in limine and

17  Mr. Wechselberger when I have all that in hand, and we'll be

18  having some further communications.

19           Okay?

20           MR. ENZMINGER:  Okay.

21           THE COURT:  Have a good day and take care of

22  yourselves.

23           MS. YING:  Thank you, Your Honor.

24           MR. PADAMANABHAN:  Thank you, Your Honor.

25           MR. PETRSORIC:  Thank you, Your Honor.

1                    (Court was recessed at 11:18 a.m.)

2                    I hereby certify the foregoing is a true and

3    accurate transcript from my stenographic notes in the

4    proceeding.

5                         /s/ Heather M. Triozzi
                         Certified Merit and Real-Time Reporter
6                         U.S. District Court

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25