EXHIBIT A

REDACTED

EXHIBIT B

REDACTED

EXHIBIT C

REDACTED

EXHIBIT D

REDACTED

EXHIBIT E

REDACTED

# EXHIBIT F

# REDACTED

EXHIBIT G

REDACTED

# EXHIBIT H

REDACTED

EXHIBIT I

# REDACTED

EXHIBIT J

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| IN RE CHANBOND, LLC<br>PATENT LITIGATION | ) | C.A. No. 15-842 (RGA) |
|  | ) |  |
|  | ) | CONSOLIDATED |
|  | ) |  |
|  | ) |  |

**NOTICE OF THIRD-PARTY SUBPOENAS**

PLEASE TAKE NOTICE that, pursuant to Rule 45 of the Federal Rules of Civil

Procedure, defendants will serve the subpoenas attached hereto as Tabs 1 and 2 on IP Nav, and

the subpoenas attached hereto as Tabs 3 and 4 on Deirdre Leane.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jennifer Ying*

_____
Jack B. Blumenfeld (#1014)
Jennifer Ying (#5550)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
jying@mnat.com

*Attorneys for Defendants*

OF COUNSEL:

Michael L. Brody
Jonathan E. Retsky
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, IL  60601

Krishnan Padmanabhan
Anup K. Misra
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY  10166-4193

Alexandra McTague
James C. Lin
WINSTON & STRAWN LLP
275 Middlefield Road, Suite 205
Menlo Park, CA  94025

August 16, 2017

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 16, 2017, true and correct copies of the foregoing

were caused to be served upon the following individuals in the manner indicated:

Richard D. Kirk, Esquire                                            *VIA ELECTRONIC MAIL*
Stephen B. Brauerman, Esquire
Sara E. Bussiere, Esquire
BAYARD, P.A.
222 Delaware Avenue, Suite 900
Wilmington, DE  19801
*Attorneys for Plaintiff*

Mark Raskin, Esquire                                               *VIA ELECTRONIC MAIL*
Robert Whitman, Esquire
John F. Petrsoric, Esquire
Michael S. DeVincenzo, Esquire
MISHCON DE REYA NEW YORK LLP
156 Fifth Avenue, Suite 904
New York, NY  10010
*Attorneys for Plaintiff*

*/s/ Jennifer Ying*

_____

Jennifer Ying (#5550)

TAB 3

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
District of Delaware

| | |
|---|---|
| Chanbond, LLC | ) |
| *Plaintiff* | ) |
| | ) Civil Action No. |
| Atlantic Broadband Group, LLC, BrightHouse Networks, LLC, Cable One Inc., Cablevision Systems Corp., CSC Holdings, LLC, Cequel Communications, LLC, Cequel Communications Holdings I, LLC d/b/a Suddenlink Communications, Charter Communications, Inc., Comcast Corp., Comcast Cable Communications, LLC, Cox Communications, Inc., Mediacom Communications Corp., RCN Telecom Services, LLC, Time Warner Cable Inc., Time Warner Cable Enterprises LLC, WaveDivision Holdings, LLC, and WideOpen West Finance, LLC | ) ) ) ) ) |
| *Defendant* | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:     Deirdre Leane
c/o Robert Whitman, Mishcon De Reya New York LLP, 2 Park Avenue, 20th Floor, New York, NY 10016

*(Name of person to whom this subpoena is directed)*

✔ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

        See Attachment A

| Place: Winston & Strawn | Date and Time: |
|---|---|
| 2501 N. Harwood St., Fl. 17 Dallas, TX 75201 | 09/06/2017 9:30 am |

❑ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

        The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:     08/16/2017

            *CLERK OF COURT*
                                        OR
                                                    /s/ Anup K. Misra
_____            _____
*Signature of Clerk or Deputy Clerk*                    *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
all defendants _____ , who issues or requests this subpoena, are:

Anup K. Misra, Winston & Strawn LLP, 200 Park Avenue, New York, NY 10166; (212) 294-6697, amisra@winston.com

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.

Date: _____          _____

*Server's signature*

_____

*Printed name and title*

_____

*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1) For a Trial, Hearing, or Deposition.** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2) For Other Discovery.** A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1) Avoiding Undue Burden or Expense; Sanctions.** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2) Command to Produce Materials or Permit Inspection.**
  **(A)** Appearance Not Required. A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** Objections. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3) Quashing or Modifying a Subpoena.**
  **(A)** When Required. On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** When Permitted. To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** Specifying Conditions as an Alternative. In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1) Producing Documents or Electronically Stored Information.** These procedures apply to producing documents or electronically stored information:
  **(A)** Documents. A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** Form for Producing Electronically Stored Information Not Specified. If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** Electronically Stored Information Produced in Only One Form. The person responding need not produce the same electronically stored information in more than one form.
  **(D)** Inaccessible Electronically Stored Information. The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) Claiming Privilege or Protection.**
  **(A)** Information Withheld. A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** Information Produced. If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**ATTACHMENT A**

*Chanbond, LLC v. Atlantic Broadband Group, LLC et al.*
**Civil Action Nos. 1:15-cv-00842 - 854 (D. Del.)**

**DEFINITIONS**

The following definitions are applicable to terms employed in responding to this Subpoena *Duces Tecum* ("Subpoena") for the production of documents:

1.      The terms "You" or "Your" mean Deirdre Leane.

2.      The term "IPNav" means IP Navigation Group, LLC, and any and all predecessors, successors, divisions, subsidiaries, or joint ventures thereof, together with any and all parent or affiliated companies or corporations, including, but not limited to, IPCM Advisors or ipCM, LLC, and all past or present members, shareholders, officers, directors, employees, agents, attorneys, representatives, any past or current investors or persons with an interest in IP Navigation Group, LLC, and all other persons acting or purporting to act or that have acted or purported to have acted on behalf of any of the foregoing.

3.      The term "Chanbond" means Chanbond, LLC, and any and all predecessors, successors, divisions, subsidiaries, or joint ventures thereof, together with any and all parent or affiliated companies or corporations, including at least CBV and Z-Band, and all past or present members, shareholders, officers, directors, employees, agents, attorneys, representatives, any past or current investors or persons with an interest in Chanbond, LLC or the Asserted Patents, Related Patents, or Related Applications, including at least UnifiedOnline, and all other persons acting or purporting to act or that have acted or purported to have acted on behalf of any of the foregoing.

4.      The term "CBV" means CBV, Inc., and any and all predecessors, successors, divisions, subsidiaries, or joint ventures thereof, together with any and all parent or affiliated

1

companies or corporations, and all past or present members, shareholders, officers, directors, employees, agents, attorneys, representatives, any past or current investors or persons with an interest in CBV, Inc., and all other persons acting or purporting to act or that have acted or purported to have acted on behalf of any of the foregoing.

5.      The term "Z-Band" means Z-Band, Inc., and any and all predecessors, successors, divisions, subsidiaries, or joint ventures thereof, together with any and all parent or affiliated companies or corporations, and all past or present members, shareholders, officers, directors, employees, agents, attorneys, representatives, any past or current investors or persons with an interest in Z-Band, Inc., and all other persons acting or purporting to act or that have acted or purported to have acted on behalf of any of the foregoing.

6.      The term "Chanbond Inventors" means the named inventors listed on the face of the Chanbond patents.  This includes Earl Hennenhoefer, Richard Snyder, and Robert Stine.

7.      The term "UnifiedOnline" means UnifiedOnline, Inc., and any and all predecessors, successors, divisions, subsidiaries, or joint ventures thereof, together with any and all parent or affiliated companies or corporations, and all past or present members, shareholders, officers, directors, employees, agents, attorneys, representatives, any past or current investors or persons with an interest in UnifiedOnline, Inc., and all other persons acting or purporting to act or that have acted or purported to have acted on behalf of any of the foregoing.

8.      The term "Chanbond Patents" means U.S. Patent Nos. 7,346,918, 7,941,822, 8,341,679, 8,984,565, and 9,015,774, including any application that led to its issuance and any reexaminations thereof.

9.      The term "Defendants" means Atlantic Broadband Group, LLC ("ABB"), Bright House Networks, LLC ("Bright House"), Cable One Inc. ("Cable One"), Cablevision Systems

Corporation and CSC Holdings, LLC ("Cablevision"), Cequel Communications Holdings I, LLC and Cequel Communications, LLC, d/b/a Suddenlink ("Suddenlink"), Charter Communications, Inc. ("Charter"), Comcast Corporation and Comcast Cable Communications, LLC ("Comcast"), Cox Communications, Inc. ("Cox"), Mediacom Communications Corporation ("Mediacom"), RCN Telecom Services, LLC ("RCN"), Time Warner Cable Inc. and Time Warner Cable Enterprises LLC ("TWC"), Wavedivision Holdings, Inc. ("Wave"), and Wideopen West Finance, LLC ("WOW").

10.     The term "Instant Litigations" means the litigations initiated by Chanbond currently pending in the District of Delaware against each of the Defendants.  To resolve any doubt, these include case numbers 1:15-cv-00842-RGA through 1:15-cv-00854-RGA.

11.     The term "DOCSIS 3.0 Standard" shall mean the Data Over Cable Service Interface Specification, version 3.0, published by CableLabs.

12.     The terms "concerning," "relate," "relating," or "related" mean in any way, directly or indirectly, in whole or part, relating to, concerning, alluding to, referring to, discussing, mentioning, regarding, pertaining to, describing, reflecting, containing, analyzing, studying, reporting on, commenting on, evidencing, constituting, setting forth, considering, recommending, modifying, amending, confirming, endorsing, representing, supporting, qualifying, terminating, revoking, refuting, undermining, canceling, contradicting, or negating.

13.     The term "document" shall have the broadest meaning possible under the Federal Rules of Civil Procedure and shall include, but not be limited to, the original (or a copy when the original is not available) and each non-identical copy (including those which are non-identical by reason of translations, notations, or markings) or any and all other written, printed, typed, punched, taped, filmed, or graphic matter or recorded or tangible thing, or whatever description,

3

however produced or reproduced (including computer-stored or generated data, together with instructions or programs necessary to search and retrieve such data and hard copies where available and retrievable), and shall include all attachments to and enclosures with any requested item to which they are attached or with which they are enclosed, and each draft thereof.  The term "document" shall specifically include all recorded or retrievable electronic data or communications such as electronic mail (e-mail) and the like and all translations thereof.

14.     The term "communication" shall mean any oral, written, electronic, or other exchange of words, thoughts, information, or ideas to another person or entity, whether in person, in a group, by telephone, by letter, by Telex, or by other process, electric, electronic, or otherwise.  All such communications in writing shall include, without limitation, printed, typed, handwritten, or other readable documents, correspondence, memoranda, reports, contracts, drafts (both initial and subsequent), computer discs or transmissions, e-mails, instant messages, tape or video recordings, voicemails, diaries, log books, minutes, notes, studies, surveys and forecasts, and any and all copies thereof.

15.     The words "or," "and," "all," "every," "any," "each," "one or more," "including," and similar words of guidance, are intended merely as such, and should not be construed as words of limitation.  The words "or" and "and" shall include each other whenever possible to expand, not restrict, the scope of the request.  The word "including" shall not be used to limit any general category or description that precedes it.  The words "all," "every," "any," "each," and "one or more" shall include each other whenever possible to expand, not restrict, the scope of the request.

16.     Reference to the singular in any of these requests shall also include a reference to the plural, and reference to the plural also shall include a reference to the singular.

## **INSTRUCTIONS**

1.      Unless otherwise stated in a request, the time period covered by the command of this Subpoena is October 25, 1994 to Present.

2.      All requests for "documents" include a request for any "communications," such as letters or e-mails.

3.      It is your duty in answering these requests to conduct a reasonable investigation so that you disclose and produce all available responsive and non-privileged documents.

4.      If any request herein requires the production of documents that are no longer in your actual or constructive possession, custody, or control or which have been destroyed or lost, then in lieu of production, you shall state or identify the title of the document, the author of the document, each person to whom or by whom a copy of the original of the document was delivered, forwarded, or has been received, the date of the document, and the general subject matter of the document. In the event you claim that information contained other than in documentary form is no longer in your actual or constructive possession, custody, or control or has been destroyed or lost, you shall state or identify the nature of the information, the creator of the information, the person to whom the information was or was to be forwarded, delivered or for whom it was prepared, the date of the creation of the information, and the manner in which the information has been memorialized, if at all.

5.      In any instance where documents, data, or information requested herein is stored on a computer, a computer hard drive, a computer mainframe, computer back-up tape, or in any other electronic format, Defendants request that you produce the data, information, or documents on CD ROM, computer disk, or in hard copy paper form.  Further, Defendants request that you

produce all documentation or programs that would allow Defendants to run, read, view, print, or otherwise access any such disks, CD ROM, or other computer information.

6.      You are under a continuing obligation to respond to the requests set forth herein. Accordingly, if you subsequently gain actual or constructive possession, custody, or control of any document called for in the requests set forth herein that has not been produced to Defendants, you must produce such document to Defendants as soon as possible or provide a written explanation to Defendants as to why you will not produce the document.

7.      The documents shall be produced as they are kept in the usual course of business or shall be organized and labeled to correspond with the categories in the requests.

8.      To the extent a document is considered confidential in nature, you may designate it in accordance with the protective order entered in this case, a copy of which is attached as Exhibit 2.

## DOCUMENT REQUESTS

1.      Documents related to any of IPNav's analyses or evaluations of the ChanBond Patents, including not limited to, Documents created by or for any of Billy Carter (President of ipCM, LLC) or You.

2.      Documents related to IPNav's valuation of the ChanBond patents.

3.      Documents related to IPNav's acquisition or potential acquisition of any legal right to the ChanBond Patents, including, but not limited to, the acquisition or licensing of the ChanBond Patents.

4.      Documents related to any investigations of the ChanBond Patents related to channel bonding, the DOCSIS 3.0 Standard, or any of Defendants' products or services utilizing the DOCSIS 3.0 Standard.

5.      Documents sufficient to show any relationship between IPNav and UnifiedOnline.

6.      Documents sufficient to show any financial relationship between IPNav and ChanBond, CBV, or Z-Band, including, but not limited to, any financial relationship regarding the Instant Litigations.

7.      Communications to, from, or between IPNav personnel, including but not limited to You, Brandi Anderson, Erich Spangenberg, Umesh Jani, Denise Valenzualea, or Billy Carter, regarding ChanBond, CBV, Z-Band, the ChanBond Patents, or the ChanBond Inventors.

8.      Documents related to the agreement between ChanBond and Unified Online, attached as Exhibit 1 to this Subpoena.

9.      Documents sufficient to explain the decision to make You the holder of the promissory note referenced in Schedule 2.2.8 of Exhibit 1 to this Subpoena.

# EXHIBIT 1

Exhibit 10.2

## Agreement - ChanBond

This Agreement (this "**Agreement**"), is made as of October 27, 2015 (the "**Effective Date**"), by and among **Deirdre Leane**, an individual with an address of 2525 Carlisle St., Suite 439, Dallas, Texas 75201 ("**Seller**"), **ChanBond, LLC,** a Delaware limited liability company, of 2633 McKinney Ave., Suite 130-501, Dallas, Texas 75204 ("**ChanBond**") and **UnifiedOnline, Inc.**, a Delaware corporation, of 4126 Leonard Drive, Fairfax, Virginia 22030 ("**Purchaser**"). The parties to this Agreement shall be referred to collectively herein as the "**Parties**" and separately as a "**Party**".

W i t n e s s e t h:

WHEREAS, Seller owns 100% of the limited liability company membership interests (the "**Interests**") of **ChanBond**;

WHEREAS, Purchaser wishes to acquire Seller's entire interest in ChanBond, following which Purchaser will become the sole interest holder of ChanBond, all according to the provisions set forth herein below;

NOW, THEREFORE, in consideration of the mutual promises and covenants set forth herein, the Parties hereto hereby agree as follows:

1.    **Definitions**

1.1    "**Affiliate**" means, with respect to a Party, any Person in any country that directly or indirectly Controls, is Controlled by or is under common Control with such Party.  For the purposes of this Agreement, the term "Control" of a Person means ownership, of record or beneficially, directly or through other Persons, of fifty percent (50%) or more of the voting equity of such Person or, in the case of a non-corporate Person, equivalent interests.

1.2    "**Collateral Agreements**" means all such concurrent or subsequent agreements, documents and instruments, as amended, supplemented, or otherwise modified in accordance with the terms hereof or thereof, including without limitation, the License Agreement, the Pay Proceeds Agreement, the Common Interest Agreement and the Promissory Note.

1.3    "**Contract Rights and Obligations**" means the rights and obligation assigned to ChanBond under the contracts ("**Contracts**") listed on **Schedule 1.3.**

1.4    "**Entity**" means any corporation, partnership, limited liability company, association, joint stock company, trust, joint venture, unincorporated organization, Governmental Body (as defined below) or any other legal entity.

1.5    "**Governmental Body**" means any (i) U.S. federal, state, county, municipal, city, town village, district, or other jurisdiction or government of any nature; (ii) governmental or quasi-governmental authority of any nature (including any governmental agency, branch, department, official, or other entity and any court or other tribunal); or (iii) body exercising, or entitled or purporting to exercise, any administrative, executive, judicial, legislative, police, regulatory, or taxing authority or power of any nature.

1.6     "**Intellectual Property**" means all domestic or foreign rights in, to and concerning ChanBond's: (i) patents, patent applications, trademarks, service marks, brand names, certification marks, collective marks, d/b/a's, trade dress, logos, symbols, trade names, assumed names, fictitious names, corporate names and other indications or indicia of origin, including translations, adaptations, derivations, modifications, combinations and renewals thereof; (ii) published and unpublished works of authorship, whether copyrightable or not (including databases and other compilations of data or information), copyrights therein and thereto, moral rights, and rights equivalent thereto, including but not limited to, the rights of attribution, assignation and integrity; (iii) trade secrets, confidential and/or proprietary information (including ideas, research and development, know-how, formulas, compositions, manufacturing and production processes and techniques, technical data, schematics, designs, discoveries, drawings, prototypes, specifications, hardware configurations, customer and supplier lists, financial information, pricing and cost information, financial projections, and business and marketing methods plans and proposals), collectively "**Trade Secrets**"; (iv) computer software, including programs, applications, source and object code, data bases, data, models, algorithms, flowcharts, tables and documentation related to the foregoing; (v) other similar tangible or intangible intellectual property or proprietary rights, information and technology and copies and tangible embodiments thereof (in whatever form or medium); (vi) all applications to register, registrations, restorations, reversions and renewals or extensions of the foregoing; (vii) internet domain names; and (viii) all the goodwill associated with each of the foregoing and symbolized thereby; and (ix) all other intellectual property or proprietary rights and claims or causes of action arising out of or related to any infringement, misappropriation or other violation of any of the foregoing, including rights to recover for past, present and future violations thereof.

1.7     "**Lien**" means any mortgage, pledge, security interest, encumbrance, lien, charge or debt of any kind, any trust, any filing or agreement to grant, deposit or file a pledge or financing statement as debtor under applicable law, any subordination arrangement in favor of any Person, or any other Third Party right.

1.8     "**Person**" means any individual or Entity.

1.9     "**Proceeding**" means any claim, suit, litigation, arbitration, mediation, hearing, audit, charge, inquiry, investigation, governmental investigation, regulatory proceeding or other proceeding or action of any nature (whether civil, criminal, legislative, administrative, regulatory, prosecutorial, investigative, or informal) commenced, brought, conducted, or known to be threatened, or heard by or before, or otherwise involving, any Governmental Body, arbitrator or mediator or similar person or body.

1.10    "**Third Party**" means any Person other than a Party or its Affiliates.

## 2.     Sale and Purchase of Interests

Subject to the terms and conditions hereof, at the Closing, Seller shall sell, assign, transfer, convey and deliver to Purchaser ChanBond and Purchaser shall purchase and accept the assignment, transfer conveyance and delivery of ChanBond from the Seller.

Closing of Sale and Purchase of Interests; Covenants of Purchaser

2

2.1     Closing. The sale, assignment, transfer and delivery of ChanBond by the Seller and the purchase thereof by the Purchaser, shall take place at a closing, to be held remotely via the exchange of documents and signatures within one business day following the execution of this Agreement (the "**Closing**" and the "**Closing Date**," respectively).

2.2     Transactions at Closing. At the Closing, the following transactions shall occur, which transactions shall be deemed to take place simultaneously and no transaction shall be deemed to have been completed or any document delivered until all such transactions have been completed and all required documents delivered:

2.2.1     The Seller shall duly execute an interest assignment deed in the form attached hereto as **Schedule 2.2.1** (the "**Transfer Deed**") and shall deliver their respective Transfer Deed to Purchaser;

2.2.2     At Closing, ChanBond shall appoint William R. Carter, Jr. as sole manager ("**Manager**") and thereafter Manager shall have sole and exclusive authority over the business of ChanBond.

2.2.3     Purchaser shall deliver to the Seller copies of resolutions of its Board of Directors in the form attached hereto as **Schedule 2.2.3**, approving, *inter alia*, the transactions contemplated hereunder and the issuance of the Shares (as defined below) by Purchaser to Seller.

2.2.4     The Collateral Agreements shall have been executed and delivered by the respective parties thereto.

2.2.5     Purchaser shall deliver to the Seller a validly executed share certificate for the Shares (as defined below) issuable in the name of the Seller in such amounts as shall be directed by Seller not less than 72 hours after the Closing.

2.2.6     Purchaser shall deliver to Seller evidence that each Required Approval (as defined below) has been obtained.

2.2.7     Seller, ChanBond and Purchaser shall have entered into the Common Interest Agreement, in the form attached hereto as **Schedule 2.2.7**.

2.2.8     Purchaser shall deliver to Seller the Promissory Note (as defined below), in the form attached hereto as **Schedule 2.2.8**.

2.3     Conditions to Closing. The obligations of each Party to consummate the transactions contemplated hereby shall be subject to the satisfaction at or prior to the Closing of the following conditions, any of which may be waived in writing by the Party entitled to the benefit thereof, in whole or in part, to the extent permitted by the applicable law:

2.3.1     No temporary restraining order, preliminary or permanent injunction or other order (whether temporary, preliminary or permanent) issued by any court of competent jurisdiction, or other legal restraint or prohibition shall be in effect which prevents the consummation of the transactions contemplated herein, nor shall any proceeding brought by any Governmental Body seeking any of the foregoing be pending, and there shall not be any action

3

taken, or any law, regulation or order enacted, entered, enforced or deemed applicable to the transactions contemplated herein illegal.

2.3.2   The representations and warranties of the Seller and Purchaser contained herein shall be true and correct in all material respects on and as of the Closing Date, with the same force and effect as if made on and as of the Closing Date, except for those (i) representations and warranties that are qualified by materiality, which representations and warranties shall be true and correct in all respects and (ii) representations and warranties which address matters only as of a particular date, which representations and warranties shall be true and correct on and as of such particular date.

2.3.3   Each Party shall have performed or complied in all material respects with all agreements and covenants required by this Agreement and the Collateral Agreements ancillary hereto (collectively, the "**Transaction Documents**") to be performed or complied with by it on or prior to the Closing Date.

2.3.4   Each Party shall have received evidence, in form and substance reasonably satisfactory to it, that any and all approvals of Governmental Bodies and other Third Parties required to have been obtained by a Party to consummate the transactions under the Transaction Documents, if any, have been obtained (each a "**Required Approval**").

2.4   Covenant of Purchaser.   Promptly following the Closing, Purchaser shall (a) reimburse Seller for all of their costs and expenses (including reasonable attorneys' fees) incurred by Seller in connection with the consummation of the transactions contemplated by this Agreement and (b) file with the relevant Governmental Bodies all legally required reports in respect of the transactions contemplated under the Transaction Documents, including, but not limited to, the SEC Form 8-K and any Forms 3, Forms 4 or Schedule 13D's.

## 3.   Consideration

In consideration for the sale, assignment, transfer and delivery of ChanBond, Purchaser shall pay to the Seller (as directed by Seller) the consideration, as follows:

3.1   Cash Payment.   Five million U.S. Dollars ($5,000,000) payable on or before October 27, 2020 (the "**Cash Payment**"). The obligation to make the Cash Payment shall be evidenced by Purchaser's promissory note (the "**Promissory Note**") in the form of Schedule 2.2.8 attached hereto; and

3.2   Shares Payment.   Forty-four million, seven hundred thousand (44,700,000) shares of Purchaser's Common Stock (the "**Shares**") par value of $0.001 each.

3.3   Release.   Purchaser for itself, its respective Affiliates, employees, officers, directors, representatives, predecessors in interest, successors and assigns (collectively, the "**Releasing Parties**") knowingly, voluntarily, and irrevocably releases, forever discharges and covenants not to sue the Seller, and their respective Affiliates, employees, officers, directors, representatives, predecessors in interest, successors and assigns (collectively, the "**Released Parties**") from and against any and all rights, claims, losses, lawsuits or causes of action (at law or in equity), liabilities, duties, actions, demands, expenses, breaches of duty, damages,

4

obligations, proceedings, debts, sums of money, accounts, reckonings, bonds, bills, covenants, contracts, agreements, promises, judgments, and executions of whatever nature, type, kind, description or character (each a "**Claim**"), whether known or unknown, suspected or unsuspected, vested or contingent, past or present, that a Releasing Party ever had, now has or hereafter can, shall or may have against or with respect to the Released Parties or any of them for, upon or by reason of any matter, cause or thing related to or arising from any agreement to which ChanBond is a party or by which it is bound prior to the Closing Date, which are listed on **Schedule 3.3** (the "**Company Agreements**"), except in the case that such Claim arises out of an act of fraud, intentional misconduct or gross negligence on the part of one or more of the Released Parties, as finally determined by a court of competent jurisdiction. For the avoidance of doubt, the Company shall continue to be bound by the Company Agreements and neither the Seller nor any of the Released Parties has or shall have any further obligation or liability under the Company Agreement (other than confidentiality, common interest and other similar provisions). The Releasing Parties hereby waive the benefits of any provisions of the law of any state or territory of the United States, or principle of common law, which provides that a general release does not extend to claims which the Releasing Parties do not know or suspect to exist in its favor at the time of executing the release, which if known to it, may have materially affected the release. It is the intention, understanding and agreement of the Releasing Parties to forever discharge and release all known and unknown, present and future claims within the scope of the releases set forth in this Agreement, provided, however, this Release shall not affect or limit any Claims arising under this Agreement, for enforcement, gross negligence or willful misconduct, fraud, misrepresentation, or similar matters.

## 4.    Representations and Warranties of the Seller

The Seller hereby represents and warrants to Purchaser, and acknowledges that Purchaser is entering into this Agreement in reliance thereon, as follows:

4.1    The Seller is the sole lawful owners, beneficially and of record, of ChanBond and ChanBond constitute all of the membership interests in ChanBond, and upon the consummation of the transactions at the Closing, Purchaser will acquire from the Seller, good and marketable title to ChanBond sold by it. There are no preemptive, anti-dilution or other participatory rights of any other parties with respect to the transactions contemplated hereunder.

4.2    The Seller has full and unrestricted legal right, power and authority to enter into and perform their obligations under the Transaction Documents and to sell and transfer ChanBond to Purchaser as provided herein. The Transaction Documents, when executed and delivered by the Seller, shall constitute the valid and legally binding obligation of the Seller, legally enforceable against the Seller in accordance with their respective terms, except as may be limited by bankruptcy, insolvency or other similar laws affecting the enforcement of creditors' rights in general and subject to general principles of equity (regardless of whether such enforceability is considered in a proceeding in equity or at law).

4.3    The Seller is acquiring the Shares for investment purposes only, for their own account, and not for the benefit of others, nor with any view to, or in connection with any distribution or public offering thereof within the meaning of the U.S. Securities Act of 1933 (the "**Securities Act**").

5

4.4    The Seller understands that the Shares have been registered under the Securities Act. The Seller also acknowledges that the Shares will be restricted for sale for six (6) months after the issuance. The Seller acknowledges that any certificates evidencing the Shares will contain a legend to the foregoing effect.

4.5    Seller has sufficient knowledge and expertise in business and financial matters so as to enable it to analyze and evaluate the merits and risks of acquiring the Shares pursuant to the terms of this Agreement and is able to bear the economic risk of such acquisition, including a complete loss of its investment in the Shares.

4.6    Seller acknowledges that it has made detailed inquiries concerning Purchaser and its business, and that the officers of Purchaser have made available to the Seller any and all written information which it has requested and have answered to the Seller's satisfaction all inquiries made by the Seller.

4.7    The transactions provided for in this Agreement with respect to the Shares are not part of any pre-existing plan or arrangement for, and there is no agreement or other understanding with respect to, the distribution by the Seller of any of the Shares.

## 5.    Representations and Warranties of ChanBond

5.1    ChanBond hereby represents and warrants to Purchaser, and acknowledges that Purchaser is entering into this Agreement in reliance thereon, as follows:

(a)    ChanBond is duly formed, validly existing and in good standing under the laws of the State of Delaware, and has full limited liability company power and authority to own, lease and operate its properties and assets and to conduct its business as now being conducted and as currently proposed to be conducted.

(b)    As of the Closing Date, ChanBond is a party to the pending litigation identified in **Schedule 5.1(b)**.

(c)    As of the Closing Date the Contracts are in full force and effect and none of the respective parties to the Contracts are in breach of any material obligation under the Contracts.

(d)    To ChanBond's knowledge, ChanBond is not a party nor bound by any contracts, agreements, promises or commitments except the assignments related to the Contracts.

(e)    Other than the assignments related to the Contracts, ChanBond has no material assets. None of ChanBond's employees will continue with ChanBond after the Closing.    ChanBond's bank accounts and the contents thereof will be transferred to Purchaser. Any amounts paid or payable to ChanBond (or any of its Affiliates) under licenses or other agreements or judgments entered into by or awarded to any Affiliates of ChanBond prior to the Closing Date, shall be retained as the exclusive property of such

6

Affiliates and after the Closing Date, ChanBond or any of its Affiliates will disclaim any interest therein.

## 6. **Representations and Warranties of Purchaser**

Purchaser, represents and warrants to the Seller and acknowledges that the Seller are entering into this Agreement in reliance thereon as follows:

6.1     Purchaser is duly organized, validly existing and in good standing under the laws of Delaware and has full corporate power and authority to own, lease and operate its properties and assets and to conduct its business as now being conducted and as currently proposed to be conducted. The corporate governance documents of Purchaser (including but not limited to its Certificate of Incorporation, Bylaws and any Voting Rights Agreements, Stockholders' Agreements, Investors' Rights Agreements and the like) as in effect on the date hereof have been provided or made available to the Seller (the "**Purchaser Governance Documents**").

6.2     The Transaction Documents, when executed and delivered by Purchaser, shall constitute the valid and legally binding obligation of Purchaser, respectively, legally enforceable against Purchaser in accordance with their respective terms, except as may be limited by bankruptcy, insolvency or other similar laws affecting the enforcement of creditors' rights in general and subject to general principles of equity (regardless of whether such enforceability is considered in a proceeding in equity or at law).

6.3     The authorized capital stock of Purchaser consists of 6,000,000,000 shares of Common Stock and 10,000,000 shares of Convertible Preferred Stock, each having a par value of USD $0.001, of which 912,897,537 shares are issued and outstanding (exclusive of shares issued hereunder). Purchaser's fully-diluted capital structure before and after Closing is set forth in the capitalization table attached hereto as **Schedule 6.3**. All capital stock, preemptive rights, rights of first refusal, rights of co-sale, convertible, exercisable or exchangeable securities, outstanding warrants, options or other rights to subscribe for, purchase or acquire from Purchaser or any of its subsidiaries or Affiliates any capital stock of the Purchaser and/or any of its subsidiaries are set forth in detail on **Schedule 6.3**. Except for the transactions contemplated by this Agreement and the current Purchaser Governance Documents, there are no Liens, options to purchase, proxies, preemptive rights, convertible, exercisable or exchangeable securities, outstanding warrants, options, voting trust and other voting agreements, calls, promises or commitments of any kind and, Purchaser has no knowledge that any of the said stockholders owns any other stock, options or any other rights to subscribe for, purchase or acquire any capital stock of Purchaser from Purchaser or from each other.

6.4     All issued and outstanding capital stock of Purchaser has been duly authorized, and is validly issued and outstanding and fully-paid and non-assessable. The Shares, when issued and allotted in accordance with this Agreement: (a) will be duly authorized, validly issued, fully paid, non-assessable, and free of any preemptive rights, (b) will have the rights, preferences, privileges, and restrictions set forth in Purchaser's Certificate of Incorporation, Certificate of Designation and By-laws, and (c) will be issued free and clear of any Liens of any kind.

7

6.5     Purchaser is currently in material compliance with all applicable laws, including securities laws. Purchaser has timely filed all forms and reports required to be filed with the Securities Exchange Commission (the "**SEC**") including, without limitation, all exhibits required to be filed therewith, and has made available to the Seller true, complete and correct copies of all of the same so filed (including any forms, reports and documents incorporated by reference therein or filed after the date hereof, the "**Purchaser SEC Reports**"). For purposes hereof, such Purchaser SEC Reports shall be deemed delivered to Seller via the SEC's EDGAR database. The Purchaser SEC Reports: (i) at the time filed complied (or will comply when filed, as the case may be) in all material respects with the applicable requirements of the Securities Act and/or the Securities Exchange Act of 1934, as amended (the "**Exchange Act**") and the rules and regulations promulgated thereunder, and with the Sarbanes-Oxley Act of 2002, and the rules and regulations promulgated thereunder, in each case applicable to such Purchaser SEC Reports at the time they were filed; and (ii) did not at the time they were filed (or, if later filed, amended or superseded, then on the date of such later filing) contain any untrue statement of a material fact or omit to state a material fact required to be stated therein or necessary in order to make the statements contained therein, in the light of the circumstances under which they were made, not misleading.

6.6     Purchaser has timely filed (or has been deemed to have timely filed pursuant to Rule 12b-25 under the Exchange Act) and made publicly available on the SEC's EDGAR system, and the Seller may rely upon, all certifications and statements required by (i) Rule 13a-14 or Rule 15d-14 under the Exchange Act and (ii) Section 906 of the Sarbanes Oxley Act of 2002 with respect to any documents filed with the SEC. Since the most recent filing of such certifications and statements, there have been no significant changes in Purchaser's internal control over financial reporting (as such term is defined in Rule 13a-15(f) under the Exchange Act), or in other factors that could significantly affect its disclosure controls and procedures.

6.7     The financial statements (including footnotes thereto) included in or incorporated by reference into the Purchaser SEC Reports (the "**Purchaser Financial Statements**") were complete and correct in all material respects as of their respective filing dates, complied as to form in all material respects with the Exchange Act and the applicable accounting requirements, rules and regulations of the SEC promulgated thereunder as of their respective dates and have been prepared in accordance with United States generally accepted accounting principles ("**GAAP**") applied on a consistent basis during the periods involved (except as otherwise noted therein). The Purchaser Financial Statements fairly present the financial condition of Purchaser as of the dates thereof and results of operations, cash flows and stockholders' equity for the periods referred to therein (subject, in the case of unaudited Purchaser Financial Statements, to normal recurring year-end adjustments which were not and will not be material in amount). Without limiting the generality of the foregoing, (i) no independent public accountant of Purchaser has resigned or been dismissed as independent public accountant of Purchaser as a result of or in connection with any disagreement with Purchaser on a matter of accounting principles or practices, financial statement disclosure or auditing scope or procedure, (ii) no executive officer of Purchaser has failed in any respect to make, without qualification, the certifications required of him or her under Section 302 or 906 of the Sarbanes-Oxley Act with respect to any form, report or schedule filed by Purchaser with the SEC since the enactment of the Sarbanes-Oxley Act and (iii) no enforcement action has been initiated or, to the knowledge of Purchaser, threatened against Purchaser by the SEC relating to disclosures contained in any

8

Purchaser SEC Report. There has been no change in Purchaser's accounting policies except as described in the notes to the Purchaser Financial Statements.

6.8     Purchaser is not in default and neither the execution and delivery of the Transaction Documents nor compliance by Purchaser with the terms and provisions hereof and thereof, will conflict with, or result in a breach or violation of, any of the terms, conditions and provisions of: (i) the Purchaser Corporate Governance Documents, or (ii) any note, indenture, mortgage, lease, agreement, contract, purchase order or other instrument, document or agreement to which Purchaser is a party or by which it or any of its property is bound, or (iii) any law, statute, ordinance, regulation, order, writ, injunction, decree, or judgment of any court or any governmental department, commission, board, bureau, agency or instrumentality in any country in which Purchaser conducts business, with the exception of those judgments listed **Schedule 6.8**. Such execution, delivery and compliance with the Transaction Documents will not (a) give to others any rights, including rights of termination, cancellation or acceleration, in or with respect to any agreement, contract or commitment referred to in this paragraph, or to any of the properties of Purchaser, or (b) except for compliance with any applicable requirements under the Securities Act, the Exchange Act and any requirements of the Over-the-Counter Bulletin Board ("**OTCBB**"), no consent, approval, order or authorization of, or registration, declaration or filing with any Governmental Body or any other Person is required by or with respect to Purchaser in connection with the execution and delivery of the Transaction Documents or the consummation of the transactions contemplated hereby and thereby, which consent or approval has not heretofore been obtained or will be obtained by Closing. To the knowledge of Purchaser, no third party is in default under any agreement, contract or other instrument or document to which Purchaser is a party. To the knowledge of Purchaser, Purchaser is not a party to or bound by any order, judgment, decree or award of any Governmental Body.

6.9     No action, proceeding or governmental inquiry or investigation is pending or, to the knowledge of Purchaser, threatened against Purchaser or any of its officers, directors or employees (in their capacity as such or as shareholders, if applicable), or against any of Purchaser's properties, including, without limitation, assets, licenses and rights transferred to Purchaser under any written agreement or other binding undertaking, or with regard to Purchaser's business, before any court, arbitration board or tribunal or administrative or other governmental agency, nor does Purchaser believe that there is any basis for the foregoing.

## 7.     Survival; Indemnification; Limitation of Liability; No Consequential Damages

7.1     The representations and warranties of each Party hereunder shall survive the Closing and remain in effect for a period of one (1) year thereafter.

7.2     Indemnification. The Seller, on the one side, and Purchaser on the other side (as applicable, the "**Indemnifying Party**") agree to indemnify and hold harmless the Parties of the other side and their respective Affiliates (as applicable, the "**Indemnified Parties**"), against any and all loss, liability, claim, damage and expense whatsoever (including, but not limited to, any and all expenses whatsoever reasonably incurred in investigating, preparing or defending against any litigation commenced or threatened or any claim whatsoever) arising out of or based upon (a) any breach of any of such Party's representations or warranties herein, misrepresentation or warranty or breach or failure by the Indemnifying Party to comply with any covenants or

9

agreement made by it herein, in the other Transaction Documents or in any other document furnished by it to any of the foregoing in connection with this transaction and (b) any action for securities law violations instituted by an Indemnifying Party which is finally resolved by judgment against such Indemnifying Party.

7.3     Mechanics of Indemnification.   Whenever any claim arises for indemnification under this Agreement or an event which may result in a claim for such indemnification has occurred, the Indemnified Party(ies) will promptly notify the Indemnifying Party of the claim and, when known, the facts constituting the basis for such claim.  The Indemnifying Party shall have the obligation to dispute and defend all such Third Party claims and thereafter so defend and pay any adverse final judgment or award or settlement amount in regard thereto.  Such defense shall be controlled by the Indemnifying Party, and the cost of such defense shall be borne by the Indemnifying Party, provided that the Indemnified Parties shall have the right to participate in such defense at their own expense, unless the Indemnified Parties require their own attorney due to a conflict of interest, in which case, the expense of a single law firm acceptable to such Indemnified Party will be borne by the Indemnifying Party.  The Indemnified Parties shall cooperate in all reasonable respects in the investigation, trial and defense of any such claim at the cost of the Indemnifying Party. If the Indemnifying Party fails to take action within thirty (30) days of notice, then the Indemnified Parties shall have the right to pay, compromise or defend any third party claim, such costs to be borne by the Indemnifying Party.  The Indemnified Parties shall also have the right and upon delivery of ten (10) days advance written notice to such effect to the Indemnifying Party, exercisable in good faith, to take such action as may be reasonably necessary to avoid a default prior to the assumption of the defense of the Third Party claim by the Indemnifying Party, and any reasonable expenses incurred by the Indemnified Parties so acting shall be paid by the Indemnifying Party.  The Indemnifying Party will not settle or compromise any Third Party claim without the prior written consent of the Indemnified Parties, not to be unreasonably withheld.

7.4     Purchaser Indemnification.   Purchaser and ChanBond shall indemnify and hold the Seller harmless with respect to any loss, expense, cost, damage and settlement (collectively, "**Indemnified Expenses**") caused to Seller as a result of Purchaser's or ChanBond's or its Affiliates' actions or omissions with respect to the Patents following the Closing Date, provided Seller is not determined to responsible for such actions as a result of their fraud or intentional misconduct.  In particular, in the event that the enforcement or other activities with the Patents results in litigation or other dispute resolution processes with one or more Third Parties, with Seller being required to be involved or liable for the expenses arising through actions of ChanBond (*e.g.*, being added as a party to the process, even if such joinder is improper, or being subject to Third Party discovery requests or otherwise having any exposure for any claims arising through activities of ChanBond), Purchaser and ChanBond shall, at Seller's request, indemnify Seller all of Seller's Indemnified Expenses arising from that involvement.

7.5     Limitation of Liability.   SELLER'S TOTAL LIABILITY UNDER THE TRANSACTION DOCUMENTS WILL NOT EXCEED THE CASH CLOSING CONSIDERATION ACTUALLY RECEIVED BY SELLER HEREUNDER. THE PARTIES ACKNOWLEDGE THAT THIS LIMITATION ON POTENTIAL LIABILITIES WAS AN ESSENTIAL ELEMENT IN SETTING CONSIDERATION UNDER THE TRANSACTION DOCUMENTS.

10

7.6     Limitation on Consequential Damages.  NEITHER PARTY WILL HAVE ANY OBLIGATION OR LIABILITY (WHETHER IN CONTRACT, WARRANTY, TORT (INCLUDING NEGLIGENCE) OR OTHERWISE, AND NOTWITHSTANDING ANY FAULT, NEGLIGENCE (WHETHER ACTIVE, PASSIVE OR IMPUTED), REPRESENTATION, STRICT LIABILITY OR PRODUCT LIABILITY), FOR ANY INCIDENTAL, INDIRECT OR CONSEQUENTIAL DAMAGES OR LOSS OF REVENUE, PROFIT, SAVINGS OR BUSINESS ARISING FROM OR OTHERWISE RELATED TO THIS AGREEMENT, EVEN IF A PARTY OR ITS EMPLOYEES HAVE BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

## 8.     Miscellaneous

8.1     Each of the Parties hereto shall perform such further acts and execute such further documents as may reasonably be necessary to carry out and give full effect to the provisions of the Transaction Documents and the intentions of the Parties as reflected thereby.

8.2     Governing Law; Arbitration; Prevailing Party.  This Agreement and all claims or causes of action that may be based upon, arise out of or relate to this Agreement or the Collateral Agreements will be construed in accordance with and governed by the internal laws of the State of Texas applicable to agreements made and to be performed entirely within such State without regard to conflicts of laws principles thereof.  Any dispute arising under or in connection with any matter of any nature (whether sounding in contract or tort) relating to or arising out of this Agreement, shall be resolved exclusively by arbitration.  The arbitration shall be in conformity with and subject to the applicable rules and procedures of the American Arbitration Association.  The arbitration shall be conducted before a panel of three (3) arbitrators, with one arbitrator to be selected by each of Seller and Buyer and the third arbitrator to be selected by the arbitrators selected by the Parties.  The Parties agree to be (a) subject to the exclusive jurisdiction and venue of the arbitration in the Eastern District of Texas (b) bound by the decision of the arbitrator as the final decision with respect to the dispute, and (c) subject to the jurisdiction of both of the federal courts of the United States of America or the courts sitting in the Eastern District in the State of Texas for the purpose of confirmation and enforcement of any award.  The prevailing party in any arbitration shall be entitled to recover its costs and expenses (including attorney's fees and expenses) from the non-prevailing party.

8.3     Limitations on Assignment.  Except as expressly permitted in this Section, none of Purchaser or ChanBond may grant or assign any rights or delegate any duties under this Agreement to any Third Party (including by way of a "change in control") or may sell, transfer, or spin-off any of the interests in ChanBond or any of its material assets without the prior written consent of Seller.  Notwithstanding the foregoing, Purchaser shall be permitted to transfer or assign) its rights, interests and obligations under this Agreement, as applicable, without Seller's prior written consent as part of a sale of all or substantially all of its business, equity to, or a change in control transaction with a Third Party acquirer (an "**M&A Transaction**", and an "**Acquirer**," respectively); provided that (a) such transfer or assignment is subject to all of the terms and conditions of this Agreement; and (ii) such Acquirer executes a written undertaking towards Seller agreeing to be bound by all of the terms and conditions of this Agreement with respect to the rights being transferred or assigned.  Except as otherwise expressly limited herein,

11

the provisions hereof shall inure to the benefit of, and be binding upon, the successors, permitted assigns, heirs, executors, and administrators of the Parties hereto.

8.4     This Agreement and the Schedules hereto constitute the full and entire understanding and agreement between the Parties with regard to the subject matters hereof and thereof and any other written or oral agreement relating to the subject matter hereof existing between the Parties are expressly canceled. Any term of this Agreement may be amended only with the written consent of all Parties thereto. The observance of any term hereof may be waived (either prospectively or retroactively and either generally or in a particular instance) only with the written consent of the party against which such waiver is sought.

8.5     All notices and other communications required or permitted hereunder to be given to a Party to this Agreement shall be in writing and shall be faxed, emailed or mailed by registered or certified mail, postage prepaid, or prepaid air courier, or otherwise delivered by hand or by messenger, addressed to such Party's address as set forth above; or at such other address as the Party shall have furnished to each other Party in writing in accordance with this provision. Any notice sent in accordance with this Section shall be effective (i) if mailed, seven (7) business days after mailing, (ii) if by air courier two (2) business days after delivery to the courier service, (iii) if sent by messenger, upon delivery, and (iv) if sent via facsimile or email, upon transmission and electronic confirmation of receipt or (if transmitted and received on a non-business day) on the first business day following transmission and electronic confirmation of receipt (provided, however, that any notice of change of address shall only be valid upon receipt).

8.6     No delay or omission to exercise any right, power, or remedy accruing to any Party upon any breach or default under this Agreement, shall be deemed a waiver of any other breach or default theretofore or thereafter occurring. Any waiver, permit, consent, or approval of any kind or character on the part of any Party of any breach or default under this Agreement, or any waiver on the part of any Party of any provisions or conditions of this Agreement, must be in writing and shall be effective only to the extent specifically set forth in such writing. All remedies, either under this Agreement or by law or otherwise afforded to any of the Parties, shall be cumulative and not alternative.

*[Signature Page Follows]*

12

IN WITNESS WHEREOF the Parties have signed this Agreement as of the date first hereinabove set forth.

SELLER:                          **DEIRDRE LEANE**

By: _Deirdre Leane_
Name: DEIRDRE LEANE
Date: 27 October 2015


PURCHASER:                       **UNIFIEDONLINE, INC.**

By: _____
Name: Rob Howe
Title: CEO
Date: 29 October, 2015


CHANBOND:                        **CHANBOND, LLC**

By: _Deirdre Leane_
Name: DEIRDRE LEANE
Title: MANAGER
Date: 27 October 2015

13

IN WITNESS WHEREOF the Parties have signed this Agreement as of the date first hereinabove set forth.

SELLER:                          **DEIRDRE LEANE**

                                 By: ~~Deirdre Leane~~
                                 Name: DEIRDRE LEANE
                                 Date: 27 October 2015


PURCHASER:                       **UNIFIEDONLINE, INC.**

                                 By: ~~Rob Howe~~
                                 Name: Rob Howe
                                 Title: CEO
                                 Date: 27 October, 2015


CHANBOND:                        **CHANBOND, LLC**

                                 By: ~~Deirdre Leane~~
                                 Name: DEIRDRE LEANE
                                 Title: MANAGER
                                 Date: 27 October 2015


13

https://www.sec.gov/Archives/edgar/data/1097718/000135448815005300/uoip_ex102.htm                    14/37

## SCHEDULE 1.3

### Contracts

1. ChanBond, LLC – CBV, Inc. Patent Purchase Agreement dated April 9, 2015
2. ChanBond, LLC – Bentham IMF Litigation Funding Agreement dated September 9, 2015
3. ChanBond, LLC - IPNAV, LLC Advisory Services Agreement dated April 9, 2015
4. ChanBond, LLC - Mishcon de Reya Retention Agreement dated April 20, 2015
5. ChanBond, LLC - Bayard Law Engagement Agreement dated June 8, 2015
6. ChanBond, LLC - Ascenda Law Group Engagement Agreement dated July 14, 2015

## SCHEDULE 2.2.1

### Interest Transfer Deed

**FOR VALUE RECEIVED,** the undersigned, Deirdre Leane ("**Transferor**") hereby assigns, transfers and conveys all of its membership interests in ChanBond, LLC, a Delaware limited liability company (the "**Interests**") to UnifiedOnline, Inc., a Delaware corporation ("**Transferee**") and Transferee hereby accepts the above mentioned Interests.

In witness whereof, we affix our signatures hereto this 27th day of October, 2015.

Transferor:

_____
**Deirdre Leane**

27. October 2015
_____
Date

Witness:

_____
Name: Joseph Ghally

10/27/2015
_____
Date

Transferee:

_____
**UnifiedOnline, Inc.**

10-27-2015
_____
Date

Witness:

_____
Name: B.J. Rodriguez

10-27-2015
_____
Date

**SCHEDULE 2.2.3**

**UnifiedOnline, Inc.'s Board of Directors Resolutions**

STATEMENT OF UNANIMOUS
CONSENT TO ACTION TAKEN IN
LIEU OF A
SPECIAL MEETING OF THE BOARD OF
DIRECTORS OF
UNIFIEDONLINE, INC.

In lieu of a special meeting of the board of directors (the "Board") of UnifiedOnline, Inc., a Delaware corporation (the "Corporation"), and in accordance with the Bylaws of the Corporation and §141(f) of the General Corporation Law of the State of Delaware, the undersigned, being all of the members of the Board, do hereby consent to the adoption of, and do hereby adopt, the following resolutions and declare them to be in full force and effect as if they had been duly adopted at a meeting of the Board, duly called, noticed and held:

**WHEREAS,** the Board deems it to be in the best interests of the Corporation to enter into a Purchase Agreement dated October 26, 2015 (the "Agreement"), in connection with the acquisition of ChanBond, LLC ("ChanBond"), a Delaware limited liability company, the owner of that certain portfolio of Intellectual Property, known as the "ChanBond" patent portfolio, more particularly described as follows:

> The Corporation and CHANBOND agree to an acquisition by the Corporation of 100% of the membership interests of CHANBOND for consideration generally defined as: 44,700,000 shares of the common stock of the Corporation , plus a $5MM 5-Year No-Interest Promissory Note, with a Maturity Date of October 27, 2020..

**NOW, THEREFORE BE IT RESOLVED,** that the Corporation is hereby authorized to enter into the Agreement and the Note.

**FURTHER RESOLVED,** that any executive officer of the Corporation be, and hereby is authorized, empowered and directed, from time to time, to take such additional action and to execute, certify and deliver to the transfer agent of the Corporation, as any appropriate or proper to implement the provisions of the foregoing resolutions; and be it

**FURTHER RESOLVED,** that this Consent may be executed in any number of counterparts, each of which shall be deemed to be an original but all of which together will constitute one and the same instrument, and that counterpart signature pages transmitted by facsimile transmission, by electronic mail in portable document format (.pdf) or by any other electronic means intended to preserve the original graphic and pictorial appearance of a document, shall have the same effect as physical delivery of the paper document bearing an original signature.

**IN WITNESS WHEREOF,** the undersigned members of the Board have executed this Consent as of October 26, 2015.

_____
Robert M. Howe, III

## SCHEDULE 2.2.7

### Common Interest Agreement

THIS COMMON INTEREST AGREEMENT ("**Agreement**") is entered into as of April 9, 2015, by and among **ChanBond, LLC** (the "**Company**") having its principal offices at 2633 McKinney Avenue, Suite 130-501, Dallas, Texas 75204; **UnifiedOnline, Inc.** ("**UnifiedOnline**"), having its principal offices at 4126 Leonard Drive, Fairfax, Virginia 22030; and **Deirdre Leane ("Leane")**, located at 2525 Carlisle Street, Suite 439, Dallas, Texas 75201.

1.   Background.

1.1.   Company, Unified and Leane are sometimes referred to herein as a "**party**" or the "**parties**" and are presently negotiating the closing of an agreement under which UnifiedOnline will purchase Company from Leane and continue to enforce and license patents and related rights owned by the Company "**IP Rights**" and the "**Patent Matters**" respectively).

1.2.   The parties have a common legal interest in upholding the validity and enforceability of the IP Rights, for purposes of enforcement.   The parties anticipate they will enforce inherent rights of the IP Rights against third parties through litigation.   The parties have agreed to treat their communications and those of their counsel relating to the Patent Matters as protected by the common interest doctrine.   Furtherance of the Patent Matters requires the exchange of proprietary documents and information, the joint development of legal strategies and the exchange of privileged information and attorney work product developed by the parties and their respective counsel.

2.   Common Interest.

2.1.   The parties have a common, joint and mutual legal interest in the monetization of valid and enforceable patents.   In furtherance of that common interest, the parties will cooperate with each other, to the extent permitted by law, to share information protected by the

attorney-client privilege, the work product doctrine, or other applicable privilege or immunity with respect to the Patent Matters.   Any counsel or consultant retained by a party or their counsel to assist in the Patent Matters shall be bound by, and entitled to the benefits of this Agreement.

2.2.   In order to further their common interest, the parties and their counsel may exchange privileged and work product information, orally and in writing, including, without limitation, factual analyses, mental impressions, legal memoranda, source materials, draft legal documents, evidence of use materials, claims charts, prosecution history files and other information (hereinafter "**Common Interest Materials**").   The sole purpose of the exchange of the Common Interest Materials is to support the parties' common interest with respect to the enforcement for the Patent Matters.   Any Common Interest Materials exchanged shall continue to be protected under all applicable privileges and no such exchange shall constitute a waiver of any applicable privilege or protection. Nothing in this Agreement requires a party to share information with the other party.

3.   Nondisclosure.

3.1.   The parties and their counsel shall use the Common Interest Materials solely in connection with the Patent Matters and shall take appropriate steps to protect the privileged and confidential nature of the Common Interest Material.   No party nor

their respective counsel shall produce privileged documents or information unless or until directed to do so by a final order of a court of competent jurisdiction, or upon the prior written consent of the other party. No privilege or objection shall be waived by a party hereunder without the prior written consent of the other party.

3.2.    Except as herein provided, in the event that either party or its counsel is requested or required in the context of a litigation, governmental, judicial or regulatory investigation or other similar proceedings (by oral questions, interrogatories, requests for information or documents, subpoenas, civil investigative demands or similar process) to disclose any Common Interest Materials, the party or its counsel shall assert all applicable privileges, including, without limitation, the common interest doctrine, and shall immediately inform the other party and the other party's counsel of the request or requirement to disclose.

4.    Relationship; Additions; Termination.

4.1.    This Agreement does not create any agency or similar relationship among the parties.    Through the term of the agreement between the parties, or any other agreement requiring confidentiality, (whichever term is longer), no party nor their respective counsel has the authority to waive any applicable privilege or doctrine on behalf of any other party.

4.2.    Nothing in this Agreement affects the separate and independent representation of each party by its respective counsel or creates an attorney-client relationship between the counsel for a party and the other party to this Agreement.

4.3.    This Agreement shall continue until terminated upon the written request of either party.    Upon termination, each party and their respective counsel shall return any Common Interest Material furnished by the other party. Notwithstanding termination, this Agreement shall continue to protect all Common Interest Materials disclosed prior to termination. Sections 3 and 5 shall survive termination of this Agreement.

5.    General Terms.

5.1.    This Agreement is governed by the laws of the State of Delaware, without regard to its choice of law principles to the contrary. In the event any provision of the Agreement is held by any court of competent jurisdiction to be illegal, void or unenforceable, the remaining terms shall remain in effect. Failure of either party to enforce any provision of this Agreement shall not be deemed a waiver of future enforcement of that or any other provision.

5.2.    The parties agree that a breach of this Agreement would result in irreparable injury, that money damages would not be a sufficient remedy and that the disclosing party shall be entitled to equitable relief, including injunctive relief, as a non-exclusive remedy for any

such breach.

5.3.    Notices given under this Agreement shall be given in writing and delivered by messenger or overnight delivery service as set forth below, and shall be deemed to have been given on the day received:

ChanBond, LLC
2633 McKinney Avenue
Suite 130-501
Dallas, TX 75204

UnifiedOnline, Inc.
4126 Leonard Drive
Fairfax, VA 22030

Deirdre Leane
2525 Carlisle Street
Suite 439
Dallas, TX 75201

5.4.    This Agreement is effective and binding upon each party as of the date it is signed by or on behalf of a party and may be amended only by a writing signed by or on behalf of each party. This Agreement may be executed in counterparts. Any signature reproduced or transmitted via email of a .pdf file, photocopy, facsimile or other process of complete and accurate reproduction and transmission shall be considered an original for purposes of this Agreement.

\*\*\*The remainder of this page has been intentionally left blank.\*\*

IN WITNESS WHEREOF, CHANBOND, LLC, UNIFIEDONLINE, INC. and DEIRDRE LEANE have executed this Common Interest Agreement by their duly authorized representatives.

CHANBOND, LLC

By: _____
        (Signature)

Name: DEIRDRE LEANE

Title: MANAGER

UNIFIEDONLINE, INC.

By: _____
        (Signature)

Name: Rob Howe

Title: CEO

DEIRDRE LEANE

By: _____
        (Signature)

Name: DEIRDRE LEANE

Title: DR.

**SCHEDULE 2.2.8**

**Promissory Note**

THE SECURITIES REPRESENTED HEREBY HAVE NOT BEEN REGISTERED
UNDER THE SECURITIES ACT OF 1933, AS AMENDED, OR APPLICABLE STATE
SECURITIES LAWS. THE SECURITIES MAY NOT BE OFFERED FOR SALE, SOLD,
TRANSFERRED OR ASSIGNED (I) IN THE ABSENCE OF (A) AN EFFECTIVE
REGISTRATION STATEMENT FOR THE SECURITIES UNDER THE SECURITIES
ACT OF 1933, AS AMENDED, OR APPLICABLE STATE SECURITIES LAWS OR (B)
AN OPINION OF COUNSEL, IN A GENERALLY ACCEPTABLE FORM, THAT
REGISTRATION IS NOT REQUIRED UNDER SAID ACT OR APPLICABLE STATE
SECURITIES LAWS OR (II) UNLESS SOLD PURSUANT TO RULE 144 UNDER SAID
ACT. NOTWITHSTANDING THE FOREGOING, THE SECURITIES MAY BE
PLEDGED IN CONNECTION WITH A BONA FIDE MARGIN ACCOUNT OR OTHER
LOAN OR FINANCING ARRANGEMENT SECURED BY THE SECURITIES. ANY
TRANSFEREE OF THIS NOTE SHOULD CAREFULLY REVIEW THE TERMS OF
THIS NOTE. THE PRINCIPAL AMOUNT REPRESENTED BY THIS NOTE MAY BE
LESS THAN THE AMOUNTS SET FORTH ON THE FACE HEREOF.

### UNIFIEDONLINE, INC.

### PROMISSORY NOTE

Principal Amount: $5,000,000                    Original Issuance Date: October 27, 2015

FOR VALUE RECEIVED UnifiedOnline, Inc., a Delaware corporation (the "Company"),
promises to pay to Deirdre Leane, an individual, of 2525 Carlisle St., Suite 439, Dallas, TX
75201 (the "Holder") an aggregate principal amount of Five Million Dollars ($5,000,000.00)
(representing the Cash Payment as provided for and defined in the Interest Sale Agreement dated
as of the date hereof (the "Interest Sale Agreement"), to which the Company and the Holder are
parties) payable on or prior to October 27, 2020 (the "Maturity Date"), provided, however, that if
this Note is not paid in full by the Maturity Date, the aggregate principal amount of this Note
shall be increased by Twenty Five Thousand Dollars ($25,000.00) for each month such payment
is delayed (or *pro rata* portion thereof) until paid in full (the "New Principal Balance").

The following is a statement of the rights of the Holder of this Note and the conditions to
which this Note is subject, and to which the Holder, by the acceptance of this Note, agrees:

1.    Event of Default.

(a)    For purposes of this Note, an "Event of Default" means:

(i)    the Company shall default in the payment of principal on this Note
on or prior to the applicable Maturity Date; or

(ii)    the Company shall be in breach of any obligation, covenant or
representation made in this Note or the Interest Sale Agreement; or

(iii)    the Company shall (a) become insolvent; (b) dissolve or terminate
its existence; (c) admit in writing its inability to pay its debts generally as they mature;
(d) make an assignment for the benefit of creditors or commence proceedings for its

dissolution; or (e) apply for or consent to the appointment of a trustee, liquidator, receiver or similar official for it or for a substantial part of its property or business; or

(iv)     a trustee, liquidator or receiver shall be appointed for the Company or for a substantial part of its property or business without its consent and shall not be discharged within thirty (30) days after such appointment; or

(v)     any governmental agency or any court of competent jurisdiction at the insistence of any governmental agency shall assume custody or control of the whole or any substantial portion of the properties or assets of the Company and shall not be dismissed within thirty (30) days thereafter; or

(vi)     bankruptcy, reorganization, insolvency or liquidation proceedings or other proceedings, or relief under any bankruptcy law or any law for the relief of debt shall be instituted by or against the Company and, if instituted against the Company shall not be dismissed within thirty (30) days after such institution, or the Company shall by any action or answer approve of, consent to, or acquiesce in any such proceedings or admit to any material allegations of, or default in answering a petition filed in any such proceeding.

Upon the occurrence of an Event of Default, the entire unpaid and outstanding indebtedness due under this Note shall be immediately due and payable without notice and Holder shall be entitled to such additional rights and remedies as are provided by law.

Until the Note is paid in full, the Company shall be obligated to make payments on this Note to the Holder from 100% of any Net Revenues (as defined below) within thirty (30) calendar days after each calendar month commencing with the calendar month ending October 31, 2015.

"*Net Revenues*" shall mean the total aggregate Gross Recoveries less the total aggregate amount of costs and expenses - incurred by or on behalf of the Company in connection with the monetization, enforcement and/or sale of the Assigned Patent Rights of the ChanBond, LLC patent portfolio (described in Exhibit A) - which are exclusively limited to: (a) the reasonable fees and expenses of litigation counsel; (b) the reasonable fees and expenses of licensing counsel (c) the reasonable  fees and expenses of any re-examination or other patent prosecution counsel; (d) reasonable expert fees, court costs, deposition costs and other reasonable costs and expenses related to the maintenance, prosecution, enforcement, and licensing of the Patents; and (e) the reasonable fees and expenses of any other advisors or agents which the Parties mutually agree are required and the repayment of litigation financing.

Notwithstanding anything to the contrary contained in this Note, in no event shall the total of all charges payable under this Note, which are or could be held to be in the nature of interest exceed the maximum rate permitted to be charged under applicable law.  Should the Holder receive any payment which is or would be in excess of that permitted to be charged under any such applicable law, such payment shall have been, and shall be deemed to have been, made in error and shall automatically be applied to reduce the principal balance outstanding on this Note.

2

(b)       As soon as possible and in any event within two days after the Company becomes aware that an Event of Default has occurred, the Company shall notify the Holder in writing of the nature, extent and time of and the facts surrounding such Event of Default, and the action, if any, that the Company proposes to take with respect to such Event of Default.

2.       Prepayment. The Company may prepay this Note at any time, in whole or in part, without penalty or premium.

3.       Miscellaneous.

(a)       Loss, Theft, Destruction or Mutilation of Note. Upon receipt of evidence reasonably satisfactory to the Company of the loss, theft, destruction or mutilation of this Note and delivery of an indemnity agreement reasonably satisfactory in form and substance to the Company and, in the case of mutilation, on surrender and cancellation of this Note (or what remains thereof), the Company shall execute and deliver, in lieu of this Note, a new note executed in the same manner as this Note, in the same principal amount as the unpaid principal amount of this Note and dated the date of this Note.

(b)       Payment. All payments under this Note shall be made in lawful tender of the United States no later than 5:30 pm, Eastern Standard Time, on the date on which such payment is due, by wire transfer of immediately available funds to the account identified by the Holder. Time is of the essence as to all dates set forth herein, provided, however, that whenever any payment to be made under this Note shall be stated to be due on a Saturday, Sunday or a public holiday, or the equivalent for banks generally under the laws of the State of New York (any other day being a "Business Day"), such payment may be made on the next succeeding Business Day and such extension of time shall be included in the computation of the payment of interest.

(c)       Waivers. The Company hereby waives notice of default, presentment or demand for payment, protest or notice of nonpayment or dishonor and all other notices or demands relative to this instrument.

(d)       Waiver and Amendment. Any provision of this Note may be amended, waived or modified only by an instrument in writing signed by the party against which enforcement of the same is sought.

(e)       Notices. Any notice or other communication required or permitted to be given hereunder shall be in writing sent by mail, facsimile with printed confirmation, nationally recognized overnight carrier or personal delivery and shall be effective upon actual receipt of such notice, to the following addresses until notice is received that any such address or contact information has been changed:

To the Company:

UnifiedOnline, Inc.
4126 Leonard Drive
Fairfax, VA 22030

3

To the Holder:

Deirdre Leane
2525 Carlisle St.
Suite# 439
Dallas, TX 75201

      (f)    Expenses; Attorneys' Fees. If action is instituted to enforce or collect this Note, the Company promises to pay or reimburse all reasonable costs and expenses, including, without limitation, reasonable attorneys' fees and costs, incurred by the Holder in connection with such action.

      (g)    Successors and Assigns. This Note may not be assigned or transferred by the Company without the express written consent of the Holder. This Note may only be assigned or transferred by Holder subject to applicable securities laws. Subject to the preceding sentence, the rights and obligations of the Company and the Holder of this Note shall be binding upon and benefit the successors, permitted assigns, heirs, administrators and permitted transferees of the parties.

      (h)    No Waiver; Cumulative Remedies. No failure to exercise and no delay in exercising on the part of the Holder, any right, option, remedy, power or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any right, option, remedy, power or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, option, remedy, power or privilege. The rights, options, remedies, powers and privileges herein provided are cumulative and not exclusive of any rights, options, remedies, powers and privileges provided by law.

      (i)    Governing Law; Jurisdiction. THE PARTIES HEREBY AGREE THAT THIS NOTE IS MADE AND ENTERED INTO IN THE STATE OF DELAWARE AND FURTHER AGREE THAT ALL ACTS REQUIRED BY THIS NOTE AND ALL PERFORMANCE HEREUNDER ARE INTENDED TO OCCUR IN THE STATE OF DELAAWARE. THIS NOTE SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE INTERNAL LAWS OF THE STATE OF DELAWARE WITHOUT REFERENCE TO PRINCIPLES OF CONFLICTS OF LAWS. EACH PARTY HERETO HEREBY IRREVOCABLY SUBMITS TO THE EXCLUSIVE PERSONAL AND SUBJECT MATTER JURISDICTION OF THE STATE OR FEDERAL COURTS OF THE STATE OF DELAWARE OVER ANY SUIT, ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO THIS NOTE. EACH PARTY HEREBY IRREVOCABLY WAIVES TO THE FULLEST EXTENT PERMITTED BY LAW, (A) ANY OBJECTION THAT THEY MAY NOW OR HEREAFTER HAVE TO THE VENUE OF ANY SUCH SUIT, ACTION OR PROCEEDING BROUGHT IN ANY SUCH COURT; AND (B) ANY CLAIM THAT ANY SUCH SUIT, ACTION OR PROCEEDING HAS BEEN BROUGHT IN AN INCONVENIENT FORUM. FINAL JUDGMENT IN ANY SUIT, ACTION OR PROCEEDING BROUGHT IN ANY SUCH COURT SHALL BE CONCLUSIVE AND BINDING UPON EACH PARTY DULY SERVED WITH PROCESS THEREIN AND MAY BE ENFORCED IN THE COURTS OF THE JURISDICTION OF WHICH EITHER PARTY OR ANY OF THEIR PROPERTY IS

4

SUBJECT, BY A SUIT UPON SUCH JUDGMENT. THE PARTIES HEREBY WAIVE ANY AND ALL RIGHTS TO TRIAL BY JURY.

IN WITNESS WHEREOF, the Company has caused this Note to be executed as of the date first above written by its duly authorized officer:

UNIFIEDONLINE, INC.

By: _____

Name: Robert M. Howe III

Title: CEO

5

2908797v.2

## EXHIBIT A

| | |
|---|---|
| US Patent No. 7346918 | Intelligent device system and method for distribution of digital signals on a wideband signal distribution system |
| US Patent No. 7941822 | Intelligent device system and method for distribution of digital signals on a wideband signal distribution system |
| US Patent No. 8341679 | Intelligent device system and method for distribution of digital signals on a wideband signal distribution system |
| US Patent No. 8984565 | Intelligent device system and method for distribution of digital signals on a wideband signal distribution system |
| US Patent No. 9015774 | Intelligent device system and method for distribution of digital signals on a wideband signal distribution system |
| US Application No. 13/799,749 October 10, 2013* | Intelligent device system and method for distribution of digital signals on a wideband signal distribution system |
| US Application No. 14/167,289 Filed January 29, 2014 | Intelligent device system and method for distribution of digital signals on a wideband signal distribution system |
| US Application - 10/346,571 (Abandoned – CIP of 09/824,531) | |
| US Application - 09/824,531 (Abandoned – CIP of 7346918) | |
| PCT/US2001/049629 (Expired – no national phase) | |
| PCT/US2002/009863 (Expired – no national phase) | |

*Publication Date

6

## SCHEDULE 3.3

## Company Agreements

## SCHEDULE 5.1(b)

### Pending Litigation

1. ChanBond, LLC v. WaveDivision Holdings, LLC, Civil Case No. 1:15-cv-00853
2. ChanBond, LLC v. Comcast Corporation et al, Civil Case No. 1:15-cv-00848
3. ChanBond, LLC v. Charter Communications, Inc., Civil Case No. 1:15-cv-00847
4. ChanBond, LLC v. WideOpen West Finance, LLC, Civil Case No. 1:15-cv-00854
5. ChanBond, LLC v. Cequel Communications, LLC, Civil Case No. 1:15-cv-00846
6. ChanBond v. RCN Telecom Services, LLC, Civil Case No. 1:15-cv-00851
7. ChanBond v. Cox Communications, Inc. et al, Civil Case No. 1:15-cv-00849
8. ChanBond v. Time Warner Cable Inc. et al, Civil Case No. 1:15-cv-00852
9. ChanBond v. Mediacom Communications Corporation, Civil Case No. 1:15-cv-00850
10. ChanBond v. Bright House Networks, LLC, Civil Case No. 1:15-cv-00843
11. ChanBond v. Cablevision Systems Corporation et al, Civil Case No. 1:15-cv-00845
12. ChanBond v. Cable One, Inc., Civil Case No. 1:15-cv-00844
13. ChanBond v. Atlantic Broadband Group, LLC, Civil Case No. 1:15-cv-00842

## SCHEDULE 6.3

## Capitalization Table

.

Exhibit A

## UnifiedOnline, Inc. - 6,000,000,000 authorized shares
## Cap Table (10.26.15)

| Common Stock | Current | Own % |
|---|---|---|
| Restricted | 904,088,389 | 99.0% |
| Float | 8,809,148 | 1.0% |
| Common shares O/S | | 912,897,537 |

| | Warrants | |
|---|---|---|
| $ value if converted | Exercise Price | Shares |
| $ 1,543,544 | $0.00750 | 205,805,872 |
| $ 914,664 | $12.000 | 76,222 |
| $ 2,220,240 | $60.000 | 37,004 |
| $ 4,678,448 | Total Warrants | 205,919,098 |

| Series | $0.00750 $ | 12.000 $ | 60.000 | Total | Expiration Date |
|---|---|---|---|---|---|
| N | 205,805,872 | | | 205,805,872 | 09/30/16 |
| O | | 68,452 | | 68,452 | 11/23/16 |
| Q | | 7,770 | | 7,770 | 02/08/17 |
| R | | | 37,004 | 37,004 | 06/30/17 |
| Total | 205,805,872 | 76,222 | 37,004 | 205,919,098 | |

| Vested | Stock Options | O/S |
|---|---|---|
| | | 7,232 |
| 0 | Total O/S Options | 7,232 |

| Preferred Stock - Series II | 1,567 |
|---|---|
| Preferred Stock - Series AA (0 shares) | |

| Fully Diluted Shares before convertible debt | 1,118,825,434 |
|---|---|

| Convertible debt | | At prevailing share price | Conversion Price |
|---|---|---|---|
| Tangiers | $ 68,750 | 13,750,000 | 22,916,667 |
| JMJ | $ 30,500 | 6,100,000 | 10,166,667 |
| KBM | $ 53,232 | 10,646,394 | 18,234,290 |
| Vis Vires | $ 34,100 | 6,820,000 | 11,680,749 |
| | $ 186,582 | 37,316,394 | 62,998,372 |

| Fully Diluted Shares after convertible debt | 1,181,823,806 |
|---|---|

**SCHEDULE 6.8**

**Judgments**

1. Two judgments held by FedEx being pursued in the General District Court of Fairfax County, Virginia; and the Circuit Court of Fairfax County, Virginia, respectively:

   *FedEx Customer Information Services, Inc. vs. Iceweb Storage Corporation fka Inline Corporation,* In the Circuit Court of Fairfax County, Virginia, Case No. CL2010-7512 – Judgment awarded $16,321.66 plus interest and costs.

   *FedEx Customer Information Services, Inc. vs. Iceweb, Inc.,* In the General District Court of Fairfax County, Virginia, Case No. GV10-023543-00 – Judgment awarded $12,900.95 plus $58 in costs.

2. Judgment held by i-Cubed:

   *i-Cubed information, integration and imagins, LLC aka i-Cubed, information, integration and imagins, LLC vs. Iceweb Storage Corporation,* in the General District Court of Fairfax County, Case No. GV12-019582-00 – Judgment awarded of $12,920.60, plus interest and costs.

3. Judgment held by Pellegrino and Associates:

   *Pellegrino and Associates vs. Iceweb, Inc.,* in the Marion County Superior Court No. 12, Marion County, Indiana, Case No. 49D12-1408-CC-2714 – Judgment awarded of $20,158.73 plus interest and costs.

# EXHIBIT 2

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CHANBOND, LLC, | |
| Plaintiff, | C.A. No. 15-842-RGA |
| v. | **JURY TRIAL DEMANDED** |
| ATLANTIC BROADBAND GROUP, LLC, | |
| Defendant. | |
| CHANBOND, LLC, | |
| Plaintiff, | C.A. No. 15-843-RGA |
| v. | **JURY TRIAL DEMANDED** |
| BRIGHT HOUSE NETWORKS, LLC, | |
| Defendant. | |
| CHANBOND, LLC, | |
| Plaintiff, | C.A. No. 15-844-RGA |
| v. | **JURY TRIAL DEMANDED** |
| CABLE ONE INC., | |
| Defendant. | |

| CHANBOND, LLC,<br><br>              Plaintiff,<br><br>    v.<br><br>**CABLEVISION SYSTEMS CORPORATION,** *et al.*,<br><br>              Defendants. | C.A. No. 15-845-RGA<br><br>**JURY TRIAL DEMANDED** |
| CHANBOND, LLC,<br><br>              Plaintiff,<br><br>    v.<br><br>**CEQUEL COMMUNICATIONS, LLC,** *et al.*,<br><br>              Defendants. | C.A. No. 15-846-RGA<br><br>**JURY TRIAL DEMANDED** |
| CHANBOND, LLC,<br><br>              Plaintiff,<br><br>    v.<br><br>**CHARTER COMMUNICATIONS, INC.,**<br><br>              Defendant. | C.A. No. 15-847-RGA<br><br>**JURY TRIAL DEMANDED** |
| CHANBOND, LLC,<br><br>              Plaintiff,<br><br>    v.<br><br>**COMCAST CORPORATION,** *et al.*,<br><br>              Defendants. | C.A. No. 15-848-RGA<br><br>**JURY TRIAL DEMANDED** |

2

CHANBOND, LLC,

                Plaintiff,

    v.

COX COMMUNICATIONS, INC., *et al.*,

                Defendants.

C.A. No. 15-849-RGA

**JURY TRIAL DEMANDED**

---

CHANBOND, LLC,

                Plaintiff,

    v.

MEDIACOM COMMUNICATIONS
CORPORATION,

                Defendant.

C.A. No. 15-850-RGA

**JURY TRIAL DEMANDED**

---

CHANBOND, LLC,

                Plaintiff,

    v.

RCN TELECOM SERVICES, LLC,

                Defendant.

C.A. No. 15-851-RGA

**JURY TRIAL DEMANDED**

---

CHANBOND, LLC,

                Plaintiff,

    v.

TIME WARNER CABLE INC., *et al.*,

                Defendants.

C.A. No. 15-852-RGA

**JURY TRIAL DEMANDED**

CHANBOND, LLC,

        Plaintiff,

    v.

WAVEDIVISION HOLDINGS, LLC,

        Defendant.

C.A. No. 15-853-RGA

**JURY TRIAL DEMANDED**

CHANBOND, LLC,

        Plaintiff,

    v.

WIDEOPEN WEST FINANCE, LLC,

        Defendant.

C.A. No. 15-854-RGA

**JURY TRIAL DEMANDED**

## [AGREED] PROTECTIVE ORDER

The parties hereby stipulate that the following Protective Order ("Order") regarding confidential information may be entered by the Court:

### 1. INTRODUCTION AND SCOPE

This Order shall govern all documents and things (whether or not embodied in any physical medium) exchanged during this action, including but not limited to documents produced by the parties or third-parties, testimony taken at a hearing or other proceeding, and discovery, including but not limited to deposition testimony, interrogatory answers, and responses to requests for admission. Applications for further protection at trial in this action shall be made at the time of trial. Production or disclosure of "CONFIDENTIAL," "HIGHLY CONFIDENTIAL —ATTORNEYS' EYES ONLY," or "RESTRICTED CONFIDENTIAL — ATTORNEYS' EYES ONLY COMPUTER SOURCE CODE" information under this Order shall not prejudice the right

4

of any party making that production or disclosure to maintain the trade secret status or

confidentiality of that information in other contexts. Information disclosed under this Order shall

be used only for purposes of this litigation and not for any other purpose.

## 2.     DISCOVERY RULES REMAIN UNCHANGED

Nothing herein shall alter or change in any way the discovery provisions set forth by the

Federal Rules of Civil Procedure ("Federal Rules"), the Local Rules for the District of Delaware, or

this Court. Identification of any individual pursuant to this Order does not make that individual

available for deposition or any other form of discovery outside of the restrictions and procedures of

the Federal Rules of Civil Procedure and the Court's Deadlines set out in the applicable Scheduling

Order. Nothing in this Order shall be construed to require a party to produce or disclose

information not otherwise required to be produced under the applicable rules or orders of this Court.

## 3.     DEFINITIONS

### 3.1.     Court Staff

"Court Staff" is defined in this Order as the Court and its personnel, court reporters,

independent shorthand reporters, and their staffs, and videographers, interpreters, or translators

engaged for depositions or proceedings necessary to this case.

### 3.2.     Discovery Material

The term "Discovery Material" shall refer to all items or information, including from a non-

party, regardless of the medium or manner generated, stored, or maintained (including, among other

things, testimony, transcripts, or tangible things) that are produced or generated in disclosures or

responses to discovery in this matter.

### 3.3.     Inside Counsel

The term "Inside Counsel" shall mean employees of a named party to this action who (a) are

attorneys who are members of the named party's legal team, (b) have responsibility for maintaining,

5

defending or evaluating this action, (c) have responsibility for making decisions dealing directly with this action, and (d) are not subject to the Patent Prosecution Bar of Section 5.9, below.

### 3.4. Outside Consultant

The term "Outside Consultant" shall mean any outside person (and their support personnel) who is not an employee of a party or any Related Entity, and who is identified as an expert whose opinions may be presented at trial of this case, or who is retained or specially employed in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial, including but not limited to, a proposed expert witness with whom counsel may deem it necessary to consult concerning technical, financial, or other aspects of this case for the preparation or trial thereof. This term is to be construed within the meaning of Federal Rule 26(b)(4)(a)-(b), provided that an Outside Consultant is subject to the Patent Prosecution Bar of Section 5.9, below, and an Outside Consultants must be approved pursuant to the requirements of Sections 5.5.2 and 5.5.3, below.

### 3.5. Outside Counsel

The term "Outside Counsel" shall mean attorneys who are not employees of any named party to this action or any Related Entity, but who are retained to represent or advise a named party to this action  The term "Outside Counsel" includes the following support personnel employed by such attorneys: contract attorneys; paralegals;; legal secretaries; legal clerks;; employees of outside vendors providing copy services, document, graphics, and exhibit preparation services.

### 3.6. Producing Party

The term "Producing Party" shall mean a party or third-party that produces Discovery Material, including Protected Information, in this action.

6

### 3.7. Protected Information

The term "Protected Information" shall mean any Discovery Material that the Producing Party in good faith designates as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL — ATTORNEYS' EYES ONLY," or "RESTRICTED CONFIDENTIAL — ATTORNEYS' EYES ONLY COMPUTER SOURCE CODE." Protected Information also includes any information copied or extracted therefrom, as well as all copies, excerpts, summaries, or compilations thereof, plus testimony, conversations, or presentations by parties or counsel to or in court or in other settings that might reveal Protected Information.

**3.7.1. Confidential Information**. A Producing Party, including any party to this action and any third-party producing information or material voluntarily or pursuant to a subpoena or a court order, may designate Discovery Material as "CONFIDENTIAL" if the Producing Party has a good faith belief that such Discovery Material constitutes or contains confidential information, whether embodied in physical objects, documents, or the factual knowledge of persons.

**3.7.2. Highly Confidential — Attorneys' Eyes Only Information**. A Producing Party, including any party to this action and any third-party producing information or material voluntarily or pursuant to a subpoena or a court order, may designate Discovery Material as "HIGHLY CONFIDENTIAL —ATTORNEYS' EYES ONLY" if the Producing Party has a good faith belief that such Discovery Material constitutes or contains proprietary financial, business, or technical data, commercially sensitive competitive information or trade secrets (*e.g.*, nonpublic technical information, including schematic diagrams, technical reference manuals, and operations manuals); damages-related information (*e.g.*, sale volumes, revenues, costs, and profitability), licenses and licensing documentation, business plans, strategic plans; and settlement agreements or settlement communications, the disclosure of which could cause harm to the business or competitive position of the Producing Party.

7

### 3.7.3. Restricted Confidential — Attorneys' Eyes Only Computer Source Code

**Information**. A Producing Party, including any party to this action and any third-party producing information or material voluntarily or pursuant to a subpoena or a court order, may alternatively designate Discovery Material "RESTRICTED CONFIDENTIAL — ATTORNEYS' EYES ONLY COMPUTER SOURCE CODE" if the Producing Party has a good faith belief that such Discovery Material contains a party's Source Code, which shall mean computer object code or other executable code or source code or similar programming statements or instructions that in general are converted into machine language by compilers, assemblers, or interpreters, including configuration files, scripts, source code listings, object code listings, and Hardware Description Language (HDL) or Register Transfer Level (RTL) files that describe the hardware design of any ASIC or other chip.

**3.7.4. Non-Confidential Information**. The following is not "CONFIDENTIAL," "HIGHLY CONFIDENTIAL — ATTORNEYS' EYES ONLY INFORMATION," or "RESTRICTED CONFIDENTIAL — ATTORNEYS' EYES ONLY COMPUTER SOURCE CODE" Discovery Material:

    a.    any information which, at the time of disclosure to a Receiving Party, is lawfully public knowledge;

    b.    any information which, after disclosure to a Receiving Party, lawfully becomes public knowledge as a result of publication not involving a violation of this Order; and

    c.    any information that a Receiving Party can show was received by it, whether before or after the disclosure, from a source who obtained the information lawfully and under no obligation of confidentiality.

### 3.8. Receiving Party

The term "Receiving Party" shall mean a party that receives Discovery Material from a Producing Party.

### 3.9. Related Entity

The term "Related Entity" shall mean any parent, subsidiary or other legal business entity owned or controlled by a common parent.

## 4. TIME AND MANNER OF DESIGNATION

A Producing Party that designates information or items for protection under this Order must take care to limit any such designation to specific material that qualifies under the appropriate standards so that material, documents, items, or oral or written communications for which protection is not warranted are not swept unjustifiably within the ambit of this Order.

### 4.1. Time of Designation

Designation of Discovery Material may be made at the following times:

**4.1.1.** For documents and things, prior to or at the time of the production of the document or thing;

**4.1.2.** For declarations, written discovery responses, and pleadings, at the time of the service or filing, whichever occurs first;

**4.1.3.** For any form of testimony, unless otherwise agreed to in writing, either (a) at the time that such testimony is given, or (b) within twenty-one (21) calendar days after the receipt of an official (*i.e.*, not rough draft) transcript of such testimony by the Producing Party. Until the expiration of twenty-one (21) calendar days after receipt of the transcript of such testimony by the Producing Party, all testimony will be treated as "HIGHLY CONFIDENTIAL — ATTORNEYS' EYES ONLY." In the event that either (a) an extension of time may be required or (b) expedited disclosure may be required by a party due to an impending deadline regarding preparation of any

9

filing or submission that requires consideration of the Protected Information in question, the concerned party shall negotiate in good faith for an extended or shortened expiration period, and, if agreement regarding an extended or shortened expiration period cannot be reached, then the concerned party agrees to submit the matter to the Court for its determination of the appropriate expiration period. Any portions so designated shall thereafter be treated in accordance with the terms of this Order.

**4.1.4.** A Producing Party that makes original documents or materials available for inspection need not designate them for protection until after the inspecting party has indicated which material it would like copied and produced. During the inspection and before the designation, all of the material made available for inspection shall be deemed "HIGHLY CONFIDENTIAL — ATTORNEYS' EYES ONLY." After the inspecting party has identified the documents it wants copied and produced, the Producing Party shall designate the materials in accordance with the terms of this Order prior to production.

### 4.2.   Manner of Designation

Designation of Discovery Material shall be made by placing the notation "CONFIDENTIAL," "HIGHLY CONFIDENTIAL — ATTORNEYS' EYES ONLY," or "RESTRICTED CONFIDENTIAL — ATTORNEYS' EYES ONLY COMPUTER SOURCE CODE" on the Discovery Material in the following manner:

**4.2.1.** For documents, on each page of such document, unless produced in native form, in which case the legend shall be affixed to the file name;

**4.2.2.** For tangible items, on the object or container thereof; or, if not practicable, as otherwise agreed by the parties;

**4.2.3.** For declarations, written discovery responses, court filing or pleadings, on the face of such document;

10

**4.2.4.** For testimony, Outside Counsel for either party may designate on the record at the deposition any testimony as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL — ATTORNEYS' EYES ONLY," or "RESTRICTED CONFIDENTIAL — ATTORNEYS' EYES ONLY COMPUTER SOURCE CODE" under this Order. Each page of the designated testimony and any exhibit on which a witness gives testimony designated as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL — ATTORNEYS' EYES ONLY," or "RESTRICTED CONFIDENTIAL — ATTORNEYS' EYES ONLY COMPUTER SOURCE CODE" shall be treated in accordance with the terms of this Order;

**4.2.5.** Computer Source Code may be so designated by affixing the legend "RESTRICTED CONFIDENTIAL — ATTORNEYS' EYES ONLY COMPUTER SOURCE CODE" on the media itself or printed paper;

**4.2.6.** All "CONFIDENTIAL," "HIGHLY CONFIDENTIAL — ATTORNEYS' EYES ONLY," or "RESTRICTED CONFIDENTIAL — ATTORNEYS' EYES ONLY COMPUTER SOURCE CODE" information not reduced to documentary, tangible or physical form, or which cannot be conveniently designated as set forth in Sections 4.2.1. - 4.2.5., shall be designated by informing the Receiving Party of the designation in writing; and

**4.2.7.** To the extent the Receiving Party subsequently generates copies, summaries, excerpts, transcriptions, translations, notes, or other documents containing or reflecting Protected Information, whether electronic or hard-copy, it shall mark such documents with the appropriate confidentiality designations. In the event that the Receiving Party prints documents produce in native form, the Receiving Party shall mark each such page of the documents with the appropriate designation.

11

### 4.3. Third-Party Discovery

**4.3.1.** The parties recognize that, during the course of this case, third-parties may be called upon to produce "CONFIDENTIAL," "HIGHLY CONFIDENTIAL — ATTORNEYS' EYES ONLY," or "RESTRICTED CONFIDENTIAL — ATTORNEYS' EYES ONLY COMPUTER SOURCE CODE" Discovery Materials. In such a case, the third-party that must produce such Discovery Material is considered to be a Producing Party, protected under this Order as though a signatory to it, and may use the procedures described herein to designate its Discovery Materials as Protected Information.

**4.3.2.** Information originating with a third-party and in a Producing Party's custody or control that a Producing Party reasonably and in good faith believes is subject to a confidentiality obligation may be designated as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL — ATTORNEYS' EYES ONLY," or "RESTRICTED CONFIDENTIAL — ATTORNEYS' EYES ONLY COMPUTER SOURCE CODE" and the Protected Information shall be subject to the restrictions regarding disclosure specified in this Order. The foregoing notwithstanding, if a Producing Party has a good faith belief that production of the requested Discovery Material is objectionable on the grounds that the requested Discovery Material is subject to a third-party confidentiality obligation, the Producing Party timely shall confer with that third-party in good faith to resolve the confidentiality issue. If this confidentiality issue cannot be resolved, then the Producing Party shall notify the requesting party and to the extent consistent with its confidentiality obligation, the Producing Party shall (1) identify the third-party; (2) identify the bases for the confidentiality obligation; and (3) provide a sufficient description of the types of documents and things being withheld, so that the requesting party can file an appropriate motion with the Court. No disclosure is required until the objection is resolved.

**4.3.3.** A third-party's production of Protected Information under this Order does not entitle

12

that third-party to access any other Protected Information or Discovery Materials produced by any party or other third-party in this case.

### 4.4. Changing the Designation of Discovery Material

In the event any party desires to change the designation of Discovery Material that is produced from no designation to "CONFIDENTIAL," "HIGHLY CONFIDENTIAL — ATTORNEYS' EYES ONLY," or "RESTRICTED CONFIDENTIAL — ATTORNEYS' EYES ONLY COMPUTER SOURCE CODE," or from one such designation to another, such party may do so by notice in writing specifically identifying the Discovery Material and furnishing a copy of such Discovery Material with the new designation. In such event, the Receiving Party shall thereafter treat such information with the new designation pursuant to this Order, as well as undertake a good faith effort to correct any treatment of the information inconsistent with the new designation, including by making a reasonable effort to retrieve Discovery Material disseminated to individuals not authorized to receive it. A reasonable effort to retrieve the Discovery Material shall include informing recipients, if such recipients are known and specifically identifiable, of the Discovery Material that paper and electronic copies (excluding those copies stored in electronic back-up systems) are to be destroyed and confirming that the copies have been destroyed by the recipients.

### 4.5. Resolution of Disputes Regarding Designation

The parties will use reasonable care in designating information as Protected Information under this Order. In the event that a Receiving Party disagrees with any designation (or changed designation) by the Producing Party, the Receiving Party shall serve a written challenge on the Producing Party, identifying with particularity the Discovery Material and the bases for why the Discovery Material should be designated differently. A Receiving Party shall not be obligated to challenge the propriety of a designation at the time made, and a failure to do so shall not preclude a

13

subsequent challenge thereto. Such a challenge shall be written, served on counsel for the Producing Party, and particularly identify the documents or information that the Receiving Party contends should be differently designated. If the challenge cannot be resolved through the meet and confer process, the Receiving Party can file an appropriate motion with the Court.

### 4.6. No Presumption of Protected Status

This Order does not address discovery objections nor preclude either party from moving for any relief cognizable under the Federal Rules of Civil Procedure, the Local Rules, or this Court's inherent power. Failure of any party to challenge any designation under this Order shall not constitute an admission that any Discovery Material designated as Protected Information is, in fact, Protected Information.

## 5. USE OR DISCLOSURE OF PROTECTED INFORMATION

### 5.1. Use of Discovery Materials

Documents and things exchanged during this litigation shall only be used in this litigation and any related appellate proceeding, and their use shall be governed by this Order. A Receiving Party may use Protected Information that is disclosed or produced by another party or by a third-party in connection with the case in which the information is produced only for the purposes of litigating, defending, or attempting to settle this litigation or any related appellate proceeding, and not for any other purpose whatsoever, including without limitation any other litigation, patent prosecution or acquisition, patent reexamination or reissue proceedings, or any business or competitive purpose or function. Such Protected Information may be disclosed only to the categories of persons and under the conditions described in this Order.

**5.1.1.** Except as expressly provided in Section 5.4 below, no employee, officer, or director of any party to this action, including Inside Counsel, shall have access to Protected Information marked "CONFIDENTIAL," "HIGHLY CONFIDENTIAL — ATTORNEYS' EYES ONLY," or

"RESTRICTED CONFIDENTIAL — ATTORNEYS' EYES ONLY COMPUTER SOURCE

CODE." without a court order or the written consent of the Producing Party.

### 5.2. Disclosure Among Defendants

Discovery Material designated as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL —

ATTORNEYS' EYES ONLY," or "RESTRICTED CONFIDENTIAL — ATTORNEYS' EYES

ONLY COMPUTER SOURCE CODE" by a Defendant Producing Party may not be disclosed to

any other party, including other Defendants in the same case or in cases consolidated for case

management purposes, without written consent of the Defendant Producing Party. Except as

required by law, no Defendant is required to produce its Protected Material to any other Defendant,

but nothing in this Order shall preclude such production.

Nothing in this Order limits or prevents a Producing Party from granting access to its own

information.

### 5.3. Duty to Return or Destroy Discovery Material

Within sixty (60) calendar days after termination of this litigation with respect to a

Producing Party, including any appeals, all Discovery Material containing Protected Information

(except "RESTRICTED CONFIDENTIAL — ATTORNEYS' EYES ONLY COMPUTER

SOURCE CODE"), including all notes of counsel, Outside Consultants, or others that incorporate

in whole or in part information from Protected Information, shall be either returned to the

Producing Party or shall be destroyed. Counsel for any party or third-party receiving Protected

Information shall make written certification of compliance with this provision regarding return or

destruction and shall deliver the same to counsel for the Producing Party within ninety (90)

calendar days after the conclusion of the above-captioned case. Within ten (10) days after the final

conclusion of this action, including any appeals, all "RESTRICTED CONFIDENTIAL —

ATTORNEYS' EYES ONLY COMPUTER SOURCE CODE" materials produced by any party

15

shall be returned to the producing party along with certification by outside counsel of record and any other individuals who accessed such materials that all such materials have been returned.

In the event that a party is dismissed by agreement from the case prior to conclusion of this matter in its entirety, all Discovery Material containing Protected Information (except "RESTRICTED CONFIDENTIAL — ATTORNEYS' EYES ONLY COMPUTER SOURCE CODE" and other than pleadings, discovery responses, and exhibits contained in the official court record, and attorney work product documents) produced by the dismissed party shall be returned to the dismissed party or shall be destroyed within sixty (60) calendar days from entry of the dismissal order. Counsel for any party or third-party that received Protected Information from a dismissed party shall make written certification of compliance with this provision and shall deliver the same to counsel for the dismissed party within ninety (90) calendar days after the entry of the dismissal order. Within ten (10) days after the dismissal, all "RESTRICTED CONFIDENTIAL — ATTORNEYS' EYES ONLY COMPUTER SOURCE CODE" materials produced by the dismissed party shall be returned to the producing party along with certification by outside counsel of record and any other individuals who accessed such materials that all such materials have been returned.

Notwithstanding the foregoing, Outside Counsel and Inside Counsel are not required to delete information that may reside on their respective back-up systems; however, Outside Counsel and Inside Counsel agree that no Protected Information shall be retrieved from the electronic back-up systems to be used as reference materials for business operations after conclusion of this litigation.

**5.3.1.** Notwithstanding the foregoing, Outside Counsel of record shall be entitled at the termination of this case, including all appeals, to maintain copies of all pleadings, motions and trial briefs (including all supporting and opposing papers and exhibits thereto), written discovery requests and responses (and exhibits thereto), deposition transcripts (and exhibits thereto), trial

16

transcripts, exhibits offered or introduced into evidence at trial, and any work-product containing

Protected Information, provided however that any Protected Information contained in any such

documents retained by Outside Counsel of record shall remain subject to the protections of this

Order.

### 5.4. Disclosure of Discovery Materials

No Receiving Party or other person receiving any Protected Information in accordance with

this Order shall disclose or permit the disclosure of any such Protected Information to any other

person or entity, except the following:

**5.4.1.** Disclosure of Protected Information that is designated "CONFIDENTIAL" may be

made only to:

- a.   Outside Counsel;

- b.   No more than three (3) Inside Counsel or employees (collectively, "In-House
       Employees") per Party who have complied with the provisions of Section 5.5.2
       below;

- c.   Outside Consultants, and their necessary support personnel, who have complied with
       the provisions of Section 5.5.1 below and signed the form attached hereto as
       Attachment A;

- d.   Court Staff, provided any filings are under seal or with other suitable precautions
       determined by the Court;

- e.   Graphics, translation, or design services retained by counsel for purposes of
       preparing demonstrative or other exhibits for deposition, trial, or other court
       proceedings in the action; non-technical jury or trial consulting services, who have
       signed the form attached hereto as Attachment A;

- f.   Mock jurors who have signed the form attached hereto as Attachment A agreeing to

17

be bound by the terms and conditions of this Order (said signed acknowledgment for mock jurors need not be provided to counsel for any other party);

g.    Any person to whom the Producing Party agrees to provide a copy; and

h.    Any other person with the prior written consent of the Producing Party specifying that said person may have access to material designated as "CONFIDENTIAL".

**5.4.2.1.**    Disclosure of Protected Information that is designated "HIGHLY

CONFIDENTIAL — ATTORNEYS' EYES ONLY" may only be made to:

a.    Outside Counsel;

b.    Outside Consultants, and their necessary support personnel, who have complied with the provisions of Section 5.5.1 – 5.5.2 below and signed the form attached hereto as Attachment A;

c.    Court Staff, provided any filings are under seal or with other suitable precautions determined by the Court;

d.    Graphics, translation, or design services retained by counsel for purposes of preparing demonstrative or other exhibits for deposition, trial, or other court proceedings in the action; non-technical jury or trial consulting services, who have signed the form attached hereto as Attachment A;

e.    Any person to whom the Producing Party agrees to provide a copy; and

f.    Any other person with the prior written consent of the Producing Party specifying that said person may have access to material designated as "HIGHLY CONFIDENTIAL — ATTORNEYS' EYES ONLY".

**5.4.2.2. Encryption.** To the extent that any HIGHLY CONFIDENTIAL —

ATTORNEYS' EYES ONLY Material is transmitted from or to authorized recipients outside of the Receiving Party's Outside Counsel's office, the transmission shall be by hand or by a secure

18

transport carrier (e.g., Federal Express), and encrypted if in electronic format.

**5.4.3.** Disclosure of Protected Information that is designated "RESTRICTED CONFIDENTIAL — ATTORNEYS' EYES ONLY COMPUTER SOURCE CODE" may be made (pursuant to the specific provision in Section 6 below) only to:

a.      Outside Counsel;

b.      No more than three (3) Outside Consultants of any Receiving Party as defined above and who have signed the form attached hereto as Attachment A. To the extent the Receiving Party seeks to have additional Outside Consultants obtain access to a particular Producing Party's Source Code, the Parties shall meet and confer in good faith;

c.      Court Staff, provided any filings are under seal or with other suitable precautions determined by the Court; and

d.      Any other person with the prior written consent of the Producing Party specifying that said person may have access to material designated as "RESTRICTED CONFIDENTIAL — ATTORNEYS' EYES ONLY COMPUTER SOURCE CODE".

**5.5.    General Disclosures**

Notwithstanding the restrictions set forth above, the following disclosures may be made in accordance with this Order:

**5.5.1. Outside Consultants**. Prior to the disclosure of any of the Producing Party's Protected Information to an Outside Consultant, and for each Outside Consultant to whom disclosure is proposed, the Receiving Party shall give at least seven (7) business days written notice to the Producing Party, providing:

a.      the name, business title and business address of the Outside Consultant;

19

b. a copy of the proposed Outside Consultant's executed Attachment A;

c. a copy of the proposed Outside Consultant's current *curriculum vitae* showing the proposed Outside Consultant's education;

d. the Outside Consultant's current employer;

e. a list of any previous or current relationships (personal, professional, financial, or otherwise) with any of the parties; and

f. a list of all other cases by name, case number, and location of court in which the Outside Consultant has testified (at trial or deposition) or submitted a written report or declaration, within the last four (4) years.

**5.5.2.** Outside Counsel desiring to disclose Protected Information to Outside Consultants or In-House Employees shall first obtain a signed undertaking, in the form of Attachment A attached hereto, from each such Outside Consultant or In-House Employee, and such Outside Counsel shall retain in its files the original of each such signed undertaking. For Outside Consultants, a copy of the proposed undertaking shall be forwarded to opposing counsel with the current curriculum vitae and other materials set forth in Section 5.5.1 for such Outside Consultant. For In-House Employees. a copy of the proposed undertaking need not be forwarded to opposing counsel.

**5.5.3** Prior to disclosing any Protected Information to any Outside Consultant, Outside Counsel for the Receiving Party shall determine that disclosure of particular Protected Information to an Outside Consultant is, in that counsel's good faith judgment, reasonably necessary to the party's representation. If, during the seven (7) business day notice period, the Producing Party serves, in writing, a good faith objection with a written explanation to the proposed disclosure to showing the Outside Consultant Protected Information, there shall be no disclosure of said Protected Information to such Outside Consultant pending resolution of the objection. The Producing Party may also request additional information about the Outside Consultant or otherwise

request additional assurances based upon concerns resulting from any information disclosed pursuant to Section 5.6.1. If a Producing Party objects to the disclosure of Protected Information to an Outside Consultant, the parties must meet and confer regarding the objection within five (5) business days after such objection is served. The objecting party's consent to the disclosure of Protected Information to an Outside Consultant shall not be unreasonably withheld, and its objection must be based on that party's good faith belief that disclosure of its Protected Information to the Outside Consultant will result in business or economic harm to that party. If the objection cannot be resolved through the meet and confer process, the party seeking to disclose information to an Outside Consultant may file an appropriate motion with the Court.

**5.5.4. Public Documents**. None of the restrictions set forth in this Order shall apply to any documents or other information that becomes public knowledge by means not in violation of the provisions of this Order. Nothing in this Order shall prevent a party from using any information that the party properly possessed prior to receipt of any Protected Information in this litigation, or that is discovered or developed independently by the Receiving Party.

**5.5.5. Discussion With Author or Recipient**. Notwithstanding any other provision, if Discovery Material makes reference to the actual or alleged conduct or statement of a person, Outside Counsel may discuss such conduct or statements with such person, provided that such discussions do not disclose or reveal any other Protected Information.

**5.5.6. Disclosure of Party's Own Information**. The restrictions on the use of Discovery Material established by the Order are applicable only to Discovery Material received by a party from another party or from a third-party as a direct result of this litigation. Any party is free to use its own Discovery Material for any purpose.

21

### 5.6.    Disclosure During Depositions

A party may use Protected Information in depositions with: (a) a current or former officer,

director or employee of the Producing Party or a current or former officer, director or employee of a

company affiliated with the Producing Party; (b) an individual identified in the Protected

Information as an author, addressee, carbon copy or other recipient of such information; (c)

although not identified as an author, addressee, carbon copy or other recipient of such information,

an individual who has, in the ordinary course of business, seen or could reasonably been expected

to see such information; or (d) an Outside Consultant who has executed Attachment A.

No one may attend or review the transcripts or the portions of any depositions at which

Protected Information is shown or discussed other than those individuals qualified to see such

Protected Information as set forth in this Order.

### 5.7.    Disclosure Pursuant to Subpoena

If any entity subpoenas or orders production of Protected Information from a Receiving

Party that a Receiving Party has obtained subject to this Order, such Receiving Party shall promptly

notify the Producing Party of the subpoena or order and shall not produce the information until the

Producing Party has had reasonable notice (which shall be not less than fifteen (15) business days)

to object or take other appropriate steps to protect the information.  If a Producing Party does not

take steps to prevent disclosure of such documents within the notice period given, the party to

whom the referenced subpoena is directed may produce such documents in response.  Nothing in

this Order should be construed as authorizing or encouraging a Receiving Party in this action to

disobey a lawful directive from another court.

### 5.8.    Disclosure of Protected or Privileged Information

Production or disclosure of documents or information subject to the attorney–client

privilege, work product immunity, joint defense privilege, common interest privilege, or any other

applicable privilege or immunity shall not constitute a waiver of, nor a prejudice to, any claim that such or related material is Protected Information, privileged, or protected by the work product immunity, joint defense privilege, common interest privilege, or any other applicable privilege, provided that the Producing Party promptly notifies the Receiving Party in writing after discovery of such production or disclosure. Such produced or disclosed documents or information, including all copies thereof, shall be returned to the Producing Party or destroyed immediately upon request. The Receiving Party shall also immediately destroy any notes or other writing or recordings that summarize, reflect, or discuss the content of such privileged or Protected Information. No use shall be made of such documents or information during deposition or at trial, nor shall such documents or information be shown to anyone who has not already been given access to them subsequent to the request that they be returned. If, within ten (10) business days of the notice from the Producing Party, the Receiving Party indicates to the Producing Party that the privileged/protected nature of such Discovery Material is in dispute, the Producing Party shall include the produced or disclosed Discovery Material in a privilege log identifying such document. The Receiving Party may move the Court for an Order compelling production of any produced or disclosed document or information, but the motion shall be filed under seal and shall not assert as a ground for production the fact of the production or disclosure, nor shall the motion disclose, summarize, characterize, or otherwise use the content of the produced document or information (beyond any information appearing on the above-referenced privilege log).

### 5.9 Prosecution Bar

Absent the written consent of the Producing Party, any person on behalf of any Party, who has accessed technical documentation or information designated "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "RESTRICTED CONFIDENTIAL - ATTORNEYS' EYES ONLY SOURCE CODE" by a Producing Party shall not be involved in the prosecution of patents

23

or patent applications relating to technology for utilizing multiple radio frequency (RF) channels to increase data throughput to a device, before any foreign or domestic agency, including the United States Patent and Trademark Office, including providing advice or input regarding scope of a patent or claims or amendments thereto to an attorney or agent conducting such prosecution. These prohibitions are not intended to and shall not preclude counsel from participating in post grant proceedings, including inter partes review and covered business method patent review, on behalf of a Party. These prohibitions shall begin when access to "HIGHLY CONFIDENTIAL --ATTORNEYS' EYES ONLY" or "RESTRICTED CONFIDENTIAL - ATTORNEYS' EYES ONLY - SOURCE CODE" materials first occurs for the affected individual, and shall end two (2) years after the final resolution of this action, including all appeals.

### 5.10 Expert Reports

Expert Reports – Within three business days after service of expert reports, the Producing Party shall serve a redacted expert report, redacting any HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY and HIGHLY CONFIDENTIAL – SOURCE CODE information not belonging to the Receiving Party.

Notwithstanding the foregoing provisions regarding access by in-house counsel, in-house counsel for defendants shall be permitted to see any Confidential or Highly Confidential information belonging to Plaintiff that is used in Plaintiff's damages expert report.

### 5.11 Export Controls

Protected Information may only be accessed by the Receiving Party within the United States and shall not be transported to, or accessed from, any foreign jurisdiction. Nothing in this paragraph shall prohibit any person to whom disclosure of Protected Material is authorized from transporting or accessing such material while temporarily traveling outside of the United States or for purposes of taking a deposition outside of the United States, where use of the Protected Material

24

is permitted under the provisions of this Order.

## 6.    SOURCE CODE

### 6.1.    Notice

In the event that Source Code is produced in this action, access to such Source Code will be given only to those individuals for the Receiving Party who are authorized under Sections 5.4.3(a) and 5.4.3(b) of this Order to have access to Discovery Material designated as "RESTRICTED CONFIDENTIAL — ATTORNEYS' EYES ONLY SOURCE CODE." Prior to inspection of the Producing Party's Source Code, the Receiving Party shall give at least two (2) business days written notice to the Producing Party.

### 6.2.    Review of Source Code

In the event that Source Code is produced in this action:

**6.2.1.** The Producing Party will make its Source Code available for inspection electronically in the same form as maintained in the ordinary course of the Producing Party's business and in computer searchable format, except that the Producing Party, at its discretion, may make the files "read only" to prevent modification, provided that this doesn't preclude using review tools to create additional files with line numbers, file name, etc. The Producing Party will make its Source Code available for inspection on up to two "stand alone" Source Code Review Computers (*i.e.*, individual computers that are not connected to any network, Internet, or peripheral device) in the format suitable for review at the offices of the Producing Party's counsel, or at another location that the Parties can agree upon, such agreement not to be unreasonably withheld (the "Designated Facility"). If the Receiving Party desires to review the Source Code on more than one Source Code Review Computer, the Receiving Party will notify the Producing Party at least ten (10) calendar days in advance of the date upon which the Receiving Party wishes to have the additional Source Code Review Computer available. The Receiving Party shall bear the costs of equipment and set

25

up of the second Source Code Review Computer.

**6.2.2.** Unless otherwise agreed to in writing between the Producing Party and the Receiving Party, a Receiving Party may only review a Producing Party's Source Code on the Source Code Review Computer. The Source Code Review Computer may be configured to prevent additional peripheral devices (*e.g.*, USB thumb drives) from being connected to it.

**6.2.3.** Absent agreement to the contrary, access to the Source Code Review Computer will be made available during regular business hours. However, upon reasonable notice from the Receiving Party, the Producing Party shall make reasonable efforts to accommodate the Receiving Party's request for access to the Source Code outside of normal business hours. To the extent such accommodation results in additional expense including overtime for employees required to keep the office open, such expense will be borne by the Receiving Party.

**6.2.4.** The Receiving Party, at its own expense, may request that the Producing Party install software on a Source Code Review Computer to perform searches of the Producing Party's Source Code, provided that such other software is necessary for the Receiving Party to perform its review of the Source Code consistent with all of the protections herein. The Receiving Party must provide the Producing Party with appropriate access to such software tool(s), including by procuring any necessary software licenses, at least ten (10) calendar days in advance of the date upon which the Receiving Party wishes to have the additional software available for use on the Source Code Review Computer. The Producing Party shall be responsible for the costs associated with the loading of review tools only prior to the Receiving Party's first access to the Source Code Review Computer. Thereafter, should the Receiving Party desire additional review tools, the Receiving Party shall be responsible for the costs associated with the loading of those additional review tools. The Producing Party reserves the right to reject any review tool that permits editing, modifying, or compiling the source code. Timely requests for the installation of such review tools software will

26

not be unreasonably denied so long as the requested review tools software is compatible with the operating system, and other software necessary to make the Source Code available for inspection, installed on a Source Code Review Computer, does not prevent or impede the Receiving Party's access to the Source Code produced for inspection on a Source Code Review Computer and does not side-step any of the security features enabled on a Source Code Review Computer (*e.g.*, enable connection and use of USB thumb drives). The Receiving Party shall not erase, load, install, or otherwise modify any program (or request that any other program be erased, loaded, installed, or otherwise modified by the Producing Party) on the Source Code Review Computer.

**6.2.5.** A list of names of persons who will view the Source Code materials will be provided to the Producing Party in conjunction with any written (including e-mail) notice requesting inspection. The Producing Party may request that persons viewing Source Code sign a log sheet, provided by the Producing Party, when they enter or depart the Designated Facility. The Producing Party will provide a copy of the log to the Receiving Party within five (5) business days of requesting a copy of the log. The Producing Party shall be entitled to have a person observe all entrances and exits from the viewing room. However, any monitors must remain at a reasonable distance away from those reviewing the source code so that those reviewing the code may discuss the code without being overheard by the monitor. No recordable media, recordable devices, input/output devices or other electronic devices, including without limitation sound recorders, computers, cellular telephones, peripheral equipment, cameras, CDs, DVDs, or drives of any kind, shall be permitted in the source code reviewing room. Notwithstanding the above limitations, if requested, a Producing Party will make available a computer for note taking, subject to the following restrictions:

i.      All network connectivity and other access to external devices (e.g. USB devices) will be disabled;

27

ii.     The Receiving Party does not use the computer to copy any source code;

iii.    No files can be removed from the device but, at the request of the Receiving Party's counsel or Outside Consultant, a printer will be provided for the Receiving Party's counsel or Outside Consultant to print any notes taken;

iv.    After printing, the Receiving Party will delete the notes from the computer and sign a statement confirming that no lines of source code were copied into the notes;

v.    The Producing Party will not retain or view any copies of notes in any form that were taken on the computer by the Receiving Party's counsel or Outside Consultant; and.

vi.    Any such notes must be labeled HIGHLY CONFIDENTIAL- SOURCE CODE under this Order and treated as such.

**6.2.6.** The Receiving Party shall be entitled to have the Producing Party print in paper form, reasonable portions of source reasonably anticipated by the Receiving Party to be necessary for the preparation of claims or defenses in this case. The Receiving Party shall not request printing of Source Code in order to review blocks of Source Code elsewhere in the first instance, *i.e.*, as an alternative to reviewing that Source Code electronically on the Source Code Review Computer, as the parties acknowledge and agree that the purpose of the protections herein would be frustrated by printing portions of code for review and analysis elsewhere, and that printing is permitted solely to enable use of Source Code in filings, depositions, proceedings, contentions, expert reports, and related drafts and correspondence.

**6.2.7.** The Producing Party will provide any printed paper copies to the Requesting Party within four (4) business days of the Requesting Party's request, unless otherwise agreed or the Producing Party objects to the request. The Producing Party may object to any portion of any printed Source Code files as not relevant to any claim or defense in this litigation, and accordingly

28

deny printing of any Source Code files pending resolution of the Producing Party's objection. The Parties shall meet and confer to resolve any such dispute within five (5) business days of the Receiving Party's Source Code print request. If the parties are unable to resolve such a dispute, the Receiving Party may apply to the Court for relief. Any contested portion of any printed Source Code files need not be produced to the Receiving Party until the dispute is resolved by the parties or the Court.

**6.2.8.** If the Receiving Party desires to receive printed copies of more than a continuous block of up to fifteen (15) pages of Source Code or of an entire file, or if the Producing Party challenges the amount of printed Source Code, the parties shall meet and confer. Any contested portion of any printed Source Code files need not be produced to the Receiving Party until the dispute is resolved by the parties or the Court. After printing, the Producing Party shall clearly label each page of any printed copies "RESTRICTED CONFIDENTIAL — ATTORNEYS' EYES ONLY COMPUTER SOURCE CODE" and give each page a unique identification number.

**6.2.9.** For purpose of use in connection with a motion, hearing or trial, the Receiving Party's Outside Counsel may make three (3) copies of the printed Source Code pages after delivery for internal use. Whenever hard copies are made, counsel for the Receiving Party shall provide to counsel for the Producing Party an identification of when the copies were made and who made them. Any hard copies shall be clearly labeled "RESTRICTED CONFIDENTIAL — ATTORNEYS' EYES ONLY COMPUTER SOURCE CODE" and labeled with the corresponding copy number (e.g., "Copy 1," "Copy 2," or "Copy 3"). Printed copies of Source Code shall be securely maintained in locked rooms or cabinets at the offices of Outside Counsel of the Receiving Party or the offices of the Receiving Party's Outside Consultants. Printed copies may only be used in connection with the preparation and filing of a motion (under seal), preparing expert reports, depositions, a hearing, and/or during trial and shall be destroyed as soon as they are no longer

29

needed. No electronic copies (e.g., scans, PDFs, tiffs, etc.) of any of the printed Source Code pages

may be created without prior written consent of the Producing Party. The Receiving Party shall

ship printed copies of Source Code only by a secure carrier and shipping method that provides

tracking information for such shipment. If delivery of such shipment is delayed by more than three

(3) business days, or if such shipment is lost by the carrier, the Receiving Party will notify the

Producing Party of the circumstances immediately.

    **6.2.10.** Printed copies of Source Code may be reviewed by persons or entities permitted to

access "RESTRICTED CONFIDENTIAL — ATTORNEYS' EYES ONLY COMPUTER

SOURCE CODE" information at the offices of Outside Counsel of the Receiving Party or the

offices of the Receiving Party's Outside Consultants, but may not be removed from such offices.

Citations to source code should be made by production (Bates) number and line number in expert

reports, contentions, or other documents that are not filed with the Court, to prevent unnecessary

copying and transmittal of such code. To the extent a party believes in good faith that source code

is required in a Court filing, it shall meet and confer with the Producing Party regarding appropriate

procedures for doing so. Extra copies of "RESTRICTED CONFIDENTIAL — ATTORNEYS'

EYES ONLY COMPUTER SOURCE CODE" information may be made for and used in Court

filings and proceedings, and depositions of persons or entities permitted to access, or be deposed

on, "RESTRICTED CONFIDENTIAL — ATTORNEYS' EYES ONLY COMPUTER SOURCE

CODE" information of the Producing Party. Copies made for such purposes (Court filings and

proceedings, and depositions) do not count against the three additional copies allowed under

Section 6.2.9. The Receiving Party shall provide two (2) business days' notice to the Producing

Party if the Receiving Party intends to use Source Code in a deposition.

    **6.2.11.** Source Code shall not be filed electronically with the Court. Any filing requiring

submission of Source Code shall be filed under seal with reference to the Source Code portions by

page and line number only, along with a designation that a paper copy of the corresponding Source Code has been lodged with the Court. For the sake of clarity, any copy of any Source Code included with a filing must be hand delivered to the Court in paper format only, and shall not be served electronically on any party.

**6.2.12.** All paper copies that are no longer necessary in the Litigation (e.g., extra copies at the conclusion of a deposition) shall be returned to the Producing Party. Copies of Source Code that are marked as deposition exhibits shall not be provided to the court reporter or attached to deposition transcripts; rather, the deposition record will identify the exhibit by its production numbers.

## 7.     MISCELLANEOUS

### 7.1.     Right to Further Relief

Nothing in this Order abridges the right of any party to seek its modification by the Court in the future.

### 7.2.     Jurisdiction

This Protective Order shall be binding upon the parties, and their respective attorneys, successors, executors, personal representatives, administrators, heirs, legal representatives, assigns, subsidiaries, divisions, employees, agents, independent contractors, or other persons or organizations over which they have control. The United States District Court for the District of Delaware, or any court to which this action is transferred, is responsible for the interpretation and enforcement of this Order. All disputes concerning documents or information covered under this Order (however designated) and produced under the protection of this Order shall be resolved by the United States District Court for the District of Delaware, or the court to which this action may be transferred.

### 7.3.     Continuing Jurisdiction

After the conclusion of the above-captioned case, the provisions of this Order shall continue

to be binding until further order of this Court, and this Court shall retain jurisdiction over the parties

and any other person who has had access to Protected Information pursuant to this Order, in order

to enforce the Order's provisions.

### 7.4. Interpretation

Should the parties have any issues concerning the interpretation of this Order, before any

party moves for this Court's assistance, they shall first promptly meet and confer to resolve the

dispute. The headings used in this Order are supplied for convenience only and shall not be taken

into account in the interpretation of this Order.

### 7.5. Modification

This Order may be modified by this Court for good cause shown or by mutual written

agreement between (or among) the parties and this Court's approval of such agreement. The Court

may enter a subsequent order addressing the use of Protected Information at trial or at the

conclusion of the above-captioned case.

### 7.6. Outside Counsel's Communication with Client

Nothing in this Order shall preclude or impede Outside Counsel's ability to communicate

with or advise their client based on their review and evaluation of Protected Information produced

by the opposing party, provided that such communications or advice shall not disclose or reveal

Protected Information in violation of this Order.

### 7.7.    No Probative Value

The Order shall not aggregate or diminish any contractual, statutory, or other legal

obligation or right of any party or person with respect to any Protected Information. The fact that

information is designated "CONFIDENTIAL," "HIGHLY CONFIDENTIAL — ATTORNEYS'

EYES ONLY," or "RESTRICTED CONFIDENTIAL — ATTORNEYS' EYES ONLY

COMPUTER SOURCE CODE" under this Order shall not be deemed to be determinative of what a

trier of fact may determine to actually be the appropriate designation. This Order shall be without

prejudice to the right of any party to bring before the Court questions regarding (a) whether any

particular material is or is not properly designated or (b) whether any particular information or

material is or is not entitled to a greater or lesser degree of protection under the terms of this Order,

provided that in doing so, the party complies with the procedures set forth herein. The fact that any

information is disclosed, used, or produced in any court proceeding in this case shall not be offered

in any action proceeding before any court, agency, or tribunal as evidence of or concerning whether

or not such information is admissible, confidential, or proprietary.

### 7.8.    Use of Protected Information in Court

Before disclosing Protected Information in an open courtroom at trial or other court hearings

in this case, a party must provide notice to the Producing Party so that the Producing Party has a

reasonable opportunity to take appropriate action to prevent or limit disclosure of the Protected

Information in the open courtroom. The Producing Party bears the burden of showing that the

Court should prevent or limit disclosure of the Protected Information in the open courtroom;

otherwise, the Protected Information may be used in an open courtroom at trial or other court

hearings in this case without regard to the other provisions in this Order. The parties agree that the

use of Protected Information at trial or other court hearings in this case shall not constitute a waiver

of or operate in prejudice to any claim of confidentiality in the Protected Information.

Where Protected Information may be revealed or referred to in a question that will be put to a witness at trial upon oral examination or Protected Information will be used as exhibits during the examination, the Producing Party may request that the Court require that all persons in attendance who are not entitled access to such Protected Information under this Protective Order leave the courtroom until such line of inquiry is completed.

## 8.    OTHER PROCEEDINGS

By entering this order and limiting the disclosure of information in this case, the Court does not intend to preclude another court from finding that information may be relevant and subject to disclosure in another case. Any person or party subject to this order who becomes subject to a motion to disclose another party's information designated "CONFIDENTIAL," "HIGHLY CONFIDENTIAL — ATTORNEYS' EYES ONLY," or "RESTRICTED CONFIDENTIAL — ATTORNEYS' EYES ONLY COMPUTER SOURCE CODE" pursuant to this order shall promptly notify that party of the motion so that the party may have an opportunity to appear and be heard on whether that information should be disclosed.

IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.

IT IS HEREBY ORDERED this 14 day of March , 2016.

Richard G. Andrews

The Honorable Richard G. Andrews
United States District Judge

**CHANBOND, LLC,**

        Plaintiff,

    v.

**ATLANTIC BROADBAND GROUP, LLC,**

        Defendant.

C.A. No. 15-842-RGA

**JURY TRIAL DEMANDED**

**CHANBOND, LLC,**

        Plaintiff,

    v.

**BRIGHT HOUSE NETWORKS, LLC,**

        Defendant.

C.A. No. 15-843-RGA

**JURY TRIAL DEMANDED**

**CHANBOND, LLC,**

        Plaintiff,

    v.

**CABLE ONE INC.,**

        Defendant.

C.A. No. 15-844-RGA

**JURY TRIAL DEMANDED**

CHANBOND, LLC,

        Plaintiff,

    v.

**CABLEVISION SYSTEMS CORPORATION**, *et al.*,

        Defendants.

C.A. No. 15-845-RGA

**JURY TRIAL DEMANDED**

---

CHANBOND, LLC,

        Plaintiff,

    v.

**CEQUEL COMMUNICATIONS, LLC,** *et al.*,

        Defendants.

C.A. No. 15-846-RGA

**JURY TRIAL DEMANDED**

---

CHANBOND, LLC,

        Plaintiff,

    v.

**CHARTER COMMUNICATIONS, INC.,**

        Defendant.

C.A. No. 15-847-RGA

**JURY TRIAL DEMANDED**

---

CHANBOND, LLC,

        Plaintiff,

    v.

**COMCAST CORPORATION,** *et al.*,

        Defendants.

C.A. No. 15-848-RGA

**JURY TRIAL DEMANDED**

CHANBOND, LLC,

    Plaintiff,

  v.

COX COMMUNICATIONS, INC.,

    Defendant.

C.A. No. 15-849-RGA

**JURY TRIAL DEMANDED**

CHANBOND, LLC,

    Plaintiff,

  v.

MEDIACOM COMMUNICATIONS
CORPORATION,

    Defendant.

C.A. No. 15-850-RGA

**JURY TRIAL DEMANDED**

CHANBOND, LLC,

    Plaintiff,

  v.

RCN TELECOM SERVICES, LLC,

    Defendant.

C.A. No. 15-851-RGA

**JURY TRIAL DEMANDED**

CHANBOND, LLC,

    Plaintiff,

  v.

TIME WARNER CABLE INC., *et al.*,

    Defendants.

C.A. No. 15-852-RGA

**JURY TRIAL DEMANDED**

CHANBOND, LLC,

        Plaintiff,

  v.

WAVEDIVISION HOLDINGS, LLC,

        Defendant.

C.A. No. 15-853-RGA

**JURY TRIAL DEMANDED**

CHANBOND, LLC,

        Plaintiff,

  v.

WIDEOPENWEST FINANCE, LLC,

        Defendant.

C.A. No. 15-854-RGA

**JURY TRIAL DEMANDED**

## ATTACHMENT A

### WRITTEN ACKNOWLEDGEMENT
### TO ABIDE BY THE TERMS OF THE PROTECTIVE ORDER

I, the undersigned, hereby certify that I have read the Protective Order entered in the United

States District Court for the District of Delaware in the cases entitled: *ChanBond, LLC v. Atlantic*

*Broadband Group, LLC*, Case No. 15-842 (RGA); *ChanBond, LLC v. Bright House Networks, LLC*,

Case No. 15-843 (RGA); *ChanBond, LLC v. Cable One, Inc.*, Case No. 15-844 (RGA); *ChanBond,*

*LLC v. Cablevision Systems Corporation et al.*, Case No. 15-845 (RGA); *ChanBond, LLC v. Cequel*

*Communications, LLC et al.*, Case No. 15-846 (RGA); *ChanBond, LLC v. Charter*

*Communications, Inc.*, Case No. 15-847 (RGA); *ChanBond, LLC v. Comcast Corporation et al.*,

Case No. 15-848 (RGA); *ChanBond, LLC v. Cox Communications, Inc.*, Case No. 15-849 (RGA);

*ChanBond, LLC v. Mediacom Communications Corporation*, Case No. 15-850 (RGA); *ChanBond,*

38

*LLC v. RCN Telecom Services, LLC*, Case No. 15-851 (RGA); *ChanBond, LLC v. Time Warner Cable Inc. et al.*, Case No. 15-852 (RGA); *ChanBond, LLC v. WaveDivision Holdings, LLC*, Case No. 15-853 (RGA); and *ChanBond, LLC v. WideOpenWest Finance, LLC*, Case No. 15-854 (RGA).

I understand the terms of the Protective Order. I agree to be bound by such terms and to submit to the personal jurisdiction of the District of Delaware with respect to any proceeding related to the enforcement of this Protective Order, including any proceedings related to contempt of Court. I will not disclose Discovery Materials marked "CONFIDENTIAL," "HIGHLY CONFIDENTIAL — ATTORNEYS' EYES ONLY," or "RESTRICTED CONFIDENTIAL — ATTORNEYS' EYES ONLY COMPUTER SOURCE CODE" to anyone other than persons specifically authorized by the Protective Order, and I agree to return all such materials which come into my possession to counsel from whom I received such materials. I also understand that, in the event that I fail to abide by the terms of this Undertaking or the Order, I may be subject to sanctions by way of contempt of court and to separate legal and equitable recourse by the adversely affected Producing Party.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Name of Individual: _____

Company or Firm: _____

Address: _____

Telephone No.: _____

Relationship to this action and its parties: _____

_____

_____

Dated: _____       _____

Signature

TAB 4

AO 88A  (Rev. 02/14) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT

## for the

### District of Delaware

| | |
|---|---|
| Chanbond, LLC | ) |
| *Plaintiff* | ) |
| Atlantic Broadband Group, LLC, BrightHouse Networks, LLC, Cable One Inc., Cablevision Systems Corp., CSC Holdings, LLC, Cequel Communications, LLC, Cequel Communications Holdings I, LLC d/b/a Suddenlink Communications, Charter Communications, Inc., Comcast Corp., Comcast Cable Communications, LLC, Cox Communications, Inc., Mediacom Communications Corp., RCN Telecom Services, LLC, Time Warner Cable Inc., Time Warner Cable Enterprises LLC, WaveDivision Holdings, LLC, and WideOpen West Finance, LLC | ) ) ) ) ) ) ) |
| *Defendant* | |

Civil Action No.   C.A. Nos.15-842; 15-843; 15-844; 15-845; 15-846; 15-847; 15-848; 15-849; 15-850; 15-851; 15-852; 15-853; 15-854 (RGA)

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:                                     Deirdre Leane
c/o Robert Whitman, Mishcon De Reya New York LLP, 2 Park Avenue, 20th Floor, New York, NY 10016
*(Name of person to whom this subpoena is directed)*

✔ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action.  If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

| Place: | Winston & Strawn LLP 2501 N. Harwood St., 17th Fl. Dallas, TX 75201 | Date and Time: 09/20/2017 9:30 am |
|---|---|---|

The deposition will be recorded by this method:     audio-visual and stenographic means

☐ *Production:*  You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:     08/16/2017

|  | | |
|---|---|---|
| *CLERK OF COURT* | | |
| | OR | /s/ Anup K. Misra |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*
all defendants
, who issues or requests this subpoena, are:

Anup K. Misra, Winston & Strawn LLP, 200 Park Avenue, New York, NY 10166; (212) 294-6697, amisra@winston.com

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A  (Rev.  02/14) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No. C.A. Nos.15-842; 15-843; 15-844;

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❐ I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

❐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88A  (Rev.  02/14) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1) *For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2) *For Other Discovery.*** A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1) *Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2) *Command to Produce Materials or Permit Inspection.***
  **(A) *Appearance Not Required.*** A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B) *Objections.*** A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3) *Quashing or Modifying a Subpoena.***

  **(A) *When Required.*** On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B) *When Permitted.*** To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C) *Specifying Conditions as an Alternative.*** In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1) *Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
  **(A) *Documents.*** A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B) *Form for Producing Electronically Stored Information Not Specified.*** If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C) *Electronically Stored Information Produced in Only One Form.*** The person responding need not produce the same electronically stored information in more than one form.
  **(D) *Inaccessible Electronically Stored Information.*** The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) *Claiming Privilege or Protection.***
  **(A) *Information Withheld.*** A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B) *Information Produced.*** If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

EXHIBIT K

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CHANBOND, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 15-842 (RGA) |
| | ) | |
| ATLANTIC BROADBAND | ) | |
| FINANCE, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

| | | |
|---|---|---|
| CHANBOND, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 15-843 (RGA) |
| | ) | |
| BRIGHT HOUSE NETWORKS, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

| | | |
|---|---|---|
| CHANBOND, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 15-844 (RGA) |
| | ) | |
| CABLE ONE, INC., | ) | |
| | ) | |
| Defendant. | ) | |

| | | |
|---|---|---|
| CHANBOND, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 15-845 (RGA) |
| | ) | |
| CABLEVISION SYSTEMS | ) | |
| CORPORATION and | ) | |
| CSC HOLDINGS, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

| | |
|---|---|
| CHANBOND, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 15-846 (RGA) |
| | ) |
| CEQUEL COMMUNICATIONS, LLC and | ) |
| CEQUEL COMMUNICATIONS | ) |
| HOLDINGS I, LLC d/b/a SUDDENLINK | ) |
| COMMUNICATIONS, | ) |
| | ) |
| Defendants. | ) |

| | |
|---|---|
| CHANBOND, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 15-847 (RGA) |
| | ) |
| CHARTER COMMUNICATIONS, INC., | ) |
| | ) |
| Defendant. | ) |

| | |
|---|---|
| CHANBOND, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 15-848 (RGA) |
| | ) |
| COMCAST CORPORATION and | ) |
| COMCAST CABLE COMMUNICATIONS, | ) |
| LLC, | ) |
| | ) |
| Defendants. | ) |

| | |
|---|---|
| CHANBOND, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 15-849 (RGA) |
| | ) |
| COX COMMUNICATIONS, INC., | ) |
| | ) |
| Defendant. | ) |

CHANBOND, LLC,                                       )
                                                    )
                          Plaintiff,                )
                                                    )
                    v.                              )        C.A. No. 15-850 (RGA)
                                                    )
MEDIACOM COMMUNICATIONS                             )
CORPORATION,                                        )
                                                    )
                          Defendant.                )

CHANBOND, LLC,                                       )
                                                    )
                          Plaintiff,                )
                                                    )
                    v.                              )        C.A. No. 15-851 (RGA)
                                                    )
RCN TELECOM SERVICES, LLC,                           )
                                                    )
                          Defendant.                )

CHANBOND, LLC,                                       )
                                                    )
                          Plaintiff,                )
                                                    )
                    v.                              )        C.A. No. 15-852 (RGA)
                                                    )
TIME WARNER CABLE INC. and                           )
TIME WARNER CABLE ENTERPRISES                        )
LLC,                                                )
                                                    )
                          Defendants.               )

CHANBOND, LLC,                                       )
                                                    )
                          Plaintiff,                )
                                                    )
                    v.                              )        C.A. No. 15-853 (RGA)
                                                    )
WAVEDIVISION HOLDINGS, LLC,                          )
                                                    )
                          Defendant.                )

|  |  |
|---|---|
| CHANBOND, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| WIDEOPEN WEST FINANCE, LLC, | ) |
| | ) |
| Defendant. | ) |

C.A. No. 15-854 (RGA)

## <u>NOTICE OF SUBPOENAS</u>

PLEASE TAKE NOTICE that, pursuant to Rule 45 of the Federal Rules of Civil

Procedure, defendants will serve the subpoenas attached hereto as Exhibits A–F on

UnifiedOnline, Inc., Z-Band, Inc., and CBV, Inc., respectively.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jennifer Ying*

Jack B. Blumenfeld (#1014)
Jennifer Ying (#5550)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
jying@mnat.com

*Attorneys for Defendants*

OF COUNSEL:

Michael L. Brody
Jonathan E. Retsky
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, IL  60601

Krishnan Padmanabhan
Anup K. Misra
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY  10166-4193

Alexandra McTague
James C. Lin
WINSTON & STRAWN LLP
275 Middlefield Road, Suite 205
Menlo Park, CA  94025

May 17, 2016

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on May 17, 2016, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on May 17, 2016, upon the following in the manner indicated:

Richard D. Kirk, Esquire                           *VIA ELECTRONIC MAIL*
Stephen B. Brauerman, Esquire
Vanessa R. Tiradentes, Esquire
Sara E. Bussiere, Esquire
BAYARD, P.A.
222 Delaware Avenue, Suite 900
Wilmington, DE  19801
*Attorneys for Plaintiff*

Mark Raskin, Esquire                               *VIA ELECTRONIC MAIL*
Robert Whitman, Esquire
John F. Petrsoric, Esquire
Michael S. DeVincenzo, Esquire
MISHCON DE REYA NEW YORK LLP
2 Park Avenue, 20th Floor
New York, NY  10016
*Attorneys for Plaintiff*

*/s/ Jennifer Ying*
Jennifer Ying (#5550)

EXHIBIT B

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

### for the

District of Delaware

| | | |
|---|---|---|
| ChanBond, LLC | ) | |
| _Plaintiff_ | ) | |
| Atlantic Broadband Group, LLC, Bright House Networks, LLC, Cable One Inc., Cablevision Systems Corp., CSC Holdings, LLC, Cequel Communications, LLC, Cequel Communications Holdings I, LLC d/b/a Suddenlink Communications, Charter Communications, Inc., Comcast Corp., Comcast Cable Communications, LLC, Cox Communications, Inc., Mediacom Communications Corp., RCN Telecom Services, LLC, Time Warner Cable Inc., Time Warner Cable Enterprises LLC, WaveDivision Holdings, LLC, and WideOpen West Finance, LLC | ) ) ) ) ) ) ) ) | Civil Action No.   C.A. Nos.15-842; 15-843; 15-844; 15-845; 15-846; 15-847; 15-848; 15-849; 15-850; 15-851; 15-852; 15-853; 15-854 (RGA) |
| _Defendant_ | | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:           UnifiedOnline, Inc., 4126 Leonard Drive, Fairfax, VA 22030
c/o John Petrsoric, Michson De Raya New York LLP, 2 Park Avenue, 20th Floor, New York, NY 10016

_(Name of person to whom this subpoena is directed)_

☑ _Production:_ **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:  See Attachment A.

| Place: Winston & Strawn LLP<br>           1700 K Street, N.W.<br>           Washington, D.C. 20006 | Date and Time:<br><br>           05/31/2016 9:00 am |
|---|---|

☐ _Inspection of Premises:_ **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:        05/17/2016

| _CLERK OF COURT_ | | |
|---|---|---|
| | OR | |
| _____ | | /s/ Anup K. Misra |
| _Signature of Clerk or Deputy Clerk_ | | _Attorney's signature_ |

The name, address, e-mail address, and telephone number of the attorney representing _(name of party)_ _____
all defendants_____ , who issues or requests this subpoena, are:

Anup K. Misra, Winston & Strawn LLP, 200 Park Avenue, New York, NY 10166; (212) 294-6697, amisra@winston.com

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.   C.A. Nos.15-842; 15-843; 15-844; 15-845; 15-846; 15-847; 15-848; 15-849; 15-850; 15-851; 15-852; 15-853; 15-854 (RGA)

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❑ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❑ I returned the subpoena unexecuted because: _____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $     0.00     .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

 **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
   **(i)** is a party or a party's officer; or
   **(ii)** is commanded to attend a trial and would not incur substantial expense.

 **(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

 **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

 **(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
   **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
   **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

 **(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
   **(i)** fails to allow a reasonable time to comply;
   **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
   **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
   **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
   **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

   **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
   **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
   **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

 **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

 **(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
   **(i)** expressly make the claim; and
   **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## ATTACHMENT A

## DEFINITIONS

The following definitions are applicable to terms employed in responding to this Subpoena *Duces Tecum* ("Subpoena") for the production of documents:

1.      "UnifiedOnline," "You," or "Yours" mean UnifiedOnline, Inc., and any and all predecessors, successors, divisions, subsidiaries, or joint ventures thereof, together with any and all parent or affiliated companies or corporations, and all past or present members, shareholders, officers, directors, employees, agents, attorneys, representatives, any past or current investors or persons with an interest in UnifiedOnline, Inc., and all other persons acting or purporting to act or that have acted or purported to have acted on behalf of any of the foregoing.

2.      "CBV" means CBV, Inc., and any and all predecessors, successors, divisions, subsidiaries, or joint ventures thereof, together with any and all parent or affiliated companies or corporations, and all past or present members, shareholders, officers, directors, employees, agents, attorneys, representatives, any past or current investors or persons with an interest in CBV, Inc., and all other persons acting or purporting to act or that have acted or purported to have acted on behalf of any of the foregoing.

3.      The term "Z-Band" means Z-Band, Inc., and any and all predecessors, successors, divisions, subsidiaries, or joint ventures thereof, together with any and all parent or affiliated companies or corporations, and all past or present members, shareholders, officers, directors, employees, agents, attorneys, representatives, any past or current investors or persons with an interest in Z-Band, Inc., and all other persons acting or purporting to act or that have acted or purported to have acted on behalf of any of the foregoing.

4.     The term "Chanbond," means ChanBond, LLC, and any and all predecessors, successors, divisions, subsidiaries, or joint ventures thereof, together with any and all parent or affiliated companies or corporations, including at least CBV and Z-Band, and all past or present members, shareholders, officers, directors, employees, agents, attorneys, representatives, any past or current investors or persons with an interest in Chanbond, LLC, the Asserted Patents, or the Related Patents, including at least UnifiedOnline, and all other persons acting or purporting to act or that have acted or purported to have acted on behalf of any of the foregoing.

5.     The term "Whitaker Corp." means The Whitaker Corporation, and any and all predecessors, successors, divisions, subsidiaries, or joint ventures thereof, together with any and all parent or affiliated companies or corporations, and all past or present members, shareholders, officers, directors, employees, agents, attorneys, representatives, any past or current investors or persons with an interest in The Whitaker Corporation, and all other persons acting or purporting to act or that have acted or purported to have acted on behalf of any of the foregoing.

6.     The terms "Chanbond Patents," mean U.S. Patent Nos. 7,346,918, 7,941,822, 8,341,679, 8,984,565, and 9,015,774, including any application that led to issuance of any of the aforementioned patents, or any reexaminations thereof.

7.     The term "Related Patents" means any and all patents that relate back to a common application as any Chanbond Patent or Whitaker Patent, including any provisional or non-provisional applications, continuations, continuations-in-part, divisions, interferences, reexaminations, reissues, parents, foreign counterpart applications, as well as any other applications disclosing, describing or claiming any invention disclosed, described or claimed in any Chanbond Patent or Whitaker Patent, or claiming the benefit of the filing date of any

application whose benefit is claimed in any Chanbond Patent or Whitaker Patent, whether or not abandoned and whether or not issued.

8.    The "Chanbond Inventors" means the named inventors listed on the face of the Chanbond Patents.  This includes Earl Hennenhoefer, Richard Snyder, Robert Stine.

9.    "Whitaker Patents" means U.S. Patent No. 5,901,340 and U.S. Patent No. 5,875,386, including any application that led to issuance of any of the aforementioned patents, or any reexaminations thereof.

10.    "Whitaker Inventors" mean Steven Lee Flickinger, James Ray Fetterolf, Sr., Joseph P. Preschutti, Terry P. Bowen, Jeffrey Legg, and David Koller.

11.    The term "Instant Litigations" means the litigations initiated by Chanbond currently pending in the District of Delaware against each of the Defendants.  To resolve any doubt, these include case numbers 1:15-cv-00842-RGA through 1:15-cv-00854-RGA.

12.    The term "Channel Bonding" shall have the same meaning as used by Chanbond in Chanbond's complaints in this matter, and in Chanbond's infringement contentions in this matter.  *See, e.g.,* 1:15-cv-00842, D.I. 1 (Complaint) at ¶ 13.

13.    The "DOCSIS Standard" shall mean the Data Over Cable Service Interface Specification published by CableLabs.  To resolve any doubt, this term encompasses all versions of the DOCSIS Standard, including DOCSIS 1.0, DOCSIS 1.1, DOCSIS 2.0, DOCSIS 3.0, and DOCSIS 3.1.

14.    The "DOCSIS 3.0 Standard" shall mean the Data Over Cable Service Interface Specification published by CableLabs

15.    The term "Standard Setting Organization" means any organization responsible for developing technical standards or technical documentation for use in industry.  For avoidance of

doubt, CableLabs, the Institute for Electrical and Electronics Engineers ("IEEE"), Telecommunications Industry Association ("TIA"), and Electronic Industries Alliance ("EIA") are all Standard Setting Organizations.

16.     The term "Prior Art" refers to art under 35 U.S.C. §§ 102 and 103 and includes, by way of example and without limitation, printed publications, patents, disclosures, prior inventions, admissions, prior public uses, prior offers for sale, or sales of actual products.

17.     The terms "concerning," "relate," "relating," or "related" mean in any way, directly or indirectly, in whole or part, relating to, concerning, alluding to, referring to, discussing, mentioning, regarding, pertaining to, describing, reflecting, containing, analyzing, studying, reporting on, commenting on, evidencing, constituting, setting forth, considering, recommending, modifying, amending, confirming, endorsing, representing, supporting, qualifying, terminating, revoking, refuting, undermining, canceling, contradicting, or negating.

18.     The term "document" shall have the broadest meaning possible under the Federal Rules of Civil Procedure and shall include, but not be limited to, the original (or a copy when the original is not available) and each non-identical copy (including those which are non-identical by reason of translations, notations, or markings) or any and all other written, printed, typed, punched, taped, filmed, or graphic matter or recorded or tangible thing, or whatever description, however produced or reproduced (including computer-stored or generated data, together with instructions or programs necessary to search and retrieve such data and hard copies where available and retrievable), and shall include all attachments to and enclosures with any requested item to which they are attached or with which they are enclosed, and each draft thereof.  The term "document" shall specifically include all recorded or retrievable electronic data or communications such as electronic mail (e-mail) and the like and all translations thereof.

a.  "Communication" shall mean any oral, written, electronic, or other exchange of words, thoughts, information, or ideas to another person or entity, whether in person, in a group, by telephone, by letter, by Telex, or by other process, electric, electronic, or otherwise.   All such communications in writing shall include, without limitation, printed, typed, handwritten, or other readable documents, correspondence, memoranda, reports, contracts, drafts (both initial and subsequent), computer discs or transmissions, e-mails, instant messages, tape or video recordings, voicemails, diaries, log books, minutes, notes, studies, surveys and forecasts, and any and all copies thereof.

b.  The words "or," "and," "all," "every," "any," "each," "one or more," "including," and similar words of guidance, are intended merely as such, and should not be construed as words of limitation.   The words "or" and "and" shall include each other whenever possible to expand, not restrict, the scope of the request.   The word "including" shall not be used to limit any general category or description that precedes it.   The words "all," "every," "any," "each," and "one or more" shall include each other whenever possible to expand, not restrict, the scope of the request.

c.  Reference to the singular in any of these requests shall also include a reference to the plural, and reference to the plural also shall include a reference to the singular.

## INSTRUCTIONS

1.      Unless otherwise stated in a request, the time period covered by the command of this Subpoena is October 25, 1994 to Present.

2.      All requests for "documents," include a request for any "communications," such as letters or e-mails.

3.      It is your duty in answering these requests to conduct a reasonable investigation so that you disclose and produce all available responsive and non-privileged documents.

4.      If any request herein requires the production of documents that are no longer in your actual or constructive possession, custody, or control or which have been destroyed or lost, then in lieu of production, you shall state or identify the title of the document, the author of the document, each person to whom or by whom a copy of the original of the document was delivered, forwarded, or has been received, the date of the document, and the general subject matter of the document. In the event you claim that information contained other than in documentary form is no longer in your actual or constructive possession, custody, or control or has been destroyed or lost, you shall state or identify the nature of the information, the creator of the information, the person to whom the information was or was to be forwarded, delivered or for whom it was prepared, the date of the creation of the information, and the manner in which the information has been memorialized, if at all.

5.      In any instance where documents, data, or information requested herein is stored on a computer, a computer hard drive, a computer mainframe, computer back-up tape, or in any other electronic format, Defendants request that you produce the data, information, or documents on CD ROM, computer disk, or in hard copy paper form.  Further, Defendants request that you

produce all documentation or programs that would allow Defendants to run, read, view, print, or otherwise access any such disks, CD ROM, or other computer information.

6.      You are under a continuing obligation to respond to the requests set forth herein. Accordingly, if you subsequently gain actual or constructive possession, custody, or control of any document called for in the requests set forth herein that has not been produced to Defendants, you must produce such document to Defendants as soon as possible or provide a written explanation to Defendants as to why you will not produce the document.

7.      The documents shall be produced as they are kept in the usual course of business or shall be organized and labeled to correspond with the categories in the requests.

## DOCUMENT REQUESTS

1.      All documents or communications regarding the Chanbond Patents, the Whitaker Patents, and/or the Related Patents.

2.      All documents or communications related to the agreement between Chanbond and UnifiedOnline, as discussed in the agreement attached as exhibit Ex. 2 to this Subpoena.

3.      All notes and minutes from UnifiedOnline's meetings where the agreement between Chanbond and Unified Online (attached in Ex. 2 to this Subpoena) was discussed.

4.      All documents or communications related to any negotiations between UnifiedOnline and Chanbond.

5.      All documents or communications related to any valuation of Chanbond.

6.      All communications between Unified Online and any of the following parties:

(i)      Z-Band;

(ii)      any Chanbond Inventor;

(iii)      Whitaker Corp.;

(iv)  any Whitaker Inventor;

(v)  C.W. Smith;

(vi)  any business associate of the Chanbond Inventors that communicated with any Defendant (*see, e.g.,* Ex. 1 at ¶ 28);

(vii)  any Defendant; or

(viii)  Bentham IMF.

7.  All documents related to any negotiations or agreements between UnifiedOnline and any of the following parties:

(i)  Z-Band;

(ii)  any Chanbond Inventor;

(iii)  Whitaker Corp.;

(iv)  any Whitaker Inventor;

(v)  C.W. Smith.;

(vi)  any business associate of the Chanbond Inventors that communicated with any Defendant (*see, e.g.,* Ex. 1 at ¶ 28);

(vii)  any Defendant; or

(viii)  Bentham IMF.

8.  All documents and communications related to UnifiedOnline's decision to purchase Chanbond.

9.  All documents related to any interest held by UnifiedOnline, in either (a) the Instant Litigations, (b) the Chanbond Patents, (c) Chanbond, (d) Whitaker, or (e) the Whitaker Patents.

10.     All documents concerning the acquisition, ownership, or assignment of any Chanbond Patent, Whitaker Patent, or any Related Patents.

11.     All documents related to any valuation of any Chanbond Patent, Whitaker Patent, or any Related Patents.

12.     All documents concerning any agreement related to any Chanbond Patent, Whitaker Patent, or any Related Patents.

13.     All documents concerning any negotiations for any assignment, license, contract, covenant, authorization, agreement, stipulation, settlement or any other event relating to any legal right related to any Chanbond Patent, Whitaker Patent, or Related Patent.

14.     All documents concerning participation by UnifiedOnline in any Standard Setting Organization,  industry organization, or trade group.

15.     All notes and minutes from UnifiedOnline's meetings where any of the Defendant's products, services, apparatuses, devices, systems, method or processes related to Channel Bonding, the DOCSIS Standard, or DOCSIS 3.0 were mentioned or discussed.

16.     All documents related to Prior Art to any Chanbond Patents known to UnifiedOnline and the date and circumstances pursuant to which UnifiedOnline first learned of each piece of Prior Art.

17.     All documents and communications regarding the corporate or business relationship between UnifiedOnline and Chanbond.

18.     All document and communications regarding Chanbond's sale, assignment, transfer, lease or license of any of their rights, assets, facilities, operations or services to UnifiedOnline.

19.     All documents reflecting any financial information, including, but not limited to revenue or profits, derived from the sale or license of any product embodying any technical matter disclosed in, or any invention claimed in, any Chanbond Patent, Whitaker Patent, or Related Patent.

20.     All documents, relating to any of UnifiedOnline's investigations, tests, studies, examinations, or analyses of any Defendant's products, services, apparatuses, devices, systems, methods, or processes that allegedly infringe any claim of the Chanbond Patents, the Whitaker Patents, or Related Patents.

21.     Documents sufficient to identify all current employees of UnifiedOnline and/or the organizational structure of Unified Online.

22.     Documents sufficient to identify all persons or entities with an ownership interest in UnifiedOnline.

23.     All documents related to any agreement entered into by UnifiedOnline regarding the financing of UnifiedOnline's purchase of Chanbond, as discussed in Ex. 2 to this Subpoena.

# **<u>EXHIBIT 1</u>**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CHANBOND, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. _____ |
| | ) |
| COMCAST CORPORATION and | ) **TRIAL BY JURY DEMANDED** |
| COMCAST CABLE | ) |
| COMMUNICATIONS, LLC, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## <u>COMPLAINT FOR PATENT INFRINGEMENT</u>

Plaintiff ChanBond, LLC ("ChanBond"), as for its complaint of patent infringement in this matter, hereby alleges through its attorneys as follows:

### Nature of the Action

This is an action for patent infringement of United States Patent Nos. 7,941,822 (the "'822 Patent"), 8,341,679 (the "'679 Patent") and 8,984,565 (the "'565 Patent") (collectively, the Patents) under the Patent Laws of the United States, 35 U.S.C. § 1, *et seq*., seeking damages and injunctive and other relief under 35 U.S.C. § 281, *et seq*.

### The Parties

1.     Plaintiff ChanBond is a Delaware limited liability company with its principal place of business at 2633 McKinney Ave., Dallas, Texas 75204.

2.     Defendant Comcast Corporation ("Comcast Corp.") is a Pennsylvania corporation with its principal place of business at 1701 John F Kennedy Boulevard, Philadelphia, Pennsylvania 19103.  Comcast Corp. may be served with process pursuant to the Delaware long arm statute, 10 *Del. C.* § 3104.

3.      Defendant Comcast Cable Communications, LLC ("Comcast Cable") is a
Delaware limited liability company with its principal place of business at 1701 John F Kennedy
Boulevard, Philadelphia, Pennsylvania 19103.  On information and belief, Comcast Cable is a
wholly owned, direct or indirect subsidiary of Comcast Corp.  Comcast Cable may be served
with process via its registered agent, Comcast Capital Corporation, 1201 North Market Street,
Suite 1000, Wilmington, Delaware 19801.

4.      Comcast Corp. and Comcast Cable are referred to herein, collectively, as
"Comcast" or "defendants."

## Jurisdiction and Venue

5.      This is an action for patent infringement arising under the Patent Laws of the
United States, Title 35 of the United States Code.

6.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C.
§§ 1331 and 1338(a) because the action concerns the infringement of United States patents.

7.      This court has personal jurisdiction over defendants.  Upon information and
belief, each defendant transacts substantial business in the State of Delaware, directly or through
intermediaries, including: (i) at least a portion of the infringements alleged herein, and (ii)
regularly does or solicits business in Delaware, engages in other persistent courses of conduct,
maintains continuous and systematic contacts in Delaware, purposefully avails itself of the
privileges of doing business in Delaware, and/or derives substantial revenue from goods and
services provided to individuals in Delaware.  In addition, Comcast Cable is a limited liability
corporation organized and existing under the laws of the State of Delaware.

8.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391 and 1400(b) because, among other reasons, defendants have transacted business in the State of Delaware and defendants have committed and continue to commit acts of patent infringement in Delaware.

### The Patents-In-Suit

9.      On May 10, 2011, the United States Patent and Trademark Office duly and legally issued the '822 Patent, entitled "Intelligent Device System and Method for Distribution of Digital Signals on a Wideband Signal Distribution System," to its inventors, Earl Hennenhoefer, Richard Snyder and Robert Stine.  The inventors assigned all rights in the '822 Patent to CBV, Inc. ("CBV"), which was founded by the inventors, and CBV assigned the '822 Patent to ChanBond, including all rights to enforce the '822 Patent and to recover for infringement.  ChanBond has all right, title and interest to the '822 Patent.  The '822 Patent is valid and in force.  A true and correct copy of the '822 Patent is attached hereto as Exhibit A.

10.      On December 25, 2012, the United States Patent and Trademark Office duly and legally issued the '679 Patent, entitled "Intelligent Device System and Method for Distribution of Digital Signals on a Wideband Signal Distribution System," to its inventors, Earl Hennenhoefer, Richard Snyder and Robert Stine.  The inventors assigned all rights in the '679 Patent to CBV, which was founded by the inventors, and CBV assigned the '679 Patent to ChanBond, including all rights to enforce the '679 Patent and to recover for infringement.  ChanBond has all right, title and interest to the '679 Patent.  The '679 Patent is valid and in force.  A true and correct copy of the '679 Patent is attached hereto as Exhibit B.

11.      On March 17, 2015, the United States Patent and Trademark Office duly and legally issued the '565 Patent, entitled "Intelligent Device System and Method for Distribution of Digital Signals on a Wideband Signal Distribution System," to its inventors, Earl Hennenhoefer,

Richard Snyder and Robert Stine.  The inventors assigned all rights in the '565 Patent to CBV, which was founded by the inventors, and CBV assigned the '565 Patent to ChanBond, including all rights to enforce the '565 Patent and to recover for infringement.  ChanBond has all right, title and interest to the '565 Patent.  The '565 Patent is valid and in force.  A true and correct copy of the '565 Patent is attached hereto as Exhibit C.

12.  Generally, the patents-in-suit are directed in improving the data transmission of wideband distribution systems.  Historically, data service flows (e.g. data, web traffic, voice and video transmitted via the Internet Protocol) have been transmitted over a single channel at a fixed bandwidth.  But with the demand for transmission of more and more content at ever increasing speeds, the capabilities of a single channel transmission methodology became exhausted.

13.  The patents-in-suit address and overcome, among other things, the throughput problems regarding this single channel methodology.  The inventors of the patents-in-suit invented intelligent devices that allow a single data service flow (e.g. large data transmissions) to be split and modulated onto multiple channels for transmission.  This transmission is then demodulated and recombined back into a single service flow for distribution to addressable devices.  Using the inventions, service providers are now capable of efficiently transmitting more content at higher speeds and better quality of service.

## COUNT I
## (INFRINGEMENT OF THE '822 PATENT)

14.  Plaintiff incorporates paragraphs 1 through 13 herein by reference as if set forth here in full.

15.  Upon information and belief, Comcast has been and is currently directly infringing, literally or under the doctrine of equivalents, one or more claims of the '822 Patent by making, using, testing, offering to sell, and/or selling within the United States, and/or importing

into the United States, without authority, cable systems and cable services that are covered by at least one claim of the '822 Patent.  The accused cable systems include cable system components such as cable modem termination systems, RF transmission hardware, network monitoring equipment and customer premises equipment (*e.g.,* cable modems, embedded multimedia terminal adapters, and set-top boxes), including but not limited to components that are compliant with the Data Over Cable System Interface Specification ("DOCSIS") standard, version 3.0 or higher.[1]  More particularly, Comcast, without authority from Plaintiff, provides, operates, implements, sells, markets, imports and/or offers for sale cable systems and/or cable services that perform, are capable of performing or are provided having channel bonding functionality, including but not limited to cable systems and components that have the capability to distribute a service flow over multiple, bonded channels and/or the capability to receive a service flow over multiple, bonded channels (the "Accused Functionality").  Comcast's cable systems and components that perform or are capable of performing the Accused Functionality, and/or the use of such cable systems and components, infringe one or more claims of the '822 Patent under 35 U.S.C. § 271.

16.     As a result of Comcast's unlawful infringement of the '822 Patent, Plaintiff has suffered and will continue to suffer damages in an amount to be proven at trial.  Plaintiff is entitled to recover from Comcast the damages adequate to compensate for such infringement, which have yet to be determined.

17.     Comcast will continue to infringe the '822 Patent unless and until it is enjoined by this Court.

---

[1] *See, e.g.,* http://customer.xfinity.com/help-and-support/internet/docsis3/?ts=2 ("With DOCSIS 3.0, you'll experience significantly faster speeds, so you can make the most of your online experience. DOCSIS 3.0 also opens the door to new Internet technologies.")

## COUNT II
## (INFRINGEMENT OF THE '679 PATENT)

18.     Plaintiff incorporates paragraphs 1 through 17 herein by reference as if set forth here in full.

19.     Upon information and belief, Comcast has been and is currently directly infringing, literally or under the doctrine of equivalents, one or more claims of the '679 Patent by making, using, testing, offering to sell, and/or selling within the United States, and/or importing into the United States, without authority, cable systems and cable services that are covered by at least one claim of the '679 Patent.  The accused cable systems include cable system components such as cable modem termination systems, RF transmission hardware, network monitoring equipment and customer premises equipment (*e.g.,* cable modems, embedded multimedia terminal adapters, and set-top boxes), including but not limited to components that are compliant with the DOCSIS standard, version 3.0 or higher.  More particularly, Comcast, without authority from Plaintiff, provides, operates, implements, sells, markets, imports and/or offers for sale cable systems and/or cable services that perform, are capable of performing or are provided having channel bonding functionality, including but not limited to cable systems and components that have the capability to distribute a service flow over multiple, bonded channels and/or the capability to receive a service flow over multiple, bonded channels (the "Accused Functionality").  Comcast's cable systems and components that perform or are capable of performing the Accused Functionality, and/or the use of such cable systems and components, infringe one or more claims of the '679 Patent under 35 U.S.C. § 271.

20.     As a result of Comcast's unlawful infringement of the '679 Patent, Plaintiff has suffered and will continue to suffer damages in an amount to be proven at trial.  Plaintiff is

entitled to recover from Comcast the damages adequate to compensate for such infringement, which have yet to be determined.

21.     Comcast will continue to infringe the '679 Patent unless and until it is enjoined by this Court.

## COUNT III
## (INFRINGEMENT OF THE '565 PATENT)

22.     Plaintiff incorporates paragraphs 1 through 21 herein by reference as if set forth here in full.

23.     Upon information and belief, Comcast has been and is currently directly infringing, literally or under the doctrine of equivalents, one or more claims of the '565 Patent by making, using, testing, offering to sell, and/or selling within the United States, and/or importing into the United States, without authority, cable systems and cable services that are covered by at least one claim of the '565 Patent.  The accused cable systems include cable system components such as cable modem termination systems, RF transmission hardware, network monitoring equipment and customer premises equipment (*e.g.,* cable modems, embedded multimedia terminal adapters, and set-top boxes), including but not limited to components that are compliant with the DOCSIS standard, version 3.0 or higher.  More particularly, Comcast, without authority from Plaintiff, provides, operates, implements, sells, markets, imports and/or offers for sale cable systems and/or cable services that perform, are capable of performing or are provided having channel bonding functionality, including but not limited to cable systems and components that have the capability to distribute a service flow over multiple, bonded channels and/or the capability to receive a service flow over multiple, bonded channels (the "Accused Functionality").  Comcast's cable systems and components that perform or are capable of

performing the Accused Functionality, and/or the use of such cable systems and components, infringe one or more claims of the '565 Patent under 35 U.S.C. § 271.

24.     As a result of Comcast's unlawful infringement of the '565 Patent, Plaintiff has suffered and will continue to suffer damages in an amount to be proven at trial.  Plaintiff is entitled to recover from Comcast the damages adequate to compensate for such infringement, which have yet to be determined.

25.     Comcast will continue to infringe the '565 Patent unless and until it is enjoined by this Court.

**WILLFUL INFRINGEMENT OF THE '822, '679, and '565 PATENTS**

26.     Plaintiff incorporates paragraphs 1 through 25 herein by reference as if set forth here in full.

27.     In January 2012, Comcast announced that it had completed its rollout of DOCSIS 3.0.

28.     In February 2012, a business associate of the inventors communicated with Mr. Joseph DiTrolio, Comcast Vice President and Corporate Comptroller, regarding the patent portfolio.  On February 23, 2012, the business associate had a face-to-face meeting with Mr. DiTrolio, wherein he provided a write-up that identified the '822 Patent and the application that would issue as the '679 Patent, and that indicated other continuations were pending.  The write-up described the patents and applications and their applicability to DOCSIS 3.0 and the cable industry's channel bonding technology.  The business associate and Mr. DiTrolio discussed the patents, patent applications, relevant technology, and the patents' and patent applications' applicability to the cable industry's channel bonding technology.  By February 23, 2012, Mr. DiTrolio, and thus Comcast, knew of the at least the '822 Patent and the application that would

issue as the '679 Patent, and knew of their relevance to the DOCSIS 3.0 channel bonding technology used by Comcast.

29.     By February 27, 2012, Mr. DiTrolio had communicated the patent portfolio and the write-up to Mr. James Finnegan, Comcast Senior Vice President, Intellectual Property Strategy.  On information and belief, by February 27, 2012, Mr. Finnegan knew of the '822 Patent and the applications that would issue as the '679 and '565 Patents, and knew of their relevance to the DOCSIS 3.0 channel bonding technology used by Comcast.

30.     On March 28, 2012, Mr. Hennenhoefer (one of the co-inventors) had a teleconference with Mr. Finnegan during which the patents, applications and CBV were discussed.  Mr. Finnegan informed Mr. Hennenhoefer that Comcast was obtaining a legal opinion regarding the patents.  Shortly thereafter, Mr. Hennenhoefer had a follow-up call with Mr. Finnegan.

31.     On February 12, 2013, the '822 and '679 Patents and the application that would issue as the '565 Patent were also brought to the attention of Mr. Tony Werner of Comcast.  On February 13, 2013, Mr. Werner communicated the patents and applications, for at least a second time, to Mr. Finnegan.  Shortly thereafter, Messrs. Hennenhoefer and Stine (another of the co-inventors) had a teleconference with Mr. Mark Dellinger, Comcast Vice President, Intellectual Property Strategy in which the patents and applications were discussed, along with their applicability to DOCSIS 3.0.

32.     Despite Comcast's knowledge of the Patents and the channel bonding technology that they covered, Comcast nevertheless continued making, using and selling products that complied with and used DOCSIS 3.0 (and higher) channel bonding, despite an objectively high likelihood that such actions constituted infringement of the Patents.  This infringement was

known to Comcast or was so obvious that Comcast should have known about this infringement. Despite knowing that its actions constituted infringement of the Patents and/or despite knowing that that there was a high likelihood that its actions constituted infringement of the Patents, Comcast nevertheless continued its infringing actions, and continued to make, use and sell infringing DOCSIS 3.0 (and higher) products.

33.    Comcast's infringement of the '822, '679 and '565 Patents has thus been deliberate and willful, at least since February 23, 2012.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff ChanBond, LLC respectfully requests that this Court enter judgment in its favor as follows:

A.    Declaring that defendants have infringed, literally and/or under the doctrine of equivalents, at least one claim of each of the '822, '679 and '565 Patents, and that this infringement is willful;

B.    Awarding to Plaintiff the damages to which it is entitled under 35 U.S.C. § 284 for defendants' past infringement and any continuing or future infringement, including compensatory damages, and the trebling of such damages due to the willful nature of the infringement;

C.    Awarding Plaintiff costs (including all disbursements) and expenses incurred in this action;

D.    Awarding Plaintiff pre- and post-judgment interest on its damages;

E.    Declaring that this case is exceptional pursuant to 35 U.S.C. §285 and awarding Plaintiff its attorneys' fees and costs; and

F.     Awarding Plaintiff such other and further relief in law or in equity as this Court

deems just and proper.

## JURY DEMAND

Plaintiff, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of

any and all issues so triable by right.

Dated:  September 21, 2015                    BAYARD, P.A.

OF COUNSEL:                                    */s/ Stephen B. Brauerman*
                                               Stephen B. Brauerman (No. 4952)
Mark Raskin                                    Vanessa R. Tiradentes (No. 5398)
Robert Whitman                                 Sara E. Bussiere (No. 5725)
John F. Petrsoric                              222 Delaware Avenue, Suite 900
MISHCON DE REYA NEW YORK LLP                   P.O. Box 25130
750 Seventh Ave., 26th Floor                   Wilmington, Delaware 19899
New York, NY 10019                             (302) 655-5000
                                               sbrauerman@bayardlaw.com
                                               vtiradentes@bayardlaw.com
                                               sbussiere@bayardlaw.com

                                               *Attorneys for Plaintiff ChanBond, LLC*

11

# EXHIBIT 2

## Agreement - ChanBond

This Agreement (this "**Agreement**"), is made as of October 27, 2015 (the "**Effective Date**"), by and among **Deirdre Leane**, an individual with an address of 2525 Carlisle St., Suite 439, Dallas, Texas 75201 ("**Seller**"), **ChanBond, LLC**, a Delaware limited liability company, of 2633 McKinney Ave., Suite 130-501, Dallas, Texas 75204 ("**ChanBond**") and **UnifiedOnline, Inc.**, a Delaware corporation, of 4126 Leonard Drive, Fairfax, Virginia 22030 ("**Purchaser**"). The parties to this Agreement shall be referred to collectively herein as the "Parties" and separately as a "Party".

### Witnesseth:

WHEREAS, Seller owns 100% of the limited liability company membership interests (the "**Interests**") of **ChanBond**;

WHEREAS, Purchaser wishes to acquire Seller's entire interest in ChanBond, following which Purchaser will become the sole interest holder of ChanBond, all according to the provisions set forth herein below;

NOW, THEREFORE, in consideration of the mutual promises and covenants set forth herein, the Parties hereto hereby agree as follows:

## 1.   Definitions

1.1   "**Affiliate**" means, with respect to a Party, any Person in any country that directly or indirectly Controls, is Controlled by or is under common Control with such Party. For the purposes of this Agreement, the term "Control" of a Person means ownership, of record or beneficially, directly or through other Persons, of fifty percent (50%) or more of the voting equity of such Person or, in the case of a non-corporate Person, equivalent interests.

1.2   "**Collateral Agreements**" means all such concurrent or subsequent agreements, documents and instruments, as amended, supplemented, or otherwise modified in accordance with the terms hereof or thereof, including without limitation, the License Agreement, the Pay Proceeds Agreement, the Common Interest Agreement and the Promissory Note.

1.3   "**Contract Rights and Obligations**" means the rights and obligation assigned to ChanBond under the contracts ("**Contracts**") listed on **Schedule 1.3.**

1.4   "**Entity**" means any corporation, partnership, limited liability company, association, joint stock company, trust, joint venture, unincorporated organization, Governmental Body (as defined below) or any other legal entity.

1.5   "**Governmental Body**" means any (i) U.S. federal, state, county, municipal, city, town village, district, or other jurisdiction or government of any nature; (ii) governmental or quasi-governmental authority of any nature (including any governmental agency, branch, department, official, or other entity and any court or other tribunal); or (iii) body exercising, or entitled or purporting to exercise, any administrative, executive, judicial, legislative, police, regulatory, or taxing authority or power of any nature.

1.6    **"Intellectual Property"** means all domestic or foreign rights in, to and concerning ChanBond's: (i) patents, patent applications, trademarks, service marks, brand names, certification marks, collective marks, d/b/a's, trade dress, logos, symbols, trade names, assumed names, fictitious names, corporate names and other indications or indicia of origin, including translations, adaptations, derivations, modifications, combinations and renewals thereof; (ii) published and unpublished works of authorship, whether copyrightable or not (including databases and other compilations of data or information), copyrights therein and thereto, moral rights, and rights equivalent thereto, including but not limited to, the rights of attribution, assignation and integrity; (iii) trade secrets, confidential and/or proprietary information (including ideas, research and development, know-how, formulas, compositions, manufacturing and production processes and techniques, technical data, schematics, designs, discoveries, drawings, prototypes, specifications, hardware configurations, customer and supplier lists, financial information, pricing and cost information, financial projections, and business and marketing methods plans and proposals), collectively **"Trade Secrets"**; (iv) computer software, including programs, applications, source and object code, data bases, data, models, algorithms, flowcharts, tables and documentation related to the foregoing; (v) other similar tangible or intangible intellectual property or proprietary rights, information and technology and copies and tangible embodiments thereof (in whatever form or medium); (vi) all applications to register, registrations, restorations, reversions and renewals or extensions of the foregoing; (vii) internet domain names; and (viii) all the goodwill associated with each of the foregoing and symbolized thereby; and (ix) all other intellectual property or proprietary rights and claims or causes of action arising out of or related to any infringement, misappropriation or other violation of any of the foregoing, including rights to recover for past, present and future violations thereof.

1.7    **"Lien"** means any mortgage, pledge, security interest, encumbrance, lien, charge or debt of any kind, any trust, any filing or agreement to grant, deposit or file a pledge or financing statement as debtor under applicable law, any subordination arrangement in favor of any Person, or any other Third Party right.

1.8    **"Person"** means any individual or Entity.

1.9    **"Proceeding"** means any claim, suit, litigation, arbitration, mediation, hearing, audit, charge, inquiry, investigation, governmental investigation, regulatory proceeding or other proceeding or action of any nature (whether civil, criminal, legislative, administrative, regulatory, prosecutorial, investigative, or informal) commenced, brought, conducted, or known to be threatened, or heard by or before, or otherwise involving, any Governmental Body, arbitrator or mediator or similar person or body.

1.10    **"Third Party"** means any Person other than a Party or its Affiliates.

## 2.    Sale and Purchase of Interests

Subject to the terms and conditions hereof, at the Closing, Seller shall sell, assign, transfer, convey and deliver to Purchaser ChanBond and Purchaser shall purchase and accept the assignment, transfer conveyance and delivery of ChanBond from the Seller.

Closing of Sale and Purchase of Interests; Covenants of Purchaser

2.1    Closing.  The sale, assignment, transfer and delivery of ChanBond by the Seller and the purchase thereof by the Purchaser, shall take place at a closing, to be held remotely via the exchange of documents and signatures within one business day following the execution of this Agreement (the "**Closing**" and the "**Closing Date**," respectively).

2.2    Transactions at Closing.  At the Closing, the following transactions shall occur, which transactions shall be deemed to take place simultaneously and no transaction shall be deemed to have been completed or any document delivered until all such transactions have been completed and all required documents delivered:

2.2.1    The Seller shall duly execute an interest assignment deed in the form attached hereto as **Schedule 2.2.1** (the "**Transfer Deed**") and shall deliver their respective Transfer Deed to Purchaser;

2.2.2    At Closing, ChanBond shall appoint William R. Carter, Jr. as sole manager ("**Manager**") and thereafter Manager shall have sole and exclusive authority over the business of ChanBond.

2.2.3    Purchaser shall deliver to the Seller copies of resolutions of its Board of Directors in the form attached hereto as **Schedule 2.2.3**, approving, *inter alia*, the transactions contemplated hereunder and the issuance of the Shares (as defined below) by Purchaser to Seller.

2.2.4    The Collateral Agreements shall have been executed and delivered by the respective parties thereto.

2.2.5    Purchaser shall deliver to the Seller a validly executed share certificate for the Shares (as defined below) issuable in the name of the Seller in such amounts as shall be directed by Seller not less than 72 hours after the Closing.

2.2.6    Purchaser shall deliver to Seller evidence that each Required Approval (as defined below) has been obtained.

2.2.7    Seller, ChanBond and Purchaser shall have entered into the Common Interest Agreement, in the form attached hereto as **Schedule 2.2.7**.

2.2.8    Purchaser shall deliver to Seller the Promissory Note (as defined below), in the form attached hereto as **Schedule 2.2.8**.

2.3    Conditions to Closing.  The obligations of each Party to consummate the transactions contemplated hereby shall be subject to the satisfaction at or prior to the Closing of the following conditions, any of which may be waived in writing by the Party entitled to the benefit thereof, in whole or in part, to the extent permitted by the applicable law:

2.3.1    No temporary restraining order, preliminary or permanent injunction or other order (whether temporary, preliminary or permanent) issued by any court of competent jurisdiction, or other legal restraint or prohibition shall be in effect which prevents the consummation of the transactions contemplated herein, nor shall any proceeding brought by any Governmental Body seeking any of the foregoing be pending, and there shall not be any action

taken, or any law, regulation or order enacted, entered, enforced or deemed applicable to the transactions contemplated herein illegal.

2.3.2   The representations and warranties of the Seller and Purchaser contained herein shall be true and correct in all material respects on and as of the Closing Date, with the same force and effect as if made on and as of the Closing Date, except for those (i) representations and warranties that are qualified by materiality, which representations and warranties shall be true and correct in all respects and (ii) representations and warranties which address matters only as of a particular date, which representations and warranties shall be true and correct on and as of such particular date.

2.3.3   Each Party shall have performed or complied in all material respects with all agreements and covenants required by this Agreement and the Collateral Agreements ancillary hereto (collectively, the "**Transaction Documents**") to be performed or complied with by it on or prior to the Closing Date.

2.3.4   Each Party shall have received evidence, in form and substance reasonably satisfactory to it, that any and all approvals of Governmental Bodies and other Third Parties required to have been obtained by a Party to consummate the transactions under the Transaction Documents, if any, have been obtained (each a "**Required Approval**").

2.4   Covenant of Purchaser.   Promptly following the Closing, Purchaser shall (a) reimburse Seller for all of their costs and expenses (including reasonable attorneys' fees) incurred by Seller in connection with the consummation of the transactions contemplated by this Agreement and (b) file with the relevant Governmental Bodies all legally required reports in respect of the transactions contemplated under the Transaction Documents, including, but not limited to, the SEC Form 8-K and any Forms 3, Forms 4 or Schedule 13D's.

3.   **Consideration**

In consideration for the sale, assignment, transfer and delivery of ChanBond, Purchaser shall pay to the Seller (as directed by Seller) the consideration, as follows:

3.1   Cash Payment.   Five million U.S. Dollars ($5,000,000) payable on or before October 27, 2020 (the "**Cash Payment**"). The obligation to make the Cash Payment shall be evidenced by Purchaser's promissory note (the "**Promissory Note**") in the form of Schedule 2.2.8 attached hereto; and

3.2   Shares Payment.   Forty-four million, seven hundred thousand (44,700,000) shares of Purchaser's Common Stock (the "**Shares**") par value of $0.001 each.

3.3   Release.   Purchaser for itself, its respective Affiliates, employees, officers, directors, representatives, predecessors in interest, successors and assigns (collectively, the "**Releasing Parties**") knowingly, voluntarily, and irrevocably releases, forever discharges and covenants not to sue the Seller, and their respective Affiliates, employees, officers, directors, representatives, predecessors in interest, successors and assigns (collectively, the "**Released Parties**") from and against any and all rights, claims, losses, lawsuits or causes of action (at law or in equity), liabilities, duties, actions, demands, expenses, breaches of duty, damages,

obligations, proceedings, debts, sums of money, accounts, reckonings, bonds, bills, covenants, contracts, agreements, promises, judgments, and executions of whatever nature, type, kind, description or character (each a "**Claim**"), whether known or unknown, suspected or unsuspected, vested or contingent, past or present, that a Releasing Party ever had, now has or hereafter can, shall or may have against or with respect to the Released Parties or any of them for, upon or by reason of any matter, cause or thing related to or arising from any agreement to which ChanBond is a party or by which it is bound prior to the Closing Date, which are listed on **Schedule 3.3** (the "**Company Agreements**"), except in the case that such Claim arises out of an act of fraud, intentional misconduct or gross negligence on the part of one or more of the Released Parties, as finally determined by a court of competent jurisdiction. For the avoidance of doubt, the Company shall continue to be bound by the Company Agreements and neither the Seller nor any of the Released Parties has or shall have any further obligation or liability under the Company Agreement (other than confidentiality, common interest and other similar provisions). The Releasing Parties hereby waive the benefits of any provisions of the law of any state or territory of the United States, or principle of common law, which provides that a general release does not extend to claims which the Releasing Parties do not know or suspect to exist in its favor at the time of executing the release, which if known to it, may have materially affected the release. It is the intention, understanding and agreement of the Releasing Parties to forever discharge and release all known and unknown, present and future claims within the scope of the releases set forth in this Agreement, provided, however, this Release shall not affect or limit any Claims arising under this Agreement, for enforcement, gross negligence or willful misconduct, fraud, misrepresentation, or similar matters.

4.      **Representations and Warranties of the Seller**

The Seller hereby represents and warrants to Purchaser, and acknowledges that Purchaser is entering into this Agreement in reliance thereon, as follows:

4.1      The Seller is the sole lawful owners, beneficially and of record, of ChanBond and ChanBond constitute all of the membership interests in ChanBond, and upon the consummation of the transactions at the Closing, Purchaser will acquire from the Seller, good and marketable title to ChanBond sold by it. There are no preemptive, anti-dilution or other participatory rights of any other parties with respect to the transactions contemplated hereunder.

4.2      The Seller has full and unrestricted legal right, power and authority to enter into and perform their obligations under the Transaction Documents and to sell and transfer ChanBond to Purchaser as provided herein. The Transaction Documents, when executed and delivered by the Seller, shall constitute the valid and legally binding obligation of the Seller, legally enforceable against the Seller in accordance with their respective terms, except as may be limited by bankruptcy, insolvency or other similar laws affecting the enforcement of creditors' rights in general and subject to general principles of equity (regardless of whether such enforceability is considered in a proceeding in equity or at law).

4.3      The Seller is acquiring the Shares for investment purposes only, for their own account, and not for the benefit of others, nor with any view to, or in connection with any distribution or public offering thereof within the meaning of the U.S. Securities Act of 1933 (the "**Securities Act**").

4.4    The Seller understands that the Shares have been registered under the Securities Act. The Seller also acknowledges that the Shares will be restricted for sale for six (6) months after the issuance. The Seller acknowledges that any certificates evidencing the Shares will contain a legend to the foregoing effect.

4.5    Seller has sufficient knowledge and expertise in business and financial matters so as to enable it to analyze and evaluate the merits and risks of acquiring the Shares pursuant to the terms of this Agreement and is able to bear the economic risk of such acquisition, including a complete loss of its investment in the Shares.

4.6    Seller acknowledges that it has made detailed inquiries concerning Purchaser and its business, and that the officers of Purchaser have made available to the Seller any and all written information which it has requested and have answered to the Seller's satisfaction all inquiries made by the Seller.

4.7    The transactions provided for in this Agreement with respect to the Shares are not part of any pre-existing plan or arrangement for, and there is no agreement or other understanding with respect to, the distribution by the Seller of any of the Shares.

## 5.    Representations and Warranties of ChanBond

5.1    ChanBond hereby represents and warrants to Purchaser, and acknowledges that Purchaser is entering into this Agreement in reliance thereon, as follows:

(a)    ChanBond is duly formed, validly existing and in good standing under the laws of the State of Delaware, and has full limited liability company power and authority to own, lease and operate its properties and assets and to conduct its business as now being conducted and as currently proposed to be conducted.

(b)    As of the Closing Date, ChanBond is a party to the pending litigation identified in **Schedule 5.1(b)**.

(c)    As of the Closing Date the Contracts are in full force and effect and none of the respective parties to the Contracts are in breach of any material obligation under the Contracts.

(d)    To ChanBond's knowledge, ChanBond is not a party nor bound by any contracts, agreements, promises or commitments except the assignments related to the Contracts.

(e)    Other than the assignments related to the Contracts, ChanBond has no material assets. None of ChanBond's employees will continue with ChanBond after the Closing.   ChanBond's bank accounts and the contents thereof will be transferred to Purchaser. Any amounts paid or payable to ChanBond (or any of its Affiliates) under licenses or other agreements or judgments entered into by or awarded to any Affiliates of ChanBond prior to the Closing Date, shall be retained as the exclusive property of such

Affiliates and after the Closing Date, ChanBond or any of its Affiliates will disclaim any interest therein.

## 6.      **Representations and Warranties of Purchaser**

Purchaser, represents and warrants to the Seller and acknowledges that the Seller are entering into this Agreement in reliance thereon as follows:

6.1      Purchaser is duly organized, validly existing and in good standing under the laws of Delaware and has full corporate power and authority to own, lease and operate its properties and assets and to conduct its business as now being conducted and as currently proposed to be conducted.  The corporate governance documents of Purchaser (including but not limited to its Certificate of Incorporation, Bylaws and any Voting Rights Agreements, Stockholders' Agreements, Investors' Rights Agreements and the like) as in effect on the date hereof have been provided or made available to the Seller (the "**Purchaser Governance Documents**").

6.2      The Transaction Documents, when executed and delivered by Purchaser, shall constitute the valid and legally binding obligation of Purchaser, respectively, legally enforceable against Purchaser in accordance with their respective terms, except as may be limited by bankruptcy, insolvency or other similar laws affecting the enforcement of creditors' rights in general and subject to general principles of equity (regardless of whether such enforceability is considered in a proceeding in equity or at law).

6.3      The authorized capital stock of Purchaser consists of 6,000,000,000 shares of Common Stock and 10,000,000 shares of Convertible Preferred Stock, each having a par value of USD $0.001, of which 912,897,537 shares are issued and outstanding (exclusive of shares issued hereunder).  Purchaser's fully-diluted capital structure before and after Closing is set forth in the capitalization table attached hereto as **Schedule 6.3**.  All capital stock, preemptive rights, rights of first refusal, rights of co-sale, convertible, exercisable or exchangeable securities, outstanding warrants, options or other rights to subscribe for, purchase or acquire from Purchaser or any of its subsidiaries or Affiliates any capital stock of the Purchaser and/or any of its subsidiaries are set forth in detail on **Schedule 6.3**.  Except for the transactions contemplated by this Agreement and the current Purchaser Governance Documents, there are no Liens, options to purchase, proxies, preemptive rights, convertible, exercisable or exchangeable securities, outstanding warrants, options, voting trust and other voting agreements, calls, promises or commitments of any kind and, Purchaser has no knowledge that any of the said stockholders owns any other stock, options or any other rights to subscribe for, purchase or acquire any capital stock of Purchaser from Purchaser or from each other.

6.4      All issued and outstanding capital stock of Purchaser has been duly authorized, and is validly issued and outstanding and fully-paid and non-assessable.  The Shares, when issued and allotted in accordance with this Agreement:  (a) will be duly authorized, validly issued, fully paid, non-assessable, and free of any preemptive rights, (b) will have the rights, preferences, privileges, and restrictions set forth in Purchaser's Certificate of Incorporation, Certificate of Designation and By-laws, and (c) will be issued free and clear of any Liens of any kind.

6.5     Purchaser is currently in material compliance with all applicable laws, including securities laws. Purchaser has timely filed all forms and reports required to be filed with the Securities Exchange Commission (the "**SEC**") including, without limitation, all exhibits required to be filed therewith, and has made available to the Seller true, complete and correct copies of all of the same so filed (including any forms, reports and documents incorporated by reference therein or filed after the date hereof, the "**Purchaser SEC Reports**"). For purposes hereof, such Purchaser SEC Reports shall be deemed delivered to Seller via the SEC's EDGAR database. The Purchaser SEC Reports: (i) at the time filed complied (or will comply when filed, as the case may be) in all material respects with the applicable requirements of the Securities Act and/or the Securities Exchange Act of 1934, as amended (the "**Exchange Act**") and the rules and regulations promulgated thereunder, and with the Sarbanes-Oxley Act of 2002, and the rules and regulations promulgated thereunder, in each case applicable to such Purchaser SEC Reports at the time they were filed; and (ii) did not at the time they were filed (or, if later filed, amended or superseded, then on the date of such later filing) contain any untrue statement of a material fact or omit to state a material fact required to be stated therein or necessary in order to make the statements contained therein, in the light of the circumstances under which they were made, not misleading.

6.6     Purchaser has timely filed (or has been deemed to have timely filed pursuant to Rule 12b-25 under the Exchange Act) and made publicly available on the SEC's EDGAR system, and the Seller may rely upon, all certifications and statements required by (i) Rule 13a-14 or Rule 15d-14 under the Exchange Act and (ii) Section 906 of the Sarbanes Oxley Act of 2002 with respect to any documents filed with the SEC. Since the most recent filing of such certifications and statements, there have been no significant changes in Purchaser's internal control over financial reporting (as such term is defined in Rule 13a-15(f) under the Exchange Act), or in other factors that could significantly affect its disclosure controls and procedures.

6.7     The financial statements (including footnotes thereto) included in or incorporated by reference into the Purchaser SEC Reports (the "**Purchaser Financial Statements**") were complete and correct in all material respects as of their respective filing dates, complied as to form in all material respects with the Exchange Act and the applicable accounting requirements, rules and regulations of the SEC promulgated thereunder as of their respective dates and have been prepared in accordance with United States generally accepted accounting principles ("**GAAP**") applied on a consistent basis during the periods involved (except as otherwise noted therein). The Purchaser Financial Statements fairly present the financial condition of Purchaser as of the dates thereof and results of operations, cash flows and stockholders' equity for the periods referred to therein (subject, in the case of unaudited Purchaser Financial Statements, to normal recurring year-end adjustments which were not and will not be material in amount). Without limiting the generality of the foregoing, (i) no independent public accountant of Purchaser has resigned or been dismissed as independent public accountant of Purchaser as a result of or in connection with any disagreement with Purchaser on a matter of accounting principles or practices, financial statement disclosure or auditing scope or procedure, (ii) no executive officer of Purchaser has failed in any respect to make, without qualification, the certifications required of him or her under Section 302 or 906 of the Sarbanes-Oxley Act with respect to any form, report or schedule filed by Purchaser with the SEC since the enactment of the Sarbanes-Oxley Act and (iii) no enforcement action has been initiated or, to the knowledge of Purchaser, threatened against Purchaser by the SEC relating to disclosures contained in any

Purchaser SEC Report. There has been no change in Purchaser's accounting policies except as described in the notes to the Purchaser Financial Statements.

6.8     Purchaser is not in default and neither the execution and delivery of the Transaction Documents nor compliance by Purchaser with the terms and provisions hereof and thereof, will conflict with, or result in a breach or violation of, any of the terms, conditions and provisions of: (i) the Purchaser Corporate Governance Documents, or (ii) any note, indenture, mortgage, lease, agreement, contract, purchase order or other instrument, document or agreement to which Purchaser is a party or by which it or any of its property is bound, or (iii) any law, statute, ordinance, regulation, order, writ, injunction, decree, or judgment of any court or any governmental department, commission, board, bureau, agency or instrumentality in any country in which Purchaser conducts business, with the exception of those judgments listed **Schedule 6.8**. Such execution, delivery and compliance with the Transaction Documents will not (a) give to others any rights, including rights of termination, cancellation or acceleration, in or with respect to any agreement, contract or commitment referred to in this paragraph, or to any of the properties of Purchaser, or (b) except for compliance with any applicable requirements under the Securities Act, the Exchange Act and any requirements of the Over-the-Counter Bulletin Board ("OTCBB"), no consent, approval, order or authorization of, or registration, declaration or filing with any Governmental Body or any other Person is required by or with respect to Purchaser in connection with the execution and delivery of the Transaction Documents or the consummation of the transactions contemplated hereby and thereby, which consent or approval has not heretofore been obtained or will be obtained by Closing.  To the knowledge of Purchaser, no third party is in default under any agreement, contract or other instrument or document to which Purchaser is a party.  To the knowledge of Purchaser, Purchaser is not a party to or bound by any order, judgment, decree or award of any Governmental Body.

6.9     No action, proceeding or governmental inquiry or investigation is pending or, to the knowledge of Purchaser, threatened against Purchaser or any of its officers, directors or employees (in their capacity as such or as shareholders, if applicable), or against any of Purchaser's properties, including, without limitation, assets, licenses and rights transferred to Purchaser under any written agreement or other binding undertaking, or with regard to Purchaser's business, before any court, arbitration board or tribunal or administrative or other governmental agency, nor does Purchaser believe that there is any basis for the foregoing.

7.      **Survival; Indemnification; Limitation of Liability; No Consequential Damages**

7.1     The representations and warranties of each Party hereunder shall survive the Closing and remain in effect for a period of one (1) year thereafter.

7.2     Indemnification. The Seller, on the one side, and Purchaser on the other side (as applicable, the "**Indemnifying Party**") agree to indemnify and hold harmless the Parties of the other side and their respective Affiliates (as applicable, the "**Indemnified Parties**"), against any and all loss, liability, claim, damage and expense whatsoever (including, but not limited to, any and all expenses whatsoever reasonably incurred in investigating, preparing or defending against any litigation commenced or threatened or any claim whatsoever) arising out of or based upon (a) any breach of any of such Party's representations or warranties herein, misrepresentation or warranty or breach or failure by the Indemnifying Party to comply with any covenants or

agreement made by it herein, in the other Transaction Documents or in any other document furnished by it to any of the foregoing in connection with this transaction and (b) any action for securities law violations instituted by an Indemnifying Party which is finally resolved by judgment against such Indemnifying Party.

7.3     Mechanics of Indemnification.   Whenever any claim arises for indemnification under this Agreement or an event which may result in a claim for such indemnification has occurred, the Indemnified Party(ies) will promptly notify the Indemnifying Party of the claim and, when known, the facts constituting the basis for such claim.  The Indemnifying Party shall have the obligation to dispute and defend all such Third Party claims and thereafter so defend and pay any adverse final judgment or award or settlement amount in regard thereto.  Such defense shall be controlled by the Indemnifying Party, and the cost of such defense shall be borne by the Indemnifying Party, provided that the Indemnified Parties shall have the right to participate in such defense at their own expense, unless the Indemnified Parties require their own attorney due to a conflict of interest, in which case, the expense of a single law firm acceptable to such Indemnified Party will be borne by the Indemnifying Party.  The Indemnified Parties shall cooperate in all reasonable respects in the investigation, trial and defense of any such claim at the cost of the Indemnifying Party. If the Indemnifying Party fails to take action within thirty (30) days of notice, then the Indemnified Parties shall have the right to pay, compromise or defend any third party claim, such costs to be borne by the Indemnifying Party.  The Indemnified Parties shall also have the right and upon delivery of ten (10) days advance written notice to such effect to the Indemnifying Party, exercisable in good faith, to take such action as may be reasonably necessary to avoid a default prior to the assumption of the defense of the Third Party claim by the Indemnifying Party, and any reasonable expenses incurred by the Indemnified Parties so acting shall be paid by the Indemnifying Party.  The Indemnifying Party will not settle or compromise any Third Party claim without the prior written consent of the Indemnified Parties, not to be unreasonably withheld.

7.4     Purchaser Indemnification.   Purchaser and ChanBond shall indemnify and hold the Seller harmless with respect to any loss, expense, cost, damage and settlement (collectively, "**Indemnified Expenses**") caused to Seller as a result of Purchaser's or ChanBond's or its Affiliates' actions or omissions with respect to the Patents following the Closing Date, provided Seller is not determined to responsible for such actions as a result of their fraud or intentional misconduct.  In particular, in the event that the enforcement or other activities with the Patents results in litigation or other dispute resolution processes with one or more Third Parties, with Seller being required to be involved or liable for the expenses arising through actions of ChanBond (*e.g.*, being added as a party to the process, even if such joinder is improper, or being subject to Third Party discovery requests or otherwise having any exposure for any claims arising through activities of ChanBond), Purchaser and ChanBond shall, at Seller's request, indemnify Seller all of Seller's Indemnified Expenses arising from that involvement.

7.5     Limitation of Liability.   SELLER'S TOTAL LIABILITY UNDER THE TRANSACTION DOCUMENTS WILL NOT EXCEED THE CASH CLOSING CONSIDERATION ACTUALLY RECEIVED BY SELLER HEREUNDER. THE PARTIES ACKNOWLEDGE THAT THIS LIMITATION ON POTENTIAL LIABILITIES WAS AN ESSENTIAL ELEMENT IN SETTING CONSIDERATION UNDER THE TRANSACTION DOCUMENTS.

7.6    Limitation on Consequential Damages.  NEITHER PARTY WILL HAVE ANY OBLIGATION OR LIABILITY (WHETHER IN CONTRACT, WARRANTY, TORT (INCLUDING NEGLIGENCE) OR OTHERWISE, AND NOTWITHSTANDING ANY FAULT, NEGLIGENCE (WHETHER ACTIVE, PASSIVE OR IMPUTED), REPRESENTATION, STRICT LIABILITY OR PRODUCT LIABILITY), FOR ANY INCIDENTAL, INDIRECT OR CONSEQUENTIAL DAMAGES OR LOSS OF REVENUE, PROFIT, SAVINGS OR BUSINESS ARISING FROM OR OTHERWISE RELATED TO THIS AGREEMENT, EVEN IF A PARTY OR ITS EMPLOYEES HAVE BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

## 8.    Miscellaneous

8.1    Each of the Parties hereto shall perform such further acts and execute such further documents as may reasonably be necessary to carry out and give full effect to the provisions of the Transaction Documents and the intentions of the Parties as reflected thereby.

8.2    Governing Law; Arbitration; Prevailing Party.  This Agreement and all claims or causes of action that may be based upon, arise out of or relate to this Agreement or the Collateral Agreements will be construed in accordance with and governed by the internal laws of the State of Texas applicable to agreements made and to be performed entirely within such State without regard to conflicts of laws principles thereof.  Any dispute arising under or in connection with any matter of any nature (whether sounding in contract or tort) relating to or arising out of this Agreement, shall be resolved exclusively by arbitration.  The arbitration shall be in conformity with and subject to the applicable rules and procedures of the American Arbitration Association. The arbitration shall be conducted before a panel of three (3) arbitrators, with one arbitrator to be selected by each of Seller and Buyer and the third arbitrator to be selected by the arbitrators selected by the Parties.  The Parties agree to be (a) subject to the exclusive jurisdiction and venue of the arbitration in the Eastern District of Texas (b) bound by the decision of the arbitrator as the final decision with respect to the dispute, and (c) subject to the jurisdiction of both of the federal courts of the United States of America or the courts sitting in the Eastern District in the State of Texas for the purpose of confirmation and enforcement of any award.  The prevailing party in any arbitration shall be entitled to recover its costs and expenses (including attorney's fees and expenses) from the non-prevailing party.

8.3    Limitations on Assignment.  Except as expressly permitted in this Section, none of Purchaser or ChanBond may grant or assign any rights or delegate any duties under this Agreement to any Third Party (including by way of a "change in control") or may sell, transfer, or spin-off any of the interests in ChanBond or any of its material assets without the prior written consent of Seller.  Notwithstanding the foregoing, Purchaser shall be permitted to transfer or assign) its rights, interests and obligations under this Agreement, as applicable, without Seller's prior written consent as part of a sale of all or substantially all of its business, equity to, or a change in control transaction with a Third Party acquirer (an "**M&A Transaction**", and an "**Acquirer**," respectively); provided that (a) such transfer or assignment is subject to all of the terms and conditions of this Agreement; and (ii) such Acquirer executes a written undertaking towards Seller agreeing to be bound by all of the terms and conditions of this Agreement with respect to the rights being transferred or assigned.  Except as otherwise expressly limited herein,

the provisions hereof shall inure to the benefit of, and be binding upon, the successors, permitted assigns, heirs, executors, and administrators of the Parties hereto.

8.4     This Agreement and the Schedules hereto constitute the full and entire understanding and agreement between the Parties with regard to the subject matters hereof and thereof and any other written or oral agreement relating to the subject matter hereof existing between the Parties are expressly canceled. Any term of this Agreement may be amended only with the written consent of all Parties thereto. The observance of any term hereof may be waived (either prospectively or retroactively and either generally or in a particular instance) only with the written consent of the party against which such waiver is sought.

8.5     All notices and other communications required or permitted hereunder to be given to a Party to this Agreement shall be in writing and shall be faxed, emailed or mailed by registered or certified mail, postage prepaid, or prepaid air courier, or otherwise delivered by hand or by messenger, addressed to such Party's address as set forth above; or at such other address as the Party shall have furnished to each other Party in writing in accordance with this provision. Any notice sent in accordance with this Section shall be effective (i) if mailed, seven (7) business days after mailing, (ii) if by air courier two (2) business days after delivery to the courier service, (iii) if sent by messenger, upon delivery, and (iv) if sent via facsimile or email, upon transmission and electronic confirmation of receipt or (if transmitted and received on a non-business day) on the first business day following transmission and electronic confirmation of receipt (provided, however, that any notice of change of address shall only be valid upon receipt).

8.6     No delay or omission to exercise any right, power, or remedy accruing to any Party upon any breach or default under this Agreement, shall be deemed a waiver of any other breach or default theretofore or thereafter occurring. Any waiver, permit, consent, or approval of any kind or character on the part of any Party of any breach or default under this Agreement, or any waiver on the part of any Party of any provisions or conditions of this Agreement, must be in writing and shall be effective only to the extent specifically set forth in such writing. All remedies, either under this Agreement or by law or otherwise afforded to any of the Parties, shall be cumulative and not alternative.

*[Signature Page Follows]*

IN WITNESS WHEREOF the Parties have signed this Agreement as of the date first hereinabove set forth.

SELLER:                              **DEIRDRE LEANE**

By: _Deirdre Leane_
Name: _DEIRDRE LEANE_
Date: _29 October 2015_


PURCHASER:                           **UNIFIEDONLINE, INC.**

By: _____
Name: _Rob Howe_
Title: _CEO_
Date: _29 October, 2015_


CHANBOND:                            **CHANBOND, LLC**

By: _Deirdre Leane_
Name: _DEIRDRE LEANE_
Title: _MANAGER_
Date: _29 October 2015_

IN WITNESS WHEREOF the Parties have signed this Agreement as of the date first hereinabove set forth.

SELLER:                        **DEIRDRE LEANE**

By: _Deirdre Leane_
Name: DEIRDRE LEANE
Date: 29 October 2015

PURCHASER:                **UNIFIEDONLINE, INC.**

By: _[signature]_
Name: Rob Howe
Title: CEO
Date: 29 October, 2015

CHANBOND:               **CHANBOND, LLC**

By: _Deirdre Leane_
Name: DEIRDRE LEANE
Title: MANAGER
Date: 29 October 2015

### SCHEDULE 1.3

### Contracts

1. ChanBond, LLC – CBV, Inc. Patent Purchase Agreement dated April 9, 2015
2. ChanBond, LLC – Bentham IMF Litigation Funding Agreement dated September 9, 2015
3. ChanBond, LLC - IPNAV, LLC Advisory Services Agreement dated April 9, 2015
4. ChanBond, LLC - Mishcon de Reya Retention Agreement dated April 20, 2015
5. ChanBond, LLC - Bayard Law Engagement Agreement dated June 8, 2015
6. ChanBond, LLC - Ascenda Law Group Engagement Agreement dated July 14, 2015

## SCHEDULE 2.2.1

### Interest Transfer Deed

**FOR VALUE RECEIVED**, the undersigned, Deirdre Leane ("**Transferor**") hereby assigns, transfers and conveys all of its membership interests in ChanBond, LLC, a Delaware limited liability company (the "**Interests**") to UnifiedOnline, Inc., a Delaware corporation ("**Transferee**") and Transferee hereby accepts the above mentioned Interests.

In witness whereof, we affix our signatures hereto this 27th day of October, 2015.

Transferor:

**Deirdre Leane**

27. October 2015
Date

Transferee:

**UnifiedOnline, Inc.**

10-27-2015
Date

Witness:

Name: Joseph Ghally

10/27/2015
Date

Witness:

Name: B. V. Rodriguez

10-27-2015
Date

<u>SCHEDULE 2.2.3</u>

<u>UnifiedOnline, Inc.'s Board of Directors Resolutions</u>

STATEMENT OF UNANIMOUS
CONSENT TO ACTION TAKEN IN
LIEU OF A
SPECIAL MEETING OF THE BOARD OF
DIRECTORS OF
UNIFIEDONLINE, INC.

In lieu of a special meeting of the board of directors (the "Board") of UnifiedOnline, Inc., a Delaware corporation (the "Corporation"), and in accordance with the Bylaws of the Corporation and §141(f) of the General Corporation Law of the State of Delaware, the undersigned, being all of the members of the Board, do hereby consent to the adoption of, and do hereby adopt, the following resolutions and declare them to be in full force and effect as if they had been duly adopted at a meeting of the Board, duly called, noticed and held:

WHEREAS, the Board deems it to be in the best interests of the Corporation to enter into a Purchase Agreement dated October 26, 2015 (the "Agreement"), in connection with the acquisition of ChanBond, LLC ("ChanBond"), a Delaware limited liability company, the owner of that certain portfolio of Intellectual Property, known as the "ChanBond" patent portfolio, more particularly described as follows:

> The Corporation and CHANBOND agree to an acquisition by the
> Corporation of 100% of the membership interests of CHANBOND for
> consideration generally defined as: 44,700,000 shares of the common
> stock of the Corporation , plus a $5MM 5-Year No-Interest Promissory
> Note, with a Maturity Date of October 27, 2020..

NOW, THEREFORE BE IT RESOLVED, that the Corporation is hereby authorized to enter into the Agreement and the Note.

FURTHER RESOLVED, that any executive officer of the Corporation be, and hereby is authorized, empowered and directed, from time to time, to take such additional action and to execute, certify and deliver to the transfer agent of the Corporation, as any appropriate or proper to implement the provisions of the foregoing resolutions, and be it

FURTHER RESOLVED, that this Consent may be executed in any number of counterparts, each of which shall be deemed to be an original but all of which together will constitute one and the same instrument, and that counterpart signature pages transmitted by facsimile transmission, by electronic mail in portable document format (.pdf) or by any other electronic means intended to preserve the original graphic and pictorial appearance of a document, shall have the same effect as physical delivery of the paper document bearing an original signature.

IN WITNESS WHEREOF, the undersigned members of the Board have executed this Consent as of October 26, 2015.

Robert M. Howe, III

## SCHEDULE 2.2.7

### Common Interest Agreement

THIS COMMON INTEREST AGREEMENT ("**Agreement**") is entered into as of April 9, 2015, by and among **ChanBond, LLC** (the "**Company**") having its principal offices at 2633 McKinney Avenue, Suite 130-501, Dallas, Texas 75204; **UnifiedOnline, Inc.** ("**UnifiedOnline**"), having its principal offices at 4126 Leonard Drive, Fairfax, Virginia 22030; and **Deirdre Leane ("Leane")**, located at 2525 Carlisle Street, Suite 439, Dallas, Texas 75201.

1. <u>Background.</u>

1.1 Company, Unified and Leane are sometimes referred to herein as a **"party"** or the **"parties"** and are presently negotiating the closing of an agreement under which UnifiedOnline will purchase Company from Leane and continue to enforce and license patents and related rights owned by the Company **"IP Rights"** and the **"Patent Matters"** respectively).

1.2 The parties have a common legal interest in upholding the validity and enforceability of the IP Rights, for purposes of enforcement. The parties anticipate they will enforce inherent rights of the IP Rights against third parties through litigation. The parties have agreed to treat their communications and those of their counsel relating to the Patent Matters as protected by the common interest doctrine. Furtherance of the Patent Matters requires the exchange of proprietary documents and information, the joint development of legal strategies and the exchange of privileged information and attorney work product developed by the parties and their respective counsel.

2. <u>Common Interest.</u>

2.1 The parties have a common, joint and mutual legal interest in the monetization of valid and enforceable patents. In furtherance of that common interest, the parties will cooperate with each other, to the extent permitted by law, to share information protected by the attorney-client privilege, the work product doctrine, or other applicable privilege or immunity with respect to the Patent Matters. Any counsel or consultant retained by a party or their counsel to assist in the Patent Matters shall be bound by, and entitled to the benefits of this Agreement.

2.2 In order to further their common interest, the parties and their counsel may exchange privileged and work product information, orally and in writing, including, without limitation, factual analyses, mental impressions, legal memoranda, source materials, draft legal documents, evidence of use materials, claims charts, prosecution history files and other information (hereinafter **"Common Interest Materials"**). The sole purpose of the exchange of the Common Interest Materials is to support the parties' common interest with respect to the enforcement for the Patent Matters. Any Common Interest Materials exchanged shall continue to be protected under all applicable privileges and no such exchange shall constitute a waiver of any applicable privilege or protection. Nothing in this Agreement requires a party to share information with the other party.

3. <u>Nondisclosure.</u>

3.1 The parties and their counsel shall use the Common Interest Materials solely in connection with the Patent Matters and shall take appropriate steps to protect the privileged and confidential nature of the Common Interest Material. No party nor

their respective counsel shall produce privileged documents or information unless or until directed to do so by a final order of a court of competent jurisdiction, or upon the prior written consent of the other party. No privilege or objection shall be waived by a party hereunder without the prior written consent of the other party.

3.2    Except as herein provided, in the event that either party or its counsel is requested or required in the context of a litigation, governmental, judicial or regulatory investigation or other similar proceedings (by oral questions, interrogatories, requests for information or documents, subpoenas, civil investigative demands or similar process) to disclose any Common Interest Materials, the party or its counsel shall assert all applicable privileges, including, without limitation, the common interest doctrine, and shall immediately inform the other party and the other party's counsel of the request or requirement to disclose.

4.    Relationship; Additions; Termination.

4.1    This Agreement does not create any agency or similar relationship among the parties. Through the term of the agreement between the parties, or any other agreement requiring confidentiality, (whichever term is longer), no party nor their respective counsel has the authority to waive any applicable privilege or doctrine on behalf of any other party.

4.2    Nothing in this Agreement affects the separate and independent representation of each party by its respective counsel or creates an attorney-client relationship between the counsel for a party and the other party to this Agreement.

4.3    This Agreement shall continue until terminated upon the written request of either party. Upon termination, each party and their respective counsel shall return any Common Interest Material furnished by the other party. Notwithstanding termination, this Agreement shall continue to protect all Common Interest Materials disclosed prior to termination. Sections 3 and 5 shall survive termination of this Agreement.

5.    General Terms.

5.1    This Agreement is governed by the laws of the State of Delaware, without regard to its choice of law principles to the contrary. In the event any provision of the Agreement is held by any court of competent jurisdiction to be illegal, void or unenforceable, the remaining terms shall remain in effect. Failure of either party to enforce any provision of this Agreement shall not be deemed a waiver of future enforcement of that or any other provision.

5.2    The parties agree that a breach of this Agreement would result in irreparable injury, that money damages would not be a sufficient remedy and that the disclosing party shall be entitled to equitable relief, including injunctive relief, as a non-exclusive remedy for any

such breach.

5.3    Notices given under this Agreement shall be given in writing and delivered by messenger or overnight delivery service as set forth below, and shall be deemed to have been given on the day received:

ChanBond, LLC
2633 McKinney Avenue
Suite 130-501
Dallas, TX 75204

UnifiedOnline, Inc.
4126 Leonard Drive
Fairfax, VA 22030

Deirdre Leane
2525 Carlisle Street
Suite 439
Dallas, TX 75201

5.4    This Agreement is effective and binding upon each party as of the date it is signed by or on behalf of a party and may be amended only by a writing signed by or on behalf of each party. This Agreement may be executed in counterparts. Any signature reproduced or transmitted via email of a .pdf file, photocopy, facsimile or other process of complete and accurate reproduction and transmission shall be considered an original for purposes of this Agreement.


***The remainder of this page has been intentionally left blank.**

IN WITNESS WHEREOF, CHANBOND, LLC, UNIFIEDONLINE, INC. and DEIRDRE LEANE have executed this Common Interest Agreement by their duly authorized representatives.

CHANBOND, LLC

By: _____
    (Signature)

Name: DEIRDRE LEANE

Title: MANAGER

UNIFIEDONLINE, INC.

By: _____
    (Signature)

Name: Rob Howe

Title: CEO

DEIRDRE LEANE

By: _____
    (Signature)

Name: DEIRDRE LEANE

Title: DR.

## SCHEDULE 2.2.8

### Promissory Note

THE SECURITIES REPRESENTED HEREBY HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, OR APPLICABLE STATE SECURITIES LAWS. THE SECURITIES MAY NOT BE OFFERED FOR SALE, SOLD, TRANSFERRED OR ASSIGNED (I) IN THE ABSENCE OF (A) AN EFFECTIVE REGISTRATION STATEMENT FOR THE SECURITIES UNDER THE SECURITIES ACT OF 1933, AS AMENDED, OR APPLICABLE STATE SECURITIES LAWS OR (B) AN OPINION OF COUNSEL, IN A GENERALLY ACCEPTABLE FORM, THAT REGISTRATION IS NOT REQUIRED UNDER SAID ACT OR APPLICABLE STATE SECURITIES LAWS OR (II) UNLESS SOLD PURSUANT TO RULE 144 UNDER SAID ACT. NOTWITHSTANDING THE FOREGOING, THE SECURITIES MAY BE PLEDGED IN CONNECTION WITH A BONA FIDE MARGIN ACCOUNT OR OTHER LOAN OR FINANCING ARRANGEMENT SECURED BY THE SECURITIES.  ANY TRANSFEREE OF THIS NOTE SHOULD CAREFULLY REVIEW THE TERMS OF THIS NOTE.  THE PRINCIPAL AMOUNT REPRESENTED BY THIS NOTE MAY BE LESS THAN THE AMOUNTS SET FORTH ON THE FACE HEREOF.

## UNIFIEDONLINE, INC.

## PROMISSORY NOTE

Principal Amount: $5,000,000                          Original Issuance Date: October 27, 2015

FOR VALUE RECEIVED UnifiedOnline, Inc., a Delaware corporation (the "Company"), promises to pay to Deirdre Leane, an individual, of 2525 Carlisle St., Suite 439, Dallas, TX 75201 (the "Holder") an aggregate principal amount of Five Million Dollars ($5,000,000.00) (representing the Cash Payment as provided for and defined in the Interest Sale Agreement dated as of the date hereof (the "Interest Sale Agreement"), to which the Company and the Holder are parties) payable on or prior to October 27, 2020 (the "Maturity Date"), provided, however, that if this Note is not paid in full by the Maturity Date, the aggregate principal amount of this Note shall be increased by Twenty Five Thousand Dollars ($25,000.00) for each month such payment is delayed (or *pro rata* portion thereof) until paid in full (the "New Principal Balance").

The following is a statement of the rights of the Holder of this Note and the conditions to which this Note is subject, and to which the Holder, by the acceptance of this Note, agrees:

1.      Event of Default.

        (a)     For purposes of this Note, an "Event of Default" means:

                (i)      the Company shall default in the payment of principal on this Note on or prior to the applicable Maturity Date; or

                (ii)     the Company shall be in breach of any obligation, covenant or representation made in this Note or the Interest Sale Agreement; or

                (iii)    the Company shall (a) become insolvent; (b) dissolve or terminate its existence; (c) admit in writing its inability to pay its debts generally as they mature; (d) make an assignment for the benefit of creditors or commence proceedings for its

EXHIBIT L

REDACTED

EXHIBIT M

# United States Court of Appeals
# for the Federal Circuit

_____

**ANTENNASYS, INC.,**
*Plaintiff-Appellant*

**v.**

**AQYR TECHNOLOGIES, INC., WINDMILL
INTERNATIONAL, INC.,**
*Defendants-Appellees*

_____

2019-2244

_____

Appeal from the United States District Court for the
District of New Hampshire in No. 1:17-cv-00105-PB, Judge
Paul J. Barbadoro.

_____

Decided: October 7, 2020

_____

STEVEN JAY GROSSMAN, Grossman Tucker Perreault &
Pfleger, PLLC, Manchester, NH, for plaintiff-appellant.

LAURA CARROLL, Burns & Levinson LLP, Boston, MA,
for defendants-appellees. Also represented by ERIC G.J.
KAVIAR.

_____

Before O'MALLEY, BRYSON, and REYNA, *Circuit Judges.*

O'MALLEY, *Circuit Judge.*

There is little more frustrating for a district court judge than to have the parties jointly lead you down a wrong, and possibly unnecessary, path. That is what occurred here. Unfortunately, many threshold issues that may have obviated the need for either claim construction or an infringement verdict remain unresolved. At first blush, this is a patent infringement case, with the only dispute before us concerning the district court's construction of one claim term in United States Patent No. 7,432,868 ("the '868 patent"). But it is equally likely that Plaintiff's sole federal question count (patent infringement) is predicated on an impermissible theory of liability and that the district court had no jurisdiction over the remaining state law claims. Recognizing that we do not have the benefit of a complete factual record on some of the underlying questions, we vacate and remand.

## Background

This case comes to us from the United States District Court for the District of New Hampshire's grant of summary judgment for Windmill International, Inc. and AQYR Technologies, Inc. (collectively, "Defendants") on Plaintiff AntennaSys, Inc.'s patent infringement and related state law claims. The '868 patent, directed to portable antenna positioners, has two named inventors. The inventors each assigned their interest in the patent to their respective employers—AntennaSys and Windmill. The parties entered into a license agreement pursuant to which Windmill acquired an exclusive license to AntennaSys's one-half interest in the patent in two separate markets—the United States Federal Marketplace (sales to the United States Government) and the commercial marketplace (sales outside the Federal Marketplace). J.A. 108–09.

In exchange for the exclusive right and license in the commercial marketplace to AntennaSys's interest in the patent, Windmill agreed to pay AntennaSys three percent of the gross sales price for each unit of products covered by

the patent.  Under Section 4.A.4 of the agreement, if Windmill fails to meet certain minimum sales requirements in the commercial marketplace, its exclusive license to AntennaSys's interest becomes non-exclusive.  J.A. 109.  If that occurs, either party has the right to exploit the patent in the commercial marketplace, just as they would in the absence of any agreement.  As to enforcement of the patent, the agreement provides that, if Windmill loses its exclusivity, either party has the right to commence a lawsuit against "third party" infringers.  J.A. 111.  The parties do not dispute that Windmill did, in fact, fail to meet the sales requirements of the agreement, such that its license to AntennaSys's one-half interest in the patent should now be non-exclusive.

As part of this transaction, the parties also agreed that "Windmill shall create" an LLC and "shall own the entire membership interest in the LLC."  J.A. 108.  This LLC was to own both Windmill's own interest in the patent and Windmill's license to AntennaSys's interest in the patent.  There appears to be no dispute that Windmill did create such an LLC, called GBS Positioner LLC.

In March 2017, AntennaSys sued AQYR Technologies, Inc., Windmill's wholly-owned subsidiary, for infringement of the '868 patent.  It separately filed an arbitration claim against Windmill based on an alleged failure to pay royalties for sales of the accused products pursuant to the license agreement.   The parties agreed to dismiss the arbitration without prejudice and to proceed in district court in the same suit that AntennaSys had filed against AQYR.  Accordingly, the amended complaint contains five state law counts (against Windmill, AQYR, or both defendants), and one count of patent infringement (against AQYR).   Following claim construction, AntennaSys conceded that it could not prevail on its patent infringement claim under the court's construction of one of the claim terms.  Apparently motivated by a desire to moot AQYR's affirmative defenses of invalidity and unenforceability of

the patent in suit, AntennaSys sought summary judgment of non-infringement. J.A. 1170–71. AntennaSys asserted that the court's construction of the disputed claim term precludes it "from advancing [both] a patent infringement liability case against defendants as well as . . . state law claims." J.A. 1172. After conducting a hearing—during which AntennaSys agreed that it could not succeed on any of its state law claims absent a finding of patent infringement—the district court entered judgment for Windmill and AQYR. J.A. 1 n.1; J.A. 1369–99. AntennaSys timely appealed.[1]

## DISCUSSION

In reviewing the grant of a motion for summary judgment we apply the law of the regional circuit in which the district court sits, here, the First Circuit. *AbbVie Deutschland GmbH & Co., KG v. Janssen Biotech, Inc.*, 759 F.3d 1285, 1295 (Fed. Cir. 2014). The First Circuit reviews a grant of summary judgment de novo. *Santiago-Diaz v. Rivera-Rivera*, 793 F.3d 195, 199 (1st Cir. 2015).

On appeal, AntennaSys challenges the district court's claim construction. Defendants argue, however, that we

---

[1]    Defendants filed a notice of cross-appeal, but AntennaSys moved to dismiss that cross-appeal as improperly directed to AQYR's affirmative defense of patent invalidity. We granted AntennaSys's motion, explaining that it was improper for AQYR to pursue its cross-appeal because the judgment was entirely in AQYR's favor and the district court "did not enter a final judgment against AQYR on invalidity, but only issued a claim construction order briefly touching upon the issue of indefiniteness[.]" Order, *AntennaSys, Inc. v. AQYR Techs., Inc.*, No. 19-2244, at *3 (Fed. Cir. Dec. 5, 2019). Notably AQYR did not seek a declaratory judgment of invalidity, asserting invalidity only as an affirmative defense to the claim of infringement.

need not address the merits of this appeal because AntennaSys "lacks standing" to bring a patent infringement claim absent joinder of Windmill as a co-plaintiff.  As discussed below, although Defendants' arguments are based on an incorrect view of current law, we agree that, in this case, whether a patent co-owner must be joined is a threshold issue that must be resolved first.  We conclude, moreover, that no judgment on infringement should be entered without first resolving AQYR's affirmative defense that it was authorized by a co-owner to practice the '868 patent. This is important because, if AQYR was never a proper party to these proceedings, as noted below, the district court had no jurisdiction over them.

### A.

Absent agreement to the contrary, "each of the joint owners of a patent may make, use, offer to sell, or sell the patented invention within the United States, or import the patented invention into the United States, without the consent of and without accounting to the other owners."  35 U.S.C. § 262.  We have explained that "the congressional policy expressed by section 262 is that patent co-owners are at the mercy of each other."  *Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1468 (Fed. Cir. 1998) (internal quotations omitted).  Thus, "by granting a license . . . a patent co-owner can effectively deprive its fellow co-owner of the right to sue for and collect any infringement damages that accrue after the date of the license," but not already-accrued damages for past infringement.  *Schering Corp. v. Roussel-UCLAF SA*, 104 F.3d 341, 345 (Fed. Cir. 1997).

"An action for infringement," moreover, "*must join as plaintiffs* all co-owners."  *Ethicon*, 135 F.3d at 1467 (emphasis added).  We have recognized two exceptions to this statutory requirement:  (1) "when any patent owner has granted an exclusive license, he stands in a relationship of trust to his licensee and must permit the licensee to sue in his name;" and (2) "[i]f, by agreement, a co-owner waives

his right to refuse to join suit, his co-owners may subsequently force him to join in a suit against infringers." *Ethicon*, 135 F.3d at 1468 n.9 (citing *Indep. Wireless Tel. Co. v. Radio Corp. of Am.*, 269 U.S. 459, 469 (1926) and *Willingham v. Lawton*, 555 F.2d 1340, 1344–45 (6th Cir. 1977)). We have also held that a non-consenting co-owner or co-inventor can never be involuntarily joined in an infringement action pursuant to Rule 19 of the Federal Rules of Civil Procedure because "the right of a patent co-owner to impede an infringement suit brought by another co-owner is a substantive right." *STC.UNM v. Intel Corp.*, 754 F.3d 940, 946 (Fed. Cir. 2014).[2]

Citing the above legal principles, Defendants assert that we lack jurisdiction over this appeal because AntennaSys "lacks standing" to sue for infringement absent joinder of Windmill as a co-plaintiff. Appellees' Br. 12–13. And, AQYR separately asserts that it was authorized by Windmill to practice the '868 patent as a licensee. *Id.* at 17 n.10. We note, as we have in other recent cases, that, following the Supreme Court's guidance in *Lexmark International, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 n.4 (2014), it is improper to discuss requirements for establishing a statutory cause of action in terms of "standing." *See, e.g., Schwendimann v. Arkwright Advanced Coating, Inc.*, 959 F.3d 1065, 1071 (Fed. Cir. 2020)

---

[2]     We are bound by the existing law of this Circuit on this point. As I explained in my opinion dissenting from the denial of the petition for rehearing en banc in *STC.UNM v. Intel Corp.*, 767 F.3d 1351, 1358–67 (Fed. Cir. 2014) (O'Malley, J., dissenting), however, and in my concurrence in *Advanced Video Techs. LLC v. HTC Corp.*, 879 F.3d 1314, 1319–26 (Fed. Cir. 2018) (O'Malley, J., concurring), I continue to disagree with the court's declaration of a substantive patent right that trumps application of Rule 19.

("Supreme Court precedent ma[kes] clear that our earlier decisions treating the prerequisites of the Patent Act as jurisdictional were wrong."); *Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*, 925 F.3d 1225, 1235 (Fed. Cir. 2019) ("[S]o-called 'statutory standing' defects do not implicate a court's subject-matter jurisdiction[.]"). AntennaSys's failure to join Windmill as a co-plaintiff impacts AntennaSys's ability to satisfy the statutory prerequisites for bringing an infringement suit; it does not impact AntennaSys's Article III standing. As we explained in *Ethicon*, the rule that a patent co-owner may refuse to voluntarily join suit, thereby frustrating an infringement suit by another co-owner, "finds support in section 262 of the Patent Act[.]" 135 F.3d at 1468. Thus, contrary to characterizations of the issue in our pre-*Lexmark* case law, the statutory requirements of section 262 are not jurisdictional in nature.

Despite their non-jurisdictional nature, we agree that whether AntennaSys meets these statutory prerequisites for bringing an infringement claim is a threshold question that both we and the district court must resolve before reaching the district court's claim construction and summary judgment rulings. Put simply, if AntennaSys does not meet the statutory requirements for bringing its patent infringement claim against AQYR, either because Windmill was not joined as a co-plaintiff or because AntennaSys does not adequately state a claim under the Patent Act against AQYR, we need not delve into the district court's claim construction.[3]

---

[3] As we explain below, this holds true even in the presence of AntennaSys's state law claims that require an underlying finding of infringement.

## B.

Having determined that we must address Defendants' § 262 argument as a threshold issue, we consider whether: (1) Defendants waived their § 262 challenge; and (2) Defendants' substantive arguments have merit.

We first consider whether Defendants have waived their § 262 challenge by failing to raise the argument earlier. Defendants' only explanation in this regard is that "[t]he lack of standing issue became of practical importance only after AntennaSys dismissed its state law claims to secure the ability to appeal." Appellees' Br. 5 n.2. As discussed above, this is not an issue of a lack of subject matter jurisdiction—a defense that may be considered at any point in the proceeding. As we explained in *Lone Star*, "following *Lexmark*, several courts have concluded that motions to dismiss based on 'statutory standing' defects are properly brought under Rule 12(b)(6) rather than Rule 12(b)(1) in recognition of the fact that such defects are not jurisdictional." *Lone Star*, 925 F.3d at 1235. Under Rule 12(h)(2), moreover, the defense of failure to state a claim for relief may be asserted in a responsive pleading or a motion for judgment on the pleadings, or in a motion to dismiss at trial. *See* Charles Alan Wright & Arthur R. Miller, *5C Fed. Prac. & Proc. Civ.* § 1392 (3d ed.). And as the First Circuit has held, such a defense may not be presented for the first time on appeal absent "unusual circumstances." *See Brown v. Trs. of Bos. Univ.*, 891 F.2d 337, 357 (1st Cir. 1989); *Brule v. Southworth*, 611 F.2d 406, 410 (1st Cir. 1979) (failure to contest issue of whether plaintiffs had made out a federal claim in the district court, "must be taken as conce[ssion] that plaintiffs did state a claim, and we accordingly find the issue foreclosed on appeal").

Constricting our ability to resolve the issue, however, is the procedural path through which this case came to us on appeal. The district court's grant of summary judgment depended on concessions the parties made during a hearing

following AntennaSys's motion for summary judgment. *See* J.A. 1372–1374. Thus, depending on the nature of those concessions, and the court's interactions with the parties, it may be that Windmill has not waived this defense because it remained live pending a trial that never occurred or that this case presents "unusual circumstances" warranting consideration of the issue even after final judgment. We decline to read into the appellate record a waiver that the district court is better positioned to address.

We note, moreover, that, even if Windmill did waive its right to assert its ability as a co-owner to refuse to join an infringement suit against AQYR, AntennaSys does not assert that AQYR waived any of its affirmative defenses. Specifically, there is no assertion or indication in the record that AQYR waived the claim that it is a non-infringer by virtue of its alleged license to practice the patent. Thus, whether Windmill waived any of its rights may be irrelevant if AQYR, which appears to be a separately incorporated entity (whether wholly-owned or not), did not waive its own rights. Again, the current record prevents us from making this determination.

Unfortunately, the parties' substantive arguments as to joinder of Windmill as a co-plaintiff fare no better. Defendants argue that, as a mere co-owner, AntennaSys may neither sue AQYR for infringement on its own, nor join Windmill as an involuntary co-plaintiff. Appellees' Br. 12. They also allege that neither of our two recognized exceptions to the requirement of joinder of a patent co-owner apply in this case—*i.e.*, this is neither an infringement suit brought by an exclusive licensee, nor is there a contractual waiver of Windmill's right to refuse to join suit. *Id.* at 18–19 (citing *STC.UNM*, 754 F.3d at 946). As to the first exception, Defendants contend—and AntennaSys does not dispute—that AntennaSys is not Windmill's exclusive licensee. *Id.* at 19. As to the second exception, Defendants insist that Windmill never waived its right to refuse to join

suit as a co-owner of the patent, as required for AntennaSys to proceed against AQYR in Windmill's absence. They contend that AQYR is not a "third party" within the meaning of the agreement because it is a wholly-owned subsidiary, such that the provision discussing AntennaSys's right to sue third parties cannot apply to claims against AQYR. *Id.*

In response, AntennaSys does not contend that AQYR is a third party under the agreement. Rather, it appears to ask that we recognize that the § 262 requirement of joinder of all co-owners does not apply in the circumstances of this case. It argues that, underlying the § 262 requirement, is the principle that an accused infringer is entitled to avoid multiple suits for the same acts on the same patents. Here, AntennaSys contends, there is no risk that Windmill, as a defendant and co-owner, can incur duplicate liability by suing its own subsidiary, and thus, there is no need to join Windmill as a co-plaintiff. Appellant's Reply Br. 12–13. In addition, AntennaSys argues that joinder of Windmill as a plaintiff-patentee is not required because the joinder rule does not apply "where the patentee is the infringer, and must sue itself." Appellant's Reply Br. 13-14 (citing *Ortho Pharm. Group v. Genetics Inst., Inc.*, 52 F.3d 1324, 1325 (Fed. Cir. 1995)). We conclude that neither sides' arguments help resolve the dispute.

In advancing their confusing and potentially meritless theories, the parties make certain critical omissions. Neither party addresses, in any meaningful way, Windmill's right as a co-owner, to license the '868 patent "without the consent of and without accounting to" AntennaSys. 35 U.S.C. § 262; *see also Schering Corp.*, 104 F.3d at 344–45 ("[T]he right to license" and "the right to bring suit for infringement of the patent without the other co-owner's voluntarily joining the suit," are "not incompatible, and the granting of one does not necessarily imply the relinquishment of the other."). Absent agreement to the contrary, Windmill had every right to license the patent, and to the

extent AQYR obtained an express or implied license from any patent co-owner, AQYR's activities are authorized and non-infringing. Accordingly, even if we were to conclude that AQYR is a third party within the meaning of the agreement (which, as noted, AntennaSys has not claimed), and that Windmill waived the right to refuse to join suit against third parties, we must also consider whether the agreement limits Windmill's right, under 35 U.S.C. § 262, to practice the '868 patent as a co-owner or AQYR's right to engage in duly licensed activity.

Our review of the agreement produces more confusion than clarity, however. The agreement provides that Windmill "shall create" an LLC, which is to own both Windmill's one-half undivided interest in the patent and Windmill's license in AntennaSys's interest in that same patent. J.A. 0108. The agreement further provides that Windmill "shall assign" the parties' agreement to the LLC. *Id.* There appears to be no dispute that Windmill did, in fact, create such an LLC, called GBS Positioner. In their briefing, the parties do not address GBS Positioner's role, nor do they explain why, as the presumptive co-owner-by-assignment of Windmill's interest in the '868 patent, GBS Positioner is not an indispensable party to this litigation.[4] The briefing and the record before us is also unclear on whether there exists an express or implied license from a patent co-owner to the alleged infringer. Citing to the pleadings, Windmill asserts that it has expressly permitted AQYR to practice the asserted patent, and that its provision of a product to AQYR to sell "extended an implied license to practice the '868 [p]atent." Appellees' Br. 17 n.10; *see also* J.A. 0200 (AQYR's Seventeenth Affirmative Defense stating its

---

[4]    Defendants admit in their respective Answers that GBS Positioner "currently holds Windmill's one-half interest in *certain* patents." J.A. 0181 ¶14; J.A. 0192 ¶14 (emphasis added).

"activity is permitted by an express or implied license"). On the record before us, we cannot ascertain whether Windmill's (and AQYR's) assertion to that effect is true or whether GBS Positioner, the presumptive co-owner-by-assignment, granted AQYR an express or implied license to practice the patent in suit. Without the benefit of underlying factual findings from the district court, we refuse to address whether the agreement limits one patent co-owner's right to practice the patent in a way that prevents it from issuing a license to the alleged infringer, or whether the patent infringement claim should be dismissed because an express or implied license exists.

Accordingly, we remand for the district court to address these issues in the first instance. On remand, the district court should resolve all factual issues pertaining to AntennaSys's ability to bring its patent infringement claim against AQYR, including: (1) whether Windmill waived the right to object to AntennaSys's failure to meet the § 262 prerequisite, via the license agreement or otherwise; (2) whether GBS or Windmill holds or retains ownership interest in the '868 patent; (3) whether AntennaSys's patent infringement suit is barred under § 262 because there exists an express or implied license from the real patent owner to AQYR; and, (4) the timing of any such license.

## C.

Finally, we address why, in the event AntennaSys's patent infringement claim against AQYR should be dismissed—either due to absence of a co-owner or the existence of an implied license from a co-owner to the accused infringer—the district court's claim construction may still be unnecessary.

Even where federal law does not create the cause of action asserted, federal jurisdiction extends to a "special and small category" of cases in which a well-pleaded complaint establishes that "a federal law issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and

(4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013). AntennaSys argues that its state law claims provide "an independent basis for district court and appellate jurisdiction." Appellant's Reply Br. 7–12. Citing a case from this court that long predates *Gunn v. Minton*, it contends that, whenever a state-court claim requires a court to engage in claim construction, the claim necessarily arises under the Patent Act. Appellant's Reply Br. 8, 10 (citing *U.S. Valves Inc. v. Dray*, 212 F.3d 1368, 1372 (Fed. Cir. 2000)). We disagree.

At the very least, AntennaSys cannot meet the "substantiality" prong of the analysis. Substantiality looks to "the importance of the issue to the federal system as a whole." *Gunn*, 568 U.S. at 260. A substantial federal issue may exist where (1) the federal issue is purely a question of law, rather than one that is "fact-bound and situation-specific"; (2) the Federal government has a direct interest in the issue, such as where the availability of a federal forum to vindicate the government's own administrative action is implicated; or, (3) if the court's resolution of the issue will control numerous other cases. *See NeuroRepair, Inc. v. The Nath Law Grp.*, 781 F.3d 1340, 1345 (Fed. Cir. 2015) (citing *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 700 (2006) and *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 315 (2005)). These factors are non-exclusive and "none . . . is necessarily controlling." *Id.* Here, the federal issue—infringement of the patent in suit—is fact-bound and situation-specific. This case does not present a context-free interpretation of a patent statute, but requires merely that the court apply patent law to the facts of the case. As *Gunn* makes clear, it is not enough to suggest that there is an interest in uniform application of patent law, or that the federal courts are uniquely-situated to resolve the patent law question presented. *Gunn*, 568 U.S. at 261–62; *see also Inspired Dev. Grp., LLC v. Inspired Prods. Grp., LLC*, 938

F.3d 1355, 1365–67 (2019). If that were enough to support a finding of "substantiality," we would find jurisdiction in any case implicating a patent law issue. Indeed, "state courts can be expected to hew closely to the pertinent federal precedents" in resolving the infringement dispute at issue. *Gunn*, 568 U.S. at 262. Finally, we do not believe resolution of this case would control numerous other cases.[5]

In sum, to the extent the district court concludes that AntennaSys's patent infringement claim—the sole federal question count in the lawsuit—should be dismissed, the district court had no independent jurisdiction over the state law counts in AntennaSys's complaint. Accordingly, if the patent infringement count is dismissed, this case belongs in state court.[6]

## CONCLUSION

This exercise has been an extremely frustrating one for the court. We suspect the district court will feel the same way. But just as bad facts can make bad law, misdirected lawyering can do the same. We refuse to take the parties' invitation to rule on these issues in the first instance and on an incomplete record. For the foregoing reasons, we must vacate the district court's grant of summary judgment and remand for proceedings consistent with this opinion.

## VACATED AND REMANDED

---

[5]    To the extent *U.S. Valves* is to the contrary, that precedent was abrogated by *Gunn* and our subsequent case law applying *Gunn*.

[6]    Because we are not privy to the parties' discussions regarding Windmill's waiver of arbitration, we express no view on the continued vitality of that waiver in light of our ruling.

ANTENNASYS, INC. v. AQYR TECHNOLOGIES, INC.                    15

## COSTS

The parties shall bear their own costs.