IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE CHANBOND, LLC, PATENT LITIGATION | ) ) ) ) ) ) ) ) ) ) | C.A. No. 15-842 (RGA)<br>CONSOLIDATED<br><br>REDACTED -- PUBLIC VERSION |

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF
THEIR MOTION TO REOPEN FACT DISCOVERY
<u>FOR LIMITED INVESTIGATION OF STANDING ISSUES</u>**

OF COUNSEL:

Thomas M. Melsheimer
WINSTON & STRAWN LLP
2121 North Pearl Street, Suite 900
Dallas, TX 75201
(214) 453-6500

Michael L. Brody
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, IL  60601
(312) 558-5600

David P. Enzminger
Nimalka Wickramasekera
WINSTON & STRAWN LLP
333 S. Grand Avenue
Los Angeles, CA  90071-1543
(213) 615-1780

Krishnan Padmanabhan
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY  10166-4193
(212) 294-6700

Original Filing Date:  November 5, 2020
Redacted Filing Date:  November 13, 2020

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Jennifer Ying (#5550)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
jying@mnat.com

*Attorneys for Defendants*

**TABLE OF CONTENTS**

                                                                                                          **Page**

I. Introduction ............................................................................................................. 1

II. **Supplemental Statement of Facts** ........................................................................ 2

    A. **Leane Alleges the ASA Entitles Her to a Major Stake in the Delaware Cases.** ............................................................................................ 2

    B. **Leane Alleges that ChanBond Withheld the ASA, Manufactured Documents to Cover Its Tracks, and Fraudulently Eliminated Her Interests.** ................................................................................................... 3

    C. **Leane's Complaints Reveal that ChanBond Failed to Produce Numerous Additional Documents Regarding Rights in the Patents.** .................................................................................................... 4

III. **Argument** ............................................................................................................. 5

    A. **ChanBond's Purposeful Withholding of Documents Alone Provides Good Cause to Reopen Discovery.** ....................................................... 5

    B. **Leane's Complaint Raises Standing Issues, and Defendants Should Have an Opportunity to Take Appropriate Discovery.** ....................... 7

    C. **ChanBond's Cited Case Law Is Inapposite.** ..................................................... 8

    D. **Leane's Complaints May Have Substantial Impact in These Cases.** ............................................................................................................ 10

IV. Conclusion .......................................................................................................... 10

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Immunex Corporation v. Sandoz Inc.*,
    964 F.3d 1049, 1062 (Fed. Cir. 2020)......................................................................................8

*Int'l Constructions Products LLC v. Caterpillar Inc., et al.,.*,
    C.A. 15-108-RGA, 2018 WL 4611216, at *2 (D. Del. Sep. 26, 2018) .....................................6

*Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*,
    925 F. 3d 1225, 1231 ( Fed. Cir. 2019).....................................................................................7

*Propat Int'l Corp. v. Rpost, Inc.*,
    473 F.3d 1187 (Fed. Cir. 2007).................................................................................................7

*Roquette Freres v. SPI Pharma, Inc.*,
    C.A. 06–540–GMS, 2009 WL 1444835 (D. Del. May 21, 2009). ....................................... 6-7

*Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A.*,
    944 F.2d 870 (Fed. Cir. 1991)...................................................................................................7

*XCoal Energy & Res. v. Bluestone Energy Sales Corp.*,
    C.A. 18-CV-819-LPS, 2020 WL 5369109 (D. Del. Sep. 8, 2020)...........................................8

## TABLE OF EXHIBITS

| EXHIBIT | DESCRIPTION |
|---|---|
| N | N.D. Texas Docket Sheet - *Leane v. Unified Online, Inc. and ChanBond, LLC* |
| O | Texas Complaint – Removal Notice |
| P | Leane Arbitration Request, Temporary Restraining Order Request, Ex.A |
| Q | New York Complaint – *Leane v. Mishcon de Reya et al.* |
| R | Leane Tr., dated April 24, 2018 |
| S | Advisory Services Agreement ("ASA") |
| T | Temporary Restraining Order Request |
| U | Termination of Services Agreement (CHANBOND_015123) |

I.      **Introduction**

Defendants moved to reopen discovery to obtain documents from Ms. Deirdre Leane ("Leane"), ChanBond, and Unified Online ("UOL") prompted by an email from Ms. Leane's counsel alleging that she exercised control over the patents in suit. In the past week, extraordinary revelations detail that the dispute stems from allegations of fraud and litigation misconduct against ChanBond's counsel. Amazingly, ChanBond's opposition is strikingly silent on all of this. D.I. 529.

First, Defendants learned that on September 22, Leane filed a complaint in New York State Court for legal malpractice against ChanBond's counsel (King Wood Mallesons[1] or KWM)—formerly also Leane's counsel—alleging misconduct, including the strategic withholding of relevant documents in the thirteen litigations in this Court ("Delaware Cases") for the purpose of obtaining litigation advantage, and the manufacturing of documents to cover up those discovery failures and hide Leane's interests. Ex. Q (N.Y. Compl.) ¶¶ 39-43. That complaint seeks removal of ChanBond's counsel, and disgorgement of their 25% share of revenue, from the Delaware cases. Ex. Q (N.Y. Compl.) at 29.

Second, it has also come to light that Ms. Leane filed an action in Texas State Court on September 29, alleging fraudulent misappropriation of Leane's interest in the Delaware Cases, breach of ChanBond's and UOL's contractual obligations, and seeking a judgment that would return complete ownership of ChanBond to Leane. Ex. P (Arb. Req.). That case was removed to the Northern District of Texas on October 9 (Exs. N, O), and based on the parties' representations during a November 4 hearing in that court, Defendants understand that Leane, ChanBond, and

---

[1] The same attorneys from KWM were previously at Mishcon de Reya ("Mishcon"), and have continuously represented ChanBond in this litigation. The New York complaint names KWM, Mishcon, as well as Mr. Whitman and Mr. Raskin individually.

UOL will proceed to arbitration to decide their respective rights.

Remarkably, ChanBond never informed the Court or Defendants of these parallel litigations, despite the fact that these legal actions flesh out the substantial nature of the dispute between Leane and the current principals of Chanbond which initially surfaced in Leane's September 2 email. (D.I. 525, Ex. E.). Defendants seek to reopen discovery to obtain the improperly withheld documents from ChanBond, Leane, and UOL, as they impact issues including standing, and a license to a vendor of accused equipment (Technicolor). Defendants also seek discovery concerning the new allegations of litigation misconduct. And because these newly discovered lawsuits may have substantial implications on the Delaware Cases, Defendants request a conference with the Court to consider whether some or all of these proceedings should be deferred pending resolution of the ownership and malpractice litigation. The full implications of these new allegations are not clear, but what is beyond question is that Defendants should receive a thorough opportunity to understand their implications.

## II. Supplemental Statement of Facts

### A. Leane Alleges the ASA Entitles Her to a Major Stake in the Delaware Cases.

In the 2013-2014 timeframe, Leane, while a principal of IP Navigation (later IPNav), began working with the inventors of the patents-in-suit on monetization strategy in exchange for a consulting fee of 22% of gross revenue. *See* Ex. R (Leane Tr.) at 202:22-203:13; Ex. P (Arb. Req.) ¶¶ 7-8. On August 8, 2014, Leane established patent holding company ChanBond and was its sole member. D.I. 525, Ex. A. On April 9, 2015, Leane executed an agreement on behalf of ChanBond and acquired the patents-in-suit. *See* D.I. 525, Ex. C. Shortly thereafter, on July 31, 2015, Leane, on behalf of her consulting company IPNav, entered an Advisory Services Agreement ("ASA") that "documented the relationship" that provided consulting to ChanBond in exchange for 22% of the gross proceeds recovered on the ChanBond Patents. Ex. P (Arb. Req.) ¶¶ 10-12; Ex. S (ASA).

2

The Delaware Cases were filed on September 21, 2015. D.I. 1. One month later, on October 27, 2015, Leane executed an Interest Sale Agreement ("ISA") with UOL, a company run by her former IP Navigation colleague Billy Carter, transferring ChanBond to UOL and retaining certain rights in the patents-in-suit. Ex. P (Arb. Req.) ¶¶ 14-15. In exchange, Leane received 44,700,000 shares of UOL stock and a promissory note that obligated UOL to pay Leane $5 million on October 27, 2020. *Id.* ¶ 15. The ASA also stayed in force, and Leane continued to perform her obligations to consult on the monetization efforts and enjoy the benefit of 22% of gross revenue from the patents. Ex. P (Arb. Req.) ¶ 48. Leane contends that ChanBond has now breached the ISA by defaulting on the promissory note, and fraudulently robbing her of her 22% interest in the patents. *Id.* ¶ 32-38. As a remedy, Leane requests the return of ChanBond, and its patents, into her possession.

    **B.**    **Leane Alleges that ChanBond Withheld the ASA, Manufactured Documents to Cover Its Tracks, and Fraudulently Eliminated Her Interests.**

In June 2017, Leane joined Technicolor. Ex. P (Arb. Req.) ¶ 76. Although the ASA was in force when Ms. Leane was deposed in April 2018, ChanBond did not produce the ASA in the Delaware Cases. During deposition, Leane testified she was being paid for consulting with ChanBond, but Defense counsel could find no such evidence in any production, and explicitly requested ChanBond's/Leane's counsel (KWM) to produce the missing documents.[2] Ex. R (Leane Tr.) at 103:2-104:21; Ex. P (Arb. Req.) ¶ 48-50. ChanBond promised to look into it, but never made good on that promise. *Id*. Leane's pleadings in the Texas action explain ChanBond's failure to produce the ASA. After ChanBond's/Leane's attorney, Mr. Whitman, was asked to produce the missing documents during Leane's deposition, the parties broke for lunch. *Id*. But, "[o]n the

---

[2] Defendants also served discovery requests on Leane and ChanBond seeking these documents. *See e.g.*, D.I. 525, Ex. J at RFPs 6-9; D.I. 525, Ex. H at RFP 65; *see also id.* at RFPs 61-68.

3

lunch break, Mr. Whitman advised Ms. Leane that ChanBond's failure to produce the Advisory Services Agreement would create problems for the ChanBond Litigations including additional discovery and severe trial delays." Ex. P (Arb. Req.) ¶¶ 48-52. The ASA is critically important, because Leane testified that ███████████████████████████████████████████ ███████████████████████████ *See* Ex. R (Leane Tr.) at 159:5-161:19. The newly found Texas complaint reveals that the ASA was in force during Leane's employment with Technicolor, and that she "affirmatively disclosed" the ASA to her employer. Ex. P (Arb. Req.) ¶¶ 74-78. That discussion could create an implicit, or explicit, license.

Leane also alleges that KWM proposed a plan to avoid producing the ASA. *Id.* ¶ 52. To cover up Leane's interest, KWM prepared a document that terminated the ASA retroactively as of ███████ and produced that termination document on July 6, 2018, after Leane's deposition.³ *See* Ex. U, Termination Agreement. They planned to then forge a separate agreement to reinstate Leane's 22%. Ex. P (Arb. Req.) ¶¶ 52-58, 61-86, 105-107. While KWM sent Leane communications to confirm she still maintained a 22% share of any proceeds from the Delaware Cases, they aimed to conceal that fact by declining to produce any document reflecting Leane's interest. *Id.* Leane alleges that ChanBond has now reneged on its promise to prepare a new agreement ("Restoration Agreement") memorializing her interest (*Id.* ¶¶ 105-108), and because that interest was part of her consideration for entering the ISA, that the proper relief is termination of the ISA and the return of ChanBond, in its entirety, to Leane. *Id.* ¶¶ 92-94.

C.   **Leane's Complaints Reveal that ChanBond Failed to Produce Numerous Additional Documents Regarding Rights in the Patents.**

Leane alleges that UOL entered several additional agreements attempting to assign and

---

³   Leane gave an additional deposition, limited to two hours and for the express purpose of addressing dozens of documents that ChanBond improperly withheld on the basis of privilege.

4

unlawfully dilute her rights in the patents. *Id*. ¶¶ 26-29. For example, the entity that purchased ChanBond from Leane, UOL, entered an agreement with an affiliate entity—UOL IP of NC, LLC–—to pay it "20% of the gross proceeds received by the Company from the sale or license of any or all of the ChanBond intellectual property." *Id*. ¶ 27. UOL supposedly renegotiated its agreements with litigation funders and the contingency agreement with counsel. Leane contends that these additional agreements further violated the terms of her agreement with UOL and provide an additional basis for her assertion of rights in the ChanBond patents. ChanBond has not produced any documents to Defendants regarding these additional agreements, and Defendants have no way to verify that the terms of these agreements do not in fact create a standing issue.

**III.    Argument**

    **A.    ChanBond's Purposeful Withholding of Documents Alone Provides Good Cause to Reopen Discovery.**

Leane has alleged that Mr. Whitman informed her that ChanBond affirmatively made the decision to withhold the ASA from production in the Delaware Cases for the purpose of litigation advantage, despite that document's clear relevance to Leane's interest in the patents, the existence of licenses (implicit or explicit) to the patents, and Leane's bias.[4] The ASA reveals that Leane contracted to receive 22% of revenues from the Delaware cases, and that she would provide substantial direction regarding efforts to monetize the patents. Ex. S (ASA) ¶¶ 1, 5, 6.

Although Leane testified that  the previously unproduced ASA reveals that she had an active agreement with ChanBond during her employment.

---

[4]    When a party withholds evidence, "sanctions may then be necessary to remedy prejudice and deter future misconduct." *Greatbatch Ltd. v. AVX Corp.*, 179 F. Supp. 3d 370, 379 (D. Del. 2016). Defendants reserve the right to seek sanctions or any other relief the Court deems appropriate, after completing discovery on the withheld documents.

5

*See* Ex. R (Leane Tr.) at 159:5-161:19. It is highly likely that Leane had to inform Technicolor regarding this agreement. In fact, her Texas pleadings now confirm that Leane discussed the agreement, and her interest in the Delaware Cases with Technicolor. Ex. P (Arb. Req.) ¶¶ 74-77. If ChanBond had produced the ASA, Defendants would have had an opportunity to address the agreement, any disclosure to her employer, and whether this created an implicit or explicit license to the patents.

In addition to these documents, Leane's complaint also identifies additional unproduced documents that relate to interests in the patents, including agreements with UOL IP of NC, LLC. *Id.* ¶ 27. Given the number of parties that have entered agreements related to the patents, ChanBond should have produced those agreements so Defendants could determine if any rights in the patents had been conferred. Notably, any communications that Leane or her former counsel (KWM) withheld on the basis of privilege are now subject to discovery, as Leane has waived privilege by disclosing her discussions with counsel regarding litigation strategy and funding in her complaints. Ex. P (Arb. Req.) ¶¶ 26-27, 48-52; Ex. Q (N.Y. Compl.) ¶¶ 39-42.

When a party seeks to modify a scheduling order, as Defendants seek to reopen discovery for limited purposes here, they are required to demonstrate good cause. Good cause can be demonstrated by showing that the party acted with diligence and could not reasonably have met the deadline for amending. *See Int'l Constructions Products LLC v. Caterpillar Inc., et al.*, C.A. 15-108-RGA, 2018 WL 4611216, at *2 (D. Del. Sep. 26, 2018). Here, ChanBond *purposely* withheld the relevant documents, and they did not become known to Defendants until October 28, 2020, when Defendants found Leane's Texas and New York complaints. ChanBond declined to produce those complaints, despite being parties to those actions and having full knowledge of their relevance to Defendants' request to reopen discovery. Defendants were diligent, seeking the

6

Court's assistance as soon as they determined there may be an issue that requires additional discovery. *See Roquette Freres v. SPI Pharma, Inc.*, C.A. 06–540–GMS, 2009 WL 1444835 at *5 (D. Del. May 21, 2009) (holding good cause where the moving party sought to amend within two months of becoming aware of the relevant information). Leane's counsel sent an email to Defendant's counsel on September 2nd, and Defendants sought to meet and confer with ChanBond on September 9th. ChanBond declined to meet and confer until September 24th, and as soon as the conference was concluded, Defendants sought the Court's assistance with this motion. And upon learning of additional issues requiring discovery on October 28—including ChanBond's strategic withholding of relevant documents such as the ASA and additional agreements related to the patents—Defendants immediately notified the Court (D.I. 530) and sought to bring the additional issues before the Court without delay. Ex. P (Arb. Req.) ¶¶ 26-27, 48-52. ChanBond also cannot show any prejudice by reopening discovery to address the ASA and other unproduced agreements, because that information was within its control. *See Roquette Freres*, 2009 WL 1444835 at *5 (finding no prejudice when non-moving party was in possession of the information justifying schedule amendment).

      **B.**    **Leane's Complaint Raises Standing Issues, and Defendants Should Have an Opportunity to Take Appropriate Discovery.**

As Leane understands her rights under Section 8.3 of the ISA, her "written consent is required" to transfer an interest in the patents-in-suit, including a license to, and presumably a sale of, the patents. D.I. 525, Ex. E; Ex. P (Arb. Req.) ¶¶ 19-20, 35-40. Although ChanBond casts Leane's rights as a "veto" power, and assesses those rights as immaterial (D.I. 529 at 15), that analysis fails to address the totality of Leane's interests in the patents as required by the governing case law on standing. Certain interests—such as the ability to control alienation of the patents, which Leane would also have under her interpretation of the contract—weigh heavily in

7

determining whether all substantial rights were conveyed. *Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*, 925 F. 3d 1225, 1231 ( Fed. Cir. 2019); *Propat Int'l Corp. v. Rpost, Inc.*, 473 F.3d 1187, 1191 (Fed. Cir. 2007) ("The right to dispose of an asset is an important incident of ownership, and such a restriction on that right is a strong indicator that the agreement does not grant [the transferee] all substantial rights under the patent."). And when a licensee is restricted on its ability to assign its rights in the patents-in-suit without written consent, "[t]his restriction on alienation of rights is a further indication that [the seller] transferred less than all substantial rights in the patents-in-suit." *Immunex Corporation v. Sandoz Inc.*, 964 F.3d 1049, 1062 (Fed. Cir. 2020).

ChanBond relies on *Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A.*, 944 F.2d 870 (Fed. Cir. 1991) and similar cases for the proposition that an assignor's reservation of licensing veto rights cannot undermine the transfer of all substantial rights. D.I. 529 at 15. In *Vaupel* the Court there found that a "sublicensing veto was a minor derogation from the grant of rights" and that "[i]t did not substantially interfere with the full use by Vaupel of the exclusive rights under the patent." *Vaupel*, 944 F.2d at 875. But contrary to the court's assessment in *Vaupel*, Leane contends that she can restrict licensing, and under that same reading of the ISA, she can also restrict sales of the patents. Much of this may be revealed through discovery in the parallel actions, and Defendants should have access to the documents from those proceedings, and any additional material necessary, to understand the contours of the ownership interests Leane contends she has. Notably, much of that information is now freely discoverable because Leane has waived privilege.

    **C.**     **ChanBond's Cited Case Law Is Inapposite.**

ChanBond cites *XCoal*, but that case is inapposite. There, the court considered a letter received by defendants' counsel by a "whistleblower" rehashing allegations previously known to defendants. *XCoal Energy & Res. v. Bluestone Energy Sales Corp.*, C.A. 18-CV-819-LPS, 2020 WL 5369109, *7 (D. Del. Sep. 8, 2020). Defendants' counsel raised the letter with opposing

8

counsel, and the Court, after opening statements at trial, and sought additional discovery. *Id*. at \*2, 7. The court denied the request because defendants had already deposed the same witness "on allegations . . . repeated in the Letter" and had previously subpoenaed, but "chose not to pursue a deposition," of several third parties from which they now sought discovery based on the letter. *Id*. at \*8. Here, Defendants could not have taken testimony on documents ChanBond withheld. Further, in *XCoal* the court held the newly received letter was not important, and that the defendant's request was based on a "misunderstanding of the letter," because the letter contained only "anonymous allegations." *XCoal*, 2020 WL 5369109 at \*9. Here, by contrast, the information is critical—enough to lead Leane to file lawsuits to retake ChanBond.

ChanBond also relies on *XCoal* for the proposition that discovery may be reopened after a pretrial order "only to prevent manifest injustice." D.I. 529 at 7. That standard cannot apply to twelve of the Defendants, since there is no pretrial order in those cases. And the remaining defendant, Cox, can clearly meet that standard here, where ChanBond intentionally withheld documents, and manufactured replacement documents produced after Leane was deposed, in an attempt to conceal her interest from the Defendants in these cases. Ex. P (Arb. Req.) ¶¶ 48-52. First, ChanBond cannot claim any prejudice, as it concealed documents. Second, the schedule need not be disrupted because trial is six months off, but any delay is the result of Plaintiff's counsel's own conduct, which ironically attempted to hide documents to prevent delay. *Id*. Third, Defendants' request does not stem from any bad faith or delay, and could not have been discovered by Cox earlier, because they result from *ChanBond's improper actions*. And fourth, the requested evidence is fundamental, since Cox has a right to know who the real party in interest here is and who has authority to enforce the patents and resolve this litigation. Given that this mess is ChanBond's doing, only Defendants face manifest injustice.

### D. Leane's Complaints May Have Substantial Impact in These Cases.

Much hangs in the balance as a result of the Texas and New York cases. ChanBond may be controlled by someone new, and may be represented by new counsel. Any assessment of ownership by this Court will be much more sound after the development of a complete record from the parallel actions, which may include dispositive rulings or private resolution of the ownership issue. The Delaware Cases may benefit from completion of the same work in parallel proceedings.

There are at least three issues that will not be resolved in the Texas and New York cases, however. The first is whether ChanBond and its counsel engaged in litigation misconduct in the Delaware Cases, and, if so, what remedy would be appropriate. Defendants propose they receive the improperly withheld documents including all documents relating to the ASA, Termination, and any other documents assigning an interest in the patents, so they can investigate the issues of standing, and the allegations of litigation misconduct. In addition, Defendants would like to investigate whether Leane's conversations with Technicolor created a license, as that will not be at issue in the New York and Texas actions. Nor will the extent to which the privilege was waived by Leane's disclosures in the Texas and New York proceedings, or the implications those communications have on the merits in these cases. Accordingly, Defendants propose that they be allowed discovery on these narrow issues from Leane, ChanBond, and UOL, as well as any necessary third parties, while awaiting resolution in the New York and Texas litigations.

### IV. Conclusion

In view of the above, Defendants respectfully request to reopen discovery to obtain those improperly withheld materials and investigate related issues. In addition, given the standing questions raised by parallel proceedings, and potential impact to these cases, Defendants respectfully request a conference with the Court to discuss how best to proceed.

| | |
|---|---|
| OF COUNSEL:<br><br>Michael L. Brody<br>Saranya Raghavan<br>WINSTON & STRAWN LLP<br>35 West Wacker Drive<br>Chicago, IL 60601<br>(312) 558-5600<br><br>David P. Enzminger<br>Nimalka Wickramasekera<br>WINSTON & STRAWN LLP<br>333 S. Grand Avenue<br>Los Angeles, CA 90071-1543<br>(213) 615-1780<br><br>Krishnan Padmanabhan<br>WINSTON & STRAWN LLP<br>200 Park Avenue<br>New York, NY  10166-4193<br>(212) 294-6700<br><br>James C. Lin<br>WINSTON & STRAWN LLP<br>275 Middlefield Road<br>Menlo Park, CA 94025<br>(650) 858-6500<br><br>Thomas M. Melsheimer<br>Renee Skinner<br>Alex C. Wolens<br>WINSTON & STRAWN LLP<br>2121 North Pearl Street, Suite 900<br>Dallas, TX 75201<br>(214) 453-6500<br><br>November 5, 2020 | MORRIS, NICHOLS, ARSHT & TUNNELL LLP<br><br>*/s/ Jennifer Ying*<br><br>Jack B. Blumenfeld (#1014)<br>Jennifer Ying (#5550)<br>1201 North Market Street<br>P.O. Box 1347<br>Wilmington, DE 19899<br>(302) 658-9200<br>jblumenfeld@mnat.com<br>jying@mnat.com<br><br>*Attorneys for Defendants* |

## CERTIFICATE OF SERVICE

I hereby certify that on November 5, 2020, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on November 5, 2020, upon the following in the manner indicated:

| | |
|---|---|
| Stephen B. Brauerman, Esquire<br>BAYARD, P.A.<br>600 North King Street, Suite 400<br>Wilmington, DE  19801<br>*Attorneys for Plaintiff* | *VIA ELECTRONIC MAIL* |
| Lana Milojevic, Esquire<br>Eric P. Berger, Esquire<br>MISHCON DE REYA NEW YORK LLP<br>156 Fifth Avenue, Suite 904<br>New York, NY  10010<br>*Attorneys for Plaintiff* | *VIA ELECTRONIC MAIL* |
| Mark Raskin, Esquire<br>Robert Whitman, Esquire<br>John F. Petrsoric, Esquire<br>Michael S. DeVincenzo, Esquire<br>Andrea Pacelli, Esquire<br>KING & WOOD MALLESONS LLP<br>500 Fifth Avenue, 50th Floor<br>New York, NY 10110<br>*Attorneys for Plaintiff* | *VIA ELECTRONIC MAIL* |

/s/ *Jennifer Ying*

Jennifer Ying (#5550)