IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| IN RE CHANBOND, LLC, PATENT LITIGATION | ) ) ) ) ) ) ) ) ) ) | C.A. No. 15-842 (RGA) CONSOLIDATED<br><br>**REDACTED – PUBLIC VERSION** |

**DEFENDANTS' BRIEF IN OPPOSITION TO CHANBOND'S MOTION FOR LEAVE TO FILE SUR-REPLY IN OPPOSITION TO DEFENDANTS' MOTION TO REOPEN FACT DISCOVERY FOR LIMITED INVESTIGATION OF STANDING ISSUES**

OF COUNSEL:

Thomas M. Melsheimer
WINSTON & STRAWN LLP
2121 North Pearl Street, Suite 900
Dallas, TX 75201
(214) 453-6500

Michael L. Brody
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, IL 60601
(312) 558-5600

David P. Enzminger
Nimalka Wickramasekera
WINSTON & STRAWN LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543
(213) 615-1780

Krishnan Padmanabhan
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166-4193
(212) 294-6700

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Jennifer Ying (#5550)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
jying@mnat.com

*Attorneys for Defendants*

Original Filing Date: November 30, 2020
Redacted Filing Date: December 7, 2020

## TABLE OF CONTENTS

Page

I. Introduction ................................................................................................................. 1

II. Statement of Facts ....................................................................................................... 2

III. Legal Standard ............................................................................................................ 5

IV. Argument .................................................................................................................... 6

    A. ChanBond Is Solely Responsible for Any "New" Arguments and Could Have Addressed these Arguments in Its Opposition. ............................ 6

    B. ChanBond's Proposed Sur-Reply Does Not Dispute that ChanBond Withheld the ASA, and Created a "Termination Agreement" to Hide Ms. Leane's Interest in the Patents. ................................ 8

    C. ChanBond's Proposed Sur-Reply Ignores the Dispute Over Who Is the Proper Plaintiff Only Six Months Before Trial. .................................... 11

V. Conclusion ................................................................................................................ 12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Aspex Eyewear Inc. v. Clariti Eyewear, Inc.*,
 605 F.3d 1305, (Fed. Cir. 2010)......................................................................................8

*AstraZeneca UK Ltd. v. Watson Labs., Inc.*,
 905 F. Supp. 2d 596 (D. Del. 2012).................................................................................12

*De Forest Radio Tel. & Tel. Co. v. United States*,
 273 U.S. 236 (1927)..........................................................................................................8

*Forest Labs., Inc. v. Abbott Labs.*,
 1999 WL 33299123 (W.D. N.Y. 1999).............................................................................8

*Int'l Bus. Mach. Corp. v. The Priceline Group Inc.*,
 2016 WL 626495 (D. Del. Feb. 16, 2016).....................................................................5, 6

*Jordan v. Mirra*,
 2016 WL 3265694 (D. Del. June 7, 2016).....................................................................5, 6

*SecurityPoint Holdings, Inc. v. United States*,
 2020 WL 1243235 (Ct. Fed. Cl. 2020)..............................................................................9

*Siemens Med. Sols. USA, Inc. v. Humedica, Inc.*,
 2015 WL 1738186 (D. Del. Apr. 8, 2015)........................................................................5

*St. Clair Intellectual Prop. Consultants, Inc. v. Samsung Elecs. Co.*,
 291 F.R.D. 75 (D. Del. 2013) ...........................................................................................5

*Taylor v. Sturgell*,
 553 U.S. 880 (2008)........................................................................................................12

*Wang Labs., Inc. v. Mitsubishi Elecs. Am., Inc.*,
 103 F.3d 1571 (Fed. Cir. 1997).........................................................................................8

*Waters Techs. Corp. v. Aurora SFC Sys. Inc.*,
 2012 WL 13167829 (D. Del. Apr. 20, 2012)....................................................................5

## **TABLE OF EXHIBITS**

| EXHIBIT | DESCRIPTION |
|---|---|
| Ex. V | *Leane et al v. UnifiedOnline, Inc. e al*, C.A. 3:20-cv-03097-B, D.I. 51 (Plaintiffs' Motion to Amend Dkt. 47) (November 23, 2020) |
| Ex. W | *Leane et al v. UnifiedOnline, Inc. e al*, C.A. 3:20-cv-03097-B, D.I. 51-1 (Appendix in Support of Plaintiffs' Motion to Amend Dkt. 47) (November 23, 2020) |

I.      Introduction

After Ms. Leane informed Defendants that she had a "dispute" with ChanBond that put the Defendant's at "risk," Defendants met and conferred with ChanBond to investigate the issue. ChanBond explicitly refused to provide any information regarding the dispute, let alone disclose that Ms. Leane, ChanBond, and ChanBond's counsel had entered active litigation. Armed with only the knowledge that some sort of "dispute" regarding patent rights had arisen, Defendants sought to reopen discovery to determine what implications that dispute may have in these 13 cases ("the Delaware Cases"). Defendants later independently learned what ChanBond refused to disclose—multiple complaints filed by Ms. Leane claiming ownership based on extensive allegations of fraud against ChanBond and its counsel.

Ignoring that its decision to withhold information deprived Defendants of the opportunity to address these issues in their opening brief, ChanBond now seeks a sur-reply. ChanBond's justification for requesting permission to file a sur-reply is based upon its own undisputed misconduct. For this reason alone, its request should be denied.

ChanBond's proposed sur-reply, should the Court consider it, fails to dispute any of the key facts set forth in Defendants' reply brief, including ChanBond's intentional concealment of a key agreement (the ASA) during discovery and the substitution of a "termination agreement" intended to hide Ms. Leane's interest in the patents. The proposed sur-reply also does not dispute that Ms. Leane was ChanBond's "worldwide intellectual property licensing agent" at the same time that she was employed as Technicolor's Head of Intellectual Property, making her uniquely positioned to convey a license to Technicolor, a supplier of accused products, or render ChanBond estopped as to Technicolor products.

The proposed sur-reply also fails to grapple with the practical implications of the Leane-ChanBond cases. Defendants have every right to know who the real plaintiff is before trial. And

1

should a trial proceed without the real owner at the helm, a cloud may hang over any verdict. All of these issues underscore the need to reopen discovery to address the questions regarding ownership, license, and estoppel raised by the Leane-ChanBond dispute.

## II.     Statement of Facts

On September 2, 2020, Defendants' counsel received an email from Ms. Leane's attorney, Akiva Cohen, with counsel for ChanBond carbon copied, stating that "a dispute has arisen between Ms. Leane and ChanBond," that ███████████████████████████████████

███████████████████████████████████████

███ D.I. 525, Ex. E. Having no knowledge of the "dispute" between Ms. Leane and ChanBond, Defendants requested a meet and confer with ChanBond to determine if the September 2 email reflected an ownership dispute. During a September 24 meet and confer, Defendants asked ChanBond's counsel to explain the nature of the dispute so Defendants could assess whether Ms. Leane might be the rightful owner of the patents, might need to be joined in these actions, or why the dispute posed a risk to Defendants. ChanBond's counsel explicitly declined to provide any information regarding the Leane-ChanBond dispute. Defendants proceeded to file an opening brief on October 8, seeking to reopen discovery to investigate the dispute, and to determine what interests Ms. Leane may hold in the patents. D.I. 525. ChanBond filed an opposition brief on October 22 that maintained its silence regarding the specifics of the Leane-ChanBond dispute, and summarily dismissed Ms. Leane's ownership claims as legally untenable based on an October 2015 Agreement. D.I. 529.

On October 28, Defendants independently discovered some of the information ChanBond

2

refused to provide. *See* D.I. 530. Two complaints filed by Ms. Leane, in New York and Texas[1] on September 22 and 29 respectively, as well as an arbitration demand attached to the Texas complaint, leveled claims against ChanBond, its parent Unified Online, and ChanBond's counsel at King Wood Mallesons ("KWM"). D.I. 536-1, Ex. Q (New York Complaint); *id.*, Ex. T (Texas Complaint); *id.*, Ex. P (Arbitration Demand). In those pleadings, Ms. Leane alleges that she was defrauded of a 22% stake in the Delaware Cases, seeks return of ChanBond to Ms. Leane's control, and requests removal of ChanBond's counsel. *See* D.I. 536-1, Ex. P ¶¶ 87-116; *id.*, Ex. Q ¶¶ 136-161. Ms. Leane's complaints also allege that, in the Delaware Cases, ChanBond purposely hid an agreement (the "ASA") between Ms. Leane and ChanBond that: (i) memorialized her 22% interest in the patents, and (ii) established her role as ChanBond's "worldwide intellectual property licensing agent." D.I. 536-1, Ex. P ¶¶ 48-58; *id.*, Ex. Q ¶¶ 39-53; *id.*, Ex. S ¶¶ 1, 5. While in April 2018 Defendants' counsel noted that no agreement between Ms. Leane and ChanBond had been produced in the Delaware Cases and then renewed their request for that document, Ms. Leane alleges that ChanBond made the conscious decision not to produce the ASA to avoid "problems for the ChanBond Litigations, including additional discovery and severe trial delays," and to prevent "harm to ChanBond's chances of recovery." D.I. 536-1, Ex. P ¶¶ 48-58; *see id.*, Ex. Q ¶¶ 39-53. Ms. Leane alleges that to conceal the ASA from Defendants, after her deposition, ChanBond's counsel prepared a "termination agreement" to falsely provide the appearance that Ms. Leane's interests under the ASA had been eliminated, but with an understanding that those interests would later be restored. D.I. 536-1, Ex. P ¶¶ 48-58; *id.*, Ex. Q ¶¶ 39-53; *id.*, Ex U. The

---

[1] Ms. Leane's lawsuit in the Northern District of Texas, which sought a temporary restraining order, was terminated on November 16, 2020. The parties are now headed to arbitration where Ms. Leane seeks return of ChanBond among other relief. *See* Ex. V, *Leane et al v. UnifiedOnline, Inc. et al*, C.A. 3:20-cv-03097-B, D.I. 51 (Plaintiffs' Motion to Amend Dkt. 47) (November 23, 2020), at 1; D.I. 536-1, Ex. P ¶¶ 87-116.

"termination agreement" was produced to Defendants in July 2018 in lieu of the ASA. D.I. 536-1, Ex. U.

Ms. Leane recently submitted evidence in the Texas litigation to corroborate her allegations. Just last week, on November 23, Ms. Leane disclosed text messages corroborating her claim that she and ChanBond colluded to enter a termination agreement after her April 2018 deposition to avoid producing the actual ASA to the Defendants. Further, the text messages confirm that she and ChanBond had an actual intent to restore her interest in the patents, including her 22% stake, after discovery closed in the Delaware Cases. Ex. W, *Leane et al v. UnifiedOnline, Inc. e al*, C.A. 3:20-cv-03097-B, D.I. 51-1 (Appendix in Support of Plaintiffs' Motion to Amend Dkt. 47) (November 23, 2020), at 10-11. For example, on the same day that Ms. Leane signed the termination agreement (April 30, 2018), she texted Mr. Carter to confirm that she "still get[s] paid," and Mr. Carter, on behalf of ChanBond confirms that "[o]f course [Ms. Leane] still get[s] paid!!!" Ex. W at 10; *infra* at 10. The text messages also corroborate Ms. Leane's allegation that ChanBond withheld that ASA for litigation advantage in the Delaware Cases. D.I. 536-1, Ex. P ¶ 51; *id.*, Ex. Q ¶ 41. For example, in an October 4, 2019 text message, Ms. Leane reminded ChanBond's representative, Mr. Carter, that "now that discovery is over we need to reinstate the IPNAV consulting Agreement [sic]" (the ASA), and asks Mr. Carter to "take a crack" at preparing the agreement. Ex. W at 11; *infra* at 11. Mr. Carter praises Ms. Leane as a "life saver for [him] through all of this" and agrees to "get the consulting agreement to [Leane] over the weekend." *Id*.

Ms. Leane's pleadings also allege that Ms. Leane disclosed her interest in the patents to her employer, Technicolor, a significant vendor of allegedly infringing equipment to Defendants. D.I. 536-1, Ex. P ¶¶ 74-78; *id.*, Ex. Q ¶¶ 68-72. Ms. Leane joined Technicolor as the Head of Intellectual Property in June 2017. D.I. 536-1, Ex. P ¶ 76. While employed as Technicolor's Head

4

of Intellectual Property, Ms. Leane also was bound by the ASA to serve as ChanBond's "worldwide intellectual property licensing agent" and provide "strategic advisory services relating to . . . enforcement" of the patents, and entitled to receive a 22% stake in the patents. D.I. 536-1, Ex. P ¶ 76; *id.*, Ex. S ¶¶ 1, 5; *see also id.*, Ex. U.

### III.   Legal Standard

D. Del. Local Rule 7.1.3(c)(2) states that "the party filing the opening brief shall not reserve material for the reply brief which should have been included in a full and fair opening brief." D. Del. L.R. 7.1.3(c)(2). As a general matter, sur-replies are disfavored. *Waters Techs. Corp. v. Aurora SFC Sys. Inc.*, No. CV 11-708-RGA, 2012 WL 13167829, at *1 (D. Del. Apr. 20, 2012). A court may grant leave to file a sur-reply brief if it responds to new evidence, facts, or arguments raised for the first time in the moving party's reply brief. *See St. Clair Intellectual Prop. Consultants, Inc. v. Samsung Elecs. Co.*, 291 F.R.D. 75, 80 (D. Del. 2013); *see also Waters Techs. Corp*, 2012 WL 13167829, at *1. An argument, however, is not new and does not necessitate the filing of a sur-reply if the reply brief expounds on arguments made in the opening brief or involves content directly responsive to arguments made in the answering brief. *Jordan v. Mirra*, No. CV 14-1485-SLR-SRF, 2016 WL 3265694, at *9 (D. Del. June 7, 2016), *report and recommendation adopted*, No. CV 14-1485-SLR-SRF, 2016 WL 4577004 (D. Del. Aug. 31, 2016); *Int'l Bus. Machines Corp. v. The Priceline Grp. Inc.*, No. CV 15-137-LPS-CJB, 2016 WL 626495, at *1 n. 1 (D. Del. Feb. 16, 2016), *report and recommendation adopted sub nom. Int'l Bus. Machines Corp. v. Priceline Grp. Inc.,* No. CV 15-137-LPS-CJB, 2016 WL 1253472 (D. Del. Mar. 30, 2016); *see also Siemens Med. Sols. USA, Inc. v. Humedica, Inc.*, No. CV 14-880-LPS-CJB, 2015 WL 1738186, at *1 n. 1 (D. Del. Apr. 8, 2015) (denying sur-reply when the "complained-of material was responsive to theories and arguments raised in [defendant's] answering brief" and "were relevant to topics addressed in [plaintiff's] opening brief").

## IV. Argument

### A. ChanBond Is Solely Responsible for Any "New" Arguments and Could Have Addressed these Arguments in Its Opposition.

During the meet and confer process, ChanBond refused to disclose the nature of its dispute with Ms. Leane. Having received no cooperation from ChanBond, but understanding that Ms. Leane disputed ownership or claimed some interest that put Defendants at risk, Defendants' opening brief explicitly asked for documents that ChanBond withheld, including agreements, negotiation documents, and correspondence that would inform the issue of ownership. D.I. 525 at 8-9. Despite being in possession of Ms. Leane's complaints, which corroborated the seriousness of Ms. Leane's claim to ownership of ChanBond, and alleged that ChanBond had withheld relevant documents during discovery, ChanBond's October 22 opposition remained silent regarding the New York and Texas complaints. ChanBond's continued silence reflects a conscious effort to prevent Defendants from investigating the substantial questions regarding ownership, license, and estoppel raised by Ms. Leane's allegations.

Defendants' reply brief does not raise any "new arguments" on the need for discovery to investigate ownership. Rather, Ms. Leane's allegations and court filings "expound on arguments" made in Defendants' opening brief and "directly respond to" the arguments in ChanBond's opposition brief. D.I. 529 at 8-10; *Jordan*, 2016 WL 3265694, at *9; *Int'l Bus. Mach. Corp.*, 2016 WL 626495, *1, n. 1. ChanBond's opposition argues that the "only basis" for additional discovery is a "misreading" of the October 2015 Agreement reflected in the September 2 email from Ms. Leane's counsel. D.I. 529 at 1. Ms. Leane's allegations, which explain that she was defrauded of her stake in the Delaware Cases, and the appropriate remedy is return of ChanBond into her control, directly undercut ChanBond's contention. *See* D.I. 535 at 3-7; D.I. 536-1, Ex. P ¶¶ 48-94. Similarly, ChanBond's opposition contends that Defendants were not diligent during

6

discovery. *See* D.I. 529 at 1. Ms. Leane's allegations demonstrate this is false, and that ChanBond actively concealed the ASA to prevent "additional discovery and severe trial delays" and avoid "harm to ChanBond's chances of recovery." D.I. 536-1, Ex. P ¶¶ 48-58 (*e.g.*, ¶ 51, alleging that ChanBond's counsel "advised Ms. Leane that ChanBond's failure to produce the [ASA] would create problems for the ChanBond Litigations, including additional discovery and severe trial delays"); Ex. Q ¶¶ 39-44 (*e.g.*, ¶ 41 alleging that ChanBond's attorney Mr. Whitman advised that "leaving the ASA in place would require reopening document discovery and might severely delay the case and harm ChanBond's chances of recovery."). Ms. Leane further alleges that ChanBond's counsel manufactured a termination agreement, which misrepresented that she had terminated her role in the management of these litigations and her 22% interest in their outcomes from the time that she sold ChanBond to UOL. *See* D.I. 535 at 3-7; 536-1, Ex. P ¶¶ 48-94; *id.*, Ex. Q ¶¶ 39-53; *id.*, Ex. S ¶¶ 1, 5; *id.*, Ex. U. Contrary to ChanBond's contention, "more diligent pursuit of discovery" regarding Ms. Leane's stake in these litigations would not have made a difference because ChanBond and its counsel were actively concealing that information during discovery.

ChanBond similarly contends Defendants raised a new argument concerning the need for discovery on an agreement related to the patents forged with UO! of NC ("the UOL Agreement"). ChanBond never produced this document and attaches it for the first time to its sur-reply. D.I. 537, Ex. G. Having received Ms. Leane's complaints, ChanBond fully knew that the UOL Agreement forms a basis for Ms. Leane's allegation that she is entitled to resume ownership of ChanBond. 536-1, Ex. P ¶¶ 26-32. ChanBond's request for a sur-reply conveniently ignores that Defendants' opening brief sought discovery from UnifiedOnline! regarding the nature of the dispute with Ms. Leane. D.I. 525 at 10-11. UnifiedOnline!'s siphoning of funds through the UO! NC Agreement are squarely part of that request and bear directly on the ownership and standing

questions. D.I. 535 at 5 (citing D.I. 536-1, Ex. P ¶ 27).

      **B.    ChanBond's Proposed Sur-Reply Does Not Dispute that ChanBond Withheld the ASA, and Created a "Termination Agreement" to Hide Ms. Leane's Interest in the Patents.**

ChanBond withheld the ASA during discovery to avoid "severely delay[ing] the case and harm[ing] ChanBond's chances of recovery." D.I. 536-1, Ex. Q ¶ 41. The ASA establishes Ms. Leane as ChanBond's "worldwide intellectual property licensing agent," and tasks her with "provid[ing] strategic advisory services relating to . . . enforcement" of the patents. D.I. 536-1, Ex. S ¶ 1. At the same time that Ms. Leane served as ChanBond's "worldwide intellectual property licensing agent," Ms. Leane was also employed as the head of intellectual property at Technicolor––a significant vendor of the accused products. None of this is disputed in ChanBond's sur-reply.

In her dual roles for ChanBond and Technicolor, Ms. Leane may well have granted an implicit or explicit license to Technicolor, or otherwise assured Technicolor that it need not worry about the patents in a manner that leaves ChanBond estopped from pursuing infringement claims at least with respect to Technicolor products. *See De Forest Radio Tel. & Tel. Co. v. United States*, 273 U.S. 236, 367 (1927) ("Any language used by the owner of the patent or any conduct on his part exhibited to another, from which that other may properly infer that the owner consents to his use of the patent in making or using it, or selling it, upon which the other acts, constitutes a license, and a defense to an action for a tort."); *Wang Labs., Inc. v. Mitsubishi Elecs. Am., Inc.*, 103 F.3d 1571, 1581–82 (Fed. Cir. 1997) (finding an implied license existed when the course of conduct led the accused infringer to infer consent to manufacture and sell the patented products); *Aspex Eyewear Inc. v. Clariti Eyewear, Inc.*, 605 F.3d 1305, 1310 (Fed. Cir. 2010) (applying estoppel to bar infringement claims based on misleading conduct with respect to patent enforcement); *Forest Labs., Inc. v. Abbott Labs.*, 1999 WL 33299123, *22-23 (W.D.N.Y. 1999) (finding estoppel extended to customers of infringer). Technicolor could be entitled to a license even if it believed

that freedom from suit was part of the *quid pro quo* associated with employing Ms. Leane. *SecurityPoint Holdings, Inc. v. United States*, 2020 WL 1243235, *2-4 (Fed. Cl. 2020) (finding implied license where patentee provided unpatented components, used in practicing the patented method, free of charge and received contracts to sell the unpatented components in exchange). The implication of Ms. Leane's engagement to serve as ChanBond's agent, which ChanBond concealed, cannot be known until Defendants are permitted to take the appropriate discovery. Had ChanBond provided either the ASA or one of Ms. Leane's complaints when Defendants' requested clarification on the Leane-Chanbond dispute during the meet and confer process, these issues would have been addressed thoroughly in Defendants' opening brief. ChanBond chose to remain silent, and Defendants were left unable to address the ASA until they independently found Ms. Leane's filings which included the ASA.

ChanBond's proposed sur-reply does not dispute that Defendants requested production of the ASA (D.I. 537 at 4) or that ChanBond withheld the ASA (D.I. 537 at 1-4). Instead, ChanBond argues that Defendants were not sufficiently diligent, despite having served discovery requests and followed up about the ASA during Ms. Leane's deposition, because Defendants did not move to compel production. D.I. 537 at 4; *id.*, Ex. 1 at 5; *see also* D.I. 535 at 3-4; D.I. 525, Ex. J and H; D.I. 536-1, Ex. R. ChanBond's argument ignores that after withholding the ASA, ChanBond created and produced a termination agreement to falsely represent that the ASA was inoperative and that Ms. Leane had no stake in the patents.

Recent submissions in the Texas litigation corroborate Ms. Leane's account of these events, and explain why ChanBond is unable to contest that account. On April 30, 2018, less than a week after Ms. Leane's deposition, during which the failure to produce the ASA was revealed and ChanBond's counsel purportedly advised Ms. Leane that they should enter a termination

9

agreement to continue hiding the ASA from the Defendants, Ms. Leane requested confirmation that she "still get[s] paid." Ex. W at 10 (consistent with the allegations in Ms. Leane's complaint, *e.g.*, D.I. 536-1, Ex. P ¶¶ 48-58). Mr. Carter, on behalf of ChanBond, confirmed that "of course [Ms. Leane would] still get paid!!!"



Ex. W at 10; *see also* D.I. 536-1, Ex. P ¶ 54. Later the same day, Ms. Leane and ChanBond entered the termination agreement. D.I. 536-1, Ex. U (showing April 30, 2018 execution date); *see also* D.I. 536-1, Ex. P ¶¶ 48-58. To eliminate suspicion, the termination was produced several months later, on July 6, 2018. D.I. 536-1, Ex. U.

On Friday October 4, 2019, Ms. Leane reached out to Mr. Carter to remind him that "now that discovery is over we need to reinstate the [ASA]." Ex. W at 11. Mr. Carter acknowledged that Ms. Leane had "been a life saver for [him]," and agreed to provide the agreement to reinstate Ms. Leane's 22% "over the weekend". *Id.*

10



*Id.* The logic that Defendants were not diligent is inapplicable here. Ms. Leane alleges, and newly revealed facts corroborate, that ChanBond deliberately concealed information and manufactured fake documents to make the ASA appear inoperative to hide Ms. Leane's interest. Those interests could have, at a minimum, revealed a license or estoppel defense as a result of her position with Technicolor. Then, Ms. Leane and ChanBond sought to reinstate her rights after discovery closed, so Defendant's opportunity to take discovery on these issues had expired. To accept ChanBond's logic would reward intentional litigation misconduct.

    **C.    ChanBond's Proposed Sur-Reply Ignores the Dispute Over Who Is the Proper Plaintiff Only Six Months Before Trial.**

ChanBond's brief fails to acknowledge the proverbial elephant in the room. ChanBond and Cox are presently scheduled to head to trial on May 17, 2021. With a trial six months away, what are the potential impacts of Ms. Leane's claims to ownership of ChanBond? ChanBond is silent on this issue, because the dispute could dramatically change how these cases proceed, including who controls Plaintiff, the substitution of new Plaintiff's counsel, or possibly both. In addition, if control of ChanBond transfers to Ms. Leane after the ChanBond-Cox trial, this would

11

raise thorny questions regarding whether Ms. Leane will be bound by the results of that trial. *See Taylor v. Sturgell*, 553 U.S. 880, 893 (2008) (stating that, as a general rule, non-parties are not bound by a judgment). A party is bound by the results of litigation when they have had a "full and fair opportunity to litigate," because this "protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." *AstraZeneca UK Ltd. v. Watson Labs., Inc.*, 905 F. Supp. 2d 596, 603 (D. Del. 2012) (quoting *Montana v. United States*, 440 U.S. 147, 153-154 (1979)). If Ms. Leane is, in fact, entitled to ownership of ChanBond, as she contends, and should have been the rightful owner during the course of any trial, then she may argue that she is not bound by any resulting judgment in the ChanBond-Cox trial, or any subsequent trial in the Delaware Cases. Similarly, if ChanBond's present counsel, KWM, is ordered to be replaced, as Ms. Leane has requested in connection with her New York malpractice claims (D.I. 536-1, Ex. Q ¶ 160), she will certainly contend that any trial in which KWM serves as counsel was not a "full and fair opportunity to litigate" the case. As demonstrated in her New York complaint, Ms. Leane clearly does not trust KWM to litigate her claims in the Delaware Cases. *See e.g.*, D.I. 536-1, Ex. Q ¶¶ 1-9, 89-97, 136-161. As a result of these challenges, the Court and the parties may be forced to engage in substantial motion practice, procedural appeals, and worst of all, repeat trials. All of this will result in a tremendous waste of resources.

**V.     Conclusion**

For the foregoing reasons, Defendants respectfully request that the Court deny ChanBond's motion for leave to file a sur-reply and grant Defendants' request to reopen discovery on these issues.

<div style="display: flex;">

<div>

OF COUNSEL:

Michael L. Brody
Saranya Raghavan
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, IL 60601
(312) 558-5600

David P. Enzminger
Nimalka Wickramasekera
WINSTON & STRAWN LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543
(213) 615-1780

Krishnan Padmanabhan
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166-4193
(212) 294-6700

Thomas M. Melsheimer
WINSTON & STRAWN LLP
2121 North Pearl Street, Suite 900
Dallas, TX 75201
(214) 453-6500

November 30, 2020

</div>

<div>

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jennifer Ying*

Jack B. Blumenfeld (#1014)
Jennifer Ying (#5550)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
jying@mnat.com

*Attorneys for Defendants*

</div>

</div>

## CERTIFICATE OF SERVICE

I hereby certify that on November 30, 2020, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on November 30, 2020, upon the following in the manner indicated:

| | |
|---|---|
| Stephen B. Brauerman, Esquire<br>BAYARD, P.A.<br>600 North King Street, Suite 400<br>Wilmington, DE 19801<br>*Attorneys for Plaintiff* | *VIA ELECTRONIC MAIL* |
| Mark Raskin, Esquire<br>Robert Whitman, Esquire<br>John F. Petrsoric, Esquire<br>Michael S. DeVincenzo, Esquire<br>Andrea Pacelli, Esquire<br>Lana Milojevic, Esquire<br>Eric P. Berger, Esquire<br>KING & WOOD MALLESONS LLP<br>500 Fifth Avenue, 50th Floor<br>New York, NY 10110<br>*Attorneys for Plaintiff* | *VIA ELECTRONIC MAIL* |

*/s/ Jennifer Ying*
_____
Jennifer Ying (#5550)