**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| IN RE CHANBOND, LLC PATENT LITIGATION | C.A. No. 15-842-RGA<br><br>**CONSOLIDATED**<br><br>**REDACTED** |

**PLAINTIFF CHANBOND, LLC'S REPLY BRIEF
IN SUPPORT OF ITS MOTION FOR LEAVE TO FILE SUR-REPLY
IN OPPOSITION TO DEFENDANTS' MOTION TO REOPEN DISCOVERY FOR
INVESTIGATION OF STANDING ISSUES**

Date: December 7, 2020

*Of Counsel:*

Robert A. Whitman *(pro hac vice)*
Mark S. Raskin *(pro hac vice)*
John F. Petrsoric *(pro hac vice)*
Michael DeVincenzo *(pro hac vice)*
Andrea Pacelli *(pro hac vice)*

**KING & WOOD MALLESONS LLP**
500 Fifth Avenue, 50th Floor
New York, New York 10110
212-319-4755
robert.whitman@us.kwm.com
mark.raskin@us.kwm.com
john.petrsoric@us.kwm.com
michael.devincenzo@us.kwm.com
andrea.pacelli@us.kwm.com

Stephen B. Brauerman (#4952)
Ronald P. Golden III (#6254)
**BAYARD, P.A.**
600 N. King Street, Suite 400
Wilmington, Delaware 19801
(302) 655-5000
sbrauerman@bayardlaw.com
rgolden@bayardlaw.com

*Counsel for Plaintiff
ChanBond, LLC*

## TABLE OF BRIEF ABBREVIATIONS

| Abbreviation | Docket Index | Title of Brief |
|---|---|---|
| Open. Br. | 525 | *Defendants' Opening Brief in Support of Their Motion to Reopen Fact Discovery for Limited Investigation of Standing Issues* |
| Opp. Br. | 529 | *Plaintiff ChanBond, LLC's Brief in Opposition to Defendants' Motion to Reopen Discovery for Investigation of Standing Issues* |
| Rep. Br. | 535 | *Defendants' Reply Brief in Support of Their Motion to Reopen Fact Discovery for Limited Investigation of Standing Issues* |
| Mtn. Sur-Rep. | 537 | *Plaintiff ChanBond, LLC's Motion for Leave to File Sur-Reply in Opposition to Defendants' Motion to Reopen Discovery for Investigation of Standing Issues* |
| Prop. Sur-Rep. Br. | 537, Ex. 1 | *Plaintiff ChanBond, LLC's Sur-Reply in Opposition to Defendants' Motion to Reopen Discovery for Investigation of Standing Issues* |
| Sur-Rep. Opp. | 543 | *Defendants' Brief in Opposition to ChanBond's Motion for Leave to File Sur-Reply in Opposition to Defendants' Motion to Reopen Fact Discovery for Limited Investigation of Standing Issues* |

i

## I.     Introduction

Realizing that their original basis to reopen discovery was baseless, Defendants changed tactics in their reply brief[1], now urging that unsubstantiated allegations regarding attorney misconduct with respect to an Advisory Services Agreement ("ASA") between ChanBond, LLC ("ChanBond") and IPNAV, LLC required the reopening of discovery.  Defendants' moving papers did not mention either the ASA or any claims of attorney misconduct.  As such, ChanBond has requested leave to address Defendants' new allegations that discovery should be reopened in the light of the ASA.

Defendants now seek to preclude ChanBond from responding to their baseless misconduct accusations and their nonsensical argument concerning the purported relevance of the ASA.  Defendants' manufactured reasons for seeking to muzzle ChanBond do not withstand cursory scrutiny.  Defendants claim that ChanBond failed to "explain" the dispute between Deirdre Leane and ChanBond concerning the ASA during the meet-and-confer process.  Yet, during the parties' September 24, 2020 meet-and-confer, the only issue Defendants raised was the interpretation of the October 2015 Interest Sale Agreement ("October 2015 Agreement"). There were no on-going litigations regarding the October 2015 Agreement at that time.  As such, ChanBond cannot be faulted for failing to mention a litigation that did not exist.  Further, Defendants claim that they requested information generally during the meet-and-confer process about the dispute between Ms. Leane and ChanBond.  That argument is false and belied by the parties' communications and Defendants' moving papers, all related to the October 2015 Agreement.

---

[1] To avoid confusion regarding the identification of the briefs addressing Defendants' motion to reopen fact discovery (D.I. 524), ChanBond's citations use the abbreviations set forth in the *Table of Brief Abbreviations*.

Further, Defendants' sur-reply opposition injects yet another new argument in support of their underlying motion to reopen discovery and delay trial. Defendants now argue that discovery should be reopened because Ms. Leane could theoretically become ChanBond's new owner and that this could potentially lead to a change of ChanBond's counsel. Putting aside Defendants' reliance on unfounded speculation, an eventual change in ownership of ChanBond or its counsel would have no more impact on this litigation than a change in ownership or defense counsel of a Defendant. Regardless of who owns ChanBond, ChanBond would remain the owner of the patents-in-suit. Further, ChanBond, like Defendants, can always elect to change its counsel—the potential for such a change does not justify reopening discovery.

Put simply, ChanBond seeks to respond to Defendants' new allegations raised for the first time in reply. Those allegations, while sensational (as undoubtedly intended by Ms. Leane), are unfounded and irrelevant, and provide no basis for re-opening discovery or delaying trial. The Court should allow ChanBond to file its proposed sur-reply responding to Defendants' new reply arguments, which are based on documents long known to Defendants.

## II.  Argument

### A. ChanBond Should Be Permitted to Demonstrate that the Advisory Services Agreement Is Not Relevant and Defendants Made No Attempt to Secure Its Production

Defendants filed a motion to reopen discovery to investigate a single issue—whether the October 2015 Agreement gave Ms. Leane ███████████████████████ ██████ (*See, generally,* Open. Br.) After receiving ChanBond's response, Defendants urged for the first time that discovery needs to be reopened to investigate whether, under the ASA, Ms. Leane granted Technicolor, her former employer and one of Defendants' cable modem suppliers, a license to the patents-in-suit. (Rep. Br. at 5–6, 9.) Defendants further alleged that the ASA

2

was withheld during discovery as a result of litigation misconduct, which they also contend included the production of a so-called "fake" termination of the ASA. (*Id.* at 11.) Defendants now urge that the alleged misconduct excuses their demonstrable lack of reasonable diligence in seeking the ASA's production, despite their knowledge of it and its termination. (Sur-Rep. Opp. at 8–9.) Rather than agree to a sur-reply to permit ChanBond to respond to their new allegations, Defendants use their opposition as yet another opportunity to repeat the unsubstantiated smears of ChanBond's counsel as if doing so could excuse their delay.

Defendants' accusations are nothing more than an attempt to distract the Court from the indisputable fact that any additional discovery concerning the ASA has no relevance to these cases. In their sur-reply opposition, Defendants repeat the unfounded argument, first made in reply, that the ASA may have granted Ms. Leane the ability to license the patents-in-suit. Yet, contrary to Defendants' arguments, Ms. Leane was not "uniquely positioned to convey a license to Technicolor." (*Id.* at 1, 8.) As explained in ChanBond's proposed sur-reply, █████ ███████████████████████████████████ Ms. Leane authority to license the patents-in-suit. (Prop. Sur-Rep. Br. at 2–5.) Indeed, pursuant to the ASA itself, Ms. Leane has no "decision-making" authority over any license as that right, along with all others, "rests solely with" ChanBond. (*Id.*) Not only does Ms. Leane lack the right to grant licenses, but she testified ███ ███████████████████████████████████████████████████████████. (*See* Ex. H, Leane 4/24/18 Tr. at ███████████████████████████ ██████████████████    ███████████████████████

███████████████████████████████████[2]  Consistently, Technicolor has never come forward

and claimed Ms. Leane provided a license to the patents-in-suit.[3]

Defendants' sur-reply opposition repeats their contention that the cancelled ASA was a

"key agreement" that was intentionally concealed by ChanBond's counsel.  (Sur-Rep. Opp. at 1.)

Incredibly, Defendants seek to preclude ChanBond from responding to the outlandish allegation

that its counsel created a "fake document[]" (*id.* at 11) "to hide Ms. Leane's interest in the

patents" (*id.* at 1).[4]  ChanBond's sur-reply should be granted to allow it to respond to

Defendants' unwarranted mud-slinging.  Indeed, ChanBond did not conceal Ms. Leane's interest.

Defendants deposed Ms. Leane (twice) and were free to ask her whatever they wanted.  Ms.

Leane's interest in the outcome of these cases was fully disclosed and is reflected by a

████████████████████████████████████████████████

████████████  (*See* Opp. Br., Ex. C, Leane 4/24/18 Tr. at 1████████████████████████

███████████████████████

---

[2] ███████████████████████████████████████████████  She did not become the Chief Intellectual Property Officer at
Technicolor until 2017.  (See Ex. I.) ████████████████████████████
██████████████████████████████████████████████
█████████████

[3] Defendants' further argument related to Ms. Leane's purported disclosure of her interest in the
patents-in-suit to Technicolor does not render the requested new discovery relevant.  (*See* Sur-
Rep. Opp. at 4; Rep. Br., Ex. P at ¶¶74–78, Ex Q at ¶¶68–72.)  Regardless of Ms. Leane's
interest in the outcome of this litigation, a license defense would require evidence that Ms. Leane
had the power to ***and***, did in fact, grant a license.  Yet, as detailed above, the ASA did not grant
Ms. Leane the right to grant licenses and, even if it did, she testified ██████████████████
███████████████████████████████████████.

[4] As Defendants' repeated citations make clear (Sur-Rep. Opp. at 4, 10), Ms. Leane now seeks to
reinstate the ASA.  Even she does not contend that the termination was "fake."

Unable to dispute that ChanBond should be permitted to respond to Defendants' allegations, Defendants use their sur-reply opposition to distract from the fact that they were not diligent in seeking production of the irrelevant and terminated ASA.  Yet, Defendants cannot dispute that Ms. Leane identified the ASA during her deposition.  Despite this, Defendants' counsel did not question Ms. Leane regarding the details of the ASA or the steps she had taken to identify her interests in these cases, either through ████████████████████, to Technicolor.  Instead, after learning of the ASA, Defendants made a tepid attempt (at best) to secure production of the ASA.  (Prop. Sur-Rep. Br. at 5.)

Not content to raise new arguments in reply while seeking to muzzle ChanBond, Defendants use their sur-reply opposition to inject brand-new and equally baseless allegations regarding attorney misconduct.  Defendants contend that the April 30, 2018 text messages between Ms. Leane and William Carter "corroborate that ChanBond withheld that ASA for litigation advantage."  (Sur-Rep. Opp. at 4.)  To support that accusation, Defendants cite to Ms. Leane's allegations that ChanBond's counsel fraudulently induced her to terminate the ASA. (*Id.* at 3,4, citing to Ex. P at ¶¶48-58, Ex Q at ¶¶39-53.)  However, these text messages are not only irrelevant, they did not involve ChanBond's counsel.  There is no correspondence between Ms. Leane and ChanBond's counsel remotely supporting Ms. Leane's allegations (because those allegations are demonstrably false).

### B.    Defendants Misrepresent the Parties' Meet-and-Confer

Defendants seek to preclude ChanBond from responding to Defendants' new reply arguments because ChanBond purportedly failed to comply with its disclosure obligations during the parties' meet-and-confer.  That is false.  Defendants state that ChanBond was asked to explain the nature of the dispute between Ms. Leane and ChanBond (Sur-Rep. Opp. at 2, 9) and

that "ChanBond explicitly refused to provide any information regarding the dispute" (*id.* at 1). Defendants asked no such question and were provided with no such response.

As reflected in the parties' correspondence, Defendants did not request general information regarding all disputes between Ms. Leane and ChanBond during the parties' meet-and-confer.  Instead, Defendants requested information concerning only the October 2015 Agreement and its interpretation.  Akiva Cohen's September 2, 2020 email to Defendants' counsel indicated that Ms. Leane believed that the ███████████████ section of the October 2015 Agreement gave Ms. Leane ████████████████████████████████ ██████ (Open. Br., Ex G at 4).  Counsel for ChanBond and Defendants exchanged emails thereafter leading to the meet-and-confer.  In those emails, ChanBond explained that the ███████████████████████ section is unambiguous, and that Mr. Cohen's reading was therefore objectively inaccurate.  ChanBond also explained that, even if Mr. Cohen's interpretation were correct, there would be no impact on standing in the case.  (*Id.* 2–3.)  Defendants' response, further encapsulated in their opening brief (*see, generally,* Open. Br.), was that the reopening of discovery was warranted in view of Ms. Leane's own interpretation of the October 2015 Agreement (*id.* at 1)—an interpretation that Defendants claim to have failed to consider during discovery.  (*See* Opp. Br. at 8–11.)  The meet-and-confer process was limited to this issue. Defendants' false contention that the meet-and-confer was generally directed at a broad inquiry into all potential dispute(s) between Ms. Leane and ChanBond is wholly unsupported by the record.

Defendants' allegation that ChanBond was required to disclose the existence of the New York and Texas litigations on the parties' September 24, 2020 meet-and-confer or in its October 22 opposition brief is meritless.  The New York litigation was filed on September 22, 2020,

contemporaneous with but not yet served at the time of the meet-and-confer.  More importantly, that litigation does not concern the interpretation of the October 2015 Agreement.  The Texas litigation, as well as the arbitration demand, were filed on September 29, 2020, after the parties' meet-and-confer.  Thus, ChanBond could not possibly have disclosed the existence of the Texas litigation at the time of the meet and confer.  However, as recognized by Defendants, the Texas litigation was directed to the single issue of contract interpretation raised in Defendants' opening brief to reopen discovery, namely, whether the ███████████████ section of the October 2015 Agreement granted Ms. Leane ███████████████.  That issue has now been resolved. Judge Boyle in the Northern District of Texas held that the ███████████████ section did not provide Ms. Leane with licensing veto power, and it does not prohibit ChanBond from licensing the patents-in-suit without Ms. Leane's consent.  (D.I. 541, Ex. A at 6–9.)

Defendants filed their opening brief on October 8, two weeks after the meet-and-confer. In that brief, Defendants urged that reopening discovery was necessary because there was a "possibility" under the October 2015 Agreement that ChanBond might not have standing. ChanBond responded on October 22, 2020 showing that: (i) Defendants were not diligent in seeking discovery regarding the October 2015 Agreement; (ii) the discovery sought was not relevant because Mr. Cohen's "interpretation" was based on a misreading of the October 2015 Agreement; and (iii) even if Mr. Cohen's "interpretation" was correct, it would not impact ChanBond's standing.  Following ChanBond's opposition, and Judge Boyle's decision, Defendants' reply abandoned their opening arguments and instead argued for the first time in reply that additional discovery is needed to investigate a supposed, potential "implied license" to Technicolor.  Defendants could have sought to withdraw and refile a separate motion upon learning of the recent Texas and New York actions, but instead chose to raise the new issues and

arguments for the first time in their reply brief without so much as a meet-and-confer. Accordingly, the Court should permit ChanBond a sur-reply to address Defendants' new arguments.

### C.   ChanBond Has Been and Will Continue to Be the Plaintiff

Defendants claim they have "every right to know who the real plaintiff is before trial." (Sur-Rep. Opp. at 1.)  But there is no dispute ChanBond has been the legal owner of the patents-in-suit since the April 2015 Patent Purchase Agreement.  No individual—including ChanBond's previous manager Ms. Leane or ChanBond's current manager Mr. Carter—has owned the patents.  Since April 2015, only ChanBond has had standing to file and maintain these cases.

Moreover, any judgment in these cases will be binding against ChanBond, regardless of who currently or ultimately owns and controls ChanBond.  Defendants cite no law to the contrary, but rather try to inject confusion by citing to cases addressing whether issue preclusion applies to non-parties.  The present circumstances do not involve non-party preclusion. ChanBond is and has always been the only party.  The Supreme Court's holdings in *Taylor v. Sturgell* are nonetheless instructive, making clear that preclusion applies when a party and non-party are in a "substantive legal relationship" such as "preceding and succeeding owners of property, bailee and bailor, and assignee and assignor."  553 U.S. 880, 894 (2008).

Defendants also contend that, should Ms. Leane succeed in her efforts to regain ownership of ChanBond and replace ChanBond's counsel, she may contend that she did not have a "full and fair opportunity to litigate" the case (Sur-Rep. Opp. at 12).  In doing so, Defendants cite no supporting law, nor can they because a "full and fair opportunity to litigate" does not require the legal representation that one might have wished for in hindsight.  *See, e.g., Ellis v. Ford Motor Co.*, 628 F. Supp. 849, 857 (D. Mass. 1986) ("[T]he Court believes that it would not

be equitable to force the defendant to relitigate its case because [plaintiff's] counsel was arguably neglectful in the first action.  To do so would be to permit civil litigants to attack collaterally an earlier judgment with what can be described as the functional equivalent of a Sixth Amendment habeas corpus motion."); *see also In re Williams*, 282 B.R. 267, 277 (Bankr. N.D. Ga. 2002).

## III.    CONCLUSION

For the foregoing reasons and the reasons set forth in its opening brief, ChanBond respectfully requests that the Court grant it leave to file the sur-reply.

Date: December 7, 2020

*Of Counsel:*

Robert A. Whitman *(pro hac vice)*
Mark S. Raskin *(pro hac vice)*
John F. Petrsoric *(pro hac vice)*
Michael DeVincenzo *(pro hac vice)*
Andrea Pacelli *(pro hac vice)*

**KING & WOOD MALLESONS LLP**
500 Fifth Avenue, 50th Floor
New York, New York 10110
212-319-4755
robert.whitman@us.kwm.com
mark.raskin@us.kwm.com
john.petrsoric@us.kwm.com
michael.devincenzo@us.kwm.com
andrea.pacelli@us.kwm.com

**BAYARD, P.A.**

*/s/ Stephen B. Brauerman*
Stephen B. Brauerman (#4952)
Ronald P. Golden III (#6254)
600 N. King Street, Suite 400
Wilmington, Delaware 19801
(302) 655-5000
sbrauerman@bayardlaw.com
rgolden@bayardlaw.com

*Counsel for Plaintiff*
*ChanBond, LLC*

10

## CERTIFICATE OF SERVICE

I hereby certify that on December 7, 2020, a true and correct copy of the foregoing has

been served upon the following parties via electronic mail.


Jack B. Blumenfeld
Jennifer Ying
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899

*/s/ Stephen B. Brauerman*
Stephen B. Brauerman (No. 4952)

# EXHIBIT H











# EXHIBIT I

4/24/2018        (8) Deirdre Leane | LinkedIn

   Q Search

Attorney Needed ASAP - Crucial need for local attorney in your area. View new cases today.   Ad  ···

Lowest price EVER
for 100 Mbps internet.

**$29.99** mo. / 1 yr.

The competition can't touch th

Learn more    sudden



**Deirdre Leane** • 2nd

Chief Intellectual Property Officer at Technicolor

Dallas, Texas

Connect    🔒 Message    More...

Technicolor

Dublin City University

See contact info

500+ connections

## Highlights



**1 Mutual Connection**
You and Deirdre both know Michael A. Tomasulo

## Experience

   **Chief Intellectual Property Officer**
technicolor   Technicolor
Jul 2017 – Present  • 10 mos
Dallas/Fort Worth Area

   **VP Licensing**
technicolor   Technicolor
Dec 2016 – Jun 2017  • 7 mos
Dallas/Los Altos

Technicolor, a worldwide technology leader in the media and entertainment sector, is at the forefront of digital innovation. Our world class research and innovation laboratories enable us to lead the market in delivering advanced video services to content creators and distributors. We also benefit from an extensive intellectual property portfolio focused on imaging and sound technologies. Our commitment: supporting the delivery of exciting new experiences for consumers in theaters, homes and on-the-go.

www.technicolor.com
Follow us: @Technicolor – linkedin.com/company/technicolor

**President IPNav**
IP Navigation Group
Jan 2013 – Jun 2016  • 3 yrs 6 mos

**President, IPNav (Europe)**
IP Navigation Group
Jan 2011 – Jan 2013  • 2 yrs 1 mo

### People Also Viewed

   **Adam Saxon** • 2nd
Experienced Patent Professional
Licensing Advisor at Dominion H
Group

**Steve Kim** • 2nd
Head of Patent Strategy, IP & Lic
Exec at TiVo

   **Eric Rutter** • 2nd
President North American Cable
Technicolor

   **Edward Ryan** • 3rd
Vice President of Sales, East at
Technicolor Global Logistics

   **James Goepel** • 2nd
Vice President, General Counsel,
Chief Technology Officer at Clea
Corporation

**Douglas Croxall**
--

   **Kathleen Haultain** • 3rd
In home health specialist at Self-
Employed

**Rich Howard** • 3rd
Vice President of Sales at Techni
Global Logistics

   **JoeyGrillo RebelSoulBand...**
Rebel Soul Band: Southern-Class
Country-Rock Show Band

**Jon Walkenhorst** • 3rd
Founder at The Corporate CTO

Learn the skills Deirdre has

Learning Screenwritir
Final Draft 9
Viewers: 6,510

Creating a Short Film:



**EXHIBIT 1**
**LEANE**
**4/24/2018**
Reported by:  Tonie Thompson
CSR 8348, RPR, CRR

o Joseph M. Azam   ✕

Messaging    🖉 ⚙

4/24/2018

(8) Deirdre Leane | LinkedIn

Q Search                                                            Free Upgrade
                                                                   to Premium

**President**
Plant Transformation Technologies
Mar 2011 – Sep 2011  •  7 mos

more than
good
11:35 PM

Jan 18

What's your
cell?
9:44 PM

Show more ⌄

Write a message or

Press Enter
to Send

Learn more   Learn mor

## Education

**Dublin City University**
Post Doctorate, Biomedical
2004 – 2006

**Dublin City University**
Post Doctorate, Sensors
2003 – 2004

**Dublin Institute of Technology**
Ph.D., Chemistry
1999 – 2003

Show more ⌄

## Volunteer Experience

**Volunteer**
Back on My Feet
Jul 2016 – Present  •  1 yr 10 mos

## Skills & Endorsements

**Patents · 50**
Kayla Sammons and 49 connections have given endorsements for this skill

**Technology Transfer · 40**
Endorsed by Gearóid Tuohy, who is highly skilled   Endorsed by Michael A. Tomasulo (mutual
at this                                             connection)

**Intellectual Property · 30**
Endorsed by Pedro F. Suarez and 4 others who are   Endorsed by Michael A. Tomasulo (mutual
highly skilled at this                             connection)

Show more ⌄



4/24/2018                                    (8) Deirdre Leane | LinkedIn

Search



Free Upgrade
to Premium