IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CHANBOND, LLC, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 15-842-RGA |
| | : | Consolidated |
| ATLANTIC BROADBAND GROUP, LLC, et al., | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM ORDER ON *COX* MOTIONS IN LIMINE**

In *Chanbond v. Cox*, I make the following rulings on the motions in limine.

<u>Chanbond MIL #1 (D.I. 515)</u>. Plaintiff seeks to prevent testimony inconsistent with my claim construction of "combiner."[1] The claim construction required multiple "channels or inputs." (D.I. 86). Plaintiff states Cox's expert is essentially making that construction "channels and inputs." Plaintiff further argues that Cox's expert is adding limitations to "multiplexer," including in support of its "combiner" arguments.

Cox responds that it is following the "channels or inputs" claim construction. It states that its arguments concern "parallel to serial conversion." Cox says its argument is that it does not infringe because the accused "combiner" is serial to serial. (*See* D.I. 471 at 112, noting a factual dispute on this issue.). As to "multiplexer," Cox notes that I did not construe the term,

---

[1] Combiner appears in claim 1 of the '822 patent, claim 12 of the '679 patent, and most of the rest of the asserted claims. (D.I. 86 at 3; D.I. 470 at 30). It was construed as "multiplexer that, when it receives multiple channels or inputs, performs parallel to serial conversion on those channels or inputs." (D.I. 86 at 7-8). Although the Markman opinion says this is Plaintiff's proposal, it was actually Defendants'. (D.I. 471 at 31).

and that an expert is going to have to explain to a jury whether something is or is not a multiplexer.

Plaintiff's reply (D.I. 515 at 84 of 85) disagrees with Cox's description of what its expert is doing.

I do not think there is anything I can resolve on this motion at this time. As to "multiplexer," it is unlikely any juror will know what that is, and thus the experts will have to explain what it is (i.e., its plain and ordinary meaning to a POSA) to the jury. As for the "combiner" arguments, if Plaintiff hears testimony from Defendant's expert that is contrary to my claim construction, Plaintiff should make an objection at the appropriate time. Chanbond's MIL #1 is **DENIED** without prejudice to timely objection at trial.

Chanbond MIL #2 (D.I. 516). Plaintiff seeks to exclude expert opinion not in expert reports, specifically as to Dr. Prucnal and the "Amit Patent." The issue arises because Cox needs to rely upon the provisional application for the Amit Patent to make the Amit Patent prior art. Plaintiff says Dr. Prucnal offered no opinion on whether the provisional application was enabled.

Cox responds that Dr. Prucnal's analysis complied with Federal Circuit caselaw.[2] It does not appear that Cox intends to offer something from Dr. Prucnal that he has not previously stated.

The reply (*id*. at 99 of 100) argues the law. It does request that Dr. Prucnal "not be permitted to [offer opinions regarding the amount of experimentation necessary to practice the Amit claims] for the first time at trial."

It certainly appears to be the case that Cox and its expert have some burden to put forth evidence that the "specification of the *provisional* must 'contain a written description of the

---

[2] Cox cites Dr. Prucnal's opening and reply reports. (*See* D.I. 501-1 at 12-22 of 231 (¶¶ 235-50); D.I. 516 at 25-29 of 100 (¶¶ 35-42)).

invention [sufficient]' to enable a [POSA] to practice the invention *claimed* in the *non-provisional* application." *Dynamic Drinkware, LLC v. National Graphics, Inc.*, 800 F.3d 1375, 1378 (Fed. Cir. 2015). Whether the testimony that is supported by cited portions of the expert reports will support enablement is more akin to a summary judgment question than an issue for a motion in limine. And the question of whether Dr. Prucnal testifies beyond his report has to be addressed by a timely objection if and when the issue arises. Chanbond's MIL #2 is **DENIED** without prejudice to timely objection at trial.

Chanbond MIL #3 (D.I. 517). Plaintiff seeks to exclude testimony and evidence relating to other patents purportedly covering aspects of DOCSIS 3.0. Plaintiff identifies seven patents discussed by Cox's technical expert, and states that they are irrelevant to any remaining invalidity theory. (Cox does not dispute this statement.). Plaintiff's argument in regard to damages appears to be that, while Cox can certainly argue that DOCSIS 3.0 includes a lot more technology than what was invented by the asserted patents, it would be unfairly prejudicial and confusing if that argument included identified patents. Plaintiff also states that there is no analysis done to show that the seven patents even read on DOCSIS or the accused products. Cox's technical expert also discussed "patent pools." Plaintiff's argument is summed up as, "[what the technical expert says about patent pools] can be readily established by available, but far less prejudicial, evidence in the case." (D.I. 517 at 6 of 122).

In response, Cox says the seven patents are relevant to apportionment and damages. Cox at one point states that it does not matter that the seven patents are not compared to DOCSIS 3.0 or to the accused products. (*Id*. at 10 of 122). It cites no authority for this proposition. (If they are not compared, how are they determined to be relevant?). But Cox also cites portions of its expert's reports describing the contribution of the patents to the DOCSIS technology. (D.I. 517

at 15-38 of 122 (¶¶ 136-75)).[3]  As for patent pools, Cox says the "DOCSIS" word search is not the meat of the expert's opinions (so that its inaccuracy does not matter).  I understand Cox to be saying that the patent pools are part of the story of all the different technologies in DOCSIS.

I think the patents are clearly relevant.  They may or may not be the best way to make Cox's point, but I cannot say that their probative value is substantially outweighed by the risk of confusion.  *See* Fed. R. Evid. 403.  Since Cox effectively concedes that a word search using DOCSIS proves nothing, and what is important is the analysis of the actual technology, the DOCSIS word search is excluded.  It has no probative value, and therefore is irrelevant.  (If it were relevant, I would nevertheless exclude it under Rule 403.).  As to the patent pool, I disagree with Plaintiff's assertion that the amount of technology that goes into DOCSIS is irrelevant to apportionment, and therefore I do not exclude testimony about patent pools, which, as I understand it, is offered in support of the concept that there is a lot of apportionment that has to be done (which Cox's expert says Plaintiff's expert has not done).  Chanbond's MIL #3 is **GRANTED** in part and **DENIED** in part, without prejudice to Chanbond's ability to object to testimony about specific patents at trial on any permissible basis.

Cox MIL #1 (D.I. 501-3).  The request is to exclude Baumgartner, "DOCSIS 3.1's Price Delta."[4]  It's a twelve-sentence blog post, dated January 14, 2016.  (*Id*. at 10 of 62).  Among other things, Cox objects that it is hearsay.

Plaintiff responds that it is not hearsay because it is not offered for the truth.  Rather it is offered, Plaintiff says, for its affect on readers.  (*Id*. at 32 of 62).  Thus, I guess the logic goes

---

[3] The heading for this analysis is, "The numerous additional technologies needed to implement the channel bonding technique of DOCSIS 3.0."

[4] As far as I can tell, in connection with this motion, neither side cites to any portion of Dr. Teece's report to show what exactly he is doing with this blog post.  Cox cites portions of Dr. Teece's deposition transcript, but mostly to support its argument that Dr. Teece has no basis to rely upon the blog post.

that the parties to the hypothetical negotiation in in 2011-12 (D.I. 501-4 at 4 n.1 of 154, citing Teece Cox Report ¶¶ 166, 169) would have (like a POSA) had all information in the world both inside and outside of their respective businesses and would have chosen to rely on some unknown third-party's unsourced statements about anticipated pricing.

Cox, in reply, says Plaintiff's expert uses the blog post for the truth of the matter asserted. I do not need to decide whether Cox is right about what Plaintiff's expert uses it for, because, taking Plaintiff's argument at face value, the chain of reasoning that the double hearsay[5] content of a blog post in 2016 is relevant for its impact on the hypothetical negotiation in 2011-12 is nevertheless too attenuated to support the blog post's admission. Plaintiff asserts that the expectations of the parties to the hypothetical negotiation is the basis for the cost approach to damages. (D.I. 501-3 at 32 of 62). The hypothetical negotiation may be hypothetical, but that does not mean that the facts that stand behind the analysis need not be tethered to reality.[6] The blog post is irrelevant and therefore Cox's MIL #1 to exclude it and testimony based on it is **GRANTED**.[7]

Cox MIL #2 (D.I. 501-4). The request is to exclude the "2002 Portelligent report."[8] It is offered in support of the "dual modem" approach. It concerns the "Toshiba PCX2600 Cable

---

[5] It is double hearsay because Baumgartner cannot be cross-examined about his assertions that what he reported people saying is what they said, and because the unnamed people cannot be cross-examined about the truth of the matter asserted that is attributed to them, that is, what they expected to happen. The proposition that the course of the hypothetical negotiation would have been impacted by "word on the street" in 2016 is not credible. By Plaintiff's logic, if it had created its own website shortly after filing this lawsuit (i.e., in 2016), it could have posted that it had heard that the modems would have a "price premium" of 100%, and that would constitute admissible evidence.

[6] I would be surprised if Dr. Teece stated that people in the industry relied upon unsourced statements in blog posts to determine anything of importance to their businesses, including future pricing trends. The deposition excerpts suggest that I would be right about this.

[7] I would exclude it under Rule 403 if I were not determining it is inadmissible.

[8] Cox sometimes calls it the "2003 Portelligent report" (*see* D.I. 501-4 at 4 of 154; *but see id*. at 146 of 154), but it is copyrighted 2002.

Modem." (*Id*. at 10-45 of 154). Portelligent "extends no warranties with respect to any information in this document, and shall bear no liability whatsoever for the use of the information." (*Id*. at 10). Plaintiff's expert makes some use of the information in this report to estimate the cost of adding a DOCSIS 2.0 channel to a cable modem at the time of the hypothetical negotiation, about nine years later. (*See id*. at 53-55 of 154 (Opening Exp. Rep. ¶¶ 294-302, citing the analysis in "Exhibit 6A"); *id*. at 58-60 of 154 (Reply Exp. Rep. ¶¶ 284-89, citing "Exhibit 6B" to the Opening Report)).

Plaintiff states it is not hearsay if offered to show the parties' expectations at the hypothetical negotiation. (D.I. 501-4 at 49 of 154).

As far as I can tell, Dr. Teece has not stated whether the 2002 Portelligent Report is something a financial expert would reasonably rely upon, *see* Fed. R. Evid. 703, and other than one paragraph (*id.* at 59 of 154) which does not address the issue, the record is silent on the issue.[9] (The one paragraph implies that Dr. Teece has taken into account the passage of time, and I agree with Plaintiff that simply because I excluded other evidence relating to this time period does not indicate anything about what I should do with this piece of evidence.).

I think the only reason the Portelligent report is being offered or relied upon is for the truth of the matter asserted in it. Thus, I reject Plaintiff's attempt to avoid the hearsay issue. I have previously excluded somewhat analogous third-party reports. *See In re: IH1, Inc*., 2015 WL 5679724 (D. Del. Sept. 25, 2015). But I cannot say on the present record that I would do the

---

[9] To show that the Portelligent Report is the sort of thing that an expert would rely upon, Plaintiff cites to a report by Dr. Nettleton (D.I. 501-4 at 48 of 154, citing *id*. at 117-18 of 154) who indeed relies upon it. But he is a technical expert, and a "teardown report" complete with lots of pictures and diagrams seems like something a technical expert might well rely upon. Whether or not a financial expert would rely upon it for its financial analysis is a different question.

same with the 2002 Portelligent report. And, even if I excluded it as hearsay, I might still permit Dr. Teece to rely upon it in his analysis.

I do not think the record before me is sufficient to rule on this motion. I suggest that the parties quickly confer about how to proceed (in view of the scheduled trial date), and either I can take supplemental written submissions, I can take testimony before the start of trial, or I can deal with it in a hearing the day of jury selection.

Cox MIL #2 is **DEFERRED** pending further proceedings.

Cox MIL #3 (D.I. 501-5). The request is to exclude Cisco documents asserting that Cisco "[i]nvented channel bonding (Wideband) in 2001." (*Id*. at 13 of 260). Cox says the statements are hearsay. The phrase appears in a document that is dated 2006. Plaintiff's invalidity expert refers to it in an expert report for the proposition that inverse multiplexing was not well known in 2000 because Cisco claimed Cisco had invented it ("inverse multiplexing" and "channel bonding (Wideband)" presumably being the same thing) in 2001. (*Id.* at 66 of 260 (Ash Rpt., ¶ 423)).

Plaintiff responds that it is not offering the statements for their truth. (D.I. 501-5 at 74-76 of 260). That is, Plaintiff's view is that Cisco did not invent channel bonding in 2001; rather, the inventors invented it in 2000. Plaintiff states that this is relevant to non-obviousness.

Cox replies. (*Id*. at 244 of 260). It states, and I agree, that there is a hearsay issue.

Cisco is a third party. The document is offered to prove that Cisco made the statement in 2006. (The parties usually stipulate to authenticity, and the document was produced by Cox, so this is likely not an issue.). But, the document cannot be cross-examined. The issue about cross-examination is significant. The document asserts that in 2006 Cisco had some belief about what the state of affairs was in 2001. The value of the document as evidence is zero unless the implied assertion that this is what Cisco believed in 2001 is a true statement of what Cisco

believed in 2001.  It is thus offered for the proof of the truth of the matter asserted.  The parties also argue about what the unknown author meant by the phrase "channel bonding (Wideband)."  By itself, the interpretation of what was meant by "channel bonding (Wideband)" is a factual dispute.

It appears to be undisputed that no one has asked anyone at Cisco anything about the document.

Thus, since the relevance of the document, if any, depends upon the truth of the out-of-court assertion of a person who cannot be cross-examined, it is inadmissible hearsay.  Cox's MIL #3 is **GRANTED**.  The document and any testimony based on it are excluded.

IT IS SO ORDERED this 15th day of April 2021.

/s/ Richard G. Andrews
United States District Judge