```
 1                    IN THE UNITED STATES DISTRICT COURT

 2                      FOR THE DISTRICT OF DELAWARE

 3

 4    IN RE:  CHANBOND, LLC           ) C.A. No. 15-842(RGA)
      PATENT LITIGATION               ) CONSOLIDATED
 5

 6                                     J. Caleb Boggs Courthouse
                                       844 North King Street
 7                                     Wilmington, Delaware

 8                                     Monday, April 19, 2021
                                       9:01 a.m.
 9                                     Teleconference

10
      BEFORE:  THE HONORABLE RICHARD G. ANDREWS, U.S.D.C.J.
11

12    APPEARANCES:

13               BAYARD, P.A.
                 BY:  STEPHEN B. BRAUERMAN, ESQUIRE
14               BY:  RONALD P. GOLDEN, III, ESQUIRE

15                       -and-

16               KING & WOOD MALLESONS LLP
                 BY:  ROBERT A. WHITMAN, ESQUIRE
17               BY:  MARK S. RASKIN, ESQUIRE
                 BY:  JOHN F. PETRSORIC, ESQUIRE
18               BY:  MICHAEL DeVINCENZO, ESQUIRE
                 BY:  ANDREA PACELLI, ESQUIRE
19               BY:  ELIZABETH LONG, ESQUIRE
                 BY:  CHARLES WIZENFELD, ESQUIRE
20               BY:  ERIC BERGER, ESQUIRE

21                                   For ChanBond, LLC

22

23

24

25
```

1    APPEARANCES CONTINUED:

2              MORRIS NICHOLS ARSHT & TUNNELL LLP
               BY:  JACK B. BLUMENFELD, ESQUIRE
3              BY:  JENNIFER YING, ESQUIRE

4                       -and-

5              WINSTON & STRAWN, LLP
               BY:  KRISHNAN PADMANABHAN, ESQUIRE
6              BY:  THOMAS M. MELSHEIMER, ESQUIRE
               BY:  DAVID P. ENZMINGER, ESQUIRE
7
                              For the Defendant
8
                    ***  PROCEEDINGS  ***
09:01:21  9

09:01:21 10            THE COURT:  Good morning.  This is Judge

09:01:21 11    Andrews.

09:01:21 12            Is my reporter on the line?

09:01:21 13            THE REPORTER:  Yes, Judge.

09:01:26 14            THE COURT:  And is my deputy clerk on the line?

09:01:28 15            DEPUTY CLERK:  Yes, Judge.

09:01:29 16            THE COURT:  And for the plaintiffs, Mr. Golden,

09:01:33 17    are you on the line?

09:01:35 18            MR. BRAUERMAN:  Good morning, Your Honor.  It's

09:01:36 19    Steve Brauerman.

09:01:38 20            THE COURT:  Okay.

09:01:41 21            MR. BRAUERMAN:  Mr. Golden is on as well for

09:01:44 22    Bayard.  We're joined from lead counsel by Robert Whitman,

09:01:48 23    Mark Raskin, Michael DiVincenzo, John Petrsoric, Charles

09:01:55 24    Wizenfeld, Betsy Long, Andrea Pacelli, and Eric Berger from

09:02:00 25    King & Wood Mallesons.  And we may be joined by George

09:02:07  1   Shipley from the Shipley Snell firm in Texas as well as our

09:02:11  2   client representative, William Carter, is on the line.

09:02:13  3                 And good morning, Your Honor.

09:02:14  4                 THE COURT:  Good morning, Mr. Brauerman.

09:02:16  5                 All right.  And for the defendants, who's on the

09:02:19  6   line?

09:02:22  7                 MS. YING:  Good morning, Your Honor.  This is

09:02:24  8   Jen Ying from Morris Nichols on behalf of the defendant,

09:02:26  9   Cox.  With me on the line is Jack Blumenfeld, also from

09:02:29 10   Morris Nichols.  And then we have Krishnan Padmanabhan, Tom

09:02:33 11   Melsheimer, and David Enzminger from Winston & Strawn.

09:02:36 12                 We also have some client reps on the line, but I

09:02:39 13   won't announce them because I think there's a lot of them.

09:02:42 14                 THE COURT:  Okay.  Thank you, Ms. Ying.

09:02:43 15                 All right.  So basically, I've gotten a letter

09:02:48 16   about the trial date, and I think with a few minor

09:02:55 17   modifications, we can have a trial.  And the only thing

09:03:03 18   standing in the way from the point of view of the parties

09:03:07 19   are what Cox identifies as the witnesses, Bernstein and

09:03:11 20   White.  But as I understand it, they're fact witnesses and I

09:03:15 21   have no idea actually who they are, but as I understand it,

09:03:19 22   everyone agrees that they can testify remotely.  And so

09:03:25 23   doesn't that more or less, and I'm not saying you all don't

09:03:29 24   have to figure out perhaps some protocol about them

09:03:32 25   testifying remotely, but doesn't that more or less resolve

09:03:35 1    that issue?

09:03:39 2             MR. PADMANABHAN:  This is Krishnan Padmanabhan

09:03:42 3    on behalf of Cox.  This is what I'd say is Mr. Bernstein,

09:03:47 4    he's a fact witness, but he's also a fact witness for --

09:03:51 5             THE COURT:  Wait.  I'm sorry, Mr. Padmanabhan.

09:03:54 6    You don't have the best connection in the world.  I can

09:03:57 7    barely understand you.

09:03:59 8             MR. PADMANABHAN:  I apologize, Your Honor.  Let

09:04:00 9    me try once more.  Hopefully, this is better.

09:04:03 10            THE COURT:  Okay.  It sounds better.

09:04:05 11            MR. PADMANABHAN:  Good.  I was just trying to

09:04:09 12   fill in the gap that the Court identified which is that

09:04:13 13   Mr. Bernstein is a fact witness for Cisco Systems.

09:04:16 14            THE COURT:  Okay.

09:04:17 15            MR. PADMANABHAN:  And so his fact testimony is

09:04:19 16   pretty essential.  Mr. White is a fact witness for

09:04:23 17   CableLabs.  I think one of the issues that I think had been

09:04:28 18   identified previously is that there might be certainly some

09:04:34 19   issues regarding weight given to witnesses, some of which

09:04:37 20   are giving testimony remotely, and some even who are giving

09:04:42 21   testimony live.  And I think, you know, Mr. Bernstein's

09:04:46 22   testimony is very important because it's critical testimony

09:04:49 23   regarding a lot of the accused equipment.

09:04:51 24            So that is certainly an issue, I think, Your

09:04:55 25   Honor.  We think it's a little bit of a problem.  Well, more

09:05:00 1   than a little bit of a problem.  And so I don't know if

09:05:05 2   that's, you know, simply carried by remote testimony, I'd

09:05:14 3   say that.

09:05:14 4          I'd also say that, as Your Honor knows, we

09:05:17 5   talked about this case being a bellwether, and I think there

09:05:21 6   would certainly be some issues or some questions about how

09:05:24 7   representative it is if some of the key testimony regarding

09:05:28 8   the accused equipment is coming in remotely.

09:05:32 9          THE COURT:  Okay.  Well, you know, I think we're

09:05:37 10  doing plenty of or, you know, remote trials, bench trials

09:05:41 11  that are entirely remote and, you know, people presenting

09:05:44 12  testimony by deposition.  So I believe that Mr. Bernstein

09:05:50 13  and Mr. White, if he's less important, but in any event,

09:05:53 14  both of them can be presented remotely and with, you know,

09:06:01 15  not prejudicing your case.  So I note your concern.

09:06:05 16         In any event, you know, I want to go ahead and

09:06:14 17  you'll just have to figure out how to deal with that.  I

09:06:16 18  don't think it makes any difference that it's a bellwether

09:06:22 19  trial.  So that's one thing.

09:06:24 20         MR. BRAUERMAN:  Your Honor.

09:06:24 21         THE COURT:  Yes.

09:06:25 22         MR. BRAUERMAN:  Your Honor, I'm sorry.  This is

09:06:28 23  Steve Brauerman.  I just wanted to, if I could mention one

09:06:31 24  point on this which I think will help alleviate

09:06:34 25  Mr. Padmanabhan's concern about the weight to the witnesses.

09:06:37   1   We have witnesses -- we have one witness, our infringement

09:06:40   2   expert, Mr. Nettles who would prefer to testify remotely as

09:06:45   3   well.  If that's acceptable to the Court, that is acceptable

09:06:48   4   to ChanBond.  And I think it might -- if both parties are

09:06:53   5   having at least one important witness testify remotely, it

09:06:56   6   might minimize Mr. Padmanabhan's concern about giving weight

09:07:00   7   to the witnesses.  So I just wanted to say that at this time

09:07:03   8   and make sure that was acceptable to Your Honor that

09:07:06   9   Mr. Nettles testify remotely as well.

09:07:09  10          THE COURT:  Very well.  At least I know who

09:07:12  11   Dr. Nettles is, and I have -- so that's fine by me.

09:07:18  12          Mr. Padmanabhan, any comment from you?

09:07:24  13          MR. PADMANABHAN:  Yeah, sure.  Actually I think,

09:07:25  14   Your Honor, it gives us serious concern because, you know,

09:07:31  15   cross-examination remotely is certainly not optimal, and the

09:07:36  16   cross-examination of Dr. Nettles is -- it's critical to the

09:07:41  17   case.  We think a number of Dr. Nettles' opinions are highly

09:07:48  18   suspicious and so, you know, I think we would obviously

09:07:52  19   prefer live cross-examination of that witness.  And again,

09:07:57  20   that presents issues.

09:07:59  21          Now, Your Honor, one thing we would note is, and

09:08:02  22   we don't -- obviously, you know, we understand that Your

09:08:09  23   Honor thinks the case is ready to proceed, and we understand

09:08:13  24   that.  But one of the proposals in ChanBond's letter was to

09:08:19  25   do this in July, and we might be able to alleviate some of

09:08:23  1    these issues with a July date which is just not that far

09:08:27  2    off, at the same time I think everyone is hoping that we are

09:08:31  3    and expecting that we are going to be in a much better

09:08:35  4    situation then.

09:08:35  5            THE COURT:  All right.

09:08:42  6            MR. BRAUERMAN:  Your Honor, this is Steve

09:08:44  7    Brauerman.  I would just say when we submitted that letter

09:08:46  8    some time ago, the state of the world was slightly

09:08:50  9    different.  We are opposed to moving the trial.  We are

09:08:54 10    ready to try this case.  We would like to proceed on the

09:08:57 11    scheduled trial date.  There's several other cases that

09:09:00 12    remain to be tried after this, as I think the Court and

09:09:04 13    defendants are well aware.  This is a 2015 case.  And while

09:09:08 14    I appreciate that defendants have tried to avoid a trial for

09:09:12 15    probably the last three and a half to four years, the case

09:09:15 16    is ready to be tried, and we would oppose any further delay.

09:09:20 17            THE COURT:  All right.  Well, you know, the

09:09:26 18    problem is, Mr. Padmanabhan, nobody really knows how things

09:09:31 19    are going to go.  Things may not be a whole lot different in

09:09:35 20    July than they are in May.  Presumably, Dr. Nettles being

09:09:43 21    not that excited to appear in person, he may not be anymore

09:09:48 22    excited to appear in person in July.  And you know, I don't

09:09:54 23    think -- and so, you know, I believe that counsel can

09:10:03 24    cross-examine effectively if the witness is remote, and so

09:10:14 25    basically, you know, I guess the parties should discuss

09:10:20   1    things with each other.  But based on what I'm hearing, I'm

09:10:24   2    perfectly fine with Dr. Nettles as well as Mr. Bernstein and

09:10:28   3    Mr. White testifying remotely.

09:10:31   4            I guess I would ask:  Are there any more

09:10:33   5    witnesses lurking out there that one side or the other

09:10:37   6    thinks want to be remote?

09:10:41   7            MR. BRAUERMAN:  Your Honor, Steve Brauerman for

09:10:42   8    ChanBond.  Not to our knowledge.

09:10:50   9            MR. PADMANABHAN:  Your Honor, at this point in

09:10:51  10    time, we aren't aware of any, but you know, this is --

09:10:54  11    obviously, if given the option, given the current state of

09:10:59  12    things, other folks may say they want to testify remotely as

09:11:03  13    well.

09:11:03  14            THE COURT:  All right.  Well, so I think we can

09:11:07  15    go ahead.  I don't think there's any particular advantage

09:11:10  16    being accomplished by delay.  I don't think that going ahead

09:11:14  17    in this fashion will be unfair to either side.  You know,

09:11:20  18    it's, I won't say, ironic, but -- and maybe this is not

09:11:26  19    exactly what you meant, Mr. Padmanabhan, but first it was

09:11:34  20    Cox would be prejudiced if Mr. Bernstein has to testify

09:11:36  21    remotely.  Then it was Dr. Nettles, if he testifies

09:11:41  22    remotely, Cox will be prejudiced.

09:11:44  23            You know, you seem to be working on the

09:11:46  24    principle that unless everybody is live and in person, you

09:11:49  25    will be prejudiced.  I think there have been plenty of cases

09:11:53 1   in the last year which have shown that, generally speaking,

09:11:55 2   that's not going to be the case.

09:11:57 3           So I think in regards to Dr. Nettles,

09:12:02 4   Mr. Bernstein, Mr. White, you know, the parties will need to

09:12:08 5   meet and confer about exactly how to handle the remote

09:12:14 6   testimony which, you know, has been dealt with in plenty of

09:12:19 7   other cases, and usually the parties are able to work that

09:12:22 8   out.

09:12:23 9           So the second thing is this:  I need to start

09:12:26 10  the trial not on May 17th, but on May 20th which is the

09:12:33 11  Thursday of that week.  I have a different trial that's

09:12:37 12  going to take three days on the 17th.  And while that trial

09:12:43 13  could always resolve itself, you know, it very well may not.

09:12:50 14  I don't have any indication it's going to.  And because of

09:12:56 15  the nature of that case, it needs to take priority.

09:13:00 16          But so is there any problem with starting this

09:13:07 17  case on May 20th, rather than May 17th?

09:13:11 18          MR. BRAUERMAN:  Your Honor, this is Steve

09:13:12 19  Brauerman for ChanBond.  No issues from our side.

09:13:19 20          MS. YING:  Your Honor, this is Jennifer Ying

09:13:21 21  from Morris Nichols.  It's our understanding that at least

09:13:25 22  there's one person who on our team has a conflict if we were

09:13:28 23  to start on May 20th, and we'd request if the Court wants to

09:13:33 24  go forward in May, that we start May 24th, that Monday.

09:13:38 25          THE COURT:  Well, who's the person on your team

09:13:40 1   who has a conflict?

09:13:41 2           MS. YING:  That would be Mr. Melsheimer.  He has

09:13:46 3   his graduation for his son.

09:13:47 4           MR. MELSHEIMER:  Your Honor, this is Tom

09:13:51 5   Melsheimer.  First of all, I apologize for bringing up

09:13:54 6   something that is so personal in the grand scheme of this

09:13:58 7   trial, but my son is graduating from the University of Texas

09:14:02 8   School of Law and was supposed to --

09:14:04 9           THE COURT:  Well, that's a big event, but I

09:14:06 10  guess what I'm wondering -- Mr. Melsheimer, you definitely

09:14:10 11  should be going to that rather than this -- is I've never

09:14:12 12  even heard of you until just now.  How important can you be

09:14:14 13  to this case?  And I don't mean that -- you know, my

09:14:18 14  impression is Mr. Whitman and Mr. Raskin are the people who

09:14:22 15  are going to be doing the lead amount of work here.  So you

09:14:27 16  know, people are popping in and out of these trials anyhow,

09:14:30 17  and I expect to limit the number of people who are actually

09:14:33 18  in the courtroom at any given time.

09:14:35 19          So I guess I'm wondering, can't you go to the

09:14:37 20  graduation and just skip the first two days of trial?

09:14:43 21          MR. MELSHEIMER:  Well, Your Honor, I appreciate

09:14:45 22  that, and I may ask my colleagues.  But I was asked to join

09:14:50 23  this case some time ago to be lead trial counsel for Cox.  I

09:14:55 24  am doing the opening.  I haven't been involved in a lot of

09:14:58 25  the proceedings.

09:15:00 1          THE COURT:  Oh, I'm sorry.  I forgot.  I didn't

09:15:02 2  even understand which side you were on.

09:15:04 3          Okay.  You're on the Cox side.  Oh.

09:15:09 4          MR. MELSHEIMER:  Cox side.  I'm with Winston &

09:15:13 5  Strawn, Your Honor, and I have not had the pleasure of

09:15:15 6  meeting you.  Just for some color on this, obviously most

09:15:19 7  graduations take place on a weekend.  But because of the

09:15:22 8  pandemic, they're doing these things very small.  So they're

09:15:25 9  spreading it out over two days.  I just found out Friday

09:15:28 10  that my son's graduation, which is limited to just four of

09:15:31 11  us, is going to be at 2:20 on Friday afternoon down in

09:15:35 12  Austin.  So it's an awkward time.  It's an unusual time.

09:15:38 13          And again, I don't like inserting this into a

09:15:40 14  case that involves a lot of people and parties, but --

09:15:44 15          THE COURT:  You know, generally speaking,

09:15:46 16  Mr. Melsheimer, I'm sure Mr. Brauerman, and Ms. Ying, and

09:15:52 17  Mr. Blumenfeld have heard me say this a number of times.

09:15:54 18  You know, these personal events, they are important.

09:16:05 19          MR. MELSHEIMER:  I wonder, Your Honor, and

09:16:07 20  again, I don't know the Court's practice on this, but I

09:16:09 21  suppose if -- and I know the Court's time is extremely

09:16:13 22  valuable.  I suppose we could use Thursday to pick the jury

09:16:19 23  and do the opening statements and resume the trial on

09:16:21 24  Monday.  Again, I'm not trying to dictate --

09:16:25 25          THE COURT:  Well, no, no.  That's a reasonable

09:16:27 1   suggestion, Mr. Melsheimer.  So here's my concern about that

09:16:46 2   which is one of the things about starting on May 20th is the

09:16:55 3   end of the next week is backing up into the Memorial Day

09:16:58 4   weekend, and I'm just concerned that if we don't have any

09:17:09 5   trial on Friday that we may get jammed up at the back end in

09:17:23 6   a way that's not necessarily good.  Let me think about this.

09:17:41 7        MR. MELSHEIMER:  Your Honor, if I might.  As I

09:17:42 8   understood, the trial was going to be completed in five

09:17:45 9   days, and so I don't -- again, I don't presume to judge what

09:17:50 10   you're going to be doing with various protocols that may end

09:17:54 11   up making the trial longer, but it seems like if we started

09:17:58 12   Thursday and got as much done as we could Thursday, that you

09:18:02 13   would have -- the trial ought to be finished by the 27th

09:18:07 14   under the Court's current schedule.

09:18:10 15        THE COURT:  Yeah, but then you've got

09:18:12 16   deliberations.  So I take it what you're telling me is if we

09:18:25 17   stayed with the 17th, you'd be asking to have the Friday off

09:18:31 18   or you know --

09:18:33 19        MR. MELSHEIMER:  Again, I hate to put it that

09:18:35 20   way, but, yes, I am.  I am afraid I would be.  Again, this

09:18:38 21   is all somewhat dynamic based on, you know, what they

09:18:42 22   decided to do with the graduation as of Friday.

09:18:45 23        THE COURT:  Okay.  I understand.  If we have

09:18:53 24   trial on Thursday, you can get down to Austin without too

09:18:57 25   much trouble for Friday?

09:19:00  1          MR. MELSHEIMER:  Yes, Your Honor.

09:19:03  2          THE COURT:  All right.  Well, we'll plan to have

09:19:14  3  a full day on Thursday and not have anything on Friday.  And

09:19:22  4  it is -- and we'll deal with the back end, so to speak, in

09:19:30  5  terms of jury selection.  I haven't quite figured out how,

09:19:36  6  but I think we can do that or we can always just have them

09:19:41  7  come back and deliberate after a three-day weekend.

09:19:45  8          Okay?

09:19:45  9          MR. MELSHEIMER:  Your Honor, thank you very

09:19:47 10  much.  I really appreciate that.  My son thanks you and

09:19:50 11  you're going to keep me out of trouble in Texas.

09:19:52 12          THE COURT:  It's all right.

09:19:54 13          MR. MELSHEIMER:  So I appreciate it very much.

09:19:55 14          THE COURT:  It's no problem, Mr. Melsheimer.

09:19:58 15  Okay.

09:20:00 16          MR. BRAUERMAN:  Your Honor, this is Steve

09:20:01 17  Brauerman.  I don't think it's necessary, but I just wanted

09:20:04 18  to say, obviously, we understand Mr. Melsheimer's conflict,

09:20:06 19  and we're happy to make whatever accommodations are

09:20:10 20  acceptable to Your Honor that work for him.  So we

09:20:14 21  appreciate everyone's efforts.

09:20:16 22          THE COURT:  Okay.  Thank you, Mr. Brauerman.

09:20:18 23          All right.  So the next thing was I was --

09:20:31 24  really the only other things that I more or less have to do,

09:20:35 25  or have to address, or were thinking about addressing today

09:20:38 1   is I thought we should have some sort of meeting that would

09:20:43 2   involve at least Delaware counsel and presumably some senior

09:20:49 3   member of the outside counsel some time the week before so

09:20:56 4   that you can look over the courtroom setup and, you know, we

09:21:04 5   may be doing objections with headsets and things like that.

09:21:09 6   So I thought it would be good for us to have a dry run.  And

09:21:15 7   so I don't have a particular date, but I'm generally

09:21:20 8   available during the period of May 11th to May 13th.  That's

09:21:24 9   the Tuesday to Thursday of the week before.  And I would

09:21:28 10  like you all to confer with each other and my staff and pick

09:21:32 11  some time that you'd be here then to get the lay of the

09:21:41 12  land.

09:21:42 13          In terms of jury selection, I'm expecting to

09:21:47 14  gain some experience on this next week in a criminal trial.

09:21:54 15  But what I would like to do is essentially this:  We're

09:22:03 16  going to send out a form that was developed last year at

09:22:09 17  some point and which it has been modified personally by

09:22:14 18  Judge Noreika and me to the panel or prospective panel in

09:22:22 19  advance to ask them questions about COVID, and their

09:22:27 20  concerns about COVID, and the like.  And you know, and ask

09:22:33 21  if they have a vaccination scheduled.

09:22:37 22          And so what I would like to do is we have a jury

09:22:41 23  plan which allows the clerk to excuse a few very narrow

09:22:47 24  categories of people who respond to the summons, but what I

09:22:55 25  would like to do is have your consent that I also excuse

09:23:03 1  people basically based on this response to the COVID

09:23:06 2  questionnaire, so that the people that we actually bring in

09:23:15 3  seem unlikely to being excused because of COVID.  And

09:23:22 4  basically what I would expect to do is send out the

09:23:27 5  questionnaire, excuse people and then to whoever's left, the

09:23:40 6  jury administrator will conduct some randomization and will

09:23:45 7  bring in enough people so that we have 32 people who have

09:23:52 8  been sort of screened for COVID.  And then we'll just do a

09:23:56 9  regular sort of jury selection where I feel confident based

09:24:04 10  on experience that if we've got sort of the COVID screening

09:24:08 11  in at this point, we can only do a voir dire of the maximum

09:24:13 12  of 32 people at a time, that we will get enough people for

09:24:18 13  the jury, and to give each side three preemptory strikes.

09:24:26 14       So what I'd like you all to do is think about

09:24:33 15  this and talk to each other.  And if both sides agree, you

09:24:43 16  know, just send me a letter saying, yeah, Judge, you screen

09:24:46 17  out people for COVID concerns, and then that's what I'll do.

09:24:53 18  If you don't agree, you know, we'll go to plan B.  And I'm

09:25:01 19  not entirely sure what plan B is and, you know, this is

09:25:09 20  something -- there's no need, no particular urgency about it

09:25:13 21  because we're going to send out the questionnaire

09:25:17 22  regardless.  And in fact, based on the criminal trial I

09:25:20 23  have, we'll actually be setting up this questionnaire, I

09:25:26 24  don't know, probably or we'll be sending out the summons for

09:25:30 25  the panel, you know, within like the next week or so.  I

09:25:35  1    forget.

09:25:36  2         Actually, what is today?  Oh, the 18th, 19th.

09:25:39  3    Yeah, we'll be sending it out pretty soon.

09:25:42  4         Do you all understand what I'm saying?

09:25:47  5         MR. BRAUERMAN:  Your Honor, this is Steve

09:25:48  6    Brauerman for ChanBond.  We understand.

09:25:51  7         MS. YING:  Your Honor, this is Jennifer Ying

09:25:53  8    from Morris Nichols.  I think we understand as well, but

09:25:57  9    from a logistical standpoint is the Court -- I don't believe

09:26:01 10    the Court had publicly shared what that COVID questionnaire

09:26:06 11    looks like to the juror summons.  Is that something that the

09:26:09 12    parties can get access to?

09:26:11 13         THE COURT:  Yeah, yeah.  I'll be happy to

09:26:12 14    forward it to Delaware counsel.  That's a perfectly

09:26:17 15    reasonable request.  It's not a secret.  After all, plenty

09:26:20 16    of people are getting it.  So I will send you along the

09:26:23 17    questionnaire today.

09:26:26 18         MS. YING:  Thank you, Your Honor.

09:26:27 19         THE COURT:  Okay.

09:26:28 20         MS. YING:  And then I didn't know if Your Honor

09:26:29 21    had any other logistical remarks, but we did have a question

09:26:33 22    for the Court regarding what the number of attorneys or

09:26:39 23    people that could be in the courtroom at a time would be, if

09:26:42 24    the Court has made any decisions about that at this time.

09:26:47 25         THE COURT:  Well, so that's a very reasonable

09:26:49  1    question, too, Ms. Ying.  And I had them -- actually, it was
09:26:53  2    on my list here.  It's pretty much the only other thing on
09:27:00  3    my list.  And I guess what I would say is rather than me
09:27:05  4    just saying, yeah, here's the answer, which I have done
09:27:08  5    earlier in some bench trials, maybe the parties ought to
09:27:17  6    make a request essentially with the premise that you have to
09:27:23  7    justify having, you know, more than, say, three lawyers in
09:27:28  8    the courtroom at a time.  We will have an overflow
09:27:34  9    courtroom, you know, with some video feed so that the people
09:27:37 10    who are not in the courtroom can, nevertheless, watch it as
09:27:43 11    it happens and do whatever it is that they do.
09:27:48 12            But so why don't you all talk to each other and
09:27:54 13    you can send me a letter in due course, probably sooner
09:27:58 14    rather than later, but in due course as to what you think
09:28:06 15    the rules should be on that.  All right?
09:28:12 16            MS. YING:  Thank you, Your Honor.
09:28:13 17            MR. BRAUERMAN:  Your Honor, it's Steve
09:28:15 18    Brauerman.  I just wanted to ask if Your Honor would view
09:28:18 19    attorneys who are fully vaccinated as perhaps a reason to
09:28:22 20    expand that number.
09:28:23 21            THE COURT:  Well, why don't you think about that
09:28:25 22    and you can put it in the letter.  I mean, I do think, you
09:28:28 23    know, totally vaccinated people, you know, have a leg up in
09:28:39 24    this.  And but, again, I think it's best you all think about
09:28:48 25    this first and, you know, send me your respective requests

09:28:53 1    or maybe your joint requests would be even better, and I

09:28:58 2    will consider it.  But I do want to limit the number of.

09:29:02 3    I'm just not sure exactly what that limit should be.

09:29:09 4         MR. BRAUERMAN:  Your Honor, for us, perhaps it

09:29:11 5    makes sense for us to submit that after we see the layout

09:29:14 6    the week before or is that too late for Your Honor because

09:29:16 7    that might be --

09:29:17 8         THE COURT:  I think it would be better perhaps

09:29:19 9    for your own planning to get the letter in sooner because,

09:29:24 10   you know, it may kind of -- you know, the less things you

09:29:27 11   push off until the last minute, the happier everyone or the

09:29:31 12   happier you'll be probably.

09:29:33 13        MS. YING:  Your Honor, this is Jennifer Ying

09:29:35 14   from Morris Nichols.  Would we be able then to make

09:29:38 15   arrangements to at least view the revised courtroom setup

09:29:41 16   prior to, I guess, the May 11th through 13th dates that you

09:29:46 17   had referenced for the actual run through?

09:29:49 18        THE COURT:  Sure.  Just to be clear, because I

09:29:51 19   don't know what you may have seen already, Ms. Ying, we

09:29:56 20   haven't really changed the courtroom setup since it was set

09:29:59 21   up last year at some point.  And the plan would be that the

09:30:04 22   trial would actually be in what we know is Judge Stark's

09:30:08 23   courtroom, and my courtroom would be used as the jury room.

09:30:13 24   But it would be perfectly fine to and perhaps even better if

09:30:19 25   you did it jointly, but to contact one of my staff, and you

09:30:29  1   can come over and look at it as soon as you like.

09:30:34  2        MS. YING:  Well, we'll coordinate with

09:30:36  3   Mr. Brauerman and his firm and reach out to your chambers to

09:30:41  4   make arrangements.  Thank you, Your Honor.

09:30:43  5        THE COURT:  Okay.  Yeah, that's no problem.

09:30:45  6   That's a very reasonable request.

09:30:46  7        All right.  So I don't really have anything else

09:30:52  8   written down on my list here.  Is there anything else that

09:30:58  9   any counsel wants to bring up?

09:31:03 10        MR. PADMANABHAN:  Your Honor, this is Krishnan

09:31:04 11   Padmanabhan with Winston.  One other thing that maybe I'd

09:31:10 12   bring to the Court's attention or raise with the Court which

09:31:13 13   is that some of the trials that have been taking place over

09:31:18 14   the last year, you know, we have -- obviously, folks have

09:31:25 15   been listening in intently to see how they have been

09:31:29 16   conducted and --

09:31:30 17        THE COURT:  Well, I'm sorry, Mr. Padmanabhan.

09:31:32 18   Again, for some reason, you're a little less distinct than

09:31:36 19   the other people who have been talking.

09:31:39 20        MR. PADMANABHAN:  I apologize, Your Honor.  My

09:31:41 21   cell phone connection, I guess, is less than optimal.  Let

09:31:44 22   me try once again.

09:31:45 23        I was saying that for those of us who have been

09:31:51 24   listening in to some of the jury trials that have been

09:31:54 25   taking place, patent jury trials that have been taking place

09:31:58  1    over the last year, you know, there's been in some regular

09:32:03  2    instances and some of the cases in Texas, for example,

09:32:07  3    reference to the fact that this particular case is obviously

09:32:10  4    very important because people have been brought in, you

09:32:14  5    know, given the health -- you know, despite the health

09:32:17  6    crisis.  And we -- you know, we wanted to raise with Your

09:32:22  7    Honor the prospect of a jury instruction to make sure that

09:32:26  8    the jury doesn't read anything into it and that they

09:32:29  9    understand fully that there's nothing unique about this case

09:32:33 10    that is bringing them in, given the health crisis.  You

09:32:39 11    know, we see that played up in some of the other patent jury

09:32:41 12    trials, and we're happy to confer with plaintiffs about how

09:32:44 13    exactly that should read, but we wanted to raise it with

09:32:47 14    you.

09:32:48 15            THE COURT:  All right.  Well, Mr. Padmanabhan,

09:32:50 16    you read my mind because that was going to be my response is

09:32:54 17    why don't you talk to the other side and submit me

09:32:56 18    something.

09:32:58 19            MR. PADMANABHAN:  We'd be happy to do that, Your

09:32:59 20    Honor.

09:32:59 21            THE COURT:  Okay.  Anything else from anybody?

09:33:04 22            MR. BRAUERMAN:  Your Honor, this is Steve

09:33:06 23    Brauerman from ChanBond.  We have nothing further.  Thank

09:33:08 24    you for your time this morning.

09:33:09 25            MS. YING:  Your Honor, this is Jennifer Ying

09:33:15 1   from Morris Nichols Arsht & Tunnell.  I don't believe we

09:33:18 2   have any other questions at this time, Your Honor.  Thank

09:33:22 3   you.

09:33:22 4            THE COURT:  All right.  Well, so just to sum up

09:33:25 5   what I'm going to do is I'm going to make sure there's no

09:33:28 6   trial on Friday, and I'm going to send the COVID

09:33:31 7   questionnaire to Delaware counsel.  And so I thank you for

09:33:36 8   your time.  You know, as I said, I think I have a trial, a

09:33:41 9   criminal trial actually next week, so I may be a lot more

09:33:48 10  alert to certain issues, assuming that actually happens.

09:33:51 11  But to the extent that the parties need or think it's

09:34:00 12  beneficial to dialogue with the Court about this, that or

09:34:03 13  the other thing before trial, you know, I would like to make

09:34:07 14  this work smoothly, and so you should feel free to jointly

09:34:13 15  get in touch about things that you think that would be a

09:34:18 16  good idea to do.

09:34:20 17            All right.  Well, listen, thanks.  That's it for

09:34:23 18  this morning.  Thank you all for your time, and I will see

09:34:28 19  you down the road.  All right?  We'll, I'm going to hang up

09:34:33 20  now.  Goodbye.

09:34:36 21            (Everyone said, Thank you, Your Honor.)

22            (Teleconference was concluded at 9:34 a.m.)

23            I hereby certify the foregoing is a true and

24   accurate transcript from my stenographic notes in the

25   proceeding.

1          /s/ Heather M. Triozzi
           Certified Merit and Real-Time Reporter
2          U.S. District Court

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25