```
 1                IN THE UNITED STATES DISTRICT COURT

 2                   FOR THE DISTRICT OF DELAWARE

 3

 4   IN RE:  CHANBOND, LLC          ) C.A. No. 15-842-RGA
     PATENT LITIGATION              ) CONSOLIDATED
 5

 6                                    J. Caleb Boggs Courthouse
                                      844 North King Street
 7                                    Wilmington, Delaware

 8                                    Thursday, May 13, 2021
                                      2:02 p.m.
 9                                    Videoconference

10
     BEFORE:  THE HONORABLE RICHARD G. ANDREWS, U.S.D.C.J.
11

12   APPEARANCES:

13              BAYARD, P.A.
                BY:  STEPHEN BRAUERMAN, ESQUIRE
14              BY:  RONALD P. GOLDEN, III, ESQUIRE

15                     -and-

16              KING & WOOD MALLESONS LLP
                BY:  MARK S. RASKIN, ESQUIRE
17              BY:  ROBERT A. WHITMAN, ESQUIRE
                BY:  MICHAEL S. DeVINCENZO, ESQUIRE
18              BY:  JOHN PETRSORIC, ESQUIRE
                BY:  ANDREA PACELLI, ESQUIRE
19
                       -and-
20
                SHIPLEY SNELL MONTGOMERY LLP
21              BY:  GEORGE T. SHIPLEY, ESQUIRE

22                                    For ChanBond, LLC

23

24

25
```

```
 1    APPEARANCES CONTINUED:

 2              MORRIS NICHOLS ARSHT & TUNNELL LLP
                BY:  JENNIFER YING, ESQUIRE
 3
                         -and-
 4
                WINSTON & STRAWN, LLP
 5              BY:  KRISHNAN PADMANABHAN, ESQUIRE
                BY:  DAVID P. ENZMINGER, ESQUIRE
 6              BY:  THOMAS M. MELSHEIMER, ESQUIRE

 7                             For the Defendant

 8              ***   PROCEEDINGS   ***

 9              THE COURT:  Good afternoon.  This is Judge
10    Andrews in ChanBond vs. Cox, Number 15-842.
11              And is my court reporter on the line?
12              THE REPORTER:  Yes, Judge.
13              THE COURT:  And my deputy clerk?
14              DEPUTY CLERK:  Yes, Judge.
15              THE COURT:  All right.  And Mr. Brauerman, who's
16    speaking on behalf of the plaintiff here?
17              MR. BRAUERMAN:  Yes.  Good afternoon, Your
18    Honor.  It depends on what particular topic, but I expect
19    either myself, or Mr. Whitman, or Mr. Raskin will address
20    the Court, depending on the particular issues.  And I'm also
21    joined on the line by John Petrsoric, Michael DeVincenzo,
22    Andrea Pacelli, and George Shipley on behalf of ChanBond.
23              THE COURT:  All right.  And Ms. Ying, who's
24    speaking for your side today?
25              MS. YING:  Good afternoon, Your Honor.  Jennifer
```

```
 1        Ying from Morris Nichols Arsht & Tunnel.  With me --
 2                   THE COURT:  Somebody needs to mute themselves.
 3        Try again, Ms. Ying.
 4                   MS. YING:  With me on the line is Krishnan
 5        Padmanabhan, David Enzminger, and Tom Melsheimer from
 6        Winston & Strawn.  And depending on the question, Your
 7        Honor, it will either be myself, Mr. Padmanabhan,
 8        Mr. Enzminger, or Mr. Melsheimer.  So --
 9                   THE COURT:  Okay.  All right.  So the topic of
10        this was supposed to be the jury list, and have you all
11        received some list that includes either 52 or 60 names of
12        people who were summoned for this case?
13                   MS. YING:  Your Honor, this is Jennifer Ying.  I
14        believe we received the survey or, I'm sorry, the
15        questionnaire results from the jury administrator via email
16        yesterday.  I counted roughly 41 responses that we received.
17        I'm not sure if that's the accurate head count.  And
18        certainly Mr. Brauerman and his side can say, but that's
19        roughly what we received.
20                   THE COURT:  Okay.  So you don't have --
21        basically all you got was the questionnaires?
22                   MS. YING:  Correct.  And I think there were a
23        handful of letters that some individuals had submitted
24        looking to be excused from jury service.  I think we got
25        those, too, but that was it.
```

1           THE COURT:  All right.  I take it,
2    Mr. Brauerman, you got more or less the same thing?
3           MR. BRAUERMAN:  Yes, Your Honor.  We got the
4    same thing.
5           THE COURT:  Okay.  So I got a slightly different
6    thing.  I got the list of what was either 40 or 41
7    questionnaires, and I also got a list of names of people who
8    had either been excused pursuant to our jury plan, which
9    narrowed the overall total down to 52.  And then I also got
10   the names of what I counted as 13, but might be 12 people
11   who had not filled out the questionnaire.
12          So basically what I was proposing to do is
13   essentially excuse anybody who on the questionnaire had
14   answered questions 12, 3, 4, 7 or 9 with a yes.  And I was
15   going to excuse them.
16          The question about eight, travel outside of
17   Delaware, a couple people answered that yes, but I don't
18   think it really has anything to do with any reason for them
19   being excused.
20          And the only other person was there was one
21   person who answered the question five about:  Have you
22   completed COVID-19 vaccination with a no.  And the question
23   six said:  Do you have the vaccination scheduled, and they
24   have it scheduled for, I think, May 24th.  And I'm going to
25   not prevent anybody from getting the vaccination.

1    So what this would lead to would be, by my
2    count, there were a total of 16 people left out of the
3    people who answered the questionnaires that would remain,
4    and then there would be nine people who had not answered the
5    questionnaire, but most of whom will actually show up on the
6    day of trial.  And what I would propose is when they get
7    here and they answer the questionnaire and that I treat them
8    the same way as that I've just said in terms of who's
9    excused or not.
10   And then the other thing is that, based on my
11   prior experience, I think if we have 25 jurors in the panel
12   who don't have a COVID-related reason to be excused, I think
13   that that will get us enough jurors for the trial where we
14   essentially need to have 14 before you start exercising your
15   preemptories.  But I have also asked the jury case manager
16   to see if she can't summon another dozen jurors because it
17   would be cutting it kind of close.  So that's where I stand
18   right now.
19   Any comment, Ms. Ying or, I guess,
20   Mr. Brauerman?  Sorry.
21   MR. BRAUERMAN:  No, Your Honor.  That makes
22   sense to ChanBond.
23   MS. YING:  If I could just clarify with the
24   Court, it sounds like we have 16 people from the juror
25   questionnaire received that we would be including in the

1          summons pool.  And then I guess nine people who did not fill
2          out a questionnaire, but I believe Your Honor --
3                    THE COURT:  I'm sorry, I said nine.  I meant 13.
4                    MS. YING:  Okay.
5                    THE COURT:  Two, 4, 6, 8, 10, 12, yeah, 13.  I'm
6          not sure where I got the number nine from.
7                    So very good question, Ms. Ying, because I guess
8          you were doing the math and saying it doesn't add up.
9                    MS. YING:  Yeah, I was trying to understand.  So
10         by my math, if it matches yours, Your Honor, it's 29 people
11         as being potentially summoned for May 20th, and it sounds
12         like your jury administrator is potentially summoning 12
13         additional individuals.  Is that --
14                   THE COURT:  Yes.
15                   MS. YING:  -- correct, as we understand it?  So
16         we would be looking at potentially, if everybody showed up,
17         a pool of 41?
18                   THE COURT:  Yeah, 40 or 41, I'm not sure which.
19         And I'll let you finish your question, Ms. Ying, but then I
20         have some further explanation as to how things would
21         actually happen at that point.
22                   Do you have anymore questions about the math?
23                   MS. YING:  No, that was it, Your Honor.  I just
24         wanted to confirm that we understood sort of where this pool
25         was coming from and --

1                    THE COURT: So basically the followup to this is
2       at this time, we can only do voir dire of 32 jurors at a
3       time. And I'm competent that if we have 32 jurors sitting
4       in the seats that we will get 14 of them qualified.
5                    So when Ms. Ying and I are talking about
6       bringing in 40, that's essentially to take care of people
7       who might be disqualified on the basis of the COVID
8       questionnaire or, you know, some people just won't show up,
9       maybe even somebody who's filled out the questionnaire. But
10      that's the goal is to have 32 people who are not
11      disqualified on the basis of COVID or the jury plan, and
12      that would be the universe of potential jurors for the
13      trial.
14                   But a second part of the plan is that before
15      they -- they will be -- whoever's summoned will be
16      randomized by which I mean that, you know, they'll be given,
17      let's say, the numbers one to 40. And in terms of their --
18      you know, all other things being equal, numbers 1 to 14 will
19      be the panel on which you'd exercise your strikes. You
20      know, if after they're randomized, somebody's excused
21      because they thought they'd fill out the COVID questionnaire
22      on the morning of the trial and answered one of the
23      questions in the wrong fashion or in a fashion that results
24      in excusal, you know, then their place will just be skipped.
25                   But the point of it is that when we start doing

1   the voir dire, you will have the jurors ordered in the order
2   in which they would be picked to serve on the jury.  And
3   then the other thing is in terms of the followup voir dire,
4   once we get 14 qualified jurors, then we stop because
5   they've already been randomized.  So those are the 14 that
6   would fill the box, so to speak.
7              Any questions or comments?
8              MS. YING:  Your Honor, if I could just clarify.
9   Is the intent then for the 13 people who did not answer the
10  COVID questionnaire as well as the additional 12 jurors that
11  are summoned that they will be answering the questionnaire
12  when they show up on the first day?  Okay.
13             THE COURT:  Yes.
14             MS. YING:  And --
15             THE COURT:  And Ms. Ying, for what it's worth,
16  based on my prior experience, I would say about four of the
17  13 who haven't answered so far will answer between now and
18  some time next Thursday.  You know, just everyone does it by
19  the deadline that you put on it.
20             MS. YING:  Understood.  And so then your jury
21  administrator would forward us those responses as they come
22  in?
23             THE COURT:  Yes.
24             MS. YING:  Okay.  And when would we be able to,
25  I guess, get the list of the names of either the 13 people

1   who didn't answer the questionnaire or the additional 12
2   that are intended to be summoned?
3          THE COURT:  So I don't have the jury
4   administrator on the call right now, and she's kind of the
5   boss of that, but my understanding is normally it's three
6   days before trial.  So I think it would be on the Monday.
7          Okay?
8          MS. YING:  Okay.
9          THE COURT:  Next Monday, but she can overrule
10  me.  All right.
11         And so, Ms. Ying, Mr. Brauerman I think said he
12  was good with this plan.  Are you good with this plan?
13         MS. YING:  Yes, Your Honor.  This is fine for us
14  as well.  Thank you.
15         THE COURT:  Okay.  So the mechanics of this
16  probably aren't all that important right now, but basically
17  the way it will happen on Thursday morning is that the
18  lawyers will report to what Delaware counsel know as Judge
19  Stark's courtroom.  And the jurors will be reporting to my
20  courtroom which is adjacent to Judge Stark's courtroom.
21         When we've gone through the questionnaires and,
22  you know, when we've got the jury ready to go, and they'll
23  be brought over to Judge Stark's courtroom for the general
24  voir dire, I'll ask and get the answers.  Then they'll go
25  back to my courtroom, and then my staff will bring them in

1    one at a time.  And they have a very good circular pattern
2    flow, so there's not a lot of time lost.
3             And basically I'll ask them the followup
4    questioning.  You know, on the off chance that they ask
5    something that requires counsel, then counsel will ask the
6    followup questioning.  But the point is that I think that
7    there's every likelihood we'll have a jury selected by, say,
8    11:30 or so and, you know, we'll move right into or, you
9    know, with possibly a break, but we're basically going to
10   move in pretty quickly to, you know, my initial jury
11   instructions, playing the video, opening statements.  And I
12   do expect there will be some witness testimony on the
13   Thursday, so I just want to make sure that, particularly the
14   plaintiff, has stuff lined up ready to go because I'm hoping
15   that we'll get a couple hours of testimony in.  Okay?
16            So that's about what I have, I believe, on the
17   jury.  I think Mr. Brauerman, possibly, or Ms. Ying, one or
18   the other of you said, depending on what the topics are,
19   many different people might be speaking.  Are there other
20   topics that I'm unaware of?
21            MR. BRAUERMAN:  Your Honor, Steve Brauerman.  I
22   think from our perspective, there are some logistical things
23   that we might want to address.  The first is we don't know
24   that the Court has entered yet the pretrial order.  And
25   since we're all together, I wanted to make sure that --

1                THE COURT:  No, I did that back after the first
2    pretrial.  I don't know exactly when that was --
3                MR. BRAUERMAN:  Okay.
4                THE COURT:  -- but there is a pretrial order.
5    And in terms of is there something -- I mean, really the
6    only -- as long as you know you're supposed to be here ready
7    to go at 9:00 a.m. on Thursday, May 20th, that's the only
8    thing that would probably change.  I know there was an oral
9    order that addressed the fact that we weren't going to be
10   having trial on Friday.
11               Is there something else, Mr. Brauerman, you had
12   in mind?
13               MR. BRAUERMAN:  No, I think that covers what
14   needed to be covered on that issue.
15               The second issue is I don't know, and we
16   probably need to speak with the defendants before we raise
17   it to the Court, but just in terms of actual layout, given
18   that there is no party closer to the jury, does the Court
19   have a preference as to which side of the courtroom the
20   plaintiff is on versus the defendant is on, or is that
21   something we ought to work out with the defendants?  And
22   candidly, we didn't raise that with them before this, so
23   they may have a view and we may have a view, and we haven't
24   discussed it.  But I wanted to flag that.
25               THE COURT:  Okay.  Well, I think you should talk

1	to the other side and work that out.  I have at least two
2	different methods of resolving it if you can't work it out.
3	One of them involves a coin.  The other one --
4	              MR. BRAUERMAN:  I think we'll be able to work it
5	out.
6	              THE COURT:  Okay.  Anything else on logistics?
7	              MR. BRAUERMAN:  The only other --
8	              THE COURT:  And I'm sorry, Mr. Brauerman, I seem
9	to recall, and I'm pretty sure that Ms. Ying did, I mean,
10	you've gone and looked at the setup of Judge Stark's
11	courtroom; right?
12	              MR. BRAUERMAN:  We've seen a diagram and a
13	photograph.  I think we're planning to go to the tech setup
14	on Monday morning at 9:00 a.m. so we'll get to see it in
15	person then.
16	              THE COURT:  Okay.  And I forget whether we
17	discussed this, but the basic thing is that when we're doing
18	this, when we're having the trial, you know, there's some
19	Plexiglass in front of where the witness testifies.  And for
20	the two lawyers or for the lawyers if they want to stand at
21	the podium, what we did at my one and only other trial in
22	the recent past was that when the witness is testifying,
23	they take off their mask.  The lawyers, if they're asking
24	questions behind the Plexiglass, they take off their mask.
25	But if you're not in a speaking role, you keep the mask on.

1     The jury will be masked.

2           I forget, did we cover that already?

3           MR. BRAUERMAN: I believe we did.

4           THE COURT: Okay.

5           MR. BRAUERMAN: So that certainly doesn't sound
6     new to me.

7           THE COURT: All right. Anything else,
8     Mr. Brauerman?

9           MR. BRAUERMAN: Yeah. I think the only other
10     thing we wanted to raise, and I know Your Honor has already
11     addressed this, but I believe the parties are limited to
12     five sort of attorneys or support staff plus the hot seat
13     person in the courtroom. We were wondering if in the
14     gallery, the Court was willing to consider expanding that if
15     there is space. We're just concerned about the number of
16     people, attorneys who have access to the courtroom during
17     the trial because it's pretty limited when you subtract the
18     hot seat person and a paralegal. You're, I think, down to
19     three or four attorneys.

20           THE COURT: Yeah. Well, --

21           MR. BRAUERMAN: I was wondering --

22           THE COURT: -- you'll see that the tables are
23     set up. The chairs are set up. It's kind of crowded. So
24     and I guess -- actually, I missed what you said there which
25     is you want to have some people sitting in the gallery?

1       MR. BRAUERMAN:  Yeah, if we could have
2  additional.  So I understand, and maybe my understanding is
3  wrong, but I understand the Court approved that there could
4  be three attorneys per side at counsel table --
5       THE COURT:  Yes.
6       MR. BRAUERMAN:  -- and then two additional
7  parties or personnel from each side in the courtroom.  We
8  were asking if Your Honor would consider allowing us to have
9  more people in the gallery if space could permit because
10 having just the three and the two, plus the hot seat person
11 was a little bit limiting for at least plaintiff, and I
12 think for defendants as well.  So we were hoping that
13 additional attorneys might be able to sit in the gallery
14 even if they couldn't sit at counsel table.
15      THE COURT:  How many attorneys are you talking
16 about, Mr. Brauerman?
17      MR. BRAUERMAN:  I mean, Your Honor, ideally we'd
18 get two more, if we could, but we'll take whatever the Court
19 will give us.
20      THE COURT:  And Ms. Ying, do you have any
21 comment on this?
22      MS. YING:  Your Honor, we don't have any -- I
23 mean, as a general matter, we don't have any position on the
24 plaintiff's request.  The only thing I would note is that
25 when we visited the courtroom, you know, the witness box is

1  on one side of the gallery, so I'm not sure where everyone
2  was going to be sitting.  Practically speaking, because my
3  understanding was that we also didn't want to have people
4  who would, you know, basically be next to the witness that
5  was testifying, you know, in the gallery just because of the
6  way the courtroom is set up.
7              THE COURT:  All right.  Well, I think the number
8  of people that -- and actually, Mr. Brauerman, I'm wondering
9  if you slipped one extra person in there, three attorneys,
10 the hot documents operator, whatever you're calling this
11 person, and then you were saying one paralegal or two?  I
12 thought it was six total, but if I slipped one in, I
13 apologize.  I thought it was five plus the hot seat
14 operator.
15             If it's five including the hot seat operator,
16 then I misunderstood.  You know, that's what I thought it
17 was, but I could be wrong.
18             DEPUTY CLERK:  Judge, it was one paralegal per
19 side.
20             THE COURT:  Okay.  All right.  So good.
21             MR. BRAUERMAN:  Five includes the hot seat
22 operator.
23             THE COURT:  Yeah, that's what I thought.  You
24 know what, let's do this.  I'm not going to grant your
25 request right now.  Once we get going, we've got the jury

1  and everything, bring it up with me again.  And depending on
2  how everything looks -- I'm not sitting in that courtroom
3  right now -- everything looks, you know, it might not be too
4  hard to add another person per side.  But let's hold off on
5  that.  Okay?
6              MR. BRAUERMAN:  Understood.  Thank you, Your
7  Honor.
8              And I'll just ask Mr. Whitman or Mr. Raskin, I
9  believe that's everything we wanted to raise, but I just
10 want to confirm with them.
11             MR. WHITMAN:  That's all.  Thank you, Your
12 Honor.
13             THE COURT:  And Ms. Ying, on your side?
14             MS. YING:  Yes, we have two points to raise,
15 Your Honor.  The first one I think we talked about very
16 briefly at our previous conversation about a proposed sort
17 of general instruction regarding COVID-19 and the trial, and
18 I know we sent a proposed instruction over to the plaintiff
19 shortly before this call.  And I'm sure they have not yet
20 had an opportunity to review it, so we'll discuss that with
21 them and provide a proposal to the Court.  You know, I just
22 wanted to give the Court a heads up about that.
23             THE COURT:  And just remind me generally because
24 I remember in some case, I was discussing something like
25 this with the parties.  Was that with you all?

1     MS. YING: That would be with us, Your Honor.
2 That's correct.
3     And then the second issue is that the plaintiff
4 and us, we've been discussing some further narrowing of the
5 case, and the parties are going to be exchanging some
6 narrowing proposals. And consequently, I just wanted to let
7 the Court know that I think that we would expect that the
8 proposed final jury instructions that were submitted, you
9 know, almost a year ago, probably will change a little bit.
10 And so I wanted to first let the Court know that and then
11 find out, you know, if we are going to be submitting
12 proposed final jury instructions, when Your Honor would like
13 those by.
14     THE COURT: So normally, I would say --
15 normally, so most of the time what happens is I give the
16 date and a time, and then shortly before the date and the
17 time, the parties say, We're working on it. And if you'll
18 push it back, we will accomplish something. So I push it
19 back and back.
20     So what I would say is, you know, I think my
21 alternatives would either be the Monday evening at 8:00 or
22 Tuesday evening at 8:00. I don't know.
23     Do you think it makes any difference to you all?
24     MS. YING: When you say "Monday evening," do you
25 mean Monday the 17th or Monday the 24th?

1              THE COURT:  The 24th.  I mean, in other words,
2    you're going to be narrowing right down probably through the
3    opening statements.  And so I think after the first day,
4    you'll have a much better idea of what's actually in play.
5    I'm sure you'll be working all weekend anyhow, but you know,
6    I guess all things being equal to me, I'd say why don't you
7    aim for Monday at 8:00 p.m. the 24th.  And there's some play
8    in there, at least for the 24 hours, if you think more time
9    would result in some extra agreements.
10             MS. YING:  Thank you, Your Honor.  We'll plan
11   for that, and we'll coordinate with the other side.
12             THE COURT:  Okay.  Anything else?
13             MS. YING:  This is when I defer to
14   Mr. Enzminger, and Mr. Padmanabhan, and Mr. Melsheimer and
15   ask if they have anything.
16             I don't believe we have anything else, Your
17   Honor.  Thank you.
18             THE COURT:  Actually, though, it did remind me
19   of one other thing which is so in preparation for this kind
20   of trial, we've got some equipment so people can make
21   objections looking like they're NFL coaches, you know,
22   whispering in the microphones.  And we hear it through
23   the -- the one trial that I had so far, I didn't think was
24   going to raise the kind of issues where this would be an
25   issue, so I just ignored it.  I spoke to one of my far-flung

1    colleagues who said that he wasn't using that, that he
2    basically just said if there's an objection that, you know,
3    can't be resolved, you know, based on objection leading,
4    objection hearsay, that kind of thing, which after all most
5    objections can be, but if there was a more complicated
6    objection, he would just take the jury out and charge the
7    time to whoever lost.
8              And so I'm kind of inclined to be going for that
9    second route, partly because I haven't practiced with the
10   headset business and I'm, frankly, dubious as to how it will
11   work.  But if you want to practice on the headsets on the
12   Friday, we can do that.  But on Thursday, at least, if we
13   have any objections, we're going to have to take the jury
14   out and charge the side and time to one side or the other.
15   And I guess it also puts a premium on the time in the
16   morning before we start the day's trial that, you know, I
17   understand there's just some things you can't predict.  But
18   to the extent that you have anything that we can raise
19   outside the presence of the jury, either at the beginning of
20   the day or at the end of the day, you know, let's do that
21   because it will not be good if we have to be taking the jury
22   out a lot and charging time to arguments of one kind or
23   another.
24             Okay?  All right.  Well, I don't think I have
25   anything else.  And I do have a different trial on Monday

1   through Wednesday, so if you have any last-minute problems,
2   write me a letter, and I'll try to deal with them.  But I'm
3   probably going to be pretty tired from this other thing that
4   I'm doing, so it would be better if you resolved any
5   problems between yourselves.
6              Okay.  Well, in any event, have a good day.  I
7   will see you next week.  Everyone take care in the mean
8   time.  Okay.  I'm hanging up.
9              (Everybody said, Thank you, Your Honor.)
10             (Videoconference was concluded at 2:31 p.m.)
11             I hereby certify the foregoing is a true and
12  accurate transcript from my stenographic notes in the
13  proceeding.
14                  /s/ Heather M. Triozzi
                    Certified Merit and Real-Time Reporter
15                  U.S. District Court